IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD A. WILLIAMS,                              :
                                                 :
            Plaintiff,                           :
                                                 :
      v.                                         :        CIVIL ACTION NO. 17-cv-2641
                                                 :
JEFF SESSIONS,                                   :
Attorney General of the United States,           :
THOMAS E. BRANDON,                               :
Acting Director, Bureau of Alcohol,              :
Tobacco, Firearms and Explosives,                :
CHRISTOPHER WRAY,                                :
Director, Federal Bureau of Investigation, and   :
UNITED STATES OF AMERICA,                        :
                                                 :
            Defendants.                          :

O R D E R

        AND NOW, this          day of                          , 2017, upon consideration

of the Defendants' Motion to Dismiss the Complaint and plaintiff's response thereto, it is hereby

ORDERED

that the Defendants' Motion to Dismiss the Complaint is granted for the reasons set forth in

Defendants' memorandum of law. Plaintiff's claims against Defendants are hereby dismissed.

                                          BY THE COURT:


                                          _____
                                          HONORABLE ROBERT F. KELLY
                                          *Senior Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD A. WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 17-cv-2641 |
| | : | |
| JEFF SESSIONS, | : | |
| Attorney General of the United States, | : | |
| THOMAS E. BRANDON, | : | |
| Acting Director, Bureau of Alcohol, | : | |
| Tobacco, Firearms and Explosives, | : | |
| CHRISTOPHER WRAY, | : | |
| Director, Federal Bureau of Investigation, and | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendants. | : | |

## **DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Defendants, Jefferson B. Sessions, III, Attorney General of the United States of America, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Christopher Wray, Director, Federal Bureau of Investigation, and the United States of America hereby move this Court for an order dismissing the plaintiff's claims against them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

The basis for this motion is more fully set forth in the accompanying memorandum of law, which is incorporated herein.

---

[1] Plaintiff originally named Andrew G. McCabe, the Acting Director of the Federal Bureau of Investigation, as a defendant in this action. Christopher Wray is now been confirmed as the Director of the Federal Bureau of Investigation. Under Rule 25(d) of the Federal Rules of Civil Procedure, when a public officer who is a party to an action in his or her official capacity ceases to hold office, "[t]he officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d). According, Christopher Wray should be substituted from Andrew G. McCabe as a defendant.

WHEREFORE, defendants, Jefferson B. Sessions, III, Attorney General of the United States of America, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Christopher Wray, Director, Federal Bureau of Investigation, and the United States of America, respectfully request that the Court enter an order dismissing the plaintiff's Complaint.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


/s/ Margaret L. Hutchinson
MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division


/s/ Richard Mentzinger, Jr.
RICHARD MENTZINGER, JR.
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
TEL:  (215) 861-8316
FAX:   (215) 861-8618
rick.mentzinger@usdoj.gov


Dated: September 14, 2017

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD A. WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 17-cv-2641 |
| | : | |
| JEFF SESSIONS, | : | |
| Attorney General of the United States, | : | |
| THOMAS E. BRANDON, | : | |
| Acting Director, Bureau of Alcohol, | : | |
| Tobacco, Firearms and Explosives, | : | |
| CHRISTOPHER WRAY, | : | |
| Director, Federal Bureau of Investigation, and | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT</u>**

Plaintiff has twice been charged with drunken driving. The first time, he took advantage of Pennsylvania's Accelerated Rehabilitative Disposition program. Unfortunately, three years later, plaintiff was convicted of a second drunken driving offense, this time with a blood alcohol level of 0.223%. Plaintiff's second driving under the influence ("DUI") offense was a misdemeanor in the first degree, which subjected him to a possible punishment of up to five years in prison. The court eventually sentenced plaintiff to not less than 90 days or more than two years in prison, a fine, and other punishment, but allowed plaintiff to serve his term of imprisonment on house arrest.

In his Complaint, plaintiff alleges that he was denied a license to carry a firearm under 18 U.S.C. § 922(g)(1) because of this DUI conviction. Plaintiff has filed this lawsuit, alleging that

Section 922(g)(1) is unconstitutional as applied to him and seeking to enjoin Defendants from enforcing the statute against him.

Plaintiff's claim fails for two reasons. First, plaintiff's repeat DUI offense is a serious crime that evinces an utter disregard for public safety. It is not some minor or technical offense, and the court imposed a significant punishment on him. Because he was convicted of a serious crime, plaintiff has forfeited his rights under the Second Amendment and he was properly denied the right to possess a firearm under Section 922(g)(1). Second, even if plaintiff does retain rights under the Second Amendment, his claim still fails. Congress has a legitimate interest in protecting public safety and preventing gun violence and there is a "reasonable fit" between those goals and Section 922(g)(1), which bars individuals convicted of a crime punishable by more than a year in prison from having a firearm. Accordingly, plaintiff's Complaint must be dismissed.

## STATUTORY BACKGROUND

In 1961, Congress amended the Federal Firearms Act of 1938, 15 U.S.C. §§ 901 *et seq.*, to prohibit "any person . . . convicted of a crime punishable by imprisonment for a term exceeding one year" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce . . . ." *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961), *reprinted in* 1961 U.S.C.C.A.N. 848. Congress introduced the amendment as "an integral part of an anticrime legislative program" in response to an "exploding crime rate." H.R. Rep. No. 87-1202, at 2 (1961), *reprinted in* 1961 U.S.C.C.A.N. 3067, 3068. Its purpose was to "better assist local authorities in the common

assault against crime" and to "make it more difficult for the criminal elements of our society to obtain firearms." *Id*.

