Adam Kraut, Esq.
Attorney Id. No. 318482
Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803, ext 81115 (t)
(610) 845-3903 (f)
AKraut@princelaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | Honorable Robert F. Kelly |
| | : | |
| **JEFFERSON B. SESSIONS III**, *et al.* | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I.    **INTRODUCTION** ........................................................................... 1

II.   **FACTUAL BACKGROUND** ........................................................ 2

III.  **STANDARD OF REVIEW** .......................................................... 4

IV.  **ARGUMENT** ................................................................................ 5

    a. *Defendants' Motion to Dismiss Should be Converted into a Motion for Summary Judgment Due to Their Submission of Evidence Not Found in the Complaint* ......................................................................................... 5

    b. *Plaintiff's Complaint States a Claim that Allows it to Survive a Motion to Dismiss* ............................................................................................... 6

      i.  <u>*As-Applied* Second Amendment Challenge Criteria</u> ................. 6

      ii. <u>DUI is Not a Crime that is Tethered to the "Time-Honored" Practice of Keeping Firearms Out of the Hands of Those Likely to Commit Violent Crimes</u> ....................................................................................... 8

     iii. <u>Prohibitions on the Possession of Firearms by Felons</u> ........................ 11

        1. DUI Offenses Classified by States ...................................... 13

        2. DUI Offenses in Pennsylvania and Firearms Ownership ................... 14

     iv. <u>Mr. Williams's Claim is within the Analytical Framework</u> ................... 15

        1. Conduct is Burdened Under the Second Amendment ......................... 16

        2. Mr. Williams can Distinguish his Circumstances from the Historically Barred Class ............................................................................... 17

        3. 18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Intermediate Scrutiny ........................................................................ 22

    c. *Two Separate Cases in the United States District Court for the Middle District of Pennsylvania With Factually Similar Matters Withstood a Motion to Dismiss* .............................................................................................. 27

V.    **CONCLUSION** ........................................................................... 28

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................... 4

*Begay v. United States*, 553 U.S. 137 (2008) ............................................. 10

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................ 11, 12, 22, 27

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) .......................... 4

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009) ................ 4

*GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381 (10th Cir. 1997) ........ 6

*Holloway v. Sessions*, 1:17-CV-81, 2017 WL 3077035 (M.D. Pa. July 19, 2017) ................................................................................................... 27

*Keyes, et. al. v. Sessions, et al.*, 1:15-CV-457 (M.D. Pa. Oct. 11, 2017) .............. 26

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ........................................................ 9

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ............................... 7, 22

*United States v. Doe*, 960 F.2d 221 (1st Cir. 1992) .................................... 10

*United States v. Rhodes*, No. 2:12-0010, 2012 U.S. Dist. LEXIS 76363 (S.D. W. Va. June 1, 2012) ....................................................................... 10

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ............................... 27

*United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) ........................... 8, 17

*Zedonis v. Lynch*, 1:15-CV-1863, 2017 U.S. Dist. LEXIS 17417 (M.D. Pa. Feb. 8, 2017) ..................................................................................... 27

## Statutes

18 Pa.C.S. § 106(b)(6) ................................................................................ 2

18 Pa.C.S. § 6105 ...................................................................................... 15

18 U.S.C. § 922(g)(1) ..................................................................... passim

75 Pa.C.S. § 3802(c) .................................................................................. 1

75 Pa.C.S. § 3806(a) ............................................................................................. 1

ALM GL ch. 269, § 10 ......................................................................................... 20

Conn. Gen. Stat. § 29-37 ...................................................................................... 19

Conn. Gen. Stat. § 53a-35a ................................................................................... 19

N.J. Stat § 2C:43-6 ............................................................................................... 19

N.J. Stat. § 2C:39-5 .............................................................................................. 19

R.I. Gen. Laws § 11-47-8 ..................................................................................... 20

**Other Authorities**

Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695
(2009) ................................................................................................................. 8

**Rules**

234 Pa. Code Ch 3, Rule 312 ................................................................................. 1

Fed. R. Civ. P 12(d) .............................................................................................. 5

Plaintiff Edward A. Williams, by and through his counsel, hereby submits this Brief in Opposition of Defendants' Motion to Dismiss.

## I.    INTRODUCTION

Plaintiff Edward A. Williams (hereinafter "Mr. Williams" or "Plaintiff") was charged with driving under the influence of alcohol (hereinafter "DUI") in 2000. [1] Mr. Williams was admitted into Pennsylvania's Accelerated Rehabilitative Disposition Program (hereinafter "ARD"), a diversionary program, which he successfully completed. Mr. Williams's first DUI conviction was expunged pursuant to the successful completion of ARD. Mr. Williams was convicted for the first time of a DUI offense, pursuant to 75 Pa.C.S. § 3802(c) in 2005. [2] While the Government contends that it was his second conviction (Doc. 5 at 4)[3], Pennsylvania does not consider an ARD disposition to be a conviction and only treats it as a conviction for the purposes of grading the subsequent conviction, not as a conviction on its own. [4] As Mr. Williams's DUI conviction is graded as a misdemeanor of the first degree, it is punishable by imprisonment of up to five

