Adam Kraut, Esq.
Attorney Id. No. 318482
Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803, ext 81115 (t)
(610) 845-3903 (f)
AKraut@princelaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | Honorable Robert F. Kelly |
| | : | |
| **JEFFERSON B. SESSIONS III,** *et al.* | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

I.    **INTRODUCTION** ...................................................................................... 1

II.   **PROCEDURAL HISTORY** ...................................................................... 2

III.  **FACTUAL BACKGROUND** ..................................................................... 2

IV.   **STATEMENT OF QUESTION INVOLVED** ........................................... 4

V.    **ARGUMENT** ............................................................................................ 4

   a.  *Legal Standard* ........................................................................................ 4

   b.  *Constitutional Claim* .............................................................................. 6

     i.   *As-Applied* Second Amendment Challenge Criteria ........................... 6

     ii.  DUI is Not a Crime that is Tethered to the "Time-Honored" Practice of Keeping Firearms Out of the Hands of Those Likely to Commit Violent Crimes ................................................................................................ 8

     iii. Prohibitions on the Possession of Firearms by Felons ........................ 10

      1.  DUI Offenses Classified by States ................................................ 12

      2.  DUI Offenses in Pennsylvania and Firearms Ownership ............... 13

     iv.  Mr. Williams's Claim is within the Analytical Framework .................. 14

      1.  Conduct is Burdened Under the Second Amendment ...................... 14

      2.  Mr. Williams can Distinguish his Circumstances from the Historically Barred Class ................................................................ 16

      3.  No Further Analysis is Required .................................................... 20

      4.  18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Strict Scrutiny ............................................................................... 21

      5.  18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Intermediate Scrutiny .................................................................. 25

VI.   **CONCLUSION** ....................................................................................... 27

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 5

*Begay v. United States*, 553 U.S. 137 (2008) ............................................................. 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................. 10, 20, 27

*FEC v. Wis. Right to Life, Inc.,* 551 U.S. 449 *(2007)* ............................................. 21

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764 (3d Cir. 2013) ... 5

*Keyes, et. al. v. Sessions, et al.*, 1:15-CV-457 (M.D. Pa. Oct. 11, 2017) .............. 26

*Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011) ... 5

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ....................................................................... 9

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ................................................ 20

*Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81 (3d Cir. 1982) ...................... 5

*Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010) ........................................................ 5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ........................... 5

*Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162 (3d Cir. 2008) ............ 5

*United States v. Barton*, 633 F.3d 168 (3d Cir. 2011) ............................................... 7

*United States v. Doe*, 960 F.2d 221 (1st Cir. 1992) ................................................... 9

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) .............................. passim

*United States v. Rhodes*, No. 2:12-0010, 2012 U.S. Dist. LEXIS 76363 (S.D. W.
    Va. June 1, 2012) .................................................................................................. 9

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ...................................... 25, 27

*United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) ...................................... 8, 15

## Statutes

18 Pa.C.S. § 6105 ................................................................................................... 13

18 U.S.C. § 922(g)(1) ...................................................................................passim

18 U.S.C. § 924(e) ................................................................................................ 9

75 Pa.C.S. § 3802............................................................................................ 8, 17

75 Pa.C.S. § 3806(a) .............................................................................................. 3

ALM GL ch. 269, § 10......................................................................................... 19

Conn. Gen. Stat. § 29-37...................................................................................... 18

Conn. Gen. Stat. § 53a-35a.................................................................................. 18

N.J. Stat § 2C:43-6............................................................................................... 18

N.J. Stat. § 2C:39-5.............................................................................................. 18

R.I. Gen. Laws § 11-47-8..................................................................................... 19

## Other Authorities

Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695 2009) ... 7

## Rules

234 Pa. Code Ch 3, Rule 312 ................................................................................. 3

Fed. R. Civ. P. 56(a) .............................................................................................. 5

Plaintiff Edward A. Williams, by and through his counsel, hereby submits this Brief in Support of his Motion for Summary Judgment.

## I.        INTRODUCTION

Plaintiff Edward A. Williams (hereinafter "Mr. Williams" or "Plaintiff") has filed suit, complaining that the Defendants have collectively and individually prohibited a particular class of persons, including the Plaintiff, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of a misdemeanor driving under the influence (hereinafter "DUI") conviction, where no one was injured by the conduct and where no property damage resulted, in violation of his Second Amendment Rights.

Pursuant to the elements set-forth by the Third Circuit in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*), it is clear that the Defendants' enforcement of such a prohibition violates Mr. Holloway's fundamental constitutional right to keep and bear arms as provided for in the Second Amendment.

