IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD A. WILLIAMS,                          :
                                             :
            Plaintiff,                       :
                                             :
      v.                                     :        CIVIL ACTION NO. 17-cv-2641
                                             :
JEFF SESSIONS,                               :
Attorney General of the United States,       :
THOMAS E. BRANDON,                           :
Acting Director, Bureau of Alcohol,          :
Tobacco, Firearms and Explosives,            :
CHRISTOPHER WRAY,                            :
Director, Federal Bureau of Investigation, and :
UNITED STATES OF AMERICA,                    :
                                             :
            Defendants.                      :

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**

Defendants submit this reply brief in support of their motion to dismiss the plaintiff's

Complaint.

**ARGUMENT**

**I.     PLAINTIFF CANNOT MEET HIS BURDEN AT STEP ONE OF SHOWING
THAT HE WAS NOT CONVICTED OF A SERIOUS CRIME**

In bringing an as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(1), the

Third Circuit has held that the plaintiff must show that "the law or regulation at issue burdens

conduct protected by the Second Amendment." *Binderup v. Attorney General United States of

America*, 836 F.3d 336, 356 (3d Cir. 2016). To satisfy that burden, the plaintiff "must prove that

he was not previously convicted of a serious crime." *Id*. The *Binderup* court emphasized that

"evidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." *Id*.[1]

Plaintiff initially asserts that "[w]hile the Government sets forth a number of arguments to show that the Plaintiff's sole DUI conviction is a "serious crime," it offers nothing to show that a DUI qualifies as a 'violent offense.'" *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Plaintiff's Brief") at 9. In an effort to support his claim, plaintiff spends several pages arguing that a DUI is not a "violent offense." *Id*. at 9-13. But plaintiff's argument that his DUI is not a "violent offense" is essentially a non-sequitur that misleadingly attempts to shift the focus from the applicable standard.

The fundamental issue for plaintiff's Second Amendment challenge at step one is not whether a DUI qualifies as a "violent offense." The *Binderup* court specifically stated that "[p]eople who have committed or are likely to commit 'violent offenses' – crimes in which violence (actual or attempted) is an element of the offenses – undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights." *Binderup*, 836 F.3d at 348 (citations omitted). Rather, at step one, plaintiff bears the burden of showing that his DUI is not a "serious" crime. *Id*. at 356. Indeed, the plaintiff must show that that his crime was "so tame and technical" that it is insufficient to justify the ban under Section 922(g)(1). *Id*. at 350, *quoting United States v. Torres-Rosario*, 658 F.3d 11, 113 (1st Cir. 2011). The plaintiff cannot meet his burden of

---

[1] In his brief, plaintiff repeatedly cites Judge Hardiman's concurring opinion in *Binderup* as well as the Third Circuit's decision in *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011). These opinions, however, do not set forth the applicable standard for plaintiff's as-applied Second Amendment challenge. As Defendants explained in their opening brief, the applicable legal standard is set forth in Judge Ambro's opinion in *Binderup*. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Plaintiff's Complaint (Defendant's Initial Brief") at 8, n.4.

showing that his crime was not "serious" merely by arguing that his crime is not a "violent offense."

As Defendants described in their opening brief, a repeat DUI, especially one at a highly elevated blood alcohol level, is inherently a "serious" crime because it demonstrates a clear disregard for the safety of others. *See* Defendants Initial Brief at 10-11. Defendants showed that drunken driving poses a grave threat to public safety and has resulted in thousands of deaths a year, as well as numerous other injuries and property damage. *Id*. Indeed, the Supreme Court has acknowledged that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 451 (1990) (footnote and citation omitted).

In his brief, however, plaintiff tries to do just that. He notes, for example, that while 32,675 people died in traffic accidents in 2014, there were only approximately 10,000 deaths in alcohol-related crashes. *See* Plaintiff's Brief at 11. The fact that almost 10,000 people were killed by drunken drivers in 2014 - approximately one third of all traffic fatalities in the country that year - hardly demonstrates, as plaintiff would suggest, that drunken driving is not a serious crime.

