## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | Honorable Robert F. Kelly |
| | : | |
| **JEFFERSON B. SESSIONS III,** *et al.* | : | |
| | : | |
| Defendants | : | |

### Exhibit List to Plaintiff's Reply Brief in Support of His Motion for Summary Judgment

**Exhibit A**:  Binderup Motion to Dismiss or, in the Alternative, for Summary Judgment

**Exhibit B**:  Suarez Motion to Dismiss or, in the Alternative, for Summary Judgment

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DANIEL BINDERUP, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | Case No. 5:13-cv-06750-JKG |
| ERIC H. HOLDER, JR., | ) | |
| **Attorney General of the** | ) | |
| **United States <u>et al.</u>,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO DISMISS
## OR FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56, Defendants Eric H. Holder, Jr., and B. Todd

Jones ("Defendants")  hereby move this Court to dismiss Plaintiff's Complaint, or, in the

alternative, for entry of summary judgment in favor of Defendants.  This motion is accompanied

by a memorandum of law, incorporated herein, stating the authorities on which Defendants rely

in support of this motion.

Dated:  February 20, 2014                    Respectfully submitted,

Of Counsel                                   STUART F. DELERY
                                             Assistant Attorney General
ZANE DAVID MEMEGER
United States Attorney

                                               /s/ Daniel Riess
                                             DIANE KELLEHER
ANNETTA FOSTER GIVHAN                         Assistant Branch Director
Assistant United States Attorney             DANIEL RIESS
615 Chestnut Street                          LESLEY FARBY
Suite 1250                                   Trial Attorneys
Philadelphia, Pennsylvania 19106             U.S. Department of Justice
(215) 861-8319                               Civil Division, Rm. 6122
Annetta.givhan@usdoj.gov                     20 Massachusetts Avenue, NW
                                             Washington, D.C. 20530

Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL BINDERUP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Case No. 5:13-cv-06750-JKG** |
| **ERIC H. HOLDER, JR.,** | ) | |
| **Attorney General of the** | ) | |
| **United States <u>et al.</u>,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

# MEMORANDUM IN SUPPORT OF DEFENDANTS'
# <u>MOTION TO DISMISS OR FOR SUMMARY JUDGMENT</u>

Case 5:16-cv-06750-JKG   Document 11   Filed 01/20/17   Page 4 of 31

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATUTORY BACKGROUND ...........................................................................1

FACTUAL BACKGROUND.................................................................................2

ARGUMENT .........................................................................................................3

I.    Plaintiff's Conviction for Misdemeanor Corruption of a Minor Was
      Punishable by a Term of Imprisonment Exceeding Two Years and
      Therefore Is Properly the Basis for a Firearms Disability Under
      18 U.S.C. § 922(g)(1) ..................................................................................4

II.   As Applied to Plaintiff, 18 U.S.C. § 922(g)(1) Does Not Violate
      the Second Amendment ................................................................................6

      A.    Disarming Plaintiff Is Consistent with the Scope of the
            Second Amendment as Understood at the Adoption of the
            Bill of Rights......................................................................................7

      B.    In Any Event, As Applied to Plaintiff, 18 U.S.C. § 922(g)(1)
            Substantially Relates to the Important Governmental Interest
            In Protecting Public Safety and Combating Violent Crime..................11

CONCLUSION....................................................................................................24

i

## INTRODUCTION

The Gun Control Act of 1968 prohibits individuals convicted of crimes punishable by imprisonment for a term of more than one year from possessing firearms. 18 U.S.C. § 922(g)(1). In 1998, Pennsylvania convicted Plaintiff of corruption of a minor, a crime that carries a maximum statutory penalty of 5 years imprisonment. Plaintiff now contends that he is entitled to possess a firearm notwithstanding 18 U.S.C. § 922(g)(1), arguing that the statute does not encompass his conviction or, alternatively, that Section 922(g)(1) violates the Second Amendment as applied to him. Neither argument has merit. First, Plaintiff's crime was punishable by a term of imprisonment exceeding two years, so he falls squarely within the scope of Section 922(g)(1). Second, Plaintiff's constitutional challenge to the statute is unavailing. Section 922(g)(1) applies solely to persons with prior criminal convictions; it does not implicate the Second Amendment's protection of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," Dist. of Columbia v. Heller, 554 U.S. 570, 635, 128 S.Ct. 2783, 2821, 171 L.Ed.2d 637 (2008). In any event, even if Plaintiff's challenge to the statute did implicate the Second Amendment, prohibiting possession of firearms by a person who has been convicted of predatory sexual conduct with a minor substantially relates to the important government interest in combating violent crime and preserving public safety. Accordingly, the Court should dismiss this action, or enter summary judgment for Defendants.

## STATUTORY BACKGROUND

In 1961, Congress amended the Federal Firearms Act of 1938, 15 U.S.C. §§ 901 et seq., to prohibit "any person . . . convicted of a crime punishable by imprisonment for a term exceeding one year" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." See An Act to Strengthen the Federal Firearms

1

Act, Pub. L. No. 87-342, 75 Stat. 757 (1961); H.R. Rep. No. 87-1202 (1961), at 4-5. Congress introduced the amendment at the specific request of the Attorney General as "an integral part of an anticrime legislative program" in response to the "exploding crime rate" of recent years. H.R. Rep. No. 87-1202, at 2. Its purpose was to "better assist local authorities in the common assault on crime" and to "make it more difficult for the criminal element of our society to obtain firearms." Id. The Gun Control Act of 1968, as amended, 18 U.S.C. § 921 et seq., additionally prohibited individuals convicted of a crime punishable by imprisonment for over one year from "possess[ing] in or affecting commerce, any firearm or ammunition." Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, 1220-21 (1968). These prohibitions are codified at 18 U.S.C. § 922(g)(1).

Excluded from "[t]he term 'crime punishable by imprisonment for a term exceeding one year'" are "State offense[s] classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B). Also excluded is "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Id. § 921(a)(20).[1]

## FACTUAL BACKGROUND

On or around June 1996, when Plaintiff was 41 years of age, Plaintiff engaged in indecent contact and sexual intercourse with his employee, who was 17 years of age. See Affid. of Prob. Cause, Police Crim. Compl., No. 4127-1997, Pennsylvania v. Binderup (attached as Ex.

---

[1] Congress also excluded from the statutory term "crime punishable by imprisonment for a term exceeding one year" any "Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A).

