Adam Kraut, Esq.
Attorney Id. No. 318482
Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(610) 845-3803, ext 81115 (t)
(610) 845-3903 (f)
AKraut@princelaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | Honorable Robert F. Kelly |
| | : | |
| **JEFFERSON B. SESSIONS III,** *et al.* | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS SECOND MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ............................................................................................ 1

II. PROCEDURAL HISTORY .......................................................................... 2

III. FACTUAL BACKGROUND ....................................................................... 2

IV. STATEMENT OF QUESTIONS INVOLVED............................................ 4

V. ARGUMENT ................................................................................................ 5

  a. *Legal Standard* ........................................................................................ 5

  b. *Constitutional Claim* .............................................................................. 6

    i. <u>Second Amendment *As-Applied* Challenge Criteria</u> .................................. 6

    ii. <u>Prohibitions on the Possession of Firearms by Felons</u> .............................. 8

      1. DUI is Not a Crime that is Tethered to the "Time-Honored" Practice of Keeping Firearms Out of the Hands of Those Likely to Commit Violent Crimes................................................................................................. 10

      2. DUI Offenses Classified by States .......................................................... 12

      3. DUI Offenses in Pennsylvania and Firearms Ownership........................ 14

    iii. <u>Mr. Williams's Claim is within the Analytical Framework</u>................... 15

      1. Step One of the Marzzarella Framework.................................................. 16

        a. Conduct is Burdened Under the Second Amendment ........................ 16

        b. Mr. Williams can Distinguish his Circumstances from the Historically Barred Class.................................................................................... 17

        c. No Further Analysis is Supported by Heller and McDonald.............. 21

      2. Step Two of the Marzzarella Framework ................................................. 22

        a. Holloway v. Sessions, et al. ............................................................. 23

        b. Robert Gordon's Expert Report ....................................................... 26

        c. The Government's Prior Grants of Relief to Individuals Convicted of Similar and Far More Egregious Crimes............................................ 28

          i. John Kraszewski and Kim Blake.................................................. 31

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

  ii. Barry Shoop ................................................................. 32

  iii. Carl Fareri  .................................................................. 33

  iv. Charles Spangler ........................................................... 34

 3. 18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Strict Scrutiny.................................................................................. 35

 4. 18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Intermediate Scrutiny ........................................................... 38

**VI. CONCLUSION .............................................................. 41**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 5, 6

*Begay v. United States*, 553 U.S. 137 (2008) .......................................................... 11

*Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*) ....... passim

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................... 8, 22, 39

*FEC v. Wis. Right to Life, Inc., 551 U.S. 449 (2007)* ............................................. 35

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764 (3d Cir. 2013) ... 5

*Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974 (M.D. Pa. Sept. 28, 2018) ........................................................................................................ passim

*Keyes, et. al. v. Sessions, et al.*, 282 F.Supp.3d 858 (M.D. Pa. Oct. 11, 2017) ...... 39

*Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011) ... 6

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ..................................................................... 11

*McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010) .................................. 22

*Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81 (3d Cir. 1982) ...................... 5

*Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010) ........................................................ 5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ........................... 5

*Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162 (3d Cir. 2008) ............ 5

*United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011) .................................. 7, 8

*United States v. Doe*, 960 F.2d 221 (1st Cir. 1992) ................................................. 11

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ............................. 6, 7, 35

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ................................. 32, 38, 40

*United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) ..................................... 10, 16

**Statutes**

18 Pa.C.S. § 6105 .................................................................................................... 14

18 U.S.C. § 16 .......................................................................................................... 11

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

18 U.S.C. § 922(g)(1) ................................................................. passim

18 U.S.C. § 925(c) ...................................................... 28, 31, 32

75 Pa.C.S. § 3802 .............................................................. 10, 18

75 Pa.C.S. § 3806(a) ................................................................. 3

Pub. L. No. 115–141, 132 Stat. 348 ........................................ 28

Pub. L. No. 87-342, 75 Stat. 757 (1961) ................................... 9

**Other Authorities**

Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 702 (2009) ..................................................................................... 7

**Rules**

234 Pa. Code Ch 3, Rule 312 .................................................... 3

Fed. R. Civ. P. 56(a) ................................................................ 5

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Plaintiff Edward A. Williams, by and through his counsel, hereby submits this Brief in Support of his Motion for Summary Judgment.

## I.      INTRODUCTION

Plaintiff Edward A. Williams (hereinafter "Mr. Williams" or "Plaintiff") has filed suit, complaining that the Defendants have collectively and individually prohibited a particular class of persons, including the Plaintiff, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of a misdemeanor driving under the influence (hereinafter "DUI") conviction, where no one was injured by the conduct and where no property damage resulted, in violation of his Second Amendment Rights.

Pursuant to the elements set-forth by the Third Circuit in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*), it is clear that the Defendants' enforcement of such a prohibition violates Mr. Williams's fundamental constitutional right to keep and bear arms as provided for in the Second Amendment.

1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## II.      PROCEDURAL HISTORY

Mr. Williams initiated this litigation by filing suit on June 1, 2017. [1] The Government responded by filing a motion to dismiss on September 14, 2017. [2] Thereafter, Plaintiff contemporaneously filed a brief in opposition to the Government's motion to dismiss and the underlying motion for summary judgment on October 13, 2017. [3] This Honorable Court issued two orders on December 1, 2017, denying the Government's motion to dismiss and denying, without prejudice, the Plaintiff's motion for summary judgment as premature. [4]

## III.      FACTUAL BACKGROUND

[1] *See* Doc. 1.
[2] *See* Doc. 5.
[3] *See* Docs. 8 and 9-2.
[4] *See* Docs. 13 and 14.
[5] *See* Statement of Material Facts at ¶ 1-3.
[6] *Id*. at ¶ 3.
[7] *Id*. at ¶ 4.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████

On September 7, 2004, Mr. Williams was pulled over by the Philadelphia

Police Department and subsequently arrested and charged with DUI. [10] Mr.

Williams was found guilty and was sentenced to "passive house arrest until

electronic monitor[ing] is available" for 90 days, ordered to pay costs, a fine of

$1,500.00, and complete any recommended drug and alcohol treatment. [11]

███████████████████████████████████████████████

███████████████████████████████ Moreover, Mr. Williams has held a job as

a construction manager for the past twenty-five (25) years, where he has managed

projects, which include the Curran-Fromhold Correctional Facility, PA Convention

Center, Septa Railworks project, the Commodore Barry Bridge, Interstate 95 and

the NJ Transportation maintenance facilities. [13] Mr. Williams is tasked with field

inspections, project management, cost control, problem solving, developing and

---

[8] *Id*. at ¶ 6. *See also* Mr. Williams's Pennsylvania State Police Background Check, which is attached hereto and incorporated herein as Exhibit A.
[9] ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

[10] *Id*. at ¶ 7.
[11] *Id*. at ¶ 8. *See also* Doc. 1-1 at 7.
[12] *Id*. at ¶ 9.
[13] *Id*. at ¶ 11-12.

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

maintaining CPM project schedules for contractors and relaying updates during the construction period. [14]

In or about late December of 2014, Mr. Williams, concerned for the safety of himself and his family, attempted to procure a License to Carry Firearms ("LTCF") and was denied. [15] After challenging the denial, he was only made aware that he was prohibited from obtaining a LTCF. [16] It was not until Mr. Williams spoke with Attorney Joshua Prince on or about November 5, 2015, that for the first time, he was informed that his sole conviction in 2004 for DUI was a federally prohibiting offense, which prevented him from lawfully possessing firearms and ammunition. [17] As a result, Mr. Williams brought the underlying action that is before the Court.