Following a further, multi-year inquiry that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), Congress found that "the ease with which" firearms could be obtained by "criminals . . . and others whose possession of such weapons is similarly contrary to the public interest is a significant factor in the prevalence of lawlessness and violent crime in the United States." Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 901(a)(2), 82 Stat. 197, 225. In this inquiry, Congress identified "a serious problem of firearms misuse in the United States" and a "relationship between the apparent easy availability of firearms and criminal behavior." S. Rep. No. 89-1866, at 3, 53 (1966). Law enforcement officials testified to the "tragic results" of firearms misuse by persons with prior criminal convictions. S. Rep. No. 88-1340, at 12, 18. Statistical evidence demonstrated "the terrible abuse and slaughter caused by virtually unrestricted access to firearms by all individuals, regardless of their backgrounds." 114 Cong. Rec. 13,219 (May 14, 1968) (statement of Sen. Tydings). Aiming to "reduce the likelihood that [firearms] fall into the hands of the lawless or those who might misuse them," S. Rep. No. 89-1866, at 1, Congress included in the Gun Control Act of 1968, § 101, Pub. L. No. 90-618, 82 Stat. 1213, additional statutory provisions limiting firearms access by persons with "criminal background[s]." S. Rep. No. 90-1097, at 28 (1968).

These prohibitions are codified at 18 U.S.C. § 922(g)(1).  Section 922(g)(1) prohibits "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition." 18 U.S.C. §922(g)(1). Congress exempted from this prohibition in Section

922(g)(1), however, any "State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B).[2]

## FACTUAL BACKGROUND

Plaintiff has been charged with a DUI on two occasions. In 2001, Plaintiff was charged with his first DUI. Compl., ¶¶ 8, 19. Plaintiff entered into Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program. *Id*. Upon successful completion of the ARD program, DUI defendants may have the charges against them dismissed and their record of the arrest expunged after ten years. 75 Pa. C. S. A. § 1534(b).

Three years later, plaintiff was convicted of a second DUI offense in Philadelphia. Compl., ¶ 8. Plaintiff was convicted of a DUI at the "[h]ighest rate of alcohol," which occurs when the "alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven." 38 Pa. C.S.A. § 3802(c). *See* Compl., Exhibit B. Plaintiff's blood alcohol level was 0.223%. Compl., Exhibit B. Under Pennsylvania law, an individual convicted of a DUI at the highest rate of alcohol who has a prior offense commits a misdemeanor of the first degree, which carries a penalty of up to five years' imprisonment and monetary fines. 38 Pa. C.S.A. §§ 3802(c), 3803(b)(4); 18 Pa. C.S.A. § 106(b)(6).[3] The court sentenced plaintiff to a term of imprisonment of not less than 90 days nor more than two years,

---

[2] Congress also exempted any "offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A). Congress further provided that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored" would also be exempted from the statutory prohibition "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20)(B).

[3] The acceptance of ARD for a DUI offense within the past ten years constitutes a "prior offense" for purposes of Pennsylvania law. 75 Pa. C. S. A. §§ 3806(a) and (b).

imposed a fine of $1,500, directed plaintiff to attend alcohol safety school, suspended plaintiff's driver's license for 18 months, and required installation of an ignition interlock system on plaintiff's vehicle. Compl., Exhibit B. The court allowed the plaintiff to serve his sentence under house arrest until electronic monitoring was available. *Id*. Plaintiff alleges in his Complaint that he was placed under house arrest with electronic monitoring for 90 days. *Id*. at ¶ 22.

Plaintiff asserts that in December 2014 he attempted to procure a license to carry a firearm because he was concerned about his family's safety, but he was denied the license. Compl. ¶ 26. He filed a Pennsylvania Instant Check Challenge Form to challenge the denial. *Id*. Plaintiff claims that the Pennsylvania State Police told him that the Federal Bureau of Investigation had denied him a firearms license under Section 922(g)(1) because of his DUI conviction. *Id*. Plaintiff has now filed this lawsuit alleging that Section 922(g)(1) is unconstitutional as applied to him. *Id*. at ¶¶ 53-61.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *See, e.g.*, *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court is required to accept "as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is not required to accept as true legal conclusions or bald assertions masquerading as factual allegations. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Although a complaint need not set forth

detailed factual allegations, the Supreme Court has emphasized that it is the plaintiff's obligation to provide "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has cautioned that "a formulaic recitation of the elements of a cause of action will not do." *Id*.

To survive a motion to dismiss, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must be dismissed if it does not allege "enough facts to state a claim for relief that is plausible on its face." Id. at 570. *See Ethypharm*, *S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. The Supreme Court has emphasized that where the complaint pleads facts that "are 'merely consistent with' a defendant's liability," the plaintiff has failed to meet the standard of showing the "plausibility of 'entitlement to relief.'" *Id. quoting Twombly*, 550 U.S. at 556.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and the documents that form the basis of a claim. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). The court may also consider indisputably authentic documents. *See*, *e.g.*, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d

1192, 1196 (3d Cir. 1993). *See generally* 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357.