---

[1] *See* Doc. 1. at ¶ 8.
[2] *See* 234 Pa. Code Ch 3, Rule 312 Note 1 "Although acceptance into an ARD program is not intended to constitute a conviction under these rules, it may be statutorily construed as a conviction *for purposes of computing sentences on subsequent convictions. See e.g.*, 75 Pa.C.S. § 3806(a)." (Emphasis added).
[3] For citation purposes, the Plaintiff will refer to the ECF numbering for page numbers when referring to Defendants' Motion to Dismiss and Exhibits.
[4] Doc. 5 at 7.

years. [5] As a result, the Defendants contend that Mr. Williams is subject to, in perpetuity, a federal prohibition from purchasing or possessing firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1). Unfortunately for Mr. Williams, neither the court nor his attorney informed him of this prohibition at the time he pleaded guilty to his sole DUI conviction.

## II.    FACTUAL BACKGROUND

In 2000, Mr. Williams was pulled over and subsequently arrested and charged with DUI. [6] At the time of Mr. Williams' first DUI, Pennsylvania law made it a crime to operate a vehicle with a blood alcohol content greater than .10. Mr. Williams was successfully entered into Pennsylvania's ARD program, which required him to serve 12 months probation, attend an alcohol class, driver's safety class, and pay all of the associated court costs and fines. After successful completion of the ARD program, Mr. Williams' charge was expunged and his driver's license restored. A copy of Mr. Williams's Pennsylvania State Police Background Check is attached hereto and incorporated herein as Exhibit A.

On September 7, 2004, Mr. Williams was pulled over by the Philadelphia Police Department and subsequently arrested and charged with DUI. [7] Mr.

---

[5] *See,* 18 Pa.C.S. § 106(b)(6)
[6] Doc. 1 ¶ 8, 19.
[7] *Id*. at ¶ 8.

Williams was found guilty and was sentenced to "passive house arrest until electronic monitor[ing] is available" for 90 days, ordered to pay costs, a fine of $1,500.00, and complete any recommended drug and alcohol treatment. [8]

At no point, in relation to the two instances of DUI, did any property damage or any injury to another occur. [9] Moreover, Mr. Williams has held a job as a construction manager for the past twenty-five (25) years, where he has managed projects, which include the Curran-Fromhold Correctional Facility, PA Convention Center, Septa Railworks project, the Commodore Barry Bridge, Interstate 95 and the NJ Transportation maintenance facilities. [10] Mr. Williams is tasked with field inspections, project management, cost control, problem solving, developing and maintaining CPM project schedules for contractors and relaying updates during the construction period. [11]

In or about late December of 2014, Mr. Williams, concerned for the safety of himself and his family, attempted to procure a License to Carry Firearms ("LTCF") and was denied. [12] After challenging the denial, he became aware, for the first time, that his 2004 DUI was a federally prohibiting offense, which

---

[8] *See* Doc 1. at ¶ 22. *See also* Doc. 1-1 at 7.
[9] *See* Declaration of Edward A. Williams at ¶ 9.
[10] *See* Doc 1. at ¶ 24.
[11] *Id*.
[12] *Id*. at ¶ 25.

prevented him from lawfully possessing firearms and ammunition. [13] As a result, Mr. Williams brought the underlying action that is before the Court.

## III.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, when considering a motion to dismiss, the Court must "accept all of the complaint's well-pleaded facts as true…" and "…then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). *Fowler* makes it clear that while a court is under no obligation to accept legal conclusions, it is under no duty to entirely disregard them. *Id*. Dismissal pursuant to Rule 12(b)(6) is proper when the factual allegations, accepted as true, are insufficient to "state a claim to relief that is plausible on its face." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).

---

[13] *Id.* at ¶ 26.

## IV.   ARGUMENT

a. *Defendants' Motion to Dismiss Should be Converted into a Motion for Summary Judgment Due to Their Submission of Evidence Not Found in the Complaint*

Fed. R. Civ. P 12(d) requires this Court, if it considers the exhibit attached to the Defendants' Motion to Dismiss, to convert the Motion to Dismiss into a Motion for Summary Judgment. Rule 12(d) states "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

In filing its Motion to Dismiss, the Defendants also filed several exhibits, which recounted the alleged correlation between firearms, alcohol, and crime. [14] If this Court were to consider any of the information contained in the documents or sections of the Motion to Dismiss that were in reference to the exhibits, this Honorable Court must convert the Motion to Dismiss into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d). Further, the Defendants also cite to several reports to support claims related to DUIs that must not be considered in a Motion to Dismiss, otherwise, the motion must be treated as one for Summary Judgment. [15]

---

[14] *See* Docs. 5-1, 5-2, 5-3, 5-4, and 5-5.
[15] *See* Doc. 5 at 14, 19, and 20.