## II.      PROCEDURAL HISTORY

Mr. Williams initiated this litigation by filing suit on June 1, 2017. [1] The

Government responded by filing a motion to dismiss on September 14, 2017. [2]

Thereafter, Plaintiff contemporaneously filed a brief in opposition to the

Government's motion to dismiss and the underlying motion for summary judgment

on October 13, 2017.

## III.     FACTUAL BACKGROUND

In 2000, Mr. Williams was pulled over and subsequently arrested and

charged with DUI. [3] At the time of Mr. Williams' first DUI, Pennsylvania law

made it a crime to operate a vehicle with a blood alcohol content greater than .10. [4]

Mr. Williams was successfully entered into Pennsylvania's ARD program, which

required him to serve 12 months probation, attend an alcohol class, driver's safety

class, and pay all of the associated court costs and fines. [5] After successful

completion of the ARD program, Mr. Williams' charge was expunged and his

---

[1] *See* Doc. 1.
[2] *See* Doc. 5. As Plaintiff noted in his Brief in Opposition to Defendants' Motion to Dismiss, Plaintiff contends the document filed was a motion for summary judgment based upon Fed. R. Civ. P. 12(d) and the Defendants inclusion of evidence outside the face of the complaint and the exhibits attached thereto.
[3] *See* Statement of Material Facts at ¶ 1-3.
[4] *Id*. at ¶ 3.
[5] *Id*. at ¶ 4.

driver's license restored. [6] ARD does not result in a conviction, if successfully completed. [7]

On September 7, 2004, Mr. Williams was pulled over by the Philadelphia Police Department and subsequently arrested and charged with DUI. [8] Mr. Williams was found guilty and was sentenced to "passive house arrest until electronic monitor[ing] is available" for 90 days, ordered to pay costs, a fine of $1,500.00, and complete any recommended drug and alcohol treatment. [9]

At no point, in relation to the two instances of DUI, did any property damage or any injury to another occur. [10] Moreover, Mr. Williams has held a job as a construction manager for the past twenty-five (25) years, where he has managed projects, which include the Curran-Fromhold Correctional Facility, PA Convention Center, Septa Railworks project, the Commodore Barry Bridge, Interstate 95 and the NJ Transportation maintenance facilities. [11] Mr. Williams is tasked with field inspections, project management, cost control, problem solving, developing and

---

[6] *Id.* at ¶ 6. *See also* Mr. Williams's Pennsylvania State Police Background Check, which is attached hereto and incorporated herein as Exhibit A.
[7] *Id.* at ¶ 5. *See also* 234 Pa. Code Ch 3, Rule 312 Note 1 "Although acceptance into an ARD program is not intended to constitute a conviction under these rules, it may be statutorily construed as a conviction *for purposes of computing sentences on subsequent convictions. See e.g.*, 75 Pa.C.S. § 3806(a)." (Emphasis added).
[8] *Id.* at ¶ 7.
[9] *Id.* at ¶ 8. *See also* Doc. 1-1 at 7.
[10] *Id.* at ¶ 9.
[11] *Id.* at ¶ 11-12.

maintaining CPM project schedules for contractors and relaying updates during the construction period. [12]

In or about late December of 2014, Mr. Williams, concerned for the safety of himself and his family, attempted to procure a License to Carry Firearms ("LTCF") and was denied. [13] After challenging the denial, he became aware, for the first time, that his sole conviction in 2004 for DUI was a federally prohibiting offense, which prevented him from lawfully possessing firearms and ammunition. [14] As a result, Mr. Williams brought the underlying action that is before the Court.

## IV.      STATEMENT OF QUESTIONS INVOLVED

1.   Does the Defendants' prohibition on Mr. Williams from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of an isolated misdemeanor DUI conviction violate his Second Amendment rights?

Suggested Answer in the *Affirmative*

## V.       ARGUMENT

a.   *Legal Standard*

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[12] *Id.* at ¶ 13.
[13] *Id.* at ¶ 14.
[14] *Id.* at ¶ 15.

as a matter of law." Fed. R. Civ. P. 56(a). [15] A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party while not evaluating the credibility or weighing the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

A court should not grant summary judgment when there is a disagreement about the facts of the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir. 1982)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotations omitted).