Moreover, plaintiff's effort to support his argument by quoting from a concurring opinion by Justice Scalia in a case concerning the interpretation of certain statutory language is completely inapposite. *Id*. at 10-11. In the quoted passage, Justice Scalia simply expressed his view that the Government had not presented sufficient evidence in the case to satisfy his interpretation of the statutory provision. *See Begay v. United States*, 553 U.S. 137, 153-54 (2008). Justice Scalia, however, never suggested that drunken driving does not show a disregard

3

for the rights of others or pose serious risks to public safety or constitute a serious crime; indeed, he acknowledged that "[d]runk driving is surely a national problem of great concern."

Finally, the *Binderup* court identified four factors that courts could consider in determining whether a crime was serious enough to disqualify an individual from owning a firearm. *Binderup*, 836 F.3d at 351-53. Judge Ambro indicated that a plaintiff's failure to meet his burden on even single factor could be fatal to his claim. *Id*. at 352. Even in his discussion of these four factors, plaintiff offers little to support his claim that his DUI conviction at the highest blood alcohol level was not a serious crime.

First, plaintiff argues that his DUI conviction is not a "serious" crime because it is only a misdemeanor and because it would not be the basis for stripping him of his right to bear arms under Pennsylvania law. Plaintiff's Brief at 17-18. But the *Binderup* court acknowledged that "some misdemeanors are . . . 'serious' offenses, *Binderup*, 836 F.3d at 351, *quoting Baldwin v. New York*, 399 U.S. 66, 70 (1970), and recognized that they may involve conduct more dangerous than many felonies. *Id*. Plaintiff's DUI was a misdemeanor in the first degree, which is punishable by up to five years in prison. Compl., ¶ 20. *See* 18 Pa. C. A. § 106(b)(6). The maximum punishment for a misdemeanor in the first degree is significantly greater than the maximum punishment for misdemeanors in the second or third degree in Pennsylvania and, as the *Binderup* court acknowledged, "the maximum possible punishment is certainly probative of a misdemeanor's seriousness." *Binderup*, 836 F.3d at 352. Moreover, other serious crimes - such as involuntary manslaughter, terroristic threats, and indecent assault - are also misdemeanors in the first degree in Pennsylvania. *See* Defendants' Initial Brief at 13. In short, misdemeanors

4

cover a wide range of crimes and the mere fact that Pennsylvania has labeled plaintiff's crime a misdemeanor does little to show that it is not "serious."

Furthermore, the fact that plaintiff's DUI conviction would not have barred him from owning a firearm under Pennsylvania law is irrelevant given that his DUI conviction would bar him from owning a firearm under federal law. 18 U.S.C. § 922(g)(1). Pennsylvania did not need to bar plaintiff from owning a firearm because he would already be barred from owning a firearm under federal law. Moreover, if Pennsylvania believed that plaintiff's DUI offense was not serious, it could have lessened the punishment for the second DUI or fully restored his civil rights and thereby eliminated any disability under federal law. 18 U.S.C. § 921(a)(20). It is telling that the *Binderup* court, in evaluating the seriousness of the challengers' crimes in that case, never considered whether state law independently disqualified them from owning a gun. *Binderup*, 836 F.3d at 350-53.

Second, plaintiff asserts that a DUI is not a crime of violence. *See* Plaintiff's Brief at 18. While Defendants admitted in their original brief that violence was not an element of plaintiff's DUI offense, there is no dispute that plaintiff's conduct endangered other motorists and had the potential to cause serious injury or death. *See* Defendant's Initial Brief at 13-14. Plaintiff was caught driving with a blood alcohol level of .223% - almost three times the legal limit in Pennsylvania. Compl., Exhibit B. His reckless behavior put the public at significant risk and it was a matter of pure luck that no one was injured. While violence was not an element of plaintiff's crime, there is no doubt that it could easily have been the result of his actions. An offense that can result in violence, including death and severe injury, certainly constitutes a "serious" crime, even if violence is not an element of the crime.

Third, plaintiff asserts that the punishment that he received as a result of his DUI conviction was not that all that significant and argues that it was "hardly severe" compared to the punishment received by the challengers in *Binderup*. *See* Plaintiff's Brief at 18-19. Plaintiff further asserts that his sentence to house arrest was "in essence" the same as the probation received by the challengers in *Binderup*. *Id*. at 19. Plaintiff is wrong.