1). The unlawful conduct between Plaintiff and his employee continued until August 1997. Id. Plaintiff was aware of his employee's underage status at the time of the unlawful conduct. Id. On July 15, 1998, Plaintiff pleaded guilty in the Court of Common Pleas of Lancaster County, Pennsylvania to violating 18 Pennsylvania Consolidated Statutes § 6301, Corruption of Minors, a first-degree misdemeanor punishable by up to five years' imprisonment. See Sentencing Order and Guilty Plea, No. 4127-1887 (attached as Ex. 2).[2] Section 6301 provides in relevant part: "[W]hoever, being the age of 18 years and upwards, by any act corrupts the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree." 18 Pa.C.S.A. § 6301(a)(1)(i). Pennsylvania law includes three degrees of misdemeanors, and a person convicted of a misdemeanor of the first degree "may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than . . . [f]ive years." Id. § 1104. Plaintiff was sentenced to three years' probation, and fined $300, plus court costs and restitution. See Ex. 2.

## ARGUMENT

**I.      Plaintiff's Conviction for Misdemeanor Corruption of a Minor Was Punishable by a Term of Imprisonment Exceeding Two Years and Therefore Is Properly the Basis for a Firearms Disability Under 18 U.S.C. § 922(g)(1).**

In Count I, Plaintiff seeks declaratory and injunctive relief barring Defendants from enforcing 18 U.S.C. § 922(g)(1) against him based on his misdemeanor conviction under 18 Pa.C.S.A. § 6301, Corruption of Minors. Plaintiff expressly concedes that he was convicted of a first-degree misdemeanor in Pennsylvania, which is "punishable by up to five years'

---

[2] Exhibits 1 and 2 have been redacted pursuant to Local Civil Rule 5.1.3.

imprisonment." Compl. ¶¶ 7, 8. Plaintiff contends, however, that this conviction cannot be the

basis for a firearms disability under 18 U.S.C. § 922(g)(1) because, he argues, it is a

misdemeanor "punishable by a term of imprisonment of two years or less," 18 U.S.C.

§ 921(a)(20)(B), as demonstrated by the fact that his own individual punishment did not include

any term of imprisonment. Compl. ¶ 27.

   Plaintiff's contention that the applicability of the firearms disability in 18 U.S.C.

§ 922(g)(1) depends on the sentence *actually imposed* rather than the maximum potential

sentence applicable to the underlying state court conviction has been rejected by every court to

consider it, including the Third Circuit in a case that squarely controls the outcome here. In

United States v. Essig, the court held that a conviction under the precise statute at issue here, 18

Pa.C.S.A. § 6301, fell within the scope of 18 U.S.C. § 922(g)(1), notwithstanding the fact that

the petitioner in that case was only sentenced to probation with no prison term. 10 F.3d 968,

972-73 (3d Cir. 1993), *superseded on other grounds*. The defendant in that case had similarly

argued that "the term 'punishable' in § 921(a)(20) means actually 'punished' by a year or more

of incarceration." Id. at 972. The court explicitly rejected the argument that "federal law does

not deprive a convict of his right to possess a firearm unless his sentence actually imposed a

prison term of the required length," noting that "the Supreme Court has clearly established that it

is the potential sentence that controls and not the one actually imposed." Id. at 973 (citing

Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 113, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983)).

See also United States v. Leuschen, 395 F.3d 155, 158 (3d Cir. 2005) ("[T]he only qualification

imposed by § 922(g)(1) is that the predicate conviction carry a *potential* sentence of greater than

4

one year of imprisonment.") (emphasis added).  There is no basis for distinguishing Plaintiff's argument here from the one rejected in Essig.[3]

Because Plaintiff was convicted of a first-degree misdemeanor punishable by up to five years' imprisonment, he falls squarely within the ambit of Section 922(g)(1), and does not qualify for the statutory exception set forth in Section 921(a)(20)(B).[4]  The Court should therefore dismiss Count I.

---

[3] Other courts have consistently rejected this argument as well.  See, e.g., Schrader v. Holder, 704 F.3d 980, 986 (D.C. Cir. 2013) ("Because common-law offenses carry no statutory maximum term of imprisonment, they are capable of being punished by a term of imprisonment exceeding one year and thus fall within section 922(g)(1)'s purview.  And because such offenses are also capable of being punished by more than two years' imprisonment, they are ineligible for section 921(a)(20)(B)'s misdemeanor exception."), cert. denied, 134 S.Ct. 512, 187 L.Ed.2d 365 (2013); United States v. Coleman, 158 F.3d 199, 203-04 (4th Cir. 1998) (en banc) ("We believe that the statutory language of § 921(a)(20)(B) unambiguously indicates that the critical inquiry in determining whether a state offense fits within the misdemeanor exception is whether the offense is 'punishable' by a term of imprisonment greater than two years – not whether the offense 'was punished' by such a term of imprisonment."); United States v. Horodner, 992 F.2d 191, 194 (9th Cir. 1993) ("Whether Horodner was a felon under 18 U.S.C. § 922(g)(1) depends on whether either of his state convictions was *punishable* by more than one year in prison.") (citing Dickerson, 460 U.S. at 113, 103 S.Ct. at 992) (emphasis in original).

[4] Plaintiff does not allege that he falls within Section 921(a)(20)'s exception for a "conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored."  In any event, any such argument would be foreclosed by Third Circuit precedent.  That court, like many of its sister courts of appeals, has held that the "civil rights" referred to in this provision are the right to vote, the right to seek and hold public office, and the right to sit on a jury.  Essig, 10 F.3d at 975.  Under Pennsylvania law, a citizen may not serve on a jury if he or she "has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor."  42 Pa.C.S.A. § 4502(a)(3).  Because Plaintiff remains ineligible for jury service by virtue of his conviction, his civil rights have not been restored, and he does not fall within this statutory exception.  See Essig, 10 F.3d at 975-76.  Furthermore, the fact that Pennsylvania law no longer restricts Plaintiff from owning or possessing firearms has no bearing on the applicability of the exception in Section 921(a)(20).  See Leuschen, 395 F.3d at 160 ("The absence of firearms restrictions . . . becomes relevant only if the convict's core civil rights have been restored. . . . If the defendant 'has not had civil rights restored,' it simply does not matter what the state law provides concerning possession of firearms.") (citations omitted).

## II.  As Applied to Plaintiff, 18 U.S.C. § 922(g)(1) Does Not Violate the Second Amendment.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.  In Heller, after determining that the Second Amendment conferred an individual right to keep and bear arms, 554 U.S. at 595, 128 S.Ct. at 2799, the Supreme Court held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self defense."  Id. at 635, 128 S.Ct. at 2821-22.  The Court's holding was narrow, and addressed only the "core" right of "*law-abiding*, *responsible* citizens to use arms in defense of hearth and home."  Id. at 634-35 (emphasis added).

Like other constitutional rights, the right to keep and bear arms is "not unlimited." Heller, 554 U.S. at 626, 128 S.Ct. at 2816.  Although the Supreme Court declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it cautioned that "*nothing* in [its] opinion *should be taken to cast doubt* on *longstanding prohibitions on the possession of firearms by felons* . . . ."  Id. at 626-27, 128 S.Ct. at 2816-17 (emphasis added); see also id. at 627 n.26, 128 S.Ct. at 2817 n.26 (describing such "regulatory measures" as "presumptively lawful").