## IV.    STATEMENT OF QUESTIONS INVOLVED

1. Does the Defendants' prohibition on Mr. Williams from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of an isolated misdemeanor DUI conviction violate his Second Amendment rights?

   Suggested Answer in the *Affirmative*

---

[14] *Id.* at ¶ 13.
[15] *Id.* at ¶ 14.
[16] *Id.* at ¶ 15.
[17] *Id.* at ¶ 16.

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# V.      ARGUMENT

### a.  *Legal Standard*

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). [18] A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party while not evaluating the credibility or weighing the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

A court should not grant summary judgment when there is a disagreement about the facts of the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir. 1982)). "The mere existence of *some*

---

[18] *See* Committee Notes on Rules – 2010 Amendment to Fed. R. Civ. P. 56 stating "…the rule allows a motion for summary judgment to be filed at the commencement of an action…"

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotations omitted).

    b. *Constitutional Claim*

       i. <u>Second Amendment *As-Applied* Challenge Criteria</u>

The Third Circuit in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*) held that *as-applied* Second Amendment challenges were cognizable and controlled by the two-step analysis [19] previously articulated in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010). [20] The first prong of the test is to consider "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." [21] If the challenger does not meet this burden, the claim should be dismissed. [22] However, if the law burdens protected conduct, then the court must "evaluate the law under some form

---

[19] While Plaintiff acknowledges the Third Circuit's precedent, he respectfully calls into question this two-pronged approach, based on the Supreme Court's decisions in *Heller* and *McDonald*, where the Court specifically stated that lower courts should *not* conduct interest balancing or apply levels of scrutiny. *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). (noting that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010). (noting that the *Heller* Court "specifically rejected" "an interest-balancing test").
[20] *Binderup,* 836 F.3d at 339.
[21] *Id.* at 346 (citing *Marzzarella,* 614 F.3d *at 89).*
[22] *Id. at 346.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

of means-end-scrutiny". [23] In this instance, the Third Circuit has stated

intermediate scrutiny is the appropriate level to apply to such a challenge. [24]

Furthermore, the Third Circuit has held that under an *as-applied* Second

Amendment challenge, the plaintiff "must present facts about himself and his

background that distinguish his circumstances from those of persons historically

barred from Second Amendment protections." [25] The Third Circuit also found that

the traditional justification of § 922(g)(1) was the disarmament of individuals

likely to commit *violent* offenses. [26] Moreover, these crimes of violence were

"commonly understood to include only those offenses 'ordinarily committed with

the aid of firearms.'" [27]

This understanding was reaffirmed in *Binderup* where the court proclaimed

that under *Barton* "[w]e looked to the 'historical pedigree' of the statute to

ascertain 'whether the traditional justifications underlying the statute support a

finding of permanent disability in this case.'" [28] The court stated that it

"determined that the exclusion of felons and other criminals from the scope of the

Second Amendment's protections was tethered to the time-honored practice of

---

[23] *Id.* at 346 (citing *Marzzarella,* 614 F.3d *at 89).*

[24] *Marzzarella,* 614 F.3d at 97.

[25] *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011)

[26] *Barton,* 633 F.3d at 173.

[27] *Id.* at 173 (citing Why Can't Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 702 (2009)).

[28] *Binderup,* 836 F.3d at 361 (citing *Barton,* 633 F.3d at 175).

7

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

keeping firearms out of the hands of those likely to commit violent crimes." [29]

### ii.  Prohibitions on the Possession of Firearms by Felons

In *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the Supreme Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…" However, the Court also stated that it did not "undertake an exhaustive historical analysis … of the full scope of the Second Amendment," which leaves those interpretations up for debate. [30]

The longstanding prohibitions the Court referred to are those that date back to the founding of this Country as evidenced by the historical analysis the Court engaged in when deciding *Heller*.  The first federal law, the Federal Firearms Act (hereinafter "FFA"), which barred certain felons from possessing firearms was enact in 1938. The statute specifically made it unlawful for any person who was under indictment or convicted of a crime of violence or a fugitive from justice to shop, transport or receiver a firearm or ammunition. A copy of the Federal Firearms Act of 1938 is attached hereto and incorporated herein as Exhibit B Moreover, the law defined a crime of violence to mean:

---

[29] *Id*. at 362 (citing *Barton,* 633 F.3d 173).
[30] *Heller,* 554 U.S. at 626.

8

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

> murder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking; assault with intent to kill, commit rape or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year. [31]

Notably absent from those who were prohibited from possessing firearms and ammunition were those convicted of non-violent offenses. It was not until 1961 that Congress took action to bar non-violent felons from possessing firearms and ammunition. [32] Thus, approximately 170 years passed from the time the Bill of Rights became effective until the time where individuals who were not violent felons (and misdemeanants) were barred from possessing firearms and ammunition. [33] At the time Mr. Williams was charged with the prohibiting offense, the prohibition against non-violent felons had only been in place for approximately 42 years. [34]  From a historical analysis, the prohibition that prevents Mr. Williams from possessing firearms or ammunition accounts for a period of time less than 20% of the total period of time in which the constitutional right existed. This can hardly be found to be a "longstanding prohibition on the possession of firearms by felons". Moreover, historical evidence suggests that the only individuals who were categorically barred from possessing firearms were those who committed violent offenses. [35]

---

[31] *Exhibit B* at 1.
[32] *See* Pub. L. No. 87-342, 75 Stat. 757 (1961)
[33] Actual time was 169 years, 9 months and 18 days.
[34] Actual time was 42 years, 11 months and 5 days.
[35] *Binderup,* 836 F.3d at 348.

9

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

1. DUI is Not a Crime that is Tethered to the "Time-Honored" Practice of Keeping Firearms Out of the Hands of Those Likely to Commit Violent Crimes

The "historical justification for stripping felons…of their Second Amendment rights… '[is] tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens.'" [36] "People who have committed or are likely to commit 'violent offenses'—crimes 'in which violence (actual or attempted) is an element of the offense,' undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights.'" [37] While the Government sets forth a number of arguments for the proposition that the Plaintiff's sole DUI conviction is a "serious crime", it offers nothing to show that a DUI qualifies as a "violent offense". More importantly, the Plaintiff has never been convicted of a violent offense.

There are several other factors the Plaintiff can point to in order to bolster the claim that a DUI is not a violent offense. First, none of the elements of Pennsylvania's DUI statute involve or makes reference to the use, attempted use, or threatened use of physical force against another. [38] The Supreme Court of the United States proclaimed that a DUI fell outside the scope of the Armed Career

---

[36] *Id.* at 348 (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)).
[37] *Id*. (Internal citation omitted).
[38] *See* 75 Pa.C.S. § 3802

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Criminal Act's definition of a "violent felony". [39] The Supreme Court also found that DUI was not within the definition of a "crime of violence" as defined by 18 U.S.C. § 16. [40] While the entire gamut of crimes involving violence has not been delineated, there are certain elements such as the use, attempted use, or threatened use of physical force, which are necessary in order to qualify. [41] Recently, as discussed more in depth *infra*, Chief Judge Conner in *Holloway v. Sessions* stated, in relation to DUI, that "[t]he offense is therefore nonviolent…" [42] Clearly, a DUI falls outside the scope of a "violent offense".