## ARGUMENT

## I.    THE LEGAL BACKGROUND FOR PLAINTIFF'S AS-APPLIED CHALLENGE

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court determined that the Second Amendment protected an individual's right to keep and bear arms and held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self defense." *Id*. at 635.

While the *Heller* Court struck down the District's law prohibiting the possession of handguns in the home, it emphasized that "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Court set forth a non-exhaustive list of "presumptively lawful" regulatory measures, including the "longstanding prohibitions on the possession of firearms by felons. *Id*. at 626 and 627 n.26. The *Heller* Court made clear that "nothing in [its] opinion should be taken to cast doubt on" such statutes. *Id*. at 626. The Supreme Court "repeat[ed] those assurances" in another opinion a couple of years later. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion).

In *Binderup v. Attorney General United States of America*, 836 F.3d 336 (3d Cir. 2016) (*en banc*), the Third Circuit, applying *Heller*, found that a person prohibited from possessing a firearm under Section 922(g)(1) could bring an as-applied challenge to the statute by showing

that the law was unconstitutional as applied to him. *Id.* at 344-47.[4]  To evaluate the as-applied Second Amendment challenge to Section 922(g)(1), the *Binderup* court adopted two-step framework. *Id.* at 356.[5] The Court held that the plaintiff must first prove that "the law or regulation at issue burdens conduct protected by the Second Amendment." *Id.* To make such a showing with respect to offenses falling within the scope of Section 922(g)(1), the plaintiff must prove that he was not convicted of a "serious crime." *Id.* The Court held that "evidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." *Id.*

If the plaintiff makes the necessary showing at step-one, the burden shifts to the Government "at step two to prove that the regulation at issue survives intermediate scrutiny." *Binderup*, 836 F.3d at 356. To make this showing, the Government must show "a substantial fit between the continuing disarmament of the Challengers and an important government interest." *Id.* Here, plaintiff cannot satisfy either of these steps and thus the plaintiff's Complaint must be dismissed.

---

[4] The Court's decision in *Binderup* was a divided one. There are three separate opinions, none of which commanded a majority of the *en banc* panel. The opinions of Judge Ambro (and two other judges) and Judge Hardiman (and four other judges) found that Section 922(g)(1) was unconstitutional as applied to the two parties before the court, although for somewhat different reasons; a dissenting opinion by Judge Fuentes (and six other judges) found that the statute was constitutional as applied to those two individuals. Although no single rationale explaining the Court's result enjoyed the support of a majority of the judges, Judge Ambro's opinion sets the applicable legal standard for the Court because it "produces results with which a majority of the court . . . would agree." *Binderup*, 836 F.3d at 356, *quoting United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011).

[5] In an "as-applied" challenge, the plaintiff does not contend that the law is unconstitutional as written, but only that its application to him under his specific circumstances deprives him of a constitutional right. *Binderup*, 836 F.3d at 345.

## II.   PLAINTIFF CANNOT SATISFY STEP ONE BECAUSE HE WAS CONVICTED OF A SERIOUS CRIME AND THUS LACKS SECOND AMENDMENT RIGHTS

As the *Binderup* court observed, "*Heller* teaches that 'longstanding prohibitions on the possession of firearms by felons' are 'presumptively lawful.'" *Binderup*, 836 F.3d at 347, *quoting Heller*, 554 U.S. at 626 & 627 n. 26. Traditionally, "felons" were people who had been convicted of any crime punishable by death or imprisonment for more than one year. *Id*. In Section 922(g)(1), Congress barred anyone convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. 18 U.S.C. § 922(g)(1). Congress, however, excluded from the statutory prohibition in the Section 922(g)(1) anyone convicted of a "state offense classified by the laws of the State as a misdemeanor," unless it was punishable by more than two years in prison. 18 U.S.C. § 921(a)(20)(B).

The "core" right protected by the Second Amendment is the right of "law-abiding, responsible citizens" to use firearms to defend the home. *Heller*, 554 U.S. at 634-35. The justification for stripping felons of their Second Amendment rights has historically been "tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *Binderup*, 836 F.3d at 348, *quoting United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010). Numerous courts have thus endorsed the idea that the right to bear arms in the Second Amendment does not preclude laws barring unvirtuous citizens, such as felons and other criminals, from having firearms. *Id*. at 348.

The *Binderup* court recognized that individuals who have committed, or are likely to commit, crimes in which violence is an element of the offense "undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights." *Binderup*, 836 F.3d at 348. The Court noted, however, that "[t]he category of 'unvirtuous citizens' is . . . broader that violent

9

criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent." *Id*. The *Binderup* court observed that "[t]he view that anyone who commits a serious crime loses the right to keep and bear arms dates back to our founding era." *Id*. at 349. The Court concluded that "persons who have committed serious crimes forfeit the right to possess firearms," much the way they forfeit various other constitutional rights. *Id*. at 349.