To the extent that the Government contends that "[t]he court may also consider indisputably authentic documents" in relation to their attached exhibits, while deciding a motion to dismiss, this Court can cast aside that argument. [16] The consideration of indisputably authentic documents is in relation to those referenced in a complaint that were not attached. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (stating "Notwithstanding these general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, *but the document is referred to in the complaint and is central to the plaintiff's claim*, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.")(internal citations omitted)(emphasis added). [17]

     b. *Plaintiff's Complaint States a Claim that Allows it to Survive a Motion to Dismiss*

        i. <u>*As-Applied*</u> Second Amendment Challenge Criteria

The Third Circuit in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*) held that *as-applied* Second Amendment challenges were

---

[16] *See* Doc. 5 at 9.
[17] The Plaintiff will address the documents and reports cited by the Defendants in this response should the Court determine that it will treat the Defendants' Motion to Dismiss as a Motion for Summary Judgment. Further, Plaintiff is contemporaneously filing a cross-motion for summary judgment.

cognizable and controlled by the two-step analysis [18] previously articulated in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010). [19] The first prong of the test is to consider "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." [20] If the challenger does not meet this burden, the claim should be dismissed. [21] However, if the law burdens protected conduct, then the Court must "evaluate the law under some form of means-end-scrutiny". [22] In this instance, the Court has stated intermediate scrutiny is the appropriate level to apply to such a challenge. [23]

Furthermore, the Third Circuit has held that under an *as-applied* Second Amendment challenge, the plaintiff "must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." [24] The Third Circuit also found that the traditional justification of § 922(g)(1) was the disarmament of individuals

---

[18] While Plaintiff acknowledges the Third Circuit's precedent, he respectfully calls into question this two-pronged approach, based on the Supreme Court's decisions in *Heller,* and *McDonald,* where the Court specifically stated that lower courts should *not* conduct interest balancing or apply levels of scrutiny. *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). (noting that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010). (noting that the *Heller* Court "specifically rejected" "an interest-balancing test").

[19] *Binderup,* 836 F.3d at 339.

[20] *Id.* at 346 (citing *Marzzarella,* 614 F.3d at 89).

[21] *Id.*

[22] *Id.*

[23] *Id.* (citing *Marzzarella,* 614 F.3d at 97).

[24] *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011)

likely to commit *violent* offenses. [25] Moreover, these crimes of violence were "commonly understood to include only those offenses 'ordinarily committed with the aid of firearms.'" [26]

This understanding was reaffirmed in *Binderup* where the court proclaimed that under *Barton* "[w]e looked to the 'historical pedigree' of the statute to ascertain 'whether the traditional justifications underlying the statute support a finding of permanent disability in this case.'" [27] The court stated that it "determined that the exclusion of felons and other criminals from the scope of the Second Amendment's protections was tethered to the time-honored practice of keeping firearms out of the hands of those likely to commit violent crimes." [28]

> ii.   DUI is Not a Crime that is Tethered to the "Time-Honored" Practice of Keeping Firearms Out of the Hands of Those Likely to Commit Violent Crimes

The "historical justification for stripping felons…of their Second Amendment rights… '[is] tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens.'" [29] "People who have committed or are likely to commit 'violent offenses'—crimes 'in which

---

[25] *Id. at* 173.
[26] *Id.* at 173 (citing Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 702 (2009)).
[27] *Binderup,* 836 F.3d at 361 (citing *Barton*, 633 F.3d at 175).
[28] *Id.* at 362 (citing *Barton*, 633 F.3d at 173).
[29] *Id.* at 348 (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)).

violence (actual or attempted) is an element of the offense,' undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights.'" [30] While the Government sets forth a number of arguments to show that the Plaintiff's sole DUI conviction is a "serious crime", it offers nothing to show that a DUI qualifies as a "violent offense". More importantly, the Plaintiff has never been convicted of a violent offense.

There are several other factors the Plaintiff can point to in order to bolster the claim that a DUI is not a violent offense. First, none of the elements of Pennsylvania's DUI statute involve or makes reference to the use, attempted use, or threatened use of physical force against another. [31] The Supreme Court of the United States proclaimed that a DUI fell outside the scope of the Armed Career Criminal Act's definition of a "violent felony". [32] The Supreme Court also found that DUI was not within the definition of a "crime of violence" as defined by 18 U.S.C. § 16. [33] While the entire gamut of crimes involving violence has not been delineated, there are certain elements such as the use, attempted use, or threatened

---

[30] *Id*. (Internal citation omitted).
[31] *See* 75 Pa.C.S. § 3802
[32] *See Begay v. United States*, 553 U.S. 137, 148 (2008)
[33] *See Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004)

use of physical force, which are necessary in order to qualify. [34] Clearly, a DUI falls outside the scope of a "violent offense".