---

[15] *See* Committee Notes on Rules – 2010 Amendment to Fed. R. Civ. P. 56 stating "…the rule allows a motion for summary judgment to be filed at the commencement of an action…"

b. *Constitutional Claim*

i. *As-Applied* Second Amendment Challenge Criteria

The Third Circuit in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*) held that *as-applied* Second Amendment challenges were cognizable and controlled by the two-step analysis [16] previously articulated in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010). [17] The first prong of the test is to consider "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." [18] If the challenger does not meet this burden, the claim should be dismissed. [19] However, if the law burdens protected conduct, then the Court must "evaluate the law under some form of means-end-scrutiny". [20] In this instance, the Court has stated intermediate scrutiny is the appropriate level to apply to such a challenge. [21]

---

[16] While Plaintiff acknowledges the Third Circuit's precedent, he respectfully calls into question this two-pronged approach, based on the Supreme Court's decisions in *Heller*, and *McDonald*, where the Court specifically stated that lower courts should *not* conduct interest balancing or apply levels of scrutiny. *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). (noting that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010). (noting that the *Heller* Court "specifically rejected" "an interest-balancing test").

[17] *Binderup*, 836 F.3d at 339.

[18] *Id.* at 346 (citing *Marzzarella*, 614 F.3d *at 89).*

[19] *Id. at 346.*

[20] *Id.* at 346 (citing *Marzzarella*, 614 F.3d *at 89).*

[21] *Marzzarella*, 614 F.3d at 97.

Furthermore, the Third Circuit has held that under an *as-applied* Second Amendment challenge, the plaintiff "must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections." [22] The Third Circuit also found that the traditional justification of § 922(g)(1) was the disarmament of individuals likely to commit *violent* offenses. [23] Moreover, these crimes of violence were "commonly understood to include only those offenses 'ordinarily committed with the aid of firearms.'" [24]

This understanding was reaffirmed in *Binderup* where the court proclaimed that under *Barton* "[w]e looked to the 'historical pedigree' of the statute to ascertain 'whether the traditional justifications underlying the statute support a finding of permanent disability in this case.'" [25] The court stated that it "determined that the exclusion of felons and other criminals from the scope of the Second Amendment's protections was tethered to the time-honored practice of keeping firearms out of the hands of those likely to commit violent crimes." [26]

---

[22] *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011)
[23] *Barton,* 633 F.3d at 173.
[24] *Id.* at 173 (citing Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 702 (2009)).
[25] *Binderup,* 836 F.3d at 361 (citing *Barton,* 633 F.3d at 175).
[26] *Id*. at 362 (citing *Barton,* 633 F.3d 173).

ii.  <u>DUI is Not a Crime that is Tethered to the "Time-Honored"</u>
<u>Practice of Keeping Firearms Out of the Hands of Those Likely</u>
<u>to Commit Violent Crimes</u>

The "historical justification for stripping felons…of their Second Amendment rights… '[is] tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens.'" [27] "People who have committed or are likely to commit 'violent offenses'—crimes 'in which violence (actual or attempted) is an element of the offense,' undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights.'" [28] While the Government sets forth a number of arguments for the proposition that the Plaintiff's sole DUI conviction is a "serious crime", it offers nothing to show that a DUI qualifies as a "violent offense". More importantly, the Plaintiff has never been convicted of a violent offense.

There are several other factors the Plaintiff can point to in order to bolster the claim that a DUI is not a violent offense. First, none of the elements of Pennsylvania's DUI statute involve or makes reference to the use, attempted use, or threatened use of physical force against another. [29] The Supreme Court of the United States proclaimed that a DUI fell outside the scope of the Armed Career

---

[27] *Id.* at 348 (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)).
[28] *Id*. (Internal citation omitted).
[29] *See* 75 Pa.C.S. § 3802

Criminal Act's definition of a "violent felony". [30] The Supreme Court also found that DUI was not within the definition of a "crime of violence" as defined by 18 U.S.C. § 16. [31] While the entire gamut of crimes involving violence has not been delineated, there are certain elements such as the use, attempted use, or threatened use of physical force, which are necessary in order to qualify. [32] Clearly, a DUI falls outside the scope of a "violent offense".

The Government points to *United States v. Rhodes*, No. 2:12-0010, 2012 U.S. Dist. LEXIS 76363 (S.D. W. Va. June 1, 2012) to support the proposition that DUI is a serious crime but fails to mention that Rhodes was convicted previously, among other things, on battery, driving on a suspended license, DUI, leaving the scene, driving on a suspended license following a DUI, DUI – second offense, possession of a controlled substance, and DUI – third offense.

Justice Scalia's concurring opinion in *Begay v. United States*, 553 U.S. 137, 153-154 (2008), sheds some light as to the seriousness of DUI.