In *Binderup*, one of the challengers was sentenced to three years of probation and a $300 fine while the other challenger had received a suspended sentence of 180 days imprisonment and a $500 fine. *Binderup*, 836 F.3d at 352. Here, in contrast, the court sentenced plaintiff to a term of imprisonment of not less than 90 days nor more than two years, imposed a fine of $1,500 and court costs, directed plaintiff to attend alcohol safety school, suspended plaintiff's driver's license for 18 months, and required the installation of an ignition interlock system on his car. Compl., Exhibit B.[2] Plaintiff's punishment, on its face, was significantly more severe than the punishment imposed on the challengers in *Binderup*.

Moreover, unlike the challengers in *Binderup*, plaintiff received a sentence of imprisonment and he was required to serve that sentence on house arrest. Compl., Exhibit B.[3] House arrest results in confinement and constitutes "a considerable restriction of liberty."

*McKenzie v. Attorney General of the United States*, 452 F. App'x 88, 91 (3d Cir. 2011). Contrary

---

[2] Plaintiff repeatedly asserts in his brief he was sentenced to only 90-days imprisonment. *See* Plaintiff's Brief at 3, 18, 19. In fact, as the sentencing document attached as an exhibit to his Complaint shows, plaintiff was sentenced to "not less than 90 days nor more than 2 years" imprisonment. Compl., Exhibit B. While plaintiff may have only served 90 days on house arrest – a matter the defendants take as true only for purposes of this motion – he was not sentenced to only 90 days imprisonment.

[3] House arrest is a "sentence which orders defendants confined to their own residences except for preapproved excursions for medical treatment, employment, performance of community service, and drug or alcohol, or both, treatment or counseling. House arrest may be combined with electronic monitoring to detect violations." 37 Pa Code § 451.2.

to plaintiff's assertion, house arrest is not "in essence" probation. Simply put, plaintiff's sentence was much more severe than the sentences received by the challengers in *Binderup* and further demonstrates that plaintiff's DUI conviction constituted a "serious" crime.

Fourth, plaintiff concedes that "there is a cross-jurisdictional consensus that DUI is a crime." Plaintiff's Brief at 20. Plaintiff asserts, however, that only two states – Massachusetts and Oklahoma - punish a second DUI with imprisonment of more than two years and that "the remaining states classify the second offense as punishable by imprisonment ranging from several days up to two years." *Id*. at 14. While plaintiff admits that his analysis may not be "exhaustive" and that the driver's blood alcohol level affects the punishment in many states, he argues that most states "do not view a second DUI as a major offense." *Id*.

Plaintiff's analysis is clearly not "exhaustive" because plaintiff's DUI conviction in 2004 was punishable by up to five years in prison in Pennsylvania. 38 Pa. C.S.A. §§ 3802(c), 3803(b)(4); 18 Pa. C.S.A. § 106(b)(6). As defendants set forth in their original brief, plaintiff's specific DUI offense would be punishable by more than a year in prison in approximately 14 states and punishable by up to a year in prison in another 25 states. *See* National Highway Traffic Safety Administration (2017, June), *Digest of Impaired Driving and Selected Beverage Control Laws, 30th edition, Current as of December 31, 2017* (Report No. DOT HS 812 394), available at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/812394-digest-of-impaired-driving-and-selected-beverage-control-laws.pdf ("*NHTSA Digest of Driving Impaired Report*"). Thus, plaintiff's DUI would be punishable by up to a year (or more) in prison in approximately 40 states in addition to a variety of other penalties such as fines, required counseling, and loss of license. The significant penalties imposed by the overwhelming majority of states for a second

DUI at an elevated blood alcohol level hardly demonstrates that there is a cross-jurisdictional consensus that the plaintiff's crime is not a serious one.

Moreover, plaintiff offers no real argument to show that his DUI conviction was similar to the crimes for which the challengers in *Binderup* were convicted. In *Binderup*, one of the challengers was convicted of a consensual sexual relationship with a 17-year old that the *Binderup* court found "would have been legal in many states." *Binderup*, 386 F.3d at 352. The other challenger was convicted of carrying an unlicensed firearm. *Id*. While the *Binderup* court found that some states punished this offense as a serious crime, many other states did not and others did not required a specific credential to carry a concealed weapon. *Id*. Plaintiff's DUI offense stands in marked contrast to the offenses of the challengers in *Binderup*. Defendants' Initial Brief at 16-17.