Applying Heller, the Third Circuit in United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), established a two-pronged approach for courts in this Circuit to apply when analyzing Second Amendment challenges: "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.  If it does not, our inquiry is complete.  If it does, we evaluate the law under some form of means-end scrutiny.  If

the law passes muster under that standard, it is constitutional.  If it fails, it is invalid."  Id. at 89

(internal citation and footnote omitted).

As the Third Circuit has recognized, the challenged law proscribes activity that falls

outside the scope of the Second Amendment's protections.  See id. at 92 ("[T]he Second

Amendment affords no protection for . . . possession by felons and the mentally ill[.]").  In any

event, as applied to Plaintiff, the law relates substantially to the compelling governmental

interests in combating violent crime and protecting public safety, and is therefore constitutional.

**A.      Disarming Plaintiff Is Consistent with the Scope of the Second
          Amendment as Understood at the Adoption of the Bill of Rights.**

In Robertson v. Baldwin, 165 U.S. 275, 281, 17 S.Ct. 326, 329, 41 L.Ed. 715 (1897), the

Supreme Court declared it to be "perfectly well settled" that the Bill of Rights embodies "certain

guaranties and immunities which we had inherited from our English ancestors, and which had,

from time immemorial, been subject to certain well-recognized exceptions, arising from the

necessities of the case."  And "[i]n incorporating these principles into the fundamental law, there

was no intention of disregarding the exceptions, which continued to be recognized as if they had

been formally expressed."  Id.  This principle governs here.  The Third Circuit has explained that

if the Second Amendment "codified a pre-existing right to bear arms," and if that right "as

commonly understood at the time of ratification did not bar restrictions on possession by felons

or the mentally ill, it follows that by constitutionalizing this understanding, the Second

Amendment carved out these limitations from the right."  Marzzarella, 614 F.3d at 91.  And

though "exclusions [from the right to bear arms] need not mirror limits that were on the books in

1791," when the Second Amendment was enacted, United States v. Skoien, 614 F.3d 638, 641

(7th Cir. 2010) (en banc), nevertheless, the Supreme Court's acknowledgment in Heller that

Congress has the authority to disarm individuals convicted of serious crimes is consistent with the history of the right to arms as it developed in England and the American colonies.

Heller identified the right protected by the 1689 English Declaration of Rights as "the predecessor of our Second Amendment." 554 U.S. at 593, 128 S.Ct. at 2798. This document provided: "That the subjects which are Protestants may have arms for their defense suitable to their conditions and *as allowed by law*." Id. (quoting 1 W. & M., c. 2, § 7, in 3 Eng. Stat. at Large 441 (1689)) (emphasis added). It is undisputed that, both before and after its adoption, the English government retained the power to disarm individuals it viewed as dangerous.[5]

Most significantly for present purposes, the English Declaration of Rights did not repeal the 1662 Militia Act, which authorized lieutenants of the militia (appointed by the King) to disarm "any person or persons" judged "*dangerous to the Peace of the Kingdome*." 13 & 14 Car. 2, c. 3, § 1 (1662) (Eng.) (emphasis added). Such persons included persons convicted of a crime. Joyce Lee Malcolm, for example – whose commentary was cited in Heller, see 554 U.S. at 592-93, 128 S.Ct. at 2798 – notes that a Nottinghamshire laborer was bound "not to shoot again for seven years" after a misdemeanor conviction for "shooting with hailshot." Joyce Lee Malcolm, To Keep and Bear Arms 10 (1994). As for those caught committing more serious crimes, forfeiture of firearms was apparently a given. English criminal law was notoriously harsh, prescribing both forfeiture of all property (including, presumably, any firearms) and, frequently, execution for the innumerable crimes designated as felonies. 4 William Blackstone, Commentaries on the Laws of England 95 (1769) (felonies "subject the committers of them to forfeitures"), id. at 384 (same); id. at 18 (counting 160 acts "to be felonies without benefit of

---

[5] By providing that Protestants could have arms "suitable to their conditions" and "as allowed by law," the Bill of Rights apparently provided only a small minority of upper-class Protestants a right to arms. Lois Schwoerer, To Hold and Bear Arms: The English Perspective, 76 Chicago-Kent L. Rev. 27, 47-48, 59 (2000).

clergy," i.e., "worthy of instant death"). "The practice of subjecting felons to literal or 'civic'

death - in which the person's legal existence was destroyed - continued in early America."

United States v. Tooley, 717 F. Supp. 2d 580, 590 (S.D. W.Va. 2010) (citation omitted), aff'd,

468 F. App'x 357, cert. denied, 133 S.Ct. 212, 184 L.Ed.2d 109 (2012).

The documentary record surrounding the adoption of the Constitution confirms that the

right to keep and bear arms was limited to "law-abiding and responsible" citizens. "[M]ost

scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a

virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'"

United States v. Yancey, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam) (citations omitted).

"[I]t is clear that the colonists, at least in some manner, carried on the English tradition of

disarming those viewed as 'disaffected and dangerous.'" Tooley, 717 F. Supp. 2d at 590.

Indeed, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not

extend this right to persons convicted of crime." Skoien, 614 F.3d at 640.[6]

---

[6] Notably, "Heller identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents," which "asserted that citizens have a personal right to bear arms "*unless for crimes committed*, or real danger of public injury." Skoien, 614 F.3d at 640 (quoting Heller, 554 U.S. at 604, 128 S.Ct. at 2804; 2 Bernard Schwartz, The Bill of Rights 662, 665 (1971) (emphasis added)). This proposal demonstrates that, at the time the Constitution was adopted, even ardent supporters of guaranteeing an individual right to keep and bear arms recognized that criminals and other dangerous individuals should not enjoy its benefits. Although the Second Amendment itself proved more "succinct[ ]" than the Pennsylvania proposal, Heller, 554 U.S. at 659, 128 S.Ct. at 2835 (Stevens, J., dissenting), the latter remains probative of how the Amendment's supporters viewed the balance between public security and the right to keep and bear arms. See Heller, 554 U.S. at 605, 128 S.Ct. at 2804 (reaffirming that "the Bill of Rights codified venerable, widely understood liberties"); see also Stephen P. Halbrook, The Founders' Second Amendment 273 (2008) (concluding that the Second Amendment did not need to contain "an explicit exclusion of criminals from the individual right to keep and bear arms, because this . . . was understood"); Tooley, 717 F. Supp. 2d at 591 ("Acceptance of the 'virtuous citizen' historical understanding of the right to firearms would explain why the Second Amendment itself does not contain specific exclusions to the right.").