Justice Scalia's concurring opinion in *Begay v. United States*, 553 U.S. 137, 153-154 (2008) also sheds some light as to the seriousness of DUI.

> The Government cites the fact that in 2006, 17,062 persons died from alcohol-related car crashes, and that 15,121 of those deaths involved drivers with blood-alcohol concentrations of 0.08 or higher. Drunk driving is surely a national problem of great concern. *But the fact that it kills many people each year tells us very little about whether a single act of drunk driving "involves conduct that presents a serious potential risk of physical injury to another."* It may well be that an even greater number of deaths occurs annually to pedestrians crossing the street; but that hardly means that crossing the street presents a serious potential risk of injury. Where the issue is "risk," the annual number of injuries from an activity must be compared with the annual incidents of the activity. Otherwise drunk driving could be said to

---

[39] *See Begay v. United States*, 553 U.S. 137, 148 (2008)
[40] *See Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004)
[41] *See also United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (observing that the term "violent felony" in 18 U.S.C. § 924(e) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence").
[42] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *4, (M.D. Pa. Sept. 28, 2018).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

pose a more serious risk of physical harm than murder. In addition, drunk driving is a combination of two activities: (1) drinking and (2) driving. If driving alone results in injury in a certain percentage of cases, it could hardly be said that the entirety of the risk posed by drunk driving can be attributed to the combination. [43]

In *Holloway,* Chief Judge Conner also stated

That driving under the influence is risky behavior is undisputed. It places others in danger of bodily harm. Yet only seven states permanently suspend a repeat DUI offender's driving privileges, and only after a third DUI conviction. The Commonwealth of Pennsylvania has clearly indicated that a repeat DUI offender is not so unvirtuous that he or she must be disarmed until a third DUI conviction in five years and, even then, the disability has an automatic ten-year expiration date. [44]

### 2.  DUI Offenses Classified by States

While at first blush, some may believe that two or more DUIs are a "serious" crime in the eyes of many states, in fact, in most instances, it is rarely felonious. Out of all 50 states, only four punish a second DUI as a felony, [45] with the remainder treating it as a misdemeanor, which the *Binderup* Court declared to be "an indication of non-seriousness." [46]

---

[43] Internal citations omitted. (emphasis added).
[44] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *6, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).
[45] A chart indicating each state's treatment of a first, second and third DUI is attached hereto and incorporated herein as Exhibit C. *See* Connecticut, Indiana, New York, and Oklahoma.
[46] *Binderup*, 836 F.3d at 353, n. 6.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Moreover, a review of all 50 states' DUI laws shows that only four could punish a second DUI with imprisonment of more than two years. [47] A second offense in Massachusetts within ten years is punishable with imprisonment of sixty days up to two and a half years. [48] A second offense in Oklahoma within ten years is punishable by imprisonment of one to five years. [49] The remaining states classify the second offense as punishable by imprisonment ranging from several days up to two years and all as misdemeanors. [50] As reflected in the overview of all 50 states' DUI laws, most states do not view a second DUI as a major offense.

In *Holloway*, Chief Judge Conner found that

> For a second DUI offense, 40 states prescribe a maximum term of imprisonment of one year or less. Ten states enforce a maximum term of imprisonment of more than one year for a second DUI offense, only four of which classify the second DUI offense as a felony. Defendants note that 48 states impose enhanced penalties for DUI offenses when the driver's BAC exceeds a "particularly high threshold." These enhanced penalties for elevated BAC levels include increased fines, license suspension, installation of ignition interlock devices, and heightened minimum terms of imprisonment. However, only three states increase the maximum possible term of imprisonment above one year for a BAC of .16 or higher during a second offense. The government has not shown there is a consensus regarding the seriousness of a generic second DUI offense, let alone a second DUI offense at a high rate of alcohol. [51]

---

[47] *See* Exhibit B. (Indiana (up to two and one half (2.5) years), Massachusetts (up to two and one half (2.5) years), New York (up to four (4) years) and Oklahoma (one (1) to five (5) years).)

[48] *See* Exhibit B.

[49] *Id*.

[50] *Id*.

[51] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *5, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).

13

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### 3. DUI Offenses in Pennsylvania and Firearms Ownership

While a cross-jurisdictional consensus is a factor that the Court needs to evaluate in the *Binderup* analysis, it is important to consider how Pennsylvania treats the offense Mr. Williams was convicted of in relation to firearms ownership. 18 Pa.C.S. § 6105 dictates who, under Pennsylvania law, is no longer permitted to own or possess firearms.

Under the statute, the only individuals who would be prohibited under state law would be those who were convicted of a third DUI in a five-year period. [52] Interestingly enough, the prohibition is *only* in relation to firearms transfers or purchases of firearms after the third conviction. [53] Meaning that an individual who would be prohibited under state law would be able to keep their firearms that they had prior to the third conviction.

Perhaps most important, as discussed *supra*, is that Mr. Williams is not prohibited under state law from owning firearms. Clearly, Pennsylvania did not believe that a second DUI, even at the highest rate, was worthy of stripping an individual of their right to keep and bear arms in perpetuity. As noted by Chief

---

[52] *See* 18 Pa.C.S. § 6105 (c)(3). It also bears noting that if an individual were convicted of three DUIs in a six-year period, the individual would not be under any state disability. In fact, an individual could have ten or more DUIs and still not be prohibited under state law, unless three of the DUIs occurred in a five-year period and if so, the individual would still be permitted to retain possession of the firearms he/she owned but would simply be prohibited from purchasing new firearms.
[53] *Id.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Judge Conner in *Holloway*, "[t]he Commonwealth of Pennsylvania has clearly indicated that a repeat DUI offender is not so unvirtuous that he or she must be disarmed until a third DUI conviction in five years and, even then, the disability has an automatic ten-year expiration date." [54]

### iii.   Mr. Williams's Claim is within the Analytical Framework

The Third Circuit Declared in *Binderup* that "the threshold question in a Second Amendment challenge is one of scope: whether the Second Amendment protects the person, the weapon, or the activity in the first place." [55] The answer in this matter is an unequivocal "yes". As such, first a determination needs to be made as to whether Mr. Williams can distinguish himself from the class of individuals historically barred from the possession of firearms and ammunition. The answer, again, is an unequivocal "yes".

---

[54] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *6, (M.D. Pa. Sept. 28, 2018).
[55] *Binderup*, 836 F.3d. at 362.

15

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

1.  Step One of the *Marzzarella* Framework

    a.  Conduct is Burdened Under the Second Amendment

Under the first step of the *Marzzarella* test, the challenger must identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member. Defendants contend that Mr. Williams is currently prohibited under 18 U.S.C. § 922(g)(1) due to his conviction of a "crime punishable by imprisonment for a term exceeding one year." [56] As with Plaintiffs Binderup and Suarez, Mr. Williams was convicted of a state law misdemeanor crime that was punishable by more than two years imprisonment, thus meeting the definition of a "felony". [57]

The *Binderup* Court stated that the justification of denying "felons" the right to keep and bear arms dates back to the Second Amendment's drafting. "[T]he right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens'." [58] "The category of 'unvirtuous citizens' is thus broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or non-violent." [59] As such, clearly the traditional justifications for preventing the class of individuals of which

---

[56] *Id.* at 347.
[57] *Id.*
[58] *Id.* at 348. (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)).
[59] *Id.* at 348.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Mr. Williams appears to be a member is that they are "unvirtuous citizens".