Unlike the dissenters, the *Binderup* court was unwilling to conclude that all crimes subject to Section 922(g)(1) were sufficiently "serious" to be disqualifying under the Second Amendment merely by virtue of the length of the potential sentence. *Binderup*, 836 F.3d at 350. Nonetheless, the *Binderup* court stated that it would presume that Congress' judgment in enacting the statute to be correct and "treat any crime subject to § 922(g)(1) as disqualifying unless there is a strong reason to do otherwise." *Id*. at 351. The Court indicated that some offenses may be "so tame and technical as to be insufficient to justify the ban" under Section 922(g)(1) and that individuals convicted of such offenses could potentially succeed on an as-applied challenge under the Second Amendment. *Id*. at 350, *quoting United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011).

Here, plaintiff's DUI conviction at the highest blood alcohol level is not some minor or technical offense but a serious crime that strips him of his Second Amendment rights. DUIs demonstrate the perpetrator's gross disregard for public safety. *See United States v. Rhodes*, No. 2:12-0010, 2012 WL 1981853, at *6 (S.D. W. Va. June 1, 2012) (stating, in context of unsuccessful Second Amendment challenge to Section 922(g)(1), that the defendant's "convictions for DUI (twice) . . . suggest a . . . disdain for public trust" and "disclose a propensity to put public safety at risk in order to facilitate a poorly controlled habit of using

alcohol to excess"). People who commit DUIs, especially those with highly elevated blood alcohol levels, abuse the trust put in them to operate their vehicles responsibly and place people in physical danger. This "manifest disregard for the rights of others" means that a person who has been convicted of driving while intoxicated "may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens." *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) (rejecting a Section 922(g)(1) challenge by an individual convicted of bank robbery).

Moreover, DUIs are serious offenses because their consequences pose such a grave threat to the public. *See*, *e.g.*, *Begay v. United States*, 553 U.S. 137, 141 (2008) ("Drunk driving is an extremely dangerous crime"). As the Supreme Court has recognized, "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 451 (1990) (footnote and citation omitted). *See South Dakota v. Neville*, 459 U.S. 553, 558 (1983) ("The carnage caused by drunk drivers is well documented"). In 2014, almost 10,000 people were killed in alcohol-impaired crashes, including over 1,000 children; on average, a drunk driver killed someone every 53 minutes. U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin., *Alcohol Impaired Driving*, available at https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/812231. The consequences of DUIs are far too severe for a DUI not to be considered a "serious crime."

Simply put, the plaintiff's DUI offense is inherently a "serious crime" because it demonstrates a clear disregard for the safety of others and because it can result in terrible (and potentially deadly) consequences to the public. A DUI is not some minor or technical offense devoid of any substantial consequences for the perpetrator or the public. Given the nature of the

11

offense, plaintiff cannot plausibly demonstrate a "strong reason" to conclude that Congress was incorrect as treating such a crime as disqualifying under Section 922(g)(1).

While noting that "there are no fixed criteria of determining whether crimes are serious enough to destroy Second Amendment rights," the *Binderup* court identified four factors that courts could consider in making that evaluation. *Binderup*, 836 F.3d at 351, 352-53. A review of these factors further confirms that plaintiff's DUI conviction is a "serious" crime that deprives him of his Second Amendment rights.

First, the *Binderup* court stated that a "state legislature's classification of an offense as a misdemeanor is a powerful expression of its belief that the offense is not serious enough to be disqualifying." *Binderup*, 836 F.3d at 351. But while the Court noted that misdemeanors have traditionally been considered less serious than felonies, it acknowledged that "some misdemeanors are . . . 'serious' offenses." *Binderup*, 836 F.3d 351, *quoting Baldwin v. New York*, 399 U.S. 66, 70 (1970). Indeed, the *Binderup* court recognized that "numerous misdemeanors involve conduct more dangerous than many felonies," *id., quoting Tennessee v. Garner*, 471 U.S. 1, 14 (1985), and acknowledged that "the maximum possible punishment is certainly probative of a misdemeanor's seriousness." *Id*. at 352.

Here, plaintiff's DUI conviction was a misdemeanor of the first degree. Compl., ¶ 20. In Pennsylvania, a misdemeanor of the first degree is punishable by up to five years in jail. *Id. See* 18 Pa. C. S. A. § 106(b)(6). The punishment in Pennsylvania for a misdemeanor in the first degree is substantially greater than the punishment for a misdemeanor of the second degree (up to two years) or a misdemeanor of the third degree (up to one year), s*ee* 18 Pa. C.S.A. §§ 106(b)(7) and (b)(8), and it is indicative of its corresponding seriousness. While plaintiff's

offense may have been labeled as a misdemeanor, the length of the potential sentence shows just how seriously Pennsylvania viewed this crime.

Furthermore, it is significant that other serious crimes, some involving violence or potential violence, are punishable in Pennsylvania as misdemeanors. For example, involuntary manslaughter is a misdemeanor in the first degree (18 Pa. C. S. A. § 2504); terroristic threats is a misdemeanor of the first degree (18 Pa. C. S. A § 2706); indecent assault is a misdemeanor of the first or second degree (18 Pa. C. S. A. § 3126); and simple assault is a misdemeanor of the second degree (18 Pa. C. S. A. § 2701). Although plaintiff's crime was labeled a misdemeanor, both the nature of the offense and the length of the possible punishment show that it is a "serious" crime.