The Government points to *United States v. Rhodes*, No. 2:12-0010, 2012 U.S. Dist. LEXIS 76363 (S.D. W. Va. June 1, 2012) to support the proposition that DUI is a serious crime but fails to mention that Rhodes was convicted previously, among other things, on battery, driving on a suspended license, DUI, leaving the scene, driving on a suspended license following a DUI, DUI – second offense, possession of a controlled substance, and DUI – third offense.

Justice Scalia's concurring opinion in *Begay v. United States*, 553 U.S. 137, 153-154 (2008), sheds some light as to the seriousness of DUI.

> The Government cites the fact that in 2006, 17,062 persons died from alcohol-related car crashes, and that 15,121 of those deaths involved drivers with blood-alcohol concentrations of 0.08 or higher. Drunk driving is surely a national problem of great concern. *But the fact that it kills many people each year tells us very little about whether a single act of drunk driving "involves conduct that presents a serious potential risk of physical injury to another."* It may well be that an even greater number of deaths occurs annually to pedestrians crossing the street; but that hardly means that crossing the street presents a serious potential risk of injury. Where the issue is "risk," the annual number of injuries from an activity must be compared with the annual incidents of the activity. Otherwise drunk driving could be said to pose a more serious risk of physical harm than murder. In addition, drunk driving is a combination of two activities: (1) drinking and (2)

---

[34] *See also United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (observing that the term "violent felony" in 18 U.S.C. § 924(e) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence").

> driving. If driving alone results in injury in a certain percentage of
> cases, it could hardly be said that the entirety of the risk posed by
> drunk driving can be attributed to the combination. [35]

To further the point, in 2014, there were approximately 32,675 people killed in traffic accidents, including over 1,000 children; on average, a person perished in a car accident every 16 minutes. [36] Compare to the Government's recitation that almost 10,000 people were killed in alcohol-impaired crashes. [37] Further, the manner in which the Government portrays the number of children who die in car accidents a year gives the impression that they are all alcohol related. [38] While the loss of any life is tragic, the actual number of children lost to alcohol related crashes was only 209 in 2014. [39]

### iii.   Prohibitions on the Possession of Firearms by Felons

In *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the Supreme Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…" However, the Court also stated that it did not "undertake an exhaustive historical analysis … of

---

[35] Internal citations omitted. (emphasis added).
[36] https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/812263
[37] *See* Doc. 5 at 14.
[38] *Id.*
[39] https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/812231

the full scope of the Second Amendment," which leaves those interpretations up for debate. [40]

The longstanding prohibitions the Court referred to are those that date back to the founding of this Country as evidenced by the historical analysis the Court engaged in when deciding *Heller*. The first federal law, the Federal Firearms Act (hereinafter "FFA"), which barred certain felons from possessing firearms was enact in 1938. The statute specifically made it unlawful for any person who was under indictment or convicted of a crime of violence or a fugitive from justice to shop, transport or receiver a firearm or ammunition. A copy of the Federal Firearms Act of 1938 is attached hereto and incorporated herein as Exhibit B. Moreover, the law defined a crime of violence to mean:

> murder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking; assault with intent to kill, commit rape or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year. [41]

Notably absent from those who were prohibited from possessing firearms and ammunition were those convicted of non-violent offenses. It was not until 1961 that Congress took action to bar non-violent felons from possessing firearms and ammunition. [42] Thus, approximately 170 years passed from the time the Bill of Rights became effective until the time where individuals who were not violent

---

[40] *Heller,* 554 U.S. at 626.
[41] *Exhibit B* at 1.
[42] *See* Pub. L. No. 87-342, 75 Stat. 757 (1961)

felons (and misdemeanants) were barred from possessing firearms and ammunition. [43] At the time Mr. Williams was charged with the prohibiting offense, the prohibition against non-violent felons had only been in place for approximately 44 years. [44]  From a historical analysis, the prohibition that prevents Mr. Williams from possessing firearms or ammunition accounts for a period of time less than 20% of the total period of time in which the constitutional right existed. This can hardly be found to be a "longstanding prohibition on the possession of firearms by felons". Moreover, historical evidence suggests that the only individuals who were categorically barred from possessing firearms were those who committed violent offenses. [45]

### 1.  DUI Offenses Classified by States

The Government seeks to characterize the "seriousness" of subsequent DUI offenses as felonies in order to lead this Honorable Court to believe that other states would consider the Plaintiff's conduct to be felonious in nature. [46] The document that the Government cites to characterizes the exact opposite. In fact, out of all 50 states, only 4 punish a second DUI as a felony. [47]

---

[43] Actual time was 169 years, 9 months and 18 days.
[44] Actual time was 42 years, 11 months and 5 days.
[45] *Binderup,* 836 F.3d at 348.
[46] *See* Doc 5 at 19 ("A DUI can be a felony in forty-six states under certain circumstances (*e.g.*, upon a previous conviction.")
[47] *See* https://www.madd.org/wp-content/uploads/2017/08/DUI_Felony_Overview.pdf at 2.