> The Government cites the fact that in 2006, 17,062 persons died from alcohol-related car crashes, and that 15,121 of those deaths involved drivers with blood-alcohol concentrations of 0.08 or higher. Drunk driving is surely a national problem of great concern. *But the fact that it kills many people each year tells us very little about whether a single act of drunk driving "involves conduct that presents a serious*

---

[30] *See Begay v. United States*, 553 U.S. 137, 148 (2008)
[31] *See Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004)
[32] *See also United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (observing that the term "violent felony" in 18 U.S.C. § 924(e) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence").

*potential risk of physical injury to another."* It may well be that an even greater number of deaths occurs annually to pedestrians crossing the street; but that hardly means that crossing the street presents a serious potential risk of injury. Where the issue is "risk," the annual number of injuries from an activity must be compared with the annual incidents of the activity. Otherwise drunk driving could be said to pose a more serious risk of physical harm than murder. In addition, drunk driving is a combination of two activities: (1) drinking and (2) driving. If driving alone results in injury in a certain percentage of cases, it could hardly be said that the entirety of the risk posed by drunk driving can be attributed to the combination. [33]

### iii.  Prohibitions on the Possession of Firearms by Felons

In *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the Supreme Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…" However, the Court also stated that it did not "undertake an exhaustive historical analysis … of the full scope of the Second Amendment," which leaves those interpretations up for debate. [34]

The longstanding prohibitions the Court referred to are those that date back to the founding of this Country as evidenced by the historical analysis the Court engaged in when deciding *Heller*.  The first federal law, the Federal Firearms Act (hereinafter "FFA"), which barred certain felons from possessing firearms was enact in 1938. The statute specifically made it unlawful for any person who was

---

[33] Internal citations omitted. (emphasis added).
[34] *Heller,* 554 U.S. at 626.

under indictment or convicted of a crime of violence or a fugitive from justice to shop, transport or receiver a firearm or ammunition. A copy of the Federal Firearms Act of 1938 is attached hereto and incorporated herein as Exhibit B Moreover, the law defined a crime of violence to mean:

> murder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking; assault with intent to kill, commit rape or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year. [35]

Notably absent from those who were prohibited from possessing firearms and ammunition were those convicted of non-violent offenses. It was not until 1961 that Congress took action to bar non-violent felons from possessing firearms and ammunition. [36] Thus, approximately 170 years passed from the time the Bill of Rights became effective until the time where individuals who were not violent felons (and misdemeanants) were barred from possessing firearms and ammunition. [37] At the time Mr. Williams was charged with the prohibiting offense, the prohibition against non-violent felons had only been in place for approximately 44 years. [38] From a historical analysis, the prohibition that prevents Mr. Williams from possessing firearms or ammunition accounts for a period of time less than 20% of the total period of time in which the constitutional right existed. This can

---

[35] *Exhibit B* at 1.
[36] *See* Pub. L. No. 87-342, 75 Stat. 757 (1961)
[37] Actual time was 169 years, 9 months and 18 days.
[38] Actual time was 42 years, 11 months and 5 days.

hardly be found to be a "longstanding prohibition on the possession of firearms by felons". Moreover, historical evidence suggests that the only individuals who were categorically barred from possessing firearms were those who committed violent offenses. [39]

### 1. DUI Offenses Classified by States

While at first blush, some may believe that two DUIs are a "serious" crime in the eyes of many states, in fact, in most instances it is rarely felonious. Out of all 50 states, only 4 punish a second DUI as a felony. [40]

Moreover, a review of all 50 states' DUI laws shows that only two definitively punish a second DUI with imprisonment of more than two years. A copy of National Survey of State Laws: Criminal Law: Drunk Driving 7th Edition (2015) is attached hereto and incorporated herein as Exhibit C. A second offense in Massachusetts within ten years is punishable with imprisonment of sixty days up to two and a half years. [41] A second offense in Oklahoma within ten years is punishable by imprisonment of one to five years. [42] The remaining states classify the second offense as punishable by imprisonment ranging from several days up to

---

[39] *Binderup,* 836 F.3d at 348.
[40] *See* https://www.madd.org/wp-content/uploads/2017/08/DUI_Felony_Overview.pdf at 2.
[41] *See* Exhibit C.
[42] *Id.*

two years. [43] While it is possible that the list is not exhaustive based on states that punish subsequent DUIs on a sliding scale dependent on BAC, like the one Pennsylvania has, it certainly seems to indicate that most states do not view a second DUI as a major offense.