In sum, plaintiff's repeat DUI at a highly elevated blood alcohol level is *not* the sort of "tame" or "technical" offense that qualifies as a non-serious crime. *Binderup*, 836 F.3d at 350 (citation omitted). By driving with a blood alcohol level of .223%, plaintiff demonstrated a reckless disregard for the public's safety. The court recognized the seriousness of the offense by imposing a significant sentence, including house arrest of not less than 90 days nor more the two years. The *Binderup* court stated that it would treat "any crime subject to § 922(g)(1) as disqualifying unless there is a *strong* reason to do otherwise." *Id*. at 351. (Emphasis added). There is no such "strong" reason here. Because he is cannot show that he was convicted of a non-serious crime, plaintiff has failed to meet his burden at step one and defendants' motion to dismiss should be granted. *Binderup*, 836 F.3d at 856.

## II.      SECTION 922(G)(1) SATISIFES INTERMEDIATE SCRUTINY AS APPLIED TO PLAINTIFF

Plaintiff concedes that the *Binderup* court determined that "intermediate scrutiny" is the appropriate level of analysis for an as-applied Second Amendment challenge. *See* Plaintiff's Brief at 22. Plaintiff also concedes that the Government can articulate a "substantial or important interest" served by Section 922(g)(1). *Id*. at 27. The only remaining issue at step two is whether there is a "reasonable fit" between Section 922(g)(1) and the Government's interest in protecting public safety.

To support their claim there is a "reasonable fit" between Section 922(g)(1) and the Government's interest in public safety, defendants attached five studies to their motion.[4] The first study directly addressed the primary issue in the step two analysis by showing that individuals with DUI convictions are far more likely than the general public to commit firearm-related or violent crimes. *See* Defendants' Initial Brief at 22-23 and Exhibit 1. The study noted that this finding was consistent with "many studies [that] have found that individuals with DUI conviction are more likely to engage in criminal activity of other types, including violent and weapon-related crimes." *Id*.

---

[4] Plaintiff argues that because defendants submitted several exhibits to support their claim that there was a "reasonable fit" between the Government's interest in public safety and Section 922(g)(1), the Court should convert the motion to a motion for summary judgment. *See* Plaintiff's Brief at 5-6. To the extent that such documents may not be considered on a motion to dismiss and to the extent that the Court reaches step two of the *Binderup* analysis, the Court could, as plaintiff suggests, convert this portion of the motion to a motion for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure. *Id*. If the Court does not find that plaintiff has failed to meet his burden at step one and determines that the materials submitted by defendants are insufficient to establish the absence of any genuine issue of material fact at step two, defendants reserve the right to take discovery and to submit additional materials, including expert testimony, to the Court so that they could, among other things, satisfy their burden at step two and show a "reasonable fit" between the Government's interest in public safety and the statute.

In an effort to try to minimize the study's findings, plaintiff notes that the study utilizes statistics from 1977 and was based on data from a single state. *See* Plaintiff's Brief at 23. In fact, the study tracked more than 4000 individuals who purchased handguns in 1977 in California and tracked them through 1991, a fourteen year period. While, like any study, there are limitations to this study, it provides clear and direct evidence for the proposition that repeat DUI offenders, like plaintiff, are more likely to commit firearm-related crimes and thus provides substantial support for legislation prohibiting such individuals from having guns.

Plaintiff also asserts, without any explanation, that "[c]orrelation does not imply causation." Plaintiff's Brief at 23. Plaintiff does not clarify how this assertion is relevant to this motion or why it might demonstrate the lack of a "reasonable fit." While it is certainly true that correlation does not necessarily show causation, it is well-established that Congress is not limited to legislating only in instances where it has definitive proof of causation but instead may rely on correlational evidence. *See City of Los Angeles v. Alameda Books, Inc*., 535 U.S. 425, 436 (2002) (finding that a municipality opposing a First Amendment challenge could reasonably rely on study showing correlation between crime patterns and concentration of adult businesses); *United States v. Carter*, 750 F.3d 462, 469 (4th Cir. 2014) (holding that Government need not prove causal link but may regulate based on "correlational evidence").