Given this context, it is important to recognize that one crime punishable under early English criminal law was carnal knowledge of a female under a particular age, regardless of the female's consent. A 1576 statute provided: "[I]f any person shall unlawfully and carnally know any woman child under the age of ten years, every such unlawful and carnal knowledge shall be felony, and the offender thereof being duly convicted shall suffer as a felon without allowance of clergy." Mortimer Levine, A More Than Ordinary Case of "Rape," 13 and 14 Elizabeth I, 7 Am. J. Legal Hist. 159, 163 (1963) (quoting 18 Elizabeth c. 7 (1576)); see also 5 Blackstone's Commentaries 212 (St. George Tucker ed. 1803) (under this statute, "the consent or non-consent [of the victim] is immaterial"). This statute formed part of the common law originally brought to the United States. See Michael M. v. Superior Ct. of Sonoma Cty., 450 U.S. 464, 494 n.9, 101 S.Ct. 1200, 1218 n.9, 67 L.Ed.2d 437 (1981) (Brennan, J., dissenting); Nider v. Commonwealth, 131 S.W. 1024, 1026, 140 Ky. 684 (Ky. 1910).[7]

_____

Nor was the Pennsylvania proposal an aberration. In Massachusetts, Samuel Adams offered a similar amendment at the ratifying convention, recommending "that the said Constitution be never construed to authorize Congress … to prevent the people of the United States who are *peaceable* citizens, from keeping their own arms." Schwartz, The Bill of Rights, at 674-75, 681 (emphasis added). Although not identical to the Pennsylvania proposal, this formulation likewise reflected an understanding that arms could be denied to those whose inability to control their behavior threatened public safety.

[7] Plaintiff may contend that this fact is irrelevant because the minor involved in Plaintiff's crime was not under ten years of age. However, that is not the point for which this statute is cited. Rather, the statute shows that, to the extent that a historical analysis is relevant here, the nature of the conduct for which Plaintiff was convicted would have been recognized during the Founding Era as punishable by criminal sanctions. And given the significant discretion afforded to legislatures in prescribing age-of-consent laws, the law under which Plaintiff was convicted represents a difference in degree, not in kind. See Nider, 131 S.W. at 1026 ("It will thus be seen that our statute upon the subject is merely a recognition of the common law of offense, which it has modified by changing the age of consent from 10 to 16, and fixing the penalty at confinement in the penitentiary in place of death.").

In short, historical scholarship demonstrates that, in both England and the colonies, governments could and did disarm people they perceived as dangerous. Accordingly, the historical record regarding the right to keep and bear arms provides no basis for deviating from Heller's conclusion that laws disarming convicted criminals are "permissible" under the Second Amendment. See Ezell v. City of Chi., 651 F.3d 684, 702-03 (7th Cir. 2011) (explaining that if "a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood [in 1791] then the analysis can stop there.").[8] Because 18 U.S.C. § 922(g)(1) does not implicate a right protected by the Second Amendment, the Court's inquiry should end at the first step of Marzzarella's two-step inquiry.

**B.    In Any Event, As Applied to Plaintiff, 18 U.S.C. § 922(g)(1) Substantially Relates to the Important Governmental Interest in Protecting Public Safety and Combating Violent Crime.**

If the Court does proceed to the second step of Marzzarella to apply means-end scrutiny, it should still uphold 18 U.S.C. § 922(g)(1) as applied to Plaintiff. The Third Circuit has applied intermediate scrutiny to regulations that do not implicate "the core of the [Second] Amendment," Marzzarella, 724 F.3d at 436, i.e., "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635, 128 S. Ct. at 2821, 171 L.Ed.2d 637.

---

[8] Moreover, in prohibiting persons such as Plaintiff from exercising a constitutional right, "the Second Amendment is not unique; felony convictions trigger a number of disabilities, many of which impact fundamental constitutional rights." United States v. Barton, 633 F.3d 168, 175 (3d Cir. 2011) (citing McKune v. Lile, 536 U.S. 24, 38, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)) ("[L]awful conviction and incarceration necessarily place limitations on the exercise of a defendant's privilege against self-incrimination."); Jones v. Helms, 452 U.S. 412, 419, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981) (upholding restrictions on an offender's fundamental right to travel); Richardson v. Ramirez, 418 U.S. 24, 54–56, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) (upholding a state disenfranchisement law based on criminal conviction); and D.C. Code § 49–401 (prohibiting "persons committed of any infamous crime" from serving in a militia)); see also Pa.C.S.A. § 4502(a)(3) (prohibiting a person from serving on a jury if he or she "has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor").

Other courts have likewise applied intermediate scrutiny in assessing as-applied challenges to statutes including Section 922(g)(1). See, e.g., United States v. Williams, 616 F.3d 685, 692 (7th Cir. 2010); see also Skoien, 614 F.3d at 641 (applying intermediate scrutiny in evaluating constitutional challenge to 18 U.S.C. § 922(g)(9), prohibiting any person convicted of a "misdemeanor crime of domestic violence" from possessing firearms); Schrader, 704 F.3d at 988-89 (applying intermediate scrutiny in evaluating constitutionality of Section 922(g)(1) as applied to common-law misdemeanants).

To satisfy intermediate scrutiny, "a statutory classification must be substantially related to an important governmental objective." Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). There can be little doubt that an important government interest is at stake here. Section 922(g)(1) was enacted to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." United States v. Small, 544 U.S. 385, 393, 125 S.Ct. 1752, 1758, 161 L.Ed.2d 651 (2005) (citation and internal punctuation omitted); Burrell v. United States, 384 F.3d 22, 27 (2d Cir. 2004) (Section 922(g)(1) "was one of several measures enacted by Congress to 'prohibit [ ] categories of presumptively dangerous persons from possessing firearms'") (quoting Lewis v. United States, 445 U.S. 55, 64, 100 S.Ct. 915, 920, 63 L.Ed.2d 198 (1980)).

Protecting public safety and combating crime are well-established *compelling* governmental interests. See United States v. Salerno, 481 U.S. 739, 748-50, 107 S.Ct. 2095, 2102-03, 95 L.Ed.2d 697 (1987) (noting that the Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest" and that the government's "general interest in preventing crime is compelling"); Schall v. Martin, 467 U.S. 253, 264, 104 S. Ct. 2403, 2410, 81

L.Ed.2d 207 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citation and internal punctuation omitted).