### b.  Mr. Williams can Distinguish his Circumstances from the Historically Barred Class

To show that Mr. Williams is not part of the historically barred class, he must show that the crime for which he was convicted was not "serious". [60] *Binderup* identified several factors to determine whether a crime was "serious," which included: 1) whether the crime is classified as a felony or misdemeanor; 2) whether the crime was "violent"; 3) the punishment that was actually imposed on the Plaintiff; and 4) whether there exists cross-jurisdictional consensus as to the "seriousness" of the offense. [61]

Mr. Williams's 2005 DUI offense was graded as a misdemeanor of the first degree. As *Binderup* proclaimed "a state legislature's classification of an offense as a misdemeanor is a powerful expression of its belief that the offense is not serious enough to be disqualifying." [62] As discussed *supra*, the Pennsylvania General Assembly did not view a second DUI as an offense worthy of rising to the level of stripping an individual of their right to keep and bear arms. The General Assembly only believed that an individual who managed to accrue three DUIs within a period

---

[60] *Id*. at 349.
[61] *Id*. at 351-353.
[62] *Id*. at 351.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

of 5 years should be prohibited from purchasing or transferring *new* firearms but even an individual who was in such a position would be able to keep their currently owned firearms.

Moreover, as Chief Judge Conner found in *Holloway*, a maximum possible punishment is "certainly probative" of the offense's seriousness, but the General Assembly's classification of the offense as a misdemeanor rather than a felony is "a powerful expression of its belief that the offense is not serious enough to be disqualifying." [63]

Moreover, the offense for which Mr. Williams was convicted of has no element of violence. None of the elements of Pennsylvania's DUI statute involves or makes reference to the use, attempted use, or threatened use of physical force against another. [64] As discussed *supra*, even the Supreme Court has declared that DUIs do not fall into the category of offenses that are "violent" in nature. Further, Chief Judge Conner in *Holloway* also concluded that DUI was a "nonviolent" offense. [65]

Turning to the third element of the analysis proclaimed in *Binderup*, Mr. Williams was only sentenced to sentenced to passive house arrest until electronic

---

[63] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *4, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).
[64] *See* 75 Pa.C.S. § 3802
[65] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *4, (M.D. Pa. Sept. 28, 2018).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

monitoring was available for 90 days, [66] ordered to pay costs, a fine of $1,500.00, and complete any recommended drug and alcohol treatment. While the offense was punishable by up to five years imprisonment, it is telling that the Judge did not believe it was worthy of any jail time. While some may argue that the passive house arrest until electronic monitoring could be implemented for 90 days is a serious deprivation of freedom, it is important to compare it to actual incarceration. Additionally, a comparison between the sentence of Binderup and Suarez is warranted, although not controlling.

Binderup was sentenced to three (3) years probation. [67] While Mr. Williams was sentenced to 90-days imprisonment, he was immediately released to passive house arrest until electronic monitoring could be established. This is, in essence, probation. Further, the sentence was only for 90 days, a far cry from the three (3) years probation Mr. Binderup was sentenced to. Suarez received a suspended sentence of 180 days imprisonment and a year of probation. [68] Again, Mr. William's punishment was hardly severe relative to Mr. Binderup and Mr. Suarez. Chief Judge Conner in *Holloway* agreed with this logic, finding that "Holloway's sentence was relatively minor as compared to both the threshold term of imprisonment of more than one year defined in 18 U.S.C. § 922(g), and the

---

[66] The statutory minimum is imprisonment of not less than 90 days, removing the ability of the judge to sentence an individual to a lesser amount. *See* Exhibit D.
[67] *Binderup,* 836 F.3d at 340.
[68] *Id*.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

maximum possible punishment of five years' imprisonment he faced under Pennsylvania law." [69] Chief Judge Conner also found that one of the *Binderup* plaintiff's received a suspended sentence of 180 days imprisonment, which reflected "*discretionary authority that Holloway's sentencing judge lacked*." [70]

While there is a cross-jurisdictional consensus that DUI is a crime, that is where the consensus ends. The severity in which a second DUI is punished varies between numerous jurisdictions. As discussed *supra*, most states' statutory punishments for imprisonment range from several days up to two years. Few states punish the offense by more than two years imprisonment. Only four states punish a second DUI offense as a felony. [71] If anything, this shows that while states believe that DUI should be punished in some capacity, it is hardly what is considered a "serious crime" for the purposes of an *as-applied* Second Amendment challenge. As discussed further *infra*, Chief Judge Conner determined that "[t]he government has not shown there is a consensus regarding the seriousness of a generic second DUI offense, let alone a second DUI offense at a high rate of alcohol." [72]

In *Binderup*, the Court found that the vast majority of states did not treat consensual sexual relationships between a 41-year-old and a 17-year-old as a

---

[69] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *4, (M.D. Pa. Sept. 28, 2018). Further, Holloway had been sentenced to serve 90 days' work release, pay a fine of $1,500, complete any recommended drug and alcohol treatment, and serve 60 months' probation. *See Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *2, (M.D. Pa. Sept. 28, 2018).
[70] *Id*. at 9.
[71] https://www.madd.org/wp-content/uploads/2017/08/DUI_Felony_Overview.pdf
[72] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *5, (M.D. Pa. Sept. 28, 2018).

20

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

serious crime. [73] Likewise, the Court found that while some states punish the unlicensed carrying of a firearm, more than half prescribe a penalty that does not meet the threshold of a traditional felony. [74] As discussed *supra*, DUI is no different. Moreover, Chief Judge Conner found that Plaintiff Holloway – who was virtually identically situated to Mr. Williams – "distinguished himself from the class of persons historically barred from possessing a firearm by establishing that his crime of conviction was not sufficiently serious." [75]

Thus, much like the challengers in *Binderup* and *Holloway*, Mr. Williams has shown that he has carried the burden of showing that his misdemeanor was not a serious offense despite its maximum possible punishment. As such, he has distinguished his circumstances from individuals who historically were barred from possessing firearms.

        c.  No Further Analysis is Supported by Heller and McDonald

While Mr. Williams acknowledges the Third Circuit's precedent in *Binderup*, he respectfully calls into question this two-pronged approach, based on the Supreme Court's decisions in *Heller* and *McDonald*, where the Court specifically stated that lower courts should *not* conduct interest balancing or apply

---

[73] *Binderup,* 836 F.3d at 352.
[74] *Id.*
[75] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *6, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

levels of scrutiny. *Heller*, 554 U.S. at 634-35 (noting that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald*, 561 U.S. at 790-91 (noting that the *Heller* Court "specifically rejected" "an interest-balancing test"). Mr. Williams believes that if he prevails at step one of the *Marzzarella* test, the analysis should end and relief should be granted. However, if the Court believes that the balancing test should be applied, the Plaintiff would argue that strict scrutiny, rather than intermediate scrutiny, is the proper test to apply, since Plaintiff is denied his core Second Amendment right – the right to even possess a firearm in the home for purposes of self-defense – as held by the Supreme Court's decisions in *Heller* and *McDonald*.

2.  Step Two of the *Marzzarella* Framework

In the event, *arguendo*, this Court applies a balancing test, it should first consider that the Government previously granted relief to individuals in identical and far more egregious situations than Mr. Williams' and then review the restriction under the lens of strict scrutiny, since, as the *Heller* Court announced, it involves the core of the Second Amendment – the right to possess a firearm in the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

home. Alternatively, even if this Court reviews the matter under the lens of intermediate scrutiny, Mr. Williams is still entitled to the identical relief provided to Mr. Binderup and Mr. Suarez and affirmed by the Third Circuit in *Binderup*.