Second, the *Binderup* court found that a crime in which violence is an element of the offense is disqualifying under the Second Amendment. *Binderup*, 836 F.3d at 352. The court noted that while "it is possible for non-violent crimes to be serious, the lack of a violence element is a relevant consideration." *Id*.[6]

While violence was not an element of the DUI offense of which plaintiff was convicted, there can be little doubt that his conduct endangered other motorists and had the potential to

---

[6] Although the *Binderup* court identified the lack of violence as a factor in determining whether a crime is serious, it is not clear why this element should be part of the as-applied analysis. The Court stated that "[p]eople who have committed or are likely to commit 'violent offenses' – crimes in which violence (actual or attempted) is an element of the offense – undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights." *Binderup*, 836 F.3d at 348 (citations omitted). If, as the Court acknowledged, people who have committed violent offenses have lost their Second Amendment rights, then, by definition, the only persons who could bring an as-applied challenge would be individuals who had not committed "violent offenses." In deciding whether a crime was "serious," it does not make any sense to consider this factor again in the as-applied analysis when the only people who could bring such a challenge would be people who had not committed "violent offenses."

cause death or serious injury. As the Supreme Court has noted, "[d]runk drivers take a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2166 (2016). The happenstance that plaintiff's drunken driving did not actually cause serious injury or death (or significant property damage) was merely a matter of serendipity and luck. Plaintiff's decision to drive drunk, especially at his highly elevated blood alcohol level, put many people at risk and certainly had the potential to cause serious violence and injury. A person who would recklessly drive a dangerous instrumentality like a motor vehicle while highly intoxicated is simply not a virtuous citizen who should be permitted to possess a firearm.

Third, because "severe punishments are typically reserved for serious crimes," the *Binderup* court stated that the sentence actually received by the person was an "important" consideration in determining whether the crime was a serious one. *Binderup*, 836 F.3d at 352. In *Binderup*, the court noted that one of the challengers was sentenced to three years of probation and a $300 fine while the other challenger received a suspended sentence of 180 days imprisonment and a $500 fine. *Id*. Because neither challenger had been sentenced to "a single day of jail time," the Court concluded that their crimes were "minor." *Id*.

Here, in contrast, the court sentenced plaintiff to a term of imprisonment of not less than 90 days nor more than two years, imposed a fine of $1,500 and court costs, directed plaintiff to attend alcohol safety school, suspended plaintiff's driver's license for 18 months, and required installation of an ignition interlock system. Compl., Exhibit B. The court allowed plaintiff to serve the sentence of imprisonment on house arrest until electronic monitoring was available. *Id*. This is not "minor" sentence. Unlike the challengers in *Binderup*, plaintiff was sentenced to jail

14

time and, while he was permitted to serve his sentence on house arrest and with electronic monitoring, this still constitutes a significant infringement of his liberty. *Cf. McKenzie v. Attorney General*, 452 F. App'x 88, 91 (3d Cir. 2011) ("an individual on house arrest is subject to a considerable restriction of liberty"); *United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D. N.Y. 2010) ("Required wearing of an electronic bracelet . . . would be considered a serious limitation on freedom by most liberty-loving Americans"). Moreover, the court's sentence included substantial penalties beyond jail time; the court imposed a fine, suspended plaintiff's driver's license, and required that the plaintiff attend alcohol safety school. Compl., Exhibit B.[7] The significant punishment imposed on plaintiff shows that his crime was not a "minor" one.

Finally, the *Binderup* court found that a plaintiff would likely meet his burden of showing that his crime was not "serious" only where there was no "cross-jurisdictional consensus" regarding the seriousness of the crime. *Binderup*, 386 F.3d at 352. In *Binderup,* the court observed that some states treated one challenger's consensual sexual relationship with a 17-year old as a serious crime, but that "the vast majority of states do not." *Id*. In fact, the court determined that the challenger's crime "would have been legal in many states." *Id*. The court further found that while states punished the other challenger's crime – the unlicensed carrying of a concealed weapon – as a serious crime, many other states did not and that others did not even require specific credential to carry a concealed weapon. *Id*. The *Binderup* court stated that "[w]ere the Challengers unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden at step one." *Id*. at 353.

---

[7] The fine imposed on plaintiff was three times the fine imposed on one challenger in *Binderup* and five times the fine on the other challenger. Moreover, there is no indication in *Binderup* that the plaintiffs in that case were subject to the additional punishments to which plaintiff was subject in this case.

By contrast, here there is uniform, nationwide consensus on the illegality of plaintiff's conduct in driving under the influence of alcohol. All fifty states criminalize driving with a blood alcohol level of 0.08. *See* U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin., *Prevalence of High BAC in Alcohol-Impaired-Driving Fatal Crashes* (Aug. 2012), at 1, *available at* http://www-nrd.nhtsa.dot.gov/Pubs/811654.pdf. Forty-five states, like Pennsylvania, impose increased penalties for driving under the influence when the driver's blood alcohol level exceeds a particularly high threshold, ranging from 0.15 percent to 0.20 percent. *See* National Conference of State Legislatures, *Increased Penalties for High Blood Alcohol Content* (Nov. 11, 2016), available at http://www.ncsl.org/research/transportation/increased-penalties-for-high-blood-alcohol-content.aspx. In short, there is clear consensus across the states that driving under the influence is a crime.