Moreover, a review of all 50 states' DUI laws shows that only two definitively punish a second DUI with imprisonment of more than two years. A copy of National Survey of State Laws: Criminal Law: Drunk Driving 7th Edition (2015) is attached hereto and incorporated herein as Exhibit C. A second offense in Massachusetts within ten years is punishable with imprisonment of sixty days up to two and a half years. [48] A second offense in Oklahoma within ten years is punishable by imprisonment of one to five years. [49] The remaining states classify the second offense as punishable by imprisonment ranging from several days up to two years. [50] While it is possible that the list is not exhaustive based on states that punish subsequent DUIs on a sliding scale dependent on BAC, like the one Pennsylvania has, it certainly seems to indicate that most states do not view a second DUI as a major offense.

2.  DUI Offenses in Pennsylvania and Firearms Ownership

While a cross-jurisdictional consensus is a factor that the Court needs to evaluate in the *Binderup* analysis, it is important to consider how Pennsylvania treats the offense Mr. Williams was convicted of in relation to firearms ownership.

---

[48] *See* Exhibit C.
[49] *Id*.
[50] *Id*.

18 Pa.C.S. § 6105 dictates who, under Pennsylvania law, is no longer permitted to own or possess firearms.

Under the statute, the only individuals who would be prohibited under state law would be those who were convicted of a third DUI in a five-year period. [51] Interestingly enough, the prohibition is *only* in relation to firearms transfers or purchases of firearms after the third conviction. [52] Meaning that an individual who would be prohibited under state law would be able to keep their firearms that they had prior to the third conviction.

Perhaps most important, as discussed *supra*, is that Mr. Williams would not be prohibited under state law from owning firearms. Clearly, Pennsylvania did not believe that a second DUI, even at the highest rate, was worthy of stripping an individual of their right to keep and bear arms in perpetuity.

iv.  Mr. Williams's Claim is within the Analytical Framework

The Third Circuit Declared in *Binderup* that "the threshold question in a Second Amendment challenge is one of scope: whether the Second Amendment

---

[51] *See* 18 Pa.C.S. § 6105(c)(3). It also bears noting that if an individual were convicted of three DUIs in a six-year period, the individual would not be under any state disability. In fact, an individual could have ten or more DUIs and still not be prohibited under state law, unless three of the DUIs occurred in a five-year period and if so, the individual would still be permitted to retain possession of the firearms he/she owned but would simply be prohibited from purchasing new firearms.
[52] *Id*.

protects the person, the weapon, or the activity in the first place." [53] The answer in this matter is an unequivocal "yes". As such, first a determination needs to be made as to whether Mr. Williams can distinguish himself from the class of individuals historically barred from the possession of firearms and ammunition. The answer, again, is an unequivocal "yes".

### 1. *Conduct is Burdened Under the Second Amendment*

Under the first step of the *Marzzarella* test, the challenger must identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member. Mr. Williams is currently prohibited under 18 U.S.C. § 922(g)(1) due to his conviction of a "crime punishable by imprisonment for a term exceeding one year." [54] As with Plaintiffs Binderup and Suarez, Mr. Williams was convicted of a state law misdemeanor crime that was punishable by more than two years imprisonment, thus meeting the definition of a "felony". [55]

The *Binderup* Court stated that the justification of denying "felons" the right to keep and bear arms dates back to the Second Amendment's drafting. "[T]he right to bear arms was tied to the concept of a virtuous citizenry and that,

---

[53] *Binderup,* 836 F.3d at 362.
[54] *Id*. at 347.
[55] *Id*.

accordingly, the government could disarm 'unvirtuous citizens'." [56] "The category of "unvirtuous citizens" is thus broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or non-violent." [57] As such, clearly the traditional justifications for preventing the class of individuals of which Mr. Williams appears to be a member is that they are "unvirtuous citizens".

### 2. *Mr. Williams can Distinguish his Circumstances from the Historically Barred Class*

To show that Mr. Williams is not part of the historically barred class, he must show that the crime for which he was convicted was not "serious". [58] *Binderup* identified several factors to determine whether a crime was "serious," which included: 1) whether the crime is classified as a felony or misdemeanor; 2) whether the crime was "violent"; 3) the punishment that was actually imposed on the Plaintiff; and 4) whether there exists cross-jurisdictional consensus as to the "seriousness" of the offense. [59]

Mr. Williams's 2005 DUI offense was graded as a misdemeanor of the first degree. As *Binderup* proclaimed "a state legislature's classification of an offense as a misdemeanor is a powerful expression of its belief that the offense is not serious

---

[56] *Binderup,* 836 F.3d at 348. (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)).
[57] *Id.* at 348.
[58] *Id.* at 349.
[59] *Id.* at 351-353.

enough to be disqualifying." [60] As discussed *supra*, the Pennsylvania General Assembly did not view a second DUI as an offense worthy of rising to the level of stripping an individual of their right to keep and bear arms. The General Assembly only believed that an individual who managed to accrue three DUIs within a period of 5 years should be prohibited from purchasing or transferring *new* firearms but even an individual who was in such a position would be able to keep their currently owned firearms.