2. DUI Offenses in Pennsylvania and Firearms Ownership

While a cross-jurisdictional consensus is a factor that the Court needs to evaluate in the *Binderup* analysis, it is important to consider how Pennsylvania treats the offense Mr. Williams was convicted of in relation to firearms ownership. 18 Pa.C.S. § 6105 dictates who, under Pennsylvania law, is no longer permitted to own or possess firearms.

Under the statute, the only individuals who would be prohibited under state law would be those who were convicted of a third DUI in a five-year period. [44] Interestingly enough, the prohibition is *only* in relation to firearms transfers or purchases of firearms after the third conviction. [45] Meaning that an individual who

---

[43] *Id.*

[44] *See* 18 Pa.C.S. § 6105 (c)(3). It also bears noting that if an individual were convicted of three DUIs in a six-year period, the individual would not be under any state disability. In fact, an individual could have ten or more DUIs and still not be prohibited under state law, unless three of the DUIs occurred in a five-year period and if so, the individual would still be permitted to retain possession of the firearms he/she owned but would simply be prohibited from purchasing new firearms.

[45] *Id.*

would be prohibited under state law would be able to keep their firearms that they had prior to the third conviction.

Perhaps most important, as discussed *supra*, is that Mr. Williams is not prohibited under state law from owning firearms. Clearly, Pennsylvania did not believe that a second DUI, even at the highest rate, was worthy of stripping an individual of their right to keep and bear arms in perpetuity.

### iv.   Mr. Williams's Claim is within the Analytical Framework

The Third Circuit Declared in *Binderup* that "the threshold question in a Second Amendment challenge is one of scope: whether the Second Amendment protects the person, the weapon, or the activity in the first place." [46] The answer in this matter is an unequivocal "yes". As such, first a determination needs to be made as to whether Mr. Williams can distinguish himself from the class of individuals historically barred from the possession of firearms and ammunition. The answer, again, is an unequivocal "yes".

### 1.  Conduct is Burdened Under the Second Amendment

Under the first step of the *Marzzarella* test, the challenger must identify the

---

[46] *Binderup,* 836 F.3d. at 362.

traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member. Mr. Williams is currently prohibited under 18 U.S.C. § 922(g)(1) due to his conviction of a "crime punishable by imprisonment for a term exceeding one year." [47] As with Plaintiffs Binderup and Suarez, Mr. Williams was convicted of a state law misdemeanor crime that was punishable by more than two years imprisonment, thus meeting the definition of a "felony". [48]

The *Binderup* Court stated that the justification of denying "felons" the right to keep and bear arms dates back to the Second Amendment's drafting. "[T]he right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens'." [49] "The category of 'unvirtuous citizens' is thus broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or non-violent." [50] As such, clearly the traditional justifications for preventing the class of individuals of which Mr. Williams appears to be a member is that they are "unvirtuous citizens".

---

[47] *Id.* at 347.
[48] *Id.*
[49] *Id.* at 348. (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)).
[50] *Id.* at 348.

    2.  Mr. Williams can Distinguish his Circumstances from the
Historically Barred Class

To show that Mr. Williams is not part of the historically barred class, he

must show that the crime for which he was convicted was not "serious". [51]

*Binderup* identified several factors to determine whether a crime was "serious,"

which included: 1) whether the crime is classified as a felony or misdemeanor; 2)

whether the crime was "violent"; 3) the punishment that was actually imposed on

the Plaintiff; and 4) whether there exists cross-jurisdictional consensus as to the

"seriousness" of the offense. [52]

Mr. Williams's 2005 DUI offense was graded as a misdemeanor of the first

degree. As *Binderup* proclaimed "a state legislature's classification of an offense as

a misdemeanor is a powerful expression of its belief that the offense is not serious

enough to be disqualifying." [53] As discussed *supra*, the Pennsylvania General

Assembly did not view a second DUI as an offense worthy of rising to the level of

stripping an individual of their right to keep and bear arms. The General Assembly

only believed that an individual who managed to accrue three DUIs within a period

of 5 years should be prohibited from purchasing or transferring *new* firearms but

---

[51] *Id*. at 349.
[52] *Id*. at 351-353.
[53] *Id*. at 351.

even an individual who was in such a position would be able to keep their currently owned firearms.

Moreover, the offense for which Mr. Williams was convicted of has no element of violence. None of the elements of Pennsylvania's DUI statute involves or makes reference to the use, attempted use, or threatened use of physical force against another. [54] As discussed *supra*, even the Supreme Court has declared that DUIs do not fall into the category of offenses that are "violent" in nature.