In addition to this study, defendants attached a study showing that repeat DUI offenders "have high rates of drug and alcohol abuse and other psychiatric disorders" and another study finding that repeat DUI offenders have been found to exhibit a high lifetime level of alcohol abuse. Defendant's Initial Brief at 23, Exhibits 2 and 3. Defendants cited another study finding a "strong association between alcohol and violent behavior" and still another study showing that

10

alcohol consumption can impair a person's ability to handle a gun. *Id*., Exhibits 4 and 5. Taken together, these studies demonstrate that repeat DUI offenders have high rates of alcohol abuse and that alcohol abuse can lead to violent behavior and impair a person's ability to handle a gun. Because of the risks associated with repeat DUI offenders, there is a "reasonable fit" between Congress' interest in protecting public safety and the statute denying repeat DUI offenders, like plaintiff, the right to own to gun.

Plaintiff does not address these basic points directly. Instead, he tries to raise other issues with the studies, most of which are largely beside the point. For example, plaintiff states that the second study found that federal law and most state laws do not bar alcohol abusers from acquiring firearms. *See* Plaintiff's Brief at 23.While that may be true, it does not address the study's unsurprising conclusion that repeat DUI offenders have high rates of drug and alcohol abuse. In other instances, plaintiff notes that the study called for additional research on the topic. *See* Plaintiff's Brief at 24-25. The fact that additional research on a topic may be useful, however, does not undermine the findings in the studies. Congress is not barred from enacting legislation until there is no more research left to be done on a topic.

Finally, plaintiff tries to attack the studies by claiming that they do not specifically apply to him. For example, he claims that the fifth study – which found that alcohol consumption can significantly impair a person's ability to handle a gun - is irrelevant because plaintiff is not currently consuming alcohol or shooting a gun. The problem is that individuals with repeat DUIs are more likely to have high rates of alcohol abuse and thus, if plaintiff acquired a gun, he may be significantly more likely to be impaired when handling the gun. Congress could reasonably

decide that this was a risk that it was unwilling to take for the category of offenders of which plaintiff is a part.

Under intermediate scrutiny, the Government must only demonstrate a "reasonable fit" between the interest the Government is trying to protect and the challenged law. *Drake v. Filko*, 724 F.3d at 426, 436 (3d Cir. 2013). The statute need not be the "least restrictive means" of serving the Government's interest. *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010). *See also United States v. Staten*, 666 F.3d 154, 167 (4th Cir. 2011) (noting that while Section 922(g)(9) "may be somewhat over-inclusive given that every domestic violence misdemeanant would not necessarily misuse a firearm . . . this observation merely suggests that the fit is not perfect. Intermediate scrutiny does not require a perfect fit; rather only a reasonable one"). In enacting statutes, legislatures must often make "deductions and inferences for which complete empirical support may not be available" and the Supreme Court has held that its policymaking judgments are entitled to "substantial deference." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994). As these studies show, there is a "reasonable fit" between the Government's interest in protecting public safety and Section 922(g)(1), which prohibits people like plaintiff from owning a gun.

## **CONCLUSION**

For all the reasons set forth above and in their opening brief, defendants, Jefferson B. Sessions, III, Attorney General of the United States of America, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, Christopher Wray, Director, Federal Bureau of Investigation, and the United States of America, respectfully request that plaintiff's Complaint be dismissed.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

/s/ Margaret L. Hutchinson
MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division

/s/ Richard Mentzinger, Jr.
RICHARD MENTZINGER, JR.
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
TEL:  (215) 861-8316
FAX:   (215) 861-8618
rick.mentzinger@usdoj.gov

Dated: October 24, 2017

<u>**CERTIFICATE OF SERVICE**</u>

I, hereby certify that, on the 24th day of October, 2017, I caused a copy of the foregoing

Defendants' Motion to Dismiss the Complaint to be served by first class mail, postage prepaid

and by the Electronic Case Filing System upon:

> Adam Kraut, Esq.
> Joshua Prince, Esq.
> Prince Law Offices, P.C.
> 646 Lenape Road
> Bechtelsville, PA 19505

/s/ Richard Mentzinger, Jr.
RICHARD MENTZINGER, JR.
Assistant United States Attorney