Several factors are relevant to the Court's application of intermediate scrutiny. First, the degree of fit between the challenged law and the governmental interest it serves need only be "reasonable." Drake v. Filko, 724 F.3d 426, 436 (3d Cir. 2013). Second, "[w]hen reviewing the constitutionality of statutes, courts 'accord substantial deference to the legislature's predictive judgments.'" Id. at 436-37 (quoting Turner Broad. Sys. v. FCC, 520 U.S. 180, 195, 117 S. Ct. 1174, 137 L.Ed.2d 369 (1997)) (internal punctuation omitted). Third, as the Supreme Court has noted, the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments varies up or down with the novelty and plausibility of the justification raised." Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 391, 120 S.Ct. 897, 906, 145 L.Ed.2d 886 (2000).

Recidivism is a "reality" that legislatures need not ignore. Samson v. California, 547 U.S. 843, 849, 126 S.Ct. 2193, 2198, 165 L.Ed.2d 250 (2006). Thus, relatively little empirical evidence should be required to satisfy intermediate scrutiny in this case. Nevertheless, the empirical evidence shows a substantial relationship between Section 922(g)(1) as applied to convicted criminals such as Plaintiff and Congress's goals of protecting public safety and combating violent crime. As the Third Circuit has recognized: "It is well-established that felons are more likely to commit violent crimes than are other law-abiding citizens." Barton, 633 F.3d at 175 (citing Bureau of Justice Statistics, Recidivism of Prisoners Released in 2004, at 6 (2002), finding that within a population of 234,358 federal inmates released in 1994, the rates of arrest for homicides were 53 times that the national average). Convicted offenders as a group – including those convicted of crimes that did not involve violence – present a significant risk of

recidivism for violent crime. A study of 210,886 nonviolent offenders released in 1994 from prisons in 15 States demonstrated that approximately 1 in 5 offenders was rearrested for violent offenses within three years of his or her release. See Bureau of Justice Statistics Fact Sheet, Profile of Nonviolent Offenders Exiting State Prisons, Table 11 (Oct. 2004) (attached as Ex. 3). See also Kaemmerling v. Lappin, 553 F.3d 669, 683 (D.C. Cir. 2008) ("Other courts . . . have observed that nonviolent offenders not only have a higher recidivism rate than the general population, but certain groups – such as property offenders – have a higher recidivism rate than violent offenders, and a *large percentage of the crimes nonviolent recidivists later commit are violent*.") (emphasis added) (citing cases); Yancey, 621 F.3d at 685 ("[M]ost felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use.") (citation omitted); Mona A. Wright et al., Effectiveness of Denial of Handgun Purchase to Persons Believed to Be at High Risk for Firearm Violence, 89 Am. J. of Public Health 88, 89 (1999) (concluding, based on a study of handgun purchases denied as a result of a prior conviction or arrest for a crime punishable by imprisonment or death, that "denial of handgun purchase is associated with a reduction in risk for later criminal activity of approximately 20% and 30%") (attached as Ex. 4).

Individuals convicted of statutory rape as a class are also much more likely than the general population to commit future crimes. See Pennsylvania Dep't of Corrections, Recidivism Report 2013 at 20-21 (50% of individuals released from Pennsylvania state prison for statutory rape were rearrested or reincarcerated for another crime – not necessarily statutory rape – within three years);[9] Lisa L. Sample & Timothy L. Bray, Are Sex Offenders Different? An Examination of

---

[9] *Available at*
http://www.cor.state.pa.us/portal/server.pt/community/research___statistics/10669/reports/10699

14

Rearrest Patterns, 17 Crim. Just. Pol'y Rev. 83, 93 (2006) (37.4% of sex offender arrestees –
including but not limited to individuals arrested for statutory rape – in Illinois between 1990 and
1997 whose victims were between 13-18 years of age were rearrested within 5 years);[10]
Delaware Office of Management & Budget Statistical Analysis Center, Recidivism of Delaware
Adult Sex Offenders Released from Prison in 2001 (July 2007), at 11 (90.9% of statutory rapists
released from prison in Delaware in 2001 were rearrested for a new crime or violation of
probation or parole within 3 years, 45.5% for a felony offense);[11] Tennessee Bureau of
Investigation, Crime Statistics Unit, Recidivism Study (Aug. 17, 2007), at 5 (highest rearrest
rates of sex offenders released from Tennessee jails and prisons in 2001 were statutory rapists,
with a rearrest rate of 30.7%);[12] U.S. Dep't of Justice, Office of Justice Programs, Bureau of
Justice Statistics Special Report: Recidivism of Prisoners Released in 1994, at 8 tbl. 9, 15 (41.4%
of people released from prison for "other sexual assault" – which includes (1) forcible or violent
sexual acts not involving intercourse with an adult or minor, (2) nonforcible sexual acts with a
minor (such as statutory rape or incest with a minor), and (3) nonforcible sexual acts with
someone unable to give legal or factual consent because of mental or physical defect or
intoxication – were re-arrested within 3 years).[13]

Especially given the "substantial deference" afforded to "predictive judgments" made by
Congress in order to advance these interests, Turner Broad. Sys., 512 U.S. at 665, 114 S. Ct. at
2470, this data establishes that 18 U.S.C. § 922(g)(1) satisfies intermediate scrutiny as applied to

---

[10] *Available at* http://cjp.sagepub.com/content/17/1/83.full.pdf.

[11] *Available at* http://cjc.delaware.gov/sac/publications/documents/recidivism_adult_2007.pdf.

[12] *Available at*
http://www.tbi.tn.gov/tn_crime_stats/publications/SexOffenderRecidivism2007.pdf.

[13] *Available at* http://www.bjs.gov/content/pub/pdf/rpr94.pdf.

Plaintiff, even if, as Plaintiff alleges, he is now a "responsible, law-abiding American citizen" and "unlikely to act in a manner dangerous to public safety." Compl. ¶ 29. As numerous courts have recognized, intermediate scrutiny does not require the government to show that each individual encompassed within a statutory proscription poses a particular danger. See, e.g., United States v. Chapman, 666 F.3d 220, 231 (4th Cir. 2012) ("[T]he prohibitory net cast by [the statute] may be somewhat over-inclusive given that not every person who falls within it would misuse a firearm . . . if permitted to possess one," but "[t]his point does not undermine the [statute's] constitutionality . . . because it merely suggests that the fit is not a perfect one[] [and] a reasonable fit is all that is required under intermediate scrutiny."); United States v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010) (rejecting defendant's contention that "his conviction for possession of firearms by a felon, without any further showing of violent intent, violates his Second Amendment rights"); see also Tooley, 717 F. Supp. 2d at 597 ("Section 922(g)(9) is of course overbroad in the sense that not every domestic violence misdemeanant who loses his or her right to keep and bear arms would have misused them against a domestic partner or other family member. Under intermediate scrutiny, however, the fit does not need to be perfect, but only be reasonably tailored in proportion to the important interest it attempts to further. As such, intermediate scrutiny tolerates laws that are somewhat overinclusive.") (footnote and citations omitted); United States v. Miller, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009) ("Although prohibiting gun possession by nearly all felons might not be the most precisely focused means to achieve this end, intermediate scrutiny, by definition, permits Congress to paint with a broader brush.") (footnotes and internal citation omitted).