### a.  Holloway v. Sessions, et al.

On September 28, 2018, Chief Judge Conner of the Middle District of Pennsylvania issued an order and memorandum opinion in *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, (M.D. Pa. Sept. 28, 2018), granting declaratory relief and a permanent injunction against the Government from enforcing, directing enforcement, or permitting enforcement of the felon-in-possession ban of 18 U.S.C. § 922(g)(1) against Mr. Holloway.

The parallels between Mr. Holloway and Mr. Williams are virtually identical. Like Mr. Holloway, Mr. Williams was convicted of a second DUI graded as a misdemeanor of the first degree and punishable by up to five years imprisonment, [76] the incidents did not involve any damage to persons or property, and Mr. Williams' sentence included, among other things, incarceration of 90 days, but was served in a variable manner. [77]

---

[76] *See Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *2, (M.D. Pa. Sept. 28, 2018).

[77] Mr. Holloway was sentenced to 90 days work release, wherein he was able to work each day and accrue overtime hours but was otherwise confined to Cumberland County Prison for the remainder of the day. Mr. Williams served his 90 days under house arrest. *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *2, (M.D. Pa. Sept. 28, 2018). *See also* Transcript of the Deposition of Mr. Williams attached hereto and incorporated herein as Exhibit K.

23

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

In examining the *Binderup* factors, Chief Judge Conner found that "[t]he maximum possible punishment is 'certainly probative' of the offense's seriousness, but its classification as a misdemeanor by a state legislature 'is a powerful expression of its belief that the offense is not serious enough to be disqualifying,'" and that "in *Binderup*, the Third Circuit did not find the plaintiffs' respective maximum possible sentences of three and five years to be dispositive." [78] The Court found that the offense was 'non violent'". [79] Chief Judge Conner also found that "Holloway's sentence was relatively minor as compared to both the threshold term of imprisonment of more than one year defined in 18 U.S.C. § 922(g), and the maximum possible punishment of five years' imprisonment he faced under Pennsylvania law." [80] The Court also determined that there was no cross-jurisdictional consensus as to the severity of DUI. [81]

After weighing all of the *Binderup* factors, Chief Judge Conner concluded that Holloway's crime, which parallels that of Mr. Williams, was not a "'serious offense' within the ambit of § 922(g)(1)." [82] Moving to step two of the *Binderup* analysis, in applying intermediate scrutiny, the Court found that the Government had not satisfied its burden of "proving that disarmament of Holloway, and other

---

[78] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *4, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).
[79] *Id*. at 4.
[80] *Id*.
[81] *Id*. at 5, FN 6.
[82] *Id*. at 6.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

individuals like him, will promote public safety." [83] In Holloway, the Defendants relied heavily on an expert report – which is virtually identical to its Expert Report in this matter – which concludes that individuals with alcohol dependency or abuse issues are more prone to violence. Similar to Mr. Williams, nothing in the record suggested "that Holloway was ever diagnosed with or suffered from alcohol dependence, alcohol abuse, or mental illness." [84] [85] After reviewing the evidence of record, Chief Judge Conner concluded the "defendants' evidence fails to account for key characteristics of Holloway and similarly situated persons. They have presented no evidence indicating that individuals like Holloway—after over a decade of virtuous, noncriminal behavior—'remain [so] potentially irresponsible' that they should be prohibited from owning a firearm." [86]

---

[83] *Id*. at 7.

[84] *Id*.

[85] There are two distinctions that are worth noting. First, the expert report provided by Defendant's during discovery is identical to the one filed in *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, (M.D. Pa. Sept. 28, 2018), with the limited exceptions of the technical deficiencies (such as the lack of a signature) being corrected and the footnote citation numberings being modified (all of the sources are the same, one is just cited to in two separate footnotes). Second, unlike Plaintiff Holloway, Mr. Williams underwent an exam conducted by a licensed psychologist who concluded within a reasonable degree of psychological certainty that Mr. Williams may possess firearms without a risk to himself or others. The report also states that the MMPI-2 test indicated "no problems with aggression…and *no addiction problems*," and the BPRS indicated "no current psychiatric symptoms". *See* Exhibit J at 10.

[86] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *8, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### b.  Robert Gordon's Expert Report

On August 7, 2018, Robert Gordon, Ph.D., ABPP, a Board certified clinical psychologist, conducted an examination of Mr. Williams, which consisted of an interview, a battery of psychological tests, and rating Mr. Williams on a psychodiagnostic chart, for the purposes of determining whether Mr. Williams "is fit to be allowed to own, possess, carry, and use a firearm *without risk to him or any other person*."[87] In forming his opinion, in additional to the tests performed, Mr. Gordon reviewed a number of documents, including the Defendants' Expert Report.

The report generated by Mr. Gordon identifies numerous deficiencies with the Expert Report for the Defendants prepared by Dr. Webster, ScD. Particularly that

> While Dr. Webster presents some valid correlation research groupings of individuals *it has a relatively small predictive value* in generalizing to groups and *does not predict* the effect of two DUI's from 14-18 years ago, *especially when the individual has no history of aggression*. As Dr. Webster *did not assess Mr. Williams, these generalizations are not relevant to this particular case*, as any applicability would require an independent evaluation of the particular person. As set forth in this forensic report…the research relied upon by Dr. Webster is not applicable to Mr. Williams.[88]

---

[87] *See* Exhibit J. (Emphasis added).
[88] *Id.* at 7. (Emphasis added).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Further, Mr. Gordon also identified that Dr. Webster's report:

1. Is premised on individuals who suffer from alcohol or abuse issues; and there is no evidence that Mr. Williams currently suffers from any alcohol or dependency issues;

2. Contends there exists a statistical significance in relation to reduction of future violent crime when *those previously convicted of a <u>violent crime</u>* were barred from purchasing a handgun; however, there is no evidence Mr. Williams has been charged with, let alone, convicted of a violent crime;

3. Contends that 54% of repeat DUI offenders have an alcohol dependency issue, which leaves 46% without a dependency issue;

4. Fails to support a finding that alcohol-impairment and/or abuse are *causal* to unintentional firearm injuries or deaths and acknowledges a lack of data supporting that proposition;

5. Contends that individuals *previously convicted of a misdemeanor crime of <u>violence</u>* are more likely to commit crime in the future and then opines that prohibitions against individuals like Mr. Williams prove a public safety benefit, even though Mr. Williams was never convicted of such an offense.[89]

Mr. Gordon's report summarizes that Mr. Williams has "no history of hostile or violent behaviors nor a continuing pattern of aggressive behaviors, which could

---

[89] *Id.* at 7-8.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

be a predictive factor." [90] The summarization also concludes that "[a]lthough the research cited by Dr. Webster sheds light on some predictive factors, *the prediction is low*...Dr. Webster is not a psychologist and did not perform a psychological assessment of Mr. Williams' mental status…Therefore, his report has *no value for this particular case*, in the absence of an independent evaluation of Mr. Williams…" [91] Mr. Gordon's report concludes that Mr. Williams "has a normal personality, *without psychopathology and without addition or violent tendencies*." [92]

c.  The Government's Prior Grants of Relief to Individuals Convicted of Similar and Far More Egregious Crimes

Prior to 1993, ATF regularly conducted federal firearms relief determinations as provided for by 18 U.S.C. § 925(c); however, ATF no longer is able to conduct these determinations because Congress has inserted language into the appropriations bill which states "[p]rovided further, That none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)." [93] However, before Congress prohibited ATF from conducting those determinations, ATF

---

[90] *Id*. at 11.
[91] *Id*.
[92] *Id*. at 11-12.
[93] https://fas.org/sgp/crs/misc/R44686.pdf at 24. *See also* The Consolidated Appropriations Act, 2018, Pub. L. No. 115–141, 132 Stat. 348.