Moreover, there is a cross-jurisdictional consensus that a DUI is a serious crime, particularly a repeat DUI like plaintiff's with an elevated blood alcohol level. A DUI can be a felony in forty-six states under certain circumstances (*e.g.*, upon a previous conviction). *See* Mothers Against Drunk Driving, *DUI Felony Laws* (June 2015), available at https://www.madd.org/wp-content/uploads/2017/08/DUI_Felony_Overview.pdf. In approximately 14 states, plaintiff's DUI offense would be punishable by more than a year in prison and in another 25 states, it would punishable by up to a year in prison. *See* National Highway Traffic Safety Administration (2017, June), *Digest of Impaired Driving and Selected Beverage Control Laws, 30th edition, Current as of December 31, 2017* (Report No. DOT HS 812 394), available at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/812394-digest-

of-impaired-driving-and-selected-beverage-control-laws.pdf ("*NHTSA Digest of Driving Impaired Report*").

Although it was not explicit, the *Binderup* court suggested that a crime may not be considered serious unless the potential penalty in the state met the threshold for a traditional felony of more than a year in prison. *Binderup*, 836 F.3d at 352.[8] But in other constitutional contexts, courts have found that a "serious crime" could include crimes for which the potential punishment was less than a year in prison. For example, the Supreme Court has held that that the Sixth Amendment "requires that defendants accused of serious crimes be afforded the right to trial by jury." *Baldwin*, 399 U.S. at 68. In determining whether a defendant is entitled to a jury trial, the Supreme Court has found that "it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions." *Duncan v. Louisiana*, 391 U.S. 145, 160-61 (1968). The most relevant factor for ascertaining whether a defendant is entitled to a jury trial is "the severity of the maximum authorized penalty." *Baldwin*, 399 U.S. at 68. The Supreme Court has concluded that where a defendant faces a potential prison sentence of more than six months, the crime is a serious one and the defendant is entitled to a jury trial. *Id*. at 69.

As with the Sixth Amendment, a punishment of up to a year in jail amounts to a serious crime. Here, plaintiff's DUI would be subject to punishment of up to a year in prison (or more) in the vast majority of the states, in additional to other penalties such as fines and loss of license. *See NHTSA Digest of Driving Impaired Report*. Thus, not only is there a "cross-jurisdictional

---

[8] Even if the punishment in some states was not more than a year, approximately half of the states authorized a punishment right up to that level. The fact that the authorized punishment is "up to" a year, rather than "more than" a year, certainly does not mean that those states deemed the crime "non-serious." Rather, in those states, it shows that the crime was almost serious enough to rise to the level of punishment for a crime traditionally labeled a felony.

consensus" that DUIs like the plaintiff's DUI constitute a crime, but there is a "cross-jurisdictional consensus" that it is a "serious" crime. *Binderup*, 836 F.3d at 351-52. More importantly, there is certainly nothing to substantiate plaintiff's burden of showing a "cross-jurisdictional consensus" that the plaintiff's crime is "non-serious."

In sum, DUIs are neither "tame" nor "technical" crimes. *See Binderup*, 836 F.3d at 350 (citation omitted).  Rather, they are serious crimes that evince a reckless disregard of public safety and lead to the deaths of thousands of Americans every year. The plaintiff's conduct would constitute a crime in every state; indeed, plaintiff's blood alcohol level was almost three times the legal limit in every state. Compl., Exhibit B. Moreover, the court imposed a significant punishment on plaintiff that included house arrest, a fine, and various other restrictions and penalties. *Id.*

Plaintiff has failed to meet his burden of showing that his crime was insufficiently serious to strip him of his Second Amendment protections. Indeed, given the serious nature of plaintiff's crime, there is no reason - much less a "strong reason" – for the Court to do anything other than find that Congress' judgment in Section 922(g)(1) was correct and treat plaintiff's DUI as disqualifying. *Binderup*, 836 F.3d at 351. The Court should therefore dismiss plaintiff's as-applied challenge at step one of the analysis because plaintiff is outside the protection of the Second Amendment and it need not engage in the means-end scrutiny at step two. *Binderup*, 836 F.3d at 356; *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).[9]

---

[9] In two recent cases, *Holloway v. Sessions*, C.A. No. 1:17-cv-81, 2017 WL 3077035 (M.D. Pa. July 19, 2017) and *Zedonis v. Lynch*, 233 F. Supp. 3d 417 (M.D. Pa. Feb. 8, 2017), district courts in the Middle District of Pennsylvania have denied motions to dismiss the complaints of individuals convicted of DUIs who claimed that Section 922(g)(1) was unconstitutional as applied to them. As an initial matter, it is worth noting these decisions are not

### III.    SECTION 922(g)(1) SATISFIES CONSTITUTIONAL SCRUTINY AS APPLIED TO PLAINTIFF

Even if plaintiff can satisfy step one of the *Binderup* analysis by showing that he did not forfeit his Second Amendment rights by virtue of his DUI conviction, his claim still fails because Section 922(g)(1), as applied to him, passes the means-end scrutiny at step two of the *Binderup* analysis.