Moreover, the offense for which Mr. Williams was convicted of has no element of violence. None of the elements of Pennsylvania's DUI statute involves or makes reference to the use, attempted use, or threatened use of physical force against another. [61] As discussed *supra*, even the Supreme Court has declared that DUIs do not fall into the category of offenses that are "violent" in nature.

Turning to the third element of the analysis proclaimed in *Binderup*, Mr. Williams was only sentenced to sentenced to passive house arrest until electronic monitoring was available for 90 days, [62] ordered to pay costs, a fine of $1,500.00, and complete any recommended drug and alcohol treatment. While the offense was punishable by up to five years imprisonment, it is telling that the Judge did not believe it was worthy of any jail time. Further, to the extent the Government

---

[60] *Id*. at 351.
[61] *See* 75 Pa.C.S. § 3802
[62] The statutory minimum is imprisonment of not less than 90 days, removing the ability of the judge to sentence an individual to a lesser amount. *See* Exhibit D.

contends the passive house arrest until electronic monitoring could be implemented for 90 days is a serious deprivation of freedom, it is important to compare it to the sentence in *Binderup*.

Binderup was sentenced to three (3) years probation. [63] While Mr. Williams was sentenced to 90-days imprisonment, he was immediately released to passive house arrest until electronic monitoring could be established. This is, in essence, probation. Further, the sentence was only for 90 days, a far cry from the three (3) years probation Mr. Binderup was sentenced to. Suarez received a suspended sentence of 180 days imprisonment and a year of probation. [64] Again, Mr. William's punishment was hardly severe relative to Mr. Binderup and Mr. Suarez.

The Defendants' argue that Mr. Suarez's offense was not one of a serious nature, stating that the Court found "while states punished…the unlicensed carrying of a concealed weapon – as a serious crime, many other states did not..." [65] However, it is hard to see why the unlicensed carrying of a firearm is so much different than a DUI.

Connecticut punishes the unlicensed carrying of a firearm by up to five (5) years imprisonment with a mandatory minimum of one (1) year. [66] New Jersey

---

[63] *Binderup,* 836 F.3d at 340.
[64] *Id*.
[65] *See* Doc. 5 at 18.
[66] Conn. Gen. Stat. § 29-37. *See* Conn. Gen. Stat. § 53a-35a for grading.

punishes the offense with a sentence between five (5) and ten (10) years. [67]

Massachusetts punishes the crime by imprisonment for up to five (5) years in

prison with a minimum sentence of two and one half (2.5) years or up to two and

one half (2.5) years with a minimum sentence of eighteen (18) months in jail. [68]

Rhode Island punishes the unlicensed carrying of a firearm with imprisonment up

to ten (10) years, having a mandatory minimum sentence of one (1) year. [69] Like

DUI, carrying a firearm without a licenses has a plethora of different penalties

depending on the circumstances.

Further, the Defendants' misstate the holding in *Binderup* by proclaiming

that "[f]inally, the Binderup court found that a plaintiff would likely meet his

burden of showing that his crime was not 'serious' only where there was no 'cross-

jurisdictional consensus' regarding the seriousness of the crime." [70] In actuality,

the Third Circuit stated "[w]ere the Challengers unable to show that so many states

consider their crimes to be non-serious, it would be difficult for them to carry their

burden at step one." [71]

As the Government alleges, there is a cross-jurisdictional consensus that

DUI is a crime. However, that is where the consensus ends. The severity in which

a second DUI is punished varies between numerous jurisdictions. As discussed

---

[67] N.J. Stat. § 2C:39-5. *See* N.J. Stat § 2C:43-6 for grading.
[68] ALM GL ch. 269, § 10.
[69] R.I. Gen. Laws § 11-47-8.
[70] *See* Doc. 5 at 18.
[71] *Binderup,* 836 F.3d at 353.

*supra*, most state's statutory punishments for imprisonment range from several days up to two years. Few states punish the offense by more than two years imprisonment. Unlike what the Government would like this Court to believe, only four states punish a second DUI offense as a felony. [72] If anything, this shows that while states believe that DUI should be punished in some capacity, it is hardly what is considered a "serious crime" for the purposes of an *as-applied* Second Amendment challenge.

In *Binderup*, the Court found that the vast majority of states did not treat consensual sexual relationships between a 41-year-old and a 17-year-old as a serious crime. [73] Likewise, the Court found that while some states punish the unlicensed carrying of a firearm, more than half prescribe a penalty that does not meet the threshold of a traditional felony. [74] As discussed *supra*, DUI is no different.

Thus, much like the challengers in *Binderup*, Mr. Williams has shown that he has carried the burden of showing that his misdemeanor was not a serious offense despite its maximum possible punishment. As such, he has distinguished his circumstances from individuals who historically were barred from possessing firearms.

---

[72] https://www.madd.org/wp-content/uploads/2017/08/DUI_Felony_Overview.pdf
[73] *Binderup,* 836 F.3d at 352.
[74] *Id*.