Turning to the third element of the analysis proclaimed in *Binderup*, Mr. Williams was only sentenced to sentenced to passive house arrest until electronic monitoring was available for 90 days, [55] ordered to pay costs, a fine of $1,500.00, and complete any recommended drug and alcohol treatment. While the offense was punishable by up to five years imprisonment, it is telling that the Judge did not believe it was worthy of any jail time. While some may argue that the passive house arrest until electronic monitoring could be implemented for 90 days is a serious deprivation of freedom, it is important to compare it to actual incarceration. Additionally, a comparison between the sentence of Binderup and Suarez is warranted, although not controlling.

---

[54] *See* 75 Pa.C.S. § 3802

[55] The statutory minimum is imprisonment of not less than 90 days, removing the ability of the judge to sentence an individual to a lesser amount. *See* Exhibit D.

Binderup was sentenced to three (3) years probation.[56] While Mr. Williams was sentenced to 90-days imprisonment, he was immediately released to passive house arrest until electronic monitoring could be established. This is, in essence, probation. Further, the sentence was only for 90 days, a far cry from the three (3) years probation Mr. Binderup was sentenced to. Suarez received a suspended sentence of 180 days imprisonment and a year of probation.[57] Again, Mr. William's punishment was hardly severe relative to Mr. Binderup and Mr. Suarez.

The Defendants', in their motion to dismiss,[58] argue that Mr. Suarez's offense was not one of a serious nature, stating that the Court found "while states punished…the unlicensed carrying of a concealed weapon – as a serious crime, many other states did not..."[59] However, it is hard to see why the unlicensed carrying of a firearm is so much different than a DUI.

Connecticut punishes the unlicensed carrying of a firearm by up to five (5) years imprisonment with a mandatory minimum of one (1) year.[60] New Jersey punishes the offense with a sentence between five (5) and ten (10) years.[61] Massachusetts punishes the crime by imprisonment for up to five (5) years in prison with a minimum sentence of two and one half (2.5) years or up to two and

---

[56] *Binderup,* 836 F.3d at 340.
[57] *Id*.
[58] As noted *supra*, the Plaintiff argues that the Defendants' Motion to Dismiss was a Motion for Summary Judgment.
[59] *See* Doc. 5 at 18.
[60] Conn. Gen. Stat. § 29-37. *See* Conn. Gen. Stat. § 53a-35a for grading.
[61] N.J. Stat. § 2C:39-5. *See* N.J. Stat § 2C:43-6 for grading.

one half (2.5) years with a minimum sentence of eighteen (18) months in jail. [62]

Rhode Island punishes the unlicensed carrying of a firearm with imprisonment up

to ten (10) years, having a mandatory minimum sentence of one (1) year. [63] Like

DUI, carrying a firearm without a licenses has a plethora of different penalties

depending on the circumstances.

While there is a cross-jurisdictional consensus that DUI is a crime, that is

where the consensus ends. The severity in which a second DUI is punished varies

between numerous jurisdictions. As discussed *supra*, most states' statutory

punishments for imprisonment range from several days up to two years. Few states

punish the offense by more than two years imprisonment. Only four states punish a

second DUI offense as a felony. [64] If anything, this shows that while states believe

that DUI should be punished in some capacity, it is hardly what is considered a

"serious crime" for the purposes of an *as-applied* Second Amendment challenge.

In *Binderup*, the Court found that the vast majority of states did not treat

consensual sexual relationships between a 41-year-old and a 17-year-old as a

serious crime. [65] Likewise, the Court found that while some states punish the

unlicensed carrying of a firearm, more than half prescribe a penalty that does not

---

[62] ALM GL ch. 269, § 10.
[63] R.I. Gen. Laws § 11-47-8.
[64] https://www.madd.org/wp-content/uploads/2017/08/DUI_Felony_Overview.pdf
[65] *Binderup,* 836 F.3d at 352.

19

meet the threshold of a traditional felony. [66] As discussed *supra*, DUI is no different.

Thus, much like the challengers in *Binderup*, Mr. Williams has shown that he has carried the burden of showing that his misdemeanor was not a serious offense despite its maximum possible punishment. As such, he has distinguished his circumstances from individuals who historically were barred from possessing firearms.