Moreover, the conclusion that Section 922(g)(1) is constitutional as applied to offenders whose crimes were not necessarily violent in nature is consistent with near-uniform case law

applying the Second Amendment.  While it is true that "[f]or nearly a quarter century, § 922(g)(1) had a narrower basis for a disability, limited to those convicted of a crime of violence," Barton, 633 F.3d at 173 (citation and internal punctuation omitted), by 1961, Congress appears to have determined that a narrower prohibition would not serve its interest in public safety.  Cf. United States v. Laurent, 861 F. Supp. 2d 71, 105 (E.D.N.Y. 2011) (noting that "[i]nitially, Congress only limited receipt of firearms by violent indictees" in the Federal Firearms Act of 1938, but that "[a]fter three decades of experience, it saw the need to expand the prohibition to all indictees").  And as the Fourth Circuit recently stated: "[O]ur sister circuits have consistently upheld applications of § 922(g)(1) even to *non-violent* felons."  United States v. Pruess, 703 F.3d 242, 247 (4th Cir. 2012) (citing cases) (emphasis in original).  See, e.g., United States v. Everist, 368 F.3d 517, 519 (5th Cir. 2004) (rejecting facial Second Amendment challenge to Section 922(g)(1); "Irrespective of whether the offense was violent in nature, a felon has shown manifest disregard for the rights of others.  He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens.");[14] United States v. Vongxay, 594 F.3d 1111, 1116-18 (9th Cir. 2010) (reaffirming pre-Heller precedent "declin[ing] to make a distinction between violent and non-violent felons and [holding] that [Section] 922(g)(1), which prohibits all felons from possessing firearms, was constitutional"); Chardin v. Police Com'r of Boston, 989 N.E.2d 392, 398-403, 465 Mass. 314, 321-27 (Mass. 2013) (upholding state prohibition on carrying of firearms by

---

[14] Though decided before Heller, Everist applied the Fifth Circuit's earlier decision in United States v. Emerson, 270 F.3d 203 (5th Cir. 2001), which held that the Second Amendment "protects the rights of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms . . ." Id. at 260.

felons as applied to individual convicted as a juvenile for possession of a firearm and

ammunition without a license), cert. denied, 134 S.Ct. 525 (2013).[15]

The Third Circuit has suggested that a person could raise a successful as-applied

challenge by "present[ing] facts about himself and his background that distinguish his

circumstances from those of persons historically barred from Second Amendment protections."

Barton, 633 F.3d at 174. "For instance, a felon convicted of a minor, non-violent crime might

show that he is no more dangerous than a typical law-abiding citizen." Id. However, to satisfy

this standard, Plaintiff would need to show, inter alia, that he was convicted of a minor crime.

But Plaintiff was convicted of corruption of a minor for engaging in predatory sexual behavior

with a teenage employee 24 years his junior, with full knowledge that the employee was under

the age of 18. And Plaintiff's unlawful conduct did not result from a single instance of a lapse in

judgment; rather, he continued this criminal behavior for approximately 14 months. Moreover,

as explained above, Plaintiff's conviction was punishable by up to five years in prison.

Pennsylvania has three categories of misdemeanors, and a first-degree misdemeanor (like the one

---

[15] See also United States v. Ernst, 857 F. Supp. 2d 1098, 1103 (D. Or. 2012) ("Here, defendant's status as a felon defeats his argument that he has the right to bear arms, *regardless of the non-violent nature* of his prior convictions.") (emphasis added); United States v. Schultz, 2009 WL 35225, at *1-3 (N.D. Ind. Jan. 5, 2009) (upholding Section 922(g)(1) as applied to offender convicted of failure to pay child support); United States v. Davis, 2010 WL 1607836, at *2 (W.D. Wis. April 20, 2010) (upholding Section 922(g)(1) as applied to offender convicted of nonviolent offense (heroin distribution)); appeal dismissed, 406 F. App'x 52 (7th Cir. 2010); United States v. Ligon, 2010 WL 4237970, at *6 (D. Nev. Oct. 20, 2010) (upholding Section 922(g)(1) as applied to offender convicted of stealing government property); United States v. Westry, 2008 WL 4225541, at *2 (E.D. Mich. Sept. 9, 2008) (upholding Section 922(g)(1) as applied to felon convicted of narcotics distribution and carrying concealed weapon; "The Supreme Court [in Heller] made no distinction for nonviolent felonies."); Wilson v. United States, 2006 WL 519393 at *1, 6 (M.D. Tenn. Feb. 28, 2006) (applying Emerson and upholding Section 922(g)(1) as applied to a "previously adjudicated non-violent (mail fraud) felon"); State v. Pocian, 814 N.W.2d 894 (Wis. App.) (applying intermediate scrutiny and upholding state prohibition on firearms possession by felons as applied to offender convicted of writing forged checks), review denied, 827 N.W.2d 96 (2012).

Plaintiff was convicted of) is the only degree that triggers the federal prohibition on the possession of firearms; second- and third-degree misdemeanors have possible maximum sentences of two years and one year, respectively.  18 Pa.C.S.A. § 1104.  Thus, the Commonwealth considers the criminal offense that Plaintiff committed to be the most serious type of misdemeanor and one that since 1968 has triggered the federal prohibition.  And Pennsylvania has retained the criminal offense of corruption of minors, without substantial change, since at least 1939.  See id. § 6301 cmt. (1972).

Plaintiff's belief that his particular conviction should be viewed differently "flows not from any insight gleaned from [Section 922(g)(1)], but rather from plaintiff['s] flawed belief that [his] offense[ is] trivial."  Schrader, 704 F.3d at 988.  This belief lacks foundation.  All 50 States criminalize adult sexual contact with a minor, see Richard A. Posner & Katharine B. Silbaugh, A Guide to America's Sex Laws 44-64 (1996).  The continued existence of these criminal laws confirms the recognized legal and sociological principle that under a particular age, individuals lack the capacity to legally consent to sexual activity because they lack the emotional and physical maturity to appreciate the full consequences of such activity.  See, e.g., People v. Gonzales, 561 N.Y.S.2d 358, 361, 148 Misc.2d 973, 977 (N.Y. Co. Ct. 1990) ("It has long been recognized that the state has the authority to regulate the sexual conduct of its minors by setting age limits to establish whether the individual is sufficiently mature to make intelligent and informed decisions and to consent to certain activities."); State v. Bruegger, 773 N.W.2d 862, 886 (Iowa 2009) ("[I]n light of the risk of disease, pregnancy, and serious psychological harm that can result from even apparently consensual sexual activity involving adults and adolescents," statutory rape should not be "view[ed]. . . as a victimless crime.").  By contrast, an

adult perpetrator *is* expected to appreciate the full ramifications of sexual activity with an underage individual.[16]