28
CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

granted relief to 7,722 individuals from 1968 to 1992 for a multitude of different crimes,[94] some of which were identical to and some far more egregious than Mr. Williams' – in fact, some had more than six separate federal prohibitions[95] and

---

[94] *See,* 34 Fed. Reg. 10006 (June 28, 1969), 34 Fed. Reg. 12229 (July 24, 1969), 36 Fed. Reg. 20449 (Oct. 22, 1971), 36 Fed. Reg. 21364 (Nov. 6, 1971), 36 Fed. Reg. 22321 (Nov. 24, 1971), 36 Fed. Reg. 23731 (Dec. 14, 1971), 37 Fed. Reg. 23 (Jan. 4, 1972), 37 Fed. Reg. 2893 (Feb.9, 1972), 37 Fed. Reg. 4921 (Mar. 7, 1972), 37 Fed. Reg. 6361 (Mar. 28, 1972),  37 Fed. Reg. 6769 (Apr. 4, 1972), 37 Fed. Reg. 7168 (Apr. 11, 1972), 37 Fed. Reg. 8403 (Apr. 26, 1972), 37 Fed. Reg. 10406 (May 20, 1972), 37 Fed. Reg. 11790 (June 14, 1972), 37 Fed. Reg. 13352 (July 7, 1972), 37 Fed. Reg. 15009 (July 27, 1972), 37 Fed. Reg. 16113 (Aug. 10, 1972), 37 Fed. Reg. 18636 (Sept. 14, 1972), 37 Fed. Reg. 23462 (Nov. 3, 1972), 37 Fed. Reg. 26352 (Dec. 9, 1972), 37 Fed. Reg. 28640 (Dec. 28, 1972), 38 Fed. Reg. 1944 (Jan. 19, 1973), 38 Fed. Reg. 3414 (Feb. 6, 1973), 38 Fed. Reg. 4524 (Feb.15, 1973), 38 Fed. Reg. 4583 (Feb. 16, 1973), 38 Fed. Reg. 8071 (Mar. 28, 1973), 38 Fed. Reg. 14299 (May 31, 1973), 39 Fed. Reg. 9212 (Mar. 8, 1974), 41 Fed. Reg. 7550 (Feb. 19, 1976), 41 Fed. Reg. 50368 (Nov. 15, 1976), 42 Fed. Reg. 21156 (Apr. 25, 1977), 43 Fed. Reg. 25755 (June 14, 1978), 43 Fed. Reg. 51736 (Nov. 6, 1978), 44 Fed. Reg. 71492 (Dec. 11, 1979), 45 Fed. Reg. 6878 (Jan. 30, 1980), 45 Fed. Reg. 26868 (Apr. 21, 1980), 45 Fed. Reg. 39998 (June 12, 1980), 45 Fed. Reg. 49733 (July 25, 1980), 45 Fed. Reg. 65393 (Oct. 2, 1980), 45 Fed. Reg. 76838 (Nov. 20, 1980), 46 Fed. Reg. 11751 (Feb. 10, 1981), 46 Fed. Reg. 23646 (Apr. 27, 1981), 46 Fed. Reg. 33410 (June 29, 1981), 46 Fed. Reg. 46456 (Sept. 18, 1981), 46 Fed. Reg. 57812 (Nov. 25, 1981), 47 Fed. Reg. 10132 (Mar. 9, 1982), 47 Fed. Reg. 47714 (Oct. 27, 1982), 48 Fed. Reg. 10508 (Mar. 11, 1983), 48 Fed. Reg. 28385 (June 21, 1983), 48 Fed. Reg. 29650 (June 27, 1983), 48 Fed. Reg. 36720 (Aug. 12, 1983), 48 Fed. Reg. 50977 (Nov. 4, 1983), 49 Fed. Reg. 25060 (June 19, 1984), 49 Fed. Reg. 29503 (July 20, 1984), 49 Fed. Reg. 35707 (Sept. 11, 1984), 49 Fed. Reg. 48252 (Dec. 11, 1984), 50 Fed. Reg. 1026 (Jan. 8, 1985), 50 Fed. Reg. 23374 (June 3, 1985), 54 Fed. Reg. 33108 (Aug. 11, 1989), 54 Fed. Reg. 43378 (Oct. 24, 1989), 55 Fed. Reg. 5939 (Feb. 20, 1990), 55 Fed. Reg. 14549 (Apr. 18, 1990), 55 Fed. Reg. 33208 (Aug. 14, 1990), 55 Fed. Reg. 48951 (Nov. 23, 1990), 56 Fed. Reg. 14971 (Apr.12, 1991), 56 Fed. Reg. 26713 (June 10, 1991), 56 Fed. Reg. 36865 (Aug. 1, 1991), 56 Fed. Reg. 65926 (Dec. 19, 1991), 57 Fed. Reg. 6160 (Feb. 20, 1992).

[95] *See* 36 F.R. 22321 (Morrow, Clyde Franklin), 37 F.R. 18636 (Cook, Judson Vernon. Jr.), 46 F.R. 46456 (Crawford, Cleo J., Metz, Ira G.), 48 F.R. 28385 (Blackburn, Vaughn), 49 F.R. 25060 (Karl, Earl Jerome), 49 F.R. 29503 (Adams, Richard Gerald), and 55 F.R. 14549 (Search, Herman Samuel).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

some had been convicted of vehicular homicide while DUI. [96] *See* Federal Register List attached hereto and incorporated herein as Exhibit D.

Unfortunately, the Federal Register publications do not specify the crime, which the individual was convicted of but rather only specify the date of conviction and court where they were convicted for which relief was granted. The Plaintiff sought records from a sampling of several courts to identify the types of crimes individuals had previously been convicted of and were subsequently granted relief in relation to, after ATF determined, pursuant to 27 CFR. 478.144, that that the individual would "not be likely to act in a manner dangerous to public safety, and that the granting of the relief would not be contrary to the public interest." [97] Unfortunately, there is no way – other than contacting the court of conviction relative to each individual's offense(s) and attempting to procure any records that may still exist – for the Plaintiff to identify all the other individuals who were convicted of DUI (such as the offense Mr. Williams was convicted of)

---

[96] *See* the Court records of John Kraszewski, granted relief on February 20, 1992 (57 F.R. 6160-02), from a 1984 Pennsylvania conviction, which included one count of homicide by vehicle, attached hereto and incorporated herein as Exhibit E. *See also* the Court records of Kim Blake, granted relief on August 11, 1989 (54 F.R. 33108), from a 1981 Pennsylvania conviction, which included one count of homicide by vehicle, attached hereto and incorporated herein as Exhibit F.