In *Binderup*, the Third Circuit held that "intermediate scrutiny" governs as-applied challenges to section 922(g)(1). *Binderup*, 836 F.3d at 353. Under this standard, the Government must: (1) articulate a "substantial or important interest" served by the law and (2) demonstrate that the law "fits reasonably with that interest." *Marzzarella*, 614 F.3d at 99. *See United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013) (requiring "the government's stated objective to be significant, substantial or important," and "a reasonable fit between the challenged regulation

binding precedent in this case. *See Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court"). Furthermore, the courts in these two cases appear to have incorrectly assumed that the plaintiff could surmount a motion to dismiss by showing some plausible argument that even one of the four factors identified in *Binderup* weighted against a finding that the crime was serious. *See, e.g.*, *Holloway*, 2017 WL 3077035, at *7; *Zedonis*, 233 F. Supp. 3d at 428. In fact, the *Binderup* court only found that the plaintiffs in that case had overcome the presumption that they lacked Second Amendment rights by finding that all four factors weighed against seriousness. *Id.* at 351-53. Indeed, the *Binderup* court indicated that a plaintiff's failure to meet his burden on even one of the four factors could be fatal to his claim. *Id.* at 352 (stating, for example, that "violent criminal conduct . . . is disqualifying"). More importantly, the courts in *Holloway* and *Zedonis* were simply wrong in finding that the plaintiffs had met their burden of showing that their DUI offenses were not "serious" crimes that disqualified them from owning a firearm. In *Holloway* and *Zedonis*, for example, the plaintiffs were sentenced to prison or house arrest and other penalties; their sentences were much more severe than the sentences imposed in the challengers in *Binderup* and could not possibly be considered "minor." Simply put, the plaintiffs in those two cases, like the plaintiff here, could not plausibly meet their burden of demonstrating a "strong reason" why Congress' decision that they should be denied the right to possess firearms was incorrect and accordingly their claims should have been dismissed.

and the asserted objective"). "The regulation need not be the least restrictive means of serving the interest, but may not burden more [protected conduct] than is reasonably necessary." *Marzzarella*, 614 F.3d at 98 (citations omitted). Under this heightened scrutiny standard, the Government "bears the burden of proof on the appropriateness of the means it employs to further its interest." *Binderup*, 836 F.3d at 353. *See Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1126 (10th Cir. 2015). ("Intermediate scrutiny appropriately places the burden on the government to justify its restrictions, while also giving governments considerable flexibility to regulate gun safety"). "When reviewing the constitutionality of statutes, courts 'accord substantial deference to the [legislature's] predictive judgments.'" *Drake v. Filko*, 724 F.3d 426, 436-37 (3d Cir. 2013), *quoting Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997).

### A.   Congress had a Substantial and Important Interest in Protecting Public Safety and Preventing Gun Violence

As the Supreme Court has observed, in enacting Section 922(g), Congress "was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 118 (1983), *quoting Huddleston v. United States*, 415 U.S. 814, 824 (1974). "The principle purpose of federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Id*., *quoting Huddleston*, 415 U.S. at 824. The Supreme Court has explained that "[i]n order to accomplish this goal, Congress obviously determined that firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them." *Dickerson*, 460 U.S. at 119.

20

"The legitimate and compelling state interest in protecting the community from crime cannot be doubted." *Schall v. Martin*, 467 U.S. 253, 264 (1984). *See United States v. Salerno,* 481 U.S. 739, 747 (1987) ("There is no doubt that preventing danger to the community is a legitimate regulatory goal"); *United States v. Edge*, No. 3-11-cr-301, 2012 WL 404868, at *4 (W.D.N.C. Feb. 8, 2012) ("It is well established that protecting the safety of citizens and preventing crime is a substantial government objective"). Moreover, courts have recognized that the Government's interest in suppressing gun violence is both legitimate and important. *See, e.g.*, *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016); *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010). Indeed, the *Binderup* court itself acknowledged that Section 922(g)(1) is intended to further the Government's interest of promoting public safety by "'preventing armed mayhem,' an interest that is both important and compelling." *Binderup*, 836 F.3d at 353 (internal citation omitted).

In short, the Government's interest in protecting communities from crime by preventing gun violence is both important and substantial and Section 922(g)(1) thus satisfies the first element of the intermediate scrutiny analysis.

**B. Barring Repeat DUI Offenders Such as Plaintiff from Possessing Firearms is Substantially Related to the Government's Interest in Protecting Public Safety by Preventing Firearm Violence**

Under intermediate scrutiny, the Government must also show that there is a "reasonable fit" between the asserted interest the Government is trying to protect and the challenged law. *Drake*, 724 F.3d at 436. Demonstrating a "reasonable fit" requires the United States to "explain[] why banning people like [plaintiff] . . . from possessing firearms promotes public safety." *Binderup*, 836 F.3d at 353-54. The Government must present "some meaningful evidence" and

21

not "mere assertions" to justify its judgments. *Id*. at 354, *quoting Heller v. District of Columbia*, 670 F.3d 1244, 1259 (D.C. Cir. 2011).  To meet this burden, the Government may rely on "common sense" or "use statistics to show that people who commit certain crimes have a high . . . likelihood of recidivism that warrants . . . disarmament, even decades after a conviction." *Id*. at 354-55. *See United States v. Carter*, 609 F.3d 411, 418 (4th Cir. 2012) (finding that government "may resort to a wide range of sources, such as legislative text and history, empirical evidence, case law, and common sense" in establishing the fit between a regulation and a government interest).