### 3. 18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Intermediate Scrutiny

Step two of the *Binderup* analysis requires the Government to show that the restriction meets "some form of heightened scrutiny." [75] [76] The Court determined that the intermediate scrutiny analysis as declared in *Marzzarella* was the appropriate level of scrutiny to apply to an *as-applied* Second Amendment challenge. [77] Intermediate scrutiny requires that the Government bear the burden of showing the appropriateness of its means to further its interest. [78]

The Defendants assert that there is a reasonable fit between the 922(g)(1) prohibition on individuals like the Plaintiff and the Government's interest in protecting public safety. [79] To support this position, they cite several studies that

---

[75] *Id*. at 347.

[76] While Plaintiff acknowledges the Third Circuit's precedent, he respectfully calls into question this two-pronged approach, based on the Supreme Court's decisions in *Heller*, and *McDonald*, where the Court specifically stated that lower courts should *not* conduct interest balancing or apply levels of scrutiny. *Heller*, 554 U.S. at 634-35 (noting that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald*, 561 U.S. at 790-91 (noting that the *Heller* Court "specifically rejected" "an interest-balancing test"). Plaintiff believes that if he prevails at step one of the *Marzzarella* test, the analysis should end and relief should be granted. However, if the Court believes that the balancing test should be applied, the Plaintiff would argue that strict scrutiny, rather than intermediate scrutiny, is the proper test to apply.

[77] *Binderup,* 836 F.3d at 353 (citing *Marzzarella,* 614 F.3d at 97).

[78] *Binderup,* 836 F.3d at 353.

[79] *See* Doc. 5 at 27.

were attached as exhibits. [80] The Government points to the first study to assert the proposition that individuals convicted of DUIs are somehow more likely to commit violent acts in the future than those who are not. [81] *Correlation does not imply causation*. Moreover, the study utilizes statistics from 1977 and even states "[t]his study has the obvious limitation that the *data are old and from a single state*." [82]

The second study the Defendants utilize generally speaks about "keeping firearms from drug and alcohol abusers." [83] Of note, the study does not define the term "abuser" leading the reader to give the term context and meaning. It also adeptly points out that "federal law does not bar alcohol abusers from acquiring firearms," and that "[o]nly 16 out of 50 states and the District of Columbia have statutes that include firearms prohibitions for people who abuse alcohol." [84] Perhaps most compelling is that the study itself states:

> Pennsylvania is one of the few states with a statute that includes an operational definition of an alcohol abuser that would enable one to readily identify prohibited persons. The statute bars firearms transfers to anyone convicted of three or more alcohol and driving violations within a 5-year span. [85]

---

[80] The Plaintiff again objects to the consideration of any of these exhibits in any consideration of a Motion to Dismiss, but addresses them nonetheless without waiving his objection.
[81] *See* Doc. 5-1.
[82] *See* Doc 5-1 at 4. (Emphasis added).
[83] *See* Doc. 5-2.
[84] *Id*. at 2.
[85] *Id*.

In essence, the Defendants' study seems to indicate the exact opposite of their contention. More importantly, the study points out that an individual like the Plaintiff *would not be considered* an alcohol abuser in Pennsylvania.

The third study purports to link psychiatric disorders among repeat DUI offenders. [86] The study states that "future research needs to (a) identify the causal relationships among psychiatric disorder, alcohol problems, and DUI behavior…(c) examine factors that distinguish repeat offenders from onetime offenders…" indicating that DUI behavior is not necessarily indicative of an alcohol problem. [87]

The fourth study the Defendants offer is entitled "Substance abuse and violence – A review of the literature." [88] Right off the bat, the abstract states in relation to the causal relationship between alcohol and violence that "most real-world studies indicate that this relationship is exceedingly complex and moderated by a host of factors in the individual and the environment." [89] The study further states that "[m]ost alcohol and drug use occurs among persons who are not violent." [90] In fact, the Plaintiff is not sure why the Defendants included this study in their exhibits. While the study does have some statistics about the relationship alcohol consumption and crime, it immediately rebukes the causal relationship by

---

[86] *See* Doc. 5-3.
[87] *Id*. at 9.
[88] *See* Doc. 5-4.
[89] *Id*. at 1.
[90] *Id*. at 2.

stating

> Despite these statistics, only a few studies demonstrate the relationship between chronic drinking and the potential for violent behavior. However, the *existing studies find that problem/chronic drinkers or alcoholics are more likely than others to have histories of violence*; including more previous arrests for a violent crime. Conversely, there has been a high rate of alcoholism found among violent offenders. This evidence suggests the need for further studies…[91]

As the Plaintiff has never been convicted of a violent crime, he would not fall within the individuals the study believes is at risk. Further, the study bases the relationship on chronic drinking, a condition that is not present in this instance.