### 3.  No Further Analysis is Required

While Mr. Williams acknowledges the Third Circuit's precedent in *Binderup*, he respectfully calls into question this two-pronged approach, based on the Supreme Court's decisions in *Heller* and *McDonald*, where the Court specifically stated that lower courts should *not* conduct interest balancing or apply levels of scrutiny. *Heller*, 554 U.S. at 634-35 (noting that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald*, 561 U.S. at 790-91 (noting that the *Heller* Court "specifically rejected" "an interest-balancing test"). Mr. Williams believes that if he prevails at

---

[66] *Id.*

step one of the *Marzzarella* test, the analysis should end and relief should be

granted. However, if the Court believes that the balancing test should be applied,

the Plaintiff would argue that strict scrutiny, rather than intermediate scrutiny, is

the proper test to apply, since Plaintiff is denied his core Second Amendment right

– the right to even possess a firearm in the home for purposes of self-defense – as

held by the Supreme Court's decisions in *Heller* and *McDonald*.

### 4.  18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Strict Scrutiny

In the event, *arguendo*, this Court elects to follow the *Binderup* two-step

approach, step two of the analysis requires the Government to show that the

restriction meets "some form of heightened scrutiny." [67] Strict scrutiny requires

that the Government bear the burden to show that the law is "narrowly tailored to

serve a compelling state interest." [68]

Clearly, the Government cannot make such a showing given the factual

circumstances. In its motion to dismiss, the Government failed to provide any

persuasive authority, let alone compelling authority, to show that such a bar would

meet the criteria of being "narrowly tailored to serve a compelling state interest." [69]

---

[67] *Binderup,* 836 F.3d at 347.
[68] *Marzzarella,* 614 F.3d at 99. (citing *FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 465 (2007)*).
[69] *See* Doc. 5.

In fact, the Government utilized a flawed study to assert the proposition that individuals convicted of DUIs are somehow more likely to commit violent acts in the future than those who are not. [70] The study itself stated that "[t]his study has the obvious limitation that the *data are old and from a single state*." [71] In other words, the study simply has no value when applied to the modern day United States and certainly does not lend itself to establishing that such a prohibition would pass muster under a strict scrutiny analysis.

Further yet, the Government also sought to utilize other studies that would fail to pass this high threshold. The second study the Defendants utilized in their Motion to Dismiss generally speaks about "keeping firearms from drug and alcohol abusers." [72] Of note, the study does not define the term "abuser" leading the reader to give the term context and meaning. It also adeptly points out that "federal law does not bar alcohol abusers from acquiring firearms," and that "[o]nly 16 out of 50 states and the District of Columbia have statutes that include firearms prohibitions for people who abuse alcohol." [73] Perhaps most compelling is that the study itself states:

> Pennsylvania is one of the few states with a statute that includes an operational definition of an alcohol abuser that would enable one to readily identify prohibited persons. The statute bars firearms transfers

---

[70] *See* Doc. 5-1.
[71] *See* Doc. 5-1 at 4. (Emphasis added).
[72] *See* Doc. 5-2.
[73] *Id*. at 2.

to anyone convicted of three or more alcohol and driving violations within a 5-year span.[74]

In essence, the Defendants' study defeats any argument that the prohibition against Mr. Williams satisfies strict scrutiny. More importantly, the study points out that an individual like the Plaintiff *would not be considered* an alcohol abuser in Pennsylvania.

The third study purports to link psychiatric disorders among repeat DUI offenders. [75] The study states that "future research needs to (a) identify the causal relationships among psychiatric disorder, alcohol problems, and DUI behavior...(c) examine factors that distinguish repeat offenders from onetime offenders..." indicating that DUI behavior is not necessarily indicative of an alcohol problem. [76]

The fourth study the Defendants offer is entitled "Substance abuse and violence – A review of the literature." [77] Right off the bat, the abstract states in relation to the causal relationship between alcohol and violence that "most real-world studies indicate that this relationship is exceedingly complex and moderated by a host of factors in the individual and the environment." [78] The study further states that "[m]ost alcohol and drug use occurs among persons who are not

[74] *Id.*
[75] *See* Doc. 5-3.
[76] *Id.* at 9.
[77] *See* Doc. 5-4.
[78] *Id.* at 1.

violent." [79] While the study does have some statistics about the relationship alcohol consumption and crime, it immediately rebukes the causal relationship by stating

> Despite these statistics, only a few studies demonstrate the relationship between chronic drinking and the potential for violent behavior. However, the *existing studies find that problem/chronic drinkers or alcoholics are more likely than others to have histories of violence*; including more previous arrests for a violent crime. Conversely, there has been a high rate of alcoholism found among violent offenders. This evidence suggests the need for further studies…[80]

As the Plaintiff has never been convicted of a violent crime, he would not fall within the individuals the study believes is at risk. Further, the study bases the relationship on chronic drinking, a condition that there is no evidence of record to show exists.