Pennsylvania's corruption of minors statute serves to protect young girls from both physical and emotional harm, even when the sexual conduct engaged in is purportedly consensual in nature. In Commonwealth v. Decker, 698 A.2d 99, 100 (Pa. Super. Ct. 1997), a 37-year old defendant argued that he should not have been found guilty of corruption of minors where his 15-year old partner consented. The Court rejected this argument, finding that "consent is not an element in a corruption of minors charge" and that "sexual behavior was the corrupting activity to be prevented." Id. at 100. The court noted that the "purpose of such statutes is basically protective in nature … to safeguard the welfare and security of our children." Id. at 101. Moreover, the Court explained: "It requires no stretch of reason to understand that an immature female can easily be seduced or mentally overpowered by an adult to engage in a large range of activity, the consequences of which she neither understands nor of which she is capable

---

[16] Such potential consequences include pregnancy and contraction of sexually-transmitted diseases. Pregnancy presents a particular risk for younger women, who face a considerably higher risk of pregnancy complications. See Robert Miller, Preventing Adolescent Pregnancy and Associated Risks, 41 Can. Fam. Physician 1525, 1528 (1995) (noting that pregnant adolescents experience complications, including pregnancy-induced hypertension, premature labor, and anemia, at rates higher than older women) (attached as Ex. 5); R. Rivera et al., Contraception for Adolescents: Social, Clinical and Service Delivery Considerations, 75 Int'l J. Gynec. & Obstet. 149, 150 (2001) (women aged 15-19 are especially likely to suffer from pre-eclampsia, eclampsia, and obstructed labor) (attached as Ex. 6). Additionally, younger women are particularly susceptible to certain sexually-transmitted diseases from intercourse. See Marcia L. Shew et al., Interval Between Menarche and First Sexual Intercourse, Related to Risk of Human Papillomavirus Infection, 125 J. Pediatrics 661, 661 (1994) (noting prior studies identifying earlier age at first sexual intercourse as risk marker for human papillomavirus infection, cervical intraepithelial neoplasia, and cervical cancer) (attached as Ex. 7); Amahuaro A. Edebiri, Cervical Intraepithelial Neoplasia: The Role of Age at First Coitus in Its Etiology, 35 J. Reprod. Med. 256, 257 (1990) (finding increased risk of development of cervical intraepithelial neoplasia, a potential precursor to cervical cancer, in women who first engage in intercourse before age 18) (attached as Ex. 8).

of dealing and which can have long-range, if not permanent, adverse effects." Id. at 102.[17]

Given the seriousness of Plaintiff's offense, there is no basis for distinguishing Plaintiff from "persons historically barred from Second Amendment protections." Barton, 633 F.3d at 174.

Indeed, the Third Circuit recently upheld a determination by this Court that a Second Amendment challenge to Section 922(g)(1), as applied to an offender convicted of first-degree misdemeanors under Pennsylvania law whose crimes were allegedly non-violent in nature, would fail. Dutton v. Commonwealth, 2012 WL 3020651 (E.D. Pa. July 23, 2012), aff'd, 503 F. App'x 125 (3d Cir. 2012) (per curiam). The plaintiff in Dutton had been convicted in 1995 of carrying a firearm on a public street and carrying without a license, both first-degree misdemeanors under Pennsylvania law. 2012 WL 3020651, at *1. Citing Barton, this Court determined that if the plaintiff had challenged the constitutionality of Section 922(g)(1) as applied to him, "the Court would have found the claim lacked merit." Id. at *2 n.3. The Third Circuit affirmed, stating: "[T]he Barton court determined that § 922(g)(1) is constitutional as applied to an individual, like Dutton, who has 'presented no facts distinguishing his

---

[17] There are "various factors that make teenage girls susceptible to coercion and abuse in sexual encounters." Michelle Oberman, Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape, 48 Buff. L. Rev. 703, 709 (2000). The "vulnerability inherent in adolescence, including severely diminished self-esteem, ambivalence about one's changing body, and a marked reluctance to assert one's self, leads teenagers to consent to sexual contact that may not be fully, or even partially desired." Id.; see also id. at 710 ("Because of their inexperience [teenagers] are necessarily prone to misjudgment. Nowhere is this tendency toward misjudgment more pernicious than in the area of sexuality, in which adolescents' age-appropriate naivete renders them uniquely susceptible to coercion and abuse."). Moreover, "the potential for coercion and exploitation increases as the differences in ages between the parties increases. . . ." Rigel Oliveri, Statutory Rape Law and Enforcement in the Wake of Welfare Reform, 52 Stan. L. Rev. 463, 507 (2000); see also Oberman, 48 Buff. L. Rev. at 751 ("All else being equal, the greater the age gap between the parties to a sexual encounter, the greater the risk of a significant power disparity between the parties."). Here, the age difference was 24 years, and Plaintiff was the victim's employer.

21

circumstances from those of other felons who are categorically unprotected by the Second Amendment.'" 503 F. App'x at 127 n.1 (quoting Barton, 633 F.3d at 175).[18]

And to the extent that Plaintiff implies that his conviction is not serious enough to fall within the purview of Section 922(g)(1) because the Commonwealth happens to label it a misdemeanor is not borne out by the Gun Control Act's legislative history. Senate Report 90-1501 initially made it unlawful for a "*felon*, fugitive, or one under indictment to receive a firearm or ammunition which has been shipped or transported in interstate or foreign commerce." S. Rep. No. 90-1501 (1968) at 35 (emphasis added). "Felony" was defined as "a Federal crime punishable by a term of imprisonment exceeding 1 year and in the case of State law, an offense determined by the laws of the State to be a felony." Id. at 31. However, "the Conference Committee ultimately rejected this version in favor of language that speaks of those 'convicted in any court of, *a crime punishable by a term of imprisonment exceeding one year*.'" Small, 544 U.S. at 393, 125 S.Ct. at 1757 (quoting H.R. Conf. Rep. No. 90-1956 (1968), at 28-29, *reprinted in* 1968 U.S.C.C.A.N. 4426, 4428) (emphasis added). The conference report noted:

> Both the House bill and the Senate amendment prohibited the shipment, transportation, and receipt or firearms and ammunition by persons under indictment for, or convicted of, certain crimes. . . . A difference between the House bill and the Senate amendment which recurs in the provisions described above is that the crime referred to in the House bill is one punishable by imprisonment for more than 1 year and the crime referred to in the Senate amendment is a crime of violence punishable as a felony. . . . The conference substitute adopts the crime referred to in the House bill.