[97] Noteworthy is the language utilized in the earlier publications of the Federal Register for grants of relief. "Notice is hereby further given that I have considered [name's] application and have found: (1) The conviction was made upon a charge which did not involve the use of a firearm or other weapon or a violation of Chapter 44, Title 18, United States Code, or of the National Firearms Act; and (2) It has been established to my satisfaction that the circumstances regarding the conviction and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety, and that the granting of the requested relief to [name] from disabilities incurred by reason of his conviction, would not be contrary to the public interest." *See* 34 F.R. 12229.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

and subsequently granted relief from the information contained in the Federal Register.

        i.   John Kraszewski and Kim Blake

Mr. Kraszewski was granted federal firearms relief on February 20, 1992 from a 1984 Pennsylvania conviction.[98] The court records show that Mr. Kraszewski had been charged with and pled guilty to one count of driving under the influence and *one count of homicide by vehicle*.[99] Likewise, Kim Blake was granted relief from a conviction in 1981 of homicide by vehicle and DUI.[100]

While the Government contends that individuals, like the Plaintiff, should not be allowed to exercise their Second Amendment rights because they are "unvirtuous" citizens, it finds itself in an untenable position having granted relief to at least two individuals who not only were convicted of DUI but also homicide by vehicle, where the court records establish that homicide by vehicle was the result of their driving under the influence. 18 U.S.C. § 925(c) required ATF to find the individual would not be "likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." Even though Mr. Kraszewski was responsible for the loss of life through his

---

[98] 57 F.R. 6160-02.
[99] *See* Exhibit E. *See also* Exhibit D (57 FR 6160).
[100] *See* Exhibit F. *See also* Exhibit D (54 FR 33108).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

actions, ATF determined that he should be granted relief and that such was not contrary to the public interest.

While Plaintiff acknowledges that § 925(c) does not control this challenge, the Defendants are unable to show that Mr. Williams is likely to act in a manner dangerous to public safety as there is no evidence of record to support such a proposition. Moreover, as discussed *supra* and *infra*, the Third Circuit has stated that the intended purpose of § 922(g)(1) is to "promot[e] public safety by 'preventing armed mayhem.'" [101] The record in this matter is devoid of any evidence that would support finding that the § 922(g)(1) prohibition as applied to the Plaintiff would be contrary to that intended purpose.

ii.  Barry Shoop

Mr. Shoop was granted federal firearms relief on April 11, 1977 from a 1975 Pennsylvania driving under the influence conviction, which was prohibiting like Mr. Williams'. [102] A copy of the records obtained from the court in relation to Mr. Shoop are attached hereto and incorporated herein as Exhibit G.

Here, again, is another example of an individual who was convicted of DUI, who was later granted relief by ATF, finding that Mr. Shoop would not be "likely

---

[101] *Binderup,* 836 F.3d at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).
[102] 42 F.R. 21156.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." To find the § 922(g)(1) prohibition against Mr. Williams furthers an important government interest when the Government previously granted relief to individuals convicted of the same or more egregious offenses, simply cannot withstand any form of scrutiny.

### iii.  Carl Fareri [103]

Mr. Fareri was granted federal firearms relief on November 23, 1990 from a 1984 conviction. [104] The court records show that Mr. Fareri was convicted of felonious burglary twice, felonious conspiracy, theft by unlawful taking or disposition and receiving stolen property. A copy of the records obtained from the court in relation to Mr. Fareli are attached hereto and incorporated herein as Exhibit H.

While Mr. Fareri's crimes are not directly related to DUI, it does show that even when an individual committed a crime that is considered to be felonious in nature and deprives an individual of their property, that the grant of relief was not considered contrary to the public safety or interest. [105]

---

[103] The court records reflect a spelling of "Fareli" and "Fareri," but it is believed that the proper spelling is "Fareri".
[104] 55 F.R. 48951-03 (spelled "Fareri" in the publication).
[105] Plaintiff also obtained records for Ronald Sahara Brown, who was convicted of felonious larceny from a person in 1973, felonious possession of heroin in 1975 and felonious larceny in a

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

iv.  Charles Spangler

Mr. Spangler was granted federal firearms relief on June 10, 1991 from five convictions in 1963, 1965, and 1985. [106] Mr. Spangler had been convicted of adultery, statutory rape, contributing to the delinquency of a minor, possession of a firearm and resisting an officer. A copy of the records obtained from the court in relation to Mr. Spangler are attached hereto and incorporated herein as Exhibit I.

Mr. Spangler's multiple convictions show that not only did his crimes cover a broad spectrum, but that ATF considered an individual who had five convictions ranging from statutory rape to resisting an officer to be of such little threat to society that the restoration of his right to own and possess firearms and ammunition would not be contrary to the public safety or interest. Most interesting is that Mr. Spangler's last conviction was a mere six (6) years prior to him being granted relief and it was for the possession of a firearm and *resisting an officer*.

Mr. Spangler is not the only individual who had multiple prohibiting convictions and who was granted relief by ATF. The Federal Register denotes numerous instances where an individual who had multiple prohibiting convictions

---

building in 1977 and William White, who was convicted of felonious larceny of a truck in 1965 and a prior felonious juvenile burglary.

[106] 56 F.R. 26713-02.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

was granted federal firearms relief. [107]

### 3. 18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Strict Scrutiny

Step two of the *Binderup* analysis requires the Government to show that the restriction meets "some form of heightened scrutiny." [108] Strict scrutiny requires that the Government bear the burden to show that the law is "narrowly tailored to serve a compelling state interest." [109]

Clearly, the Government cannot make such a showing given the factual circumstances. The Government is unable to provide any persuasive authority, let alone compelling authority, to show that such a bar would meet the criteria of being "narrowly tailored to serve a compelling state interest." [110] In fact, the

---

[107] *See* 36 F.R. 20449, 36 F.R. 22321, 36 F.R. 23731, 37 F.R. 10406, 37 F.R. 11790, 37 F.R. 13352, 37 F.R. 15009, 37 F.R. 16113, 37 F.R. 18636, 37 F.R. 23, 37 F.R. 23642, 37 F.R. 26352, 37 F.R. 28640, 37 F.R. 2893, 37 F.R. 4921, 37 F.R. 6361, 37 F.R. 6769, 37 F.R. 7168, 37 F.R. 8403, 38 F.R. 14299, 38 F.R. 1944, 38 F.R. 3414, 38 F.R. 4524, 38 F.R. 4583, 38 F.R. 8071, 39 F.R. 9212, 41 F.R. 50368, 41 F.R. 7550, 42 F.R. 21156, 43 F.R. 25755, 43 F.R. 51736, 44 F.R. 71492, 45 F.R. 26868, 45 F.R. 39998, 45 F.R. 49733, 45 F.R. 65393, 45 F.R. 6878, 45 F.R. 76838, 46 F.R. 11751, 46 F.R. 23646, 46 F.R. 33410, 46 F.R. 46456, 46 F.R. 57812, 47 F.R. 10132, 47 F.R. 47714, 47 F.R. 47714, 48 F.R. 10508, 48 F.R. 28385, 48 F.R. 29650, 48 F.R. 36720, 48 F.R. 50977, 49 F.R. 25060, 49 F.R. 29503, 49 F.R. 35707, 49 F.R. 48252, 50 F.R. 1026, 50 F.R. 23374, 54 F.R. 33108, 54 F.R. 43378, 55 F.R. 14549, 55 F.R. 33208, 55 F.R. 48951, 55 F.R. 5939, 56 F.R. 14791, 56 F.R. 26713, 56 F.R. 36865, 56 F.R. 65926, and 57 F.R. 6160.
[108] *Binderup,* 836 F.3d at 347.
[109] *Marzzarella,* 614 F.3d at 99. (citing *FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 465 (2007)).*
[110] *See* Government's Expert Report. Plaintiff files these objections anticipating that the Defendants will utilize that report in conjunction with their Motion for Summary Judgment. In

35

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Government's expert report is littered with decades old studies and broad generalizations that are not even applicable to the Plaintiff in this matter.