In enacting legislation, Congress often has to make judgments about the risks of dangerous behavior and the Supreme Court has held that its "predictive judgments" are entitled to "substantial deference" by the courts. *Turner Broadcasting*, 512 U.S. at 665. "Sound policymaking often requires legislators to forecast future events and to anticipate the likely impacts of these events based on deductions and inferences for which complete empirical support may be unavailable." *Id*. Courts have recognized that Congress is "far better equipped than the judiciary" to evaluate complex data and make policy judgments. *Id*.

The best available empirical evidence demonstrates that individuals with DUI convictions are far more likely than the general public to commit firearm-related or violent crimes. *See* Garen J. Wintemute *et al*., *Firearms, Alcohol and Crime: Convictions for Driving Under the Influence (DUI) and Other Alcohol-Related Crimes and Risk for Future Criminal Activity among Authorised Purchasers of Handguns*, 22 Injury Prevention 302 (2016) (attached as Exhibit 1). A recent study of more than 4,000 handgun purchasers in California concluded that "subjects with only one prior DUI conviction and no arrests or convictions for crimes of other types were at

substantially increased risk of arrest for violent or firearm-related crimes generally . . . and for murder, rape, robbery and aggravated assault" specifically. *Id.* at 2-3. Indeed, individuals with a single DUI conviction are 4.2 times as likely as the general populace to be arrested for violent or firearms-related crimes and 3.8 times as likely to be arrested for murder, rape, robbery or aggravated assault. *Id.* The risk remained that high for individuals with more than one DUI conviction. *Id.* at 3. This finding is consistent with the "many studies [that] have found that individuals with DUI convictions are more likely to engage in criminal activity of other types, including violent and weapon-related crimes." *Id.* at 1.

Other studies have shown that repeat DUI offenders have "high rates of drug and alcohol abuse and other psychiatric disorders." D. W. Webster & J. S. Vernick, *Keeping Firearms from Drug and Alcohol Abusers*, 15 Injury Prevention 425 (2009) (attached as Exhibit 2). Moreover, repeat DUI offenders have been found to exhibit a high level of lifetime alcohol abuse. Howard J. Shaffer, *et al., The Epidemiology of Psychiatric Disorders Among Repeat DUI Offenders Accepting a Treatment Sentencing Option*, 75 Journal of Consulting and Clinical Psychology 795 (2007) (attached as Exhibit 3). Studies have found a "strong association between alcohol and violent behavior." Sharon M. Boles and Karen Miotto, *Substance Abuse and Violence: A Review of the Literature,* 8 Aggression and Violent Behavior 155 (2003) (attached as Exhibit 4). Finally, studies support the common sense notion that alcohol consumption can significantly impair a person's ability to handle a gun. B.G. Carr, *et al.*, *A Randomized Controlled Feasibility Trial of Alcohol Consumption and the Ability to Appropriately Use a Firearm*, 15 Injury Prevention 409 (2009) (attached as Exhibit 5).

These studies are precisely the sort of evidence that the Third Circuit stated could demonstrate a reasonable fit between the prohibition on individuals possessing firearms and the Government's interest in public safety. *Binderup*, 836 F.3d at 355. Moreover, this data merely quantifies the intuitive and common sense conclusion that those who endanger others by recklessly misusing one potentially deadly instrument are more likely to recklessly misuse another potentially deadly instrument, especially when alcohol may be involved. *See Rhodes*, 2012 WL 1981853, at *6. As one court stated when considering an as-applied Second Amendment challenge by an individual convicted of two DUIs, such a person has a "proven disregard for public safety [that] fairly puts him among those who 'have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society.'" *United States v. Oppedisano*, No. 09-CR-0305, 2010 WL 4961663, at *2 (E.D.N.Y. Nov. 30, 2010), *quoting United States v. Small*, 544 U.S. 385, 393 (2005). Indeed, this evidence is consistent with the legislative history, which shows that Congress sought to reduce the possibility that firearms would "fall into the hands of the lawless or those who might misuse them." S. Rep. No. 89-1866, at 1.

Unlike the crimes at issue in *Binderup*, there is a "reasonable fit" between Section 922(g)(1) and the Government's interest in protecting public safety. Thus, Section 922(g)(1)'s application to individuals with repeat DUI convictions satisfies the means-end scrutiny at step two and plaintiff's Complaint should be dismissed.

## **CONCLUSION**

For all the reasons set forth above, defendants, Jefferson B. Sessions, III, Attorney General of the United States of America, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Christopher Wray, Director, Federal Bureau of Investigation, and the United States of America, respectfully request that plaintiff's Complaint be dismissed.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

/s/ Margaret L. Hutchinson
MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division

/s/ Richard Mentzinger, Jr.
RICHARD MENTZINGER, JR.
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
TEL:  (215) 861-8316
FAX:   (215) 861-8618
rick.mentzinger@usdoj.gov

Dated: September 14, 2017

<u>**CERTIFICATE OF SERVICE**</u>

I, hereby certify that, on the 14th day of September, 2017, I caused a copy of the foregoing Defendants' Motion to Dismiss the Complaint to be served by first class mail, postage prepaid and by the Electronic Case Filing System upon:

Adam Kraut, Esq.
Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505

<u>/s/ Richard Mentzinger, Jr.</u>
RICHARD MENTZINGER, JR.
Assistant United States Attorney