Lastly, the fifth exhibit that the Defendants attach is wholly irrelevant.[92] It presupposes two conditions; that being (1) the Plaintiff is currently consuming alcohol and (2) that the Plaintiff is handling or shooting a gun. Neither of those issues are relevant in this matter. The Plaintiff was not arrested while intoxicated handling a firearm nor was he arrested for discharging a firearm while intoxicated. Further, there is no evidence to suggest the Plaintiff has or would handle a firearm while intoxicated as the Government has not introduced anything showing that the Plaintiff *currently* consumes alcohol, much less consumes it in excess.[93]

As Judge Jones held in *Keyes, et. al. v. Sessions, et al.*, 1:15-CV-457 *41

---

[91] *Id*. at 7.
[92] *See* Doc. 5-5.
[93] Plaintiff admits that he has an occasional glass of wine with dinner or champagne to celebrate New Years Eve at his home but otherwise denies imbibing in libations, especially in excess. *See* Declaration of Edward A. Williams at ¶ 11.

(M.D. Pa. Oct. 11, 2017)

> To allow the Government to defeat an as-applied challenge by demonstrating that the statute was a reasonable fit to its important interest in general would mean that the challengers' efforts to distinguish themselves from the overall class are rendered futile. In essence, *without considering the challengers' specific characteristics,* the second step of the *Marzzarella* framework is the same in both facial and as-applied challenge, rendering the first prong in as-applied challenges superfluous and done in vain.

Regardless, *Binderup* is instructive on the matter and binding precedent on this Court. Much like in *Binderup*, the Government has failed to produce credible evidence why banning people like Mr. Williams, in perpetuity, from possessing firearms promotes public safety.[94] The Government relies on a studies that utilize old data and even admit they have obvious limitations or that there is nothing concrete suggesting a relationship between alcohol consumption and violence.[95] Then, it attempts to buttress its position by using District Court decisions from another district, where the Plaintiff was previously convicted of much more serious crimes.

The Government has attempted to cast a broad net of general assertions about individuals convicted of DUI in an attempt to have this Court reject Mr. Williams's claim that as-applied to him, the § 922(g)(1) prohibition is unconstitutional. "But it must 'present some meaningful evidence, not mere

---

[94] *Binderup,* 836 F.3d at 353-54.
[95] *See* Docs. 5-1 – 5-5.

assertions, to justify its predictive [and here conclusory] judgments.'" [96] The

Government has failed to do so.

The Third Circuit has stated that the intended purpose of § 922(g)(1) is to

"promot[e] public safety by 'preventing armed mayhem.'" [97] Applying the

intermediate scrutiny analysis to the purpose of § 922(g)(1), the Government

cannot show that preventing an individual convicted of a DUI wherein he was not

sentenced to imprisonment nor prohibited from possessing firearms under state law

to fit reasonably within the interest of "preventing armed mayhem".

     c. *Two Separate Cases in the United States District Court for the Middle District of Pennsylvania With Factually Similar Matters Withstood a Motion to Dismiss*

In *Zedonis v. Lynch*, 1:15-CV-1863, 2017 U.S. Dist. LEXIS 17417 (M.D.

Pa. Feb. 8, 2017), Judge William W. Caldwell concluded that not withstanding the

fact that Mr. Zedonis was convicted of a second DUI at the highest rate, a crime

punishable by imprisonment of up to five years, it was not "serious" and could

survive a motion to dismiss. Chief Judge Christopher C. Conner also found this to

be true in *Holloway v. Sessions*, 1:17-CV-81, 2017 WL 3077035 (M.D. Pa. July

19, 2017). The Government states that these decisions are not binding on this

---

[96] *Binderup,* 836 F.3d at 354 (quoting *Heller,* 554 U.S. at 1259).
[97] *Binderup,* 836 F.3d at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).

Court. [98] While it is true that it is not binding precedent, at the very least, it should be persuasive.

The Government also takes issue with the Judges' finding that Mr. Holloway and Mr. Zedonis had met their burden of showing that their DUI offenses were not "serious" crimes. [99] They support this assertion based on comparing the punishment of the challengers to the plaintiffs in *Binderup.* [100]

As discussed *supra*, DUI lacks the elements to be a crime, which would have been traditionally justified in barring an individual from possessing firearms and ammunition. Moreover, *Zedonis* and *Holloway* are persuasive, in that Mr. Williams has presented enough information for the Court to utilize in determining that his complaint can survive a motion to dismiss.

## V.   CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss should be denied.

---

[98] *See* Doc. 5 at 21-22.
[99] *Id. at* 22.
[100] *Id.*

Respectfully Submitted,

Dated: October 13, 2017

_____

Adam Kraut, Esq.
Attorney Id. No. 318482
AKraut@PrinceLaw.com

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

Brief, Exhibits, and Plaintiff's Declaration was filed electronically through the

Eastern District of Pennsylvania Electronic Filing System. Notice of this filing will

be sent by operation of the court's Electronic Filing System to all registered users

in this case.

_____
Adam Kraut, Esq.
Attorney Id. No. 318482
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorney for Plaintiff