Lastly, the fifth exhibit that the Defendants attach is wholly irrelevant. [81] It presupposes two conditions; that being (1) the Plaintiff is currently consuming alcohol and (2) that the Plaintiff is handling or shooting a gun. Neither of those issues are relevant in this matter and certainly have no bearing on a strict scrutiny analysis as the law being challenged is not in relation to handling a firearm while intoxicated.

---

[79] *Id.* at 2.
[80] *Id.* at 7.
[81] *See* Doc. 5-5.

The Third Circuit has stated that the intended purpose of § 922(g)(1) is to "promot[e] public safety by 'preventing armed mayhem.'" [82] Applying the strict scrutiny analysis to the purpose of § 922(g)(1), the Government cannot show that preventing an individual convicted of a DUI wherein he was not sentenced to imprisonment nor prohibited from possessing firearms under state law to be narrowly tailored to prevent the compelling governmental interest of "preventing armed mayhem".

### 5.  18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Intermediate Scrutiny

The Third Circuit determined that the intermediate scrutiny analysis as declared in *Marzzarella* was the appropriate level of scrutiny to apply to a Second Amendment *as-applied* challenge, although it noted that strict scrutiny may be appropriate. [83] Intermediate scrutiny requires that the Government bear the burden of showing the appropriateness of its means to further its interest. [84]

The Defendants assert that there is a reasonable fit between the 922(g)(1) prohibition on individuals like the Plaintiff and the Government's interest in

---

[82] *Binderup,* 836 F.3d at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).
[83] *Id.* at 353.
[84] *Id*.

protecting public safety.[85] Much like in *Binderup*, the Government has failed to produce credible evidence why banning people like Mr. Williams, in perpetuity, from possessing firearms promotes public safety.[86] The Government relies on a studies that utilize old data and even admit they have obvious limitations or that there is nothing concrete suggesting a relationship between alcohol consumption and violence.[87] Then, it attempts to buttress its position by using District Court decisions from another district, where the Plaintiff was previously convicted of much more serious crimes.

As Judge Jones recently held in *Keyes, et. al. v. Sessions, et al.*, 1:15-CV-457 *41 (M.D. Pa. Oct. 11, 2017)

> To allow the Government to defeat an as-applied challenge by demonstrating that the statute was a reasonable fit to its important interest in general would mean that the challengers' efforts to distinguish themselves from the overall class are rendered futile. In essence, *without considering the challengers' specific characteristics*, the second step of the *Marzzarella* framework is the same in both facial and as-applied challenge, rendering the first prong in as-applied challenges superfluous and done in vain.

The Government has attempted to cast a broad net of general assertions about individuals convicted of DUI in an attempt to have this Court reject Mr. Williams's claim that as-applied to him, the § 922(g)(1) prohibition is unconstitutional. "But it must 'present some meaningful evidence, not mere

---

[85] *See* Doc. 5 at 24.
[86] *Binderup,* 836 F.3d at 353-54.
[87] *See* Docs. 5-1 – 5-5.

assertions, to justify its predictive [and here conclusory] judgments.'" [88] The Government has failed to do so.

The Third Circuit has stated that the intended purpose of § 922(g)(1) is to "promot[e] public safety by 'preventing armed mayhem.'" [89] Applying the intermediate scrutiny analysis to the purpose of § 922(g)(1), the Government cannot show that preventing an individual convicted of a DUI wherein he was not sentenced to imprisonment nor prohibited from possessing firearms under state law to fit reasonably within the interest of "preventing armed mayhem".

## VI.    CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment should be granted.

Respectfully Submitted,

Dated: October 13, 2017

_____
Adam Kraut, Esq.
Attorney Id. No. 318482
AKraut@PrinceLaw.com

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

---

[88] *Binderup,* 836 F.3d at 354 (quoting *Heller, 554 U.S.* at 1259).
[89] *Id.* at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorneys for Plaintiff

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing

Brief, Exhibits, Plaintiff's Declaration and Motion were filed electronically

through the Eastern District of Pennsylvania Electronic Filing System. Notice of

this filing will be sent by operation of the court's Electronic Filing System to all

registered users in this case.

_____
Adam Kraut, Esq.
Attorney Id. No. 318482
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorney for Plaintiff