---

[18] This Court's and the Third Circuit's statements on this issue were not dicta because the statements were necessary to the courts' determination that granting the plaintiff leave to amend his complaint would be futile. See 2012 WL 3020651, at *3 (concluding that any amendment would be futile because any constitutional challenge to Section 922(g)(1) would lack merit); 503 F. App'x at 127 n.2 (concluding that this Court did not err in declining to permit such amendment).

H.R. Conf. Rep. No. 90-1956, at 28-29. Congress thus specifically considered, and rejected, applying Section 922(g)(1)'s prohibition only to certain crimes labeled by States as felonies. "[T]he enacted version is simpler and it avoids potential difficulties arising out of the fact that States may define the term 'felony' differently." Small, 544 U.S. at 393, 125 S.Ct. at 1757.

Thus, in enacting Section 922(g)(1), Congress found that the misuse of firearms by persons convicted of serious crimes – whether labeled misdemeanors or felonies by the State in which the crime occurred – is a significant problem and that restricting the firearms possession of persons who have already been convicted of such offenses would help reduce the risk of gun violence. Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 1201, 82 Stat. 236; S. Rep. No. 89-1866, at 1, 53 (1966); S. Rep. No. 88-1340, at 4 (1964). Congress's "predictive judgments" about the risk of firearms misuse by individuals who have been convicted of serious offenses are entitled to deference, because Congress is best positioned to formulate appropriate firearms policy in order to further the goal of public safety. Cf. Turner Broad. Sys., 512 U.S. at 665-66, 114 S.Ct. at 2471 (in applying intermediate scrutiny under the First Amendment, courts should accord substantial deference to Congress's predictive judgments). Congress's findings apply to serious offenses such as that committed by Plaintiff. The mere fact that an offense is characterized as a first-degree "misdemeanor" does not suggest that it is a minor offense. See Tennessee v. Garner, 471 U.S. 1, 14, 105 S.Ct. 1694, 1703, 85 L.Ed.2d 1 (1985) (explaining that the distinction between misdemeanors and felonies is "minor and often arbitrary," as today "numerous misdemeanors involve conduct more dangerous than many felonies"). Indeed, the maximum statutory penalty imposed by Pennsylvania for a first-

degree misdemeanor (5 years) is comparable to that imposed for a third-degree felony (7 years). See 18 Pa.C.S.A. §§ 1103, 1104.[19]

In short, the government's conclusion that individuals convicted of crimes such as Plaintiff's should not be permitted to possess firearms is undoubtedly a reasonable one, and Plaintiff cannot demonstrate that he is fundamentally different from other persons historically barred from Second Amendment protections. There is thus a reasonable fit between Section 922(g)(1), as applied to Plaintiff, and the indisputably important government interest in protecting public safety and reducing crime, and courts have repeatedly upheld the statute as applied to persons such as Plaintiff. It therefore satisfies the requirements of intermediate scrutiny analysis.

## CONCLUSION

Because Plaintiff's conviction was punishable by a term of imprisonment exceeding two years, he falls within the scope of 18 U.S.C. § 922(g)(1). Furthermore, the law Plaintiff challenges does not preclude conduct that is protected by the Second Amendment and would pass constitutional muster in any event. Accordingly, the Court should dismiss this case or enter summary judgment for Defendants.

---

[19] Nor, finally, is the fact that Plaintiff was convicted in 1997 of any legal significance here. See Dutton, 503 F. App'x at 127 n.2 (upholding decision denying as futile leave to amend complaint to assert Second Amendment challenge to Section 922(g)(1) as applied to offender convicted of first-degree misdemeanors in 1995); United States v. Oppedisano, 2010 WL 4961663, at *3 (E.D.N.Y. Nov. 30, 2010) (rejecting as-applied challenge to Section 922(g)(1) by defendant convicted of first-degree reckless endangerment in 1993 and driving while intoxicated in 1994); United States v. Jones, 673 F. Supp. 2d 1347, 1352 (N.D. Ga. 2009) (rejecting as-applied challenge to Section 922(g)(1) by defendant convicted in 1995 of possession of cocaine and first-degree reckless injury while armed).

Dated:  February 20, 2014

Of Counsel

ZANE DAVID MEMEGER
United States Attorney

ANNETTA FOSTER GIVHAN
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106
(215) 861-8319
Annetta.givhan@usdoj.gov

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

   /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
LESLEY FARBY
Trial Attorneys
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2014, I caused the foregoing

documents to be served via e-mail and via electronic case filing, as follows:

Alan Gura
Gura & Possessky PLLC
105 Oronoco Street, Suite 305
Alexandria, Virginia 22314
alan@gurapossessky.com

Douglas Gould (PA Bar No. 78357)
Law Offices of Douglas T. Gould, P.C.
925 Glenbrook Avenue
Bryn Mawr, Pennsylvania 19010
dgould@gouldlawpa.com


  /s/ Daniel Riess
Daniel Riess

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL BINDERUP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Case No. 5:13-cv-06750-JKG** |
| **ERIC H. HOLDER, JR.,** | ) | |
| **Attorney General of the** | ) | |
| **United States <u>et al.</u>,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**ORDER**

NOW, this _____ day of _____, 2014, upon consideration of Defendants' Motion to Dismiss or for Summary Judgment filed on February 20, 2014, and the Court having considered any opposition thereto,

**IT IS ORDERED** that the motion is granted, and the Complaint is dismissed with prejudice.

BY THE COURT:

_____
James Knoll Gardner
United States District Judge

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIO SUAREZ,    :  Case No. 1:14cv968
          :
    Plaintiff  :
          :
   v.     :  Hon. William W. Caldwell
          :
ERIC H. HOLDER, JR.,   :
Attorney General of the United :
States; and B. TODD JONES,  :
Director of the Bureau of   :
Alcohol, Tobacco, Firearms and :
Explosives,      :
          :
    Defendants. :  Electronically Filed

## DEFENDANTS' MOTION TO DISMISS
## OR FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56, Defendants Eric H. Holder Jr.,

Attorney General of the United States; and B. Todd Jones, Director of the Bureau of

Alcohol, Tobacco, Firearms and Explosives, respectfully move this Court to dismiss

Plaintiff's Complaint or, in the alternative, to enter summary judgment for

Defendants.   A supporting brief, statement of undisputed material facts, and

proposed order are attached hereto in accordance with the Court's Local Rules.

Of Counsel        Respectfully submitted,

PETER SMITH       JOYCE R. BRANDA
United States Attorney    Acting Assistant Attorney General

JOANNE M. HOFFMAN
Special Assistant United States Attorney
228 Walnut Street
Suite 220
Ronald Reagan Federal Building
Harrisburg, Pennsylvania 17108
Telephone: (717) 221-4482
Fax: (717) 221-4493
Email: Joanne.Hoffman@usdoj.gov

    /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*


Date:   October 20, 2014