As recounted in the Plaintiff's Objections to Defendants' Expert Report of Daniel Webster, ScD and Plaintiff's own expert report: 1) a number of the findings in the Defendants' Expert Report are premised on individuals who suffer from alcohol or abuse issues; and there is no evidence that Mr. Williams currently suffers from any alcohol or dependency issues; 2) there exists a statistical significance in relation to reduction of future violent crime when *those previously convicted of a <u>violent crime</u>* were barred from purchasing a handgun; however, there is no evidence Mr. Williams has committed, let alone, been charged with or convicted of a violent crime; and 3) the report states that individuals who were *previously convicted of a misdemeanor crime of <u>violence</u>* are more likely to commit crime in the future and opines that prohibitions against individuals like Mr. Williams prove a public safety benefit, even though Mr. Williams was never convicted of such an offense.[111]

In other words, the Defendants' Expert Report simply has no value when applied to Mr. Williams and certainly does not lend itself to establishing that such a prohibition would pass muster under a strict scrutiny analysis. In fact, Expert

---

the event the Defendants opt to not utilize the report, the arguments pertaining to content contained in the Report are withdrawn.

[111] *See* Exhibit J.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Gordon's findings directly contradict the image Defendants attempt to use to portray Mr. Williams. Expert Gordon, a Board certified psychologist, conducted an interview and a battery of tests on Mr. Williams to reach a conclusion to a reasonable degree of psychological certainty that Mr. Williams be "allowed to own, possess, carry, and use a firearm," and that he may do so "without risk to himself or any other person." [112]

As Chief Judge Conner found in *Holloway*, where Defendants submitted a virtually identical expert report of Dr. Webster,  "[the] defendants' evidence fails to account for key characteristics of Holloway and similarly situated persons. They have presented no evidence indicating that individuals like Holloway—after over a decade of virtuous, noncriminal behavior—"remain [so] potentially irresponsible" that they should be prohibited from owning a firearm. The government has not demonstrated a substantial fit between Holloway's continued disarmament and the important government interest of preventing armed mayhem." [113] As noted *supra*, Mr. Holloway and Mr. Williams find themselves in nearly identical situations and the Government's expert report in this matter is virtually identical to the one relief upon in *Holloway*, thus leading one to conclude that this Honorable Court must reach the same result.

---

[112] *Id*. at 12.
[113] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *8, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).

37

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

The Third Circuit has stated that the intended purpose of § 922(g)(1) is to "promot[e] public safety by 'preventing armed mayhem.'" [114] Applying the strict scrutiny analysis to the purpose of § 922(g)(1), the Government cannot show that preventing an individual convicted of a DUI wherein he was not prohibited from possessing firearms under state law to be narrowly tailored to prevent the compelling governmental interest of "preventing armed mayhem".

### 4. 18 U.S.C. § 922(g)(1) As Applied to Mr. Williams Cannot Survive Intermediate Scrutiny

The Third Circuit determined that the intermediate scrutiny analysis as declared in *Marzzarella* was the appropriate level of scrutiny to apply to a Second Amendment *as-applied* challenge, although it noted that strict scrutiny may be appropriate. [115] Intermediate scrutiny requires that the Government bear the burden of showing the appropriateness of its means to further its interest. [116]

It is evident that the Defendants believe there is a reasonable fit between the 922(g)(1) prohibition on individuals like the Plaintiff and the Government's interest in protecting public safety. [117] However, much like in *Binderup* and

---

[114] *Binderup,* 836 F.3d at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).
[115] *Id.* at 353.
[116] *Id.*
[117] *See* Doc. 5 at 24.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

*Holloway*, the Government has failed to produce credible evidence why banning people like Mr. Williams, in perpetuity, from possessing firearms promotes public safety. [118] The Government relies on an Expert Report which utilizes old studies whose data is not recent and which even admits they have obvious limitations or that there is nothing concrete suggesting a relationship between alcohol consumption and violence. [119]

As Judge Jones recently held in *Keyes, et. al. v. Sessions, et al.*, 282 F.Supp.3d 858, 876-877, (M.D. Pa. Oct. 11, 2017)

> To allow the Government to defeat an as-applied challenge by demonstrating that the statute was a reasonable fit to its important interest in general would mean that the challengers' efforts to distinguish themselves from the overall class are rendered futile. In essence, *without considering the challengers' specific characteristics*, the second step of the *Marzzarella* framework is the same in both facial and as-applied challenge, rendering the first prong in as-applied challenges superfluous and done in vain.

The Government's expert report casts a broad net of general assertions about individuals convicted of DUI in an attempt to have this Court reject Mr. Williams's claim that as-applied to him, the § 922(g)(1) prohibition is unconstitutional. "But it must 'present some meaningful evidence, not mere assertions, to justify its predictive [and here conclusory] judgments.'" [120] The Government has failed to do so. Meanwhile, Mr. Gordon's expert report was based on an evaluation of Mr.

---

[118] *Binderup,* 836 F.3d at 353-54.
[119] *See* Government's Expert Report.
[120] *Binderup,* 836 F.3d at 354 (quoting *Heller, 554 U.S.* at 1259).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Williams and concludes to a reasonable degree of psychological certainty that Mr. Williams may possess firearms without a risk to himself or others. [121]

As Chief Judge Conner stated in *Holloway* "[the] defendants' evidence fails to account for key characteristics of Holloway and similarly situated persons. They have presented no evidence indicating that individuals like Holloway—after over a decade of virtuous, noncriminal behavior—"remain [so] potentially irresponsible" that they should be prohibited from owning a firearm. The government has not demonstrated a substantial fit between Holloway's continued disarmament and the important government interest of preventing armed mayhem." [122] Likewise, in this instant matter, the only logical conclusion is one that yields the same result.

The Third Circuit has stated that the intended purpose of § 922(g)(1) is to "promot[e] public safety by 'preventing armed mayhem.'" [123] Applying the intermediate scrutiny analysis to the purpose of § 922(g)(1), the Government cannot show that preventing an individual convicted of a DUI wherein he was not prohibited from possessing firearms under state law to fit reasonably within the interest of "preventing armed mayhem".

---

[121] *See* Exhibit J at 12.
[122] *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *8, (M.D. Pa. Sept. 28, 2018). (Internal citations omitted).
[123] *Id.* at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## VI.     CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment should be granted.

Respectfully Submitted,

Dated: October 26, 2018

_____
Adam Kraut, Esq.
Attorney Id. No. 318482
AKraut@PrinceLaw.com

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorneys for Plaintiff

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing

Brief, Exhibits, Plaintiff's Declaration, Objections to Defendants' Expert Report

and Motion were filed electronically through the Eastern District of Pennsylvania

Electronic Filing System. Notice of this filing will be sent by operation of the

court's Electronic Filing System to all registered users in this case.

Adam Kraut, Esq.
Attorney Id. No. 318482
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorney for Plaintiff

42

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER