Joshua Prince, Esq.
Attorney Id No. 306521

Adam Kraut, Esq.
Attorney Id. No. 318482

Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416, ext 81114 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | Honorable Robert F. Kelly |
| | : | |
| **JEFFERSON B. SESSIONS III,** *et al.* | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   PROCEDURAL HISTORY ............................................................ 2

III.  FACTUAL BACKGROUND ........................................................... 2

IV.   ARGUMENT .................................................................................. 5

      a.   Incorporation ...................................................................... 5

      b.   Mr. Williams conviction is not a serious crime ...................... 6

      c.   The Defendants can neither show a compelling nor important
           Government interest in stripping Mr. Williams of a constitutional
           right ..................................................................................... 14

V.    CONCLUSION ............................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*)....... passim

*Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, (M.D. Pa. Sept. 28, 2018) ............................................................................................................. passim

*Jacobson v. United States*, 503 U.S. 540 (1992) ..................................................... 15

*Raley v. State of Ohio*, 360 U.S. 423 (1959)............................................................ 15

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ............................................ 18


**Statutes**

18 Pa.C.S. § 6105 ............................................................................................... 3, 11

18 Pa.C.S. § 6109 ............................................................................................... 3, 11

18 U.S.C. § 921(a)(20) ........................................................................................... 10

18 U.S.C. § 922(g)(1) ........................................................................................ passim

42 Pa.C.S. § 9763 ............................................................................................... 2, 11

42 Pa.C.S. § 9804 ............................................................................................... 2, 11

75 Pa.C.S. § 3804(c)(2)(i)................................................................................... 3, 11

75 Pa.C.S. § 3813 ............................................................................................... 3, 11


**Regulations**

37 Pa. Code § 451.52 ......................................................................................... 2, 11

Plaintiff Edward A. Williams, by and through his counsel, hereby submits this Brief in Opposition to Defendants' Motion for Summary Judgment.

## I.     INTRODUCTION

Plaintiff Edward A. Williams (hereinafter "Mr. Williams" or "Plaintiff") has filed suit, complaining that the Defendants have collectively and individually prohibited a particular class of persons, including the Plaintiff, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of a misdemeanor driving under the influence (hereinafter "DUI") conviction, where no one was injured by the conduct and where no property damage resulted, in violation of his Second Amendment Rights.

Pursuant to the elements set-forth by the Third Circuit in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*), it is clear that the Defendants' enforcement of such a prohibition violates Mr. Williams's fundamental constitutional right to keep and bear arms as provided for in the Second Amendment.

## II.      PROCEDURAL HISTORY

For brevity, Plaintiff respectfully incorporates the procedural history that he provided in his Brief in Support of his Second Motion for Summary Judgment. [1]

## III.      FACTUAL BACKGROUND

For brevity, Plaintiff respectfully incorporates the factual background that he provided in his Brief in Support of his Second Motion for Summary Judgment. [2]

Furthermore, as set-forth in Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, Defendants attempt to rely on hearsay [3] in their Brief (Def. Brief at 1-2 [4]) and contrary to Defendants' assertion that Mr. Williams would have had to serve time in jail if it had not been for his medical condition (Def. Brief at 2), a sentencing judge retains authority to grant house arrest absent a medical condition [5] and to also grant work release, [6] as was done in relation to Mr.

---

[1] *See* Docs. 29-4 (redacted), 31 (unredacted).

[2] *Id.*

[3] *See*, Plaintiff's Response to Defendants' Statement of Material Facts, ¶¶ 7, 12, 13.

[4] Plaintiff notes that it appears that the numbering of Defendants' Brief is misnumbered in that the Table of Contents is on pages 1 and 2, and then, the Factual Background starts on the following page, but without a number, with the following page being listed as page 2, resulting in there being two pages labeled "2". Thus, Plaintiff believes that Defendants intended the Table of Contents to be numbered with roman numerals (*i.e.* i., ii.) and the remainder of the Brief was to be numbered with Arabic numerals (*i.e.* 1, 2, …etc). Accordingly, any cites to the Defendants' Brief using Arabic numerals will be to the substantive portion of Defendants' Brief – as numbered – and not to the Table of Contents.

[5] *See*, 42 Pa.C.S. §§ 9763, 9804; 37 Pa. Code § 451.52.

Holloway, in *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, at *4, (M.D. Pa. Sept. 28, 2018). [7] Moreover, Mr. Williams no longer consumes alcohol, save for the occasional glass of wine with dinner or champagne at home on New Year's Eve with his family. (Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, ¶ 18).

In turning to the Defendants' disingenuous allegations that Mr. Williams *knowingly* possessed firearms and ammunition after his 2004 conviction (Def. Brief at 2-4), [8] [9] the record in this matter is explicitly clear [10] that: (1) Mr. Williams believed that he had been convicted of a misdemeanor of the second degree, as

---

[6] *See*, 75 Pa.C.S. § 3813. *See also*, *Holloway*, 2018 WL 4699974, at *4 (declaring that a "sentencing judge has discretion to assign an individual convicted of a DUI offense to a daytime work release program")

[7] Plaintiff also notes, as was declared by Chief Judge Conner in *Holloway*, that pursuant to 75 Pa.C.S. § 3804(c)(2)(i), a sentencing judge lacks any discretion in imposing a sentence of less than 90 days but "[w]ithout discounting the significance of 90 days' imprisonment, Holloway's sentence was relatively minor as compared to both the threshold term of imprisonment of more than one year defined in 18 U.S.C. § 922(g), and the maximum possible punishment of five years' imprisonment he faced under Pennsylvania law." 2018 WL 4699974, at *4

[8] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The Defendants also disingenuously attempt to have this Court believe that Mr. Williams knowingly made a false statement during his purchase of a firearm in 2007 (Def. Brief at 3-4) by playing fast and loose with his testimony on May 8, 2018. Specifically, Mr. Williams was asked by Defense Counsel "Sitting here today, it's a false statement; right?" to which Mr. Williams responded "Yes" (Def. Exhibit A, Williams Dep. 82-83) as his deposition occurred almost three year after his discussion with the undersigned, where he learned – for the first time – that he was prohibited from purchasing, possessing and utilizing firearms and ammunition, pursuant to Defendants' interpretation of 18 U.S.C. § 921(g)(1). *See*, Plaintiff's Statement of Material Facts, ¶¶ 10, 17.

[10] *See*, Plaintiff's Response to Defendants' Statement of Material Facts, ¶¶ 19-41.

reflected on his court docket sheet (*see*, Def. Exhibit A, Williams Dep., Exhibit 5 (marked MCP-000006) reflecting under Final Disposition "M2" [11]), which would not have triggered a prohibition under 18 U.S.C. § 922(g)(1), as it was a state law misdemeanor crime that could not have been punished by more than two years in jail; [12] (2) Mr. Williams was never informed that he was prohibited from purchasing, possessing and utilizing firearms and ammunition as a result of his 2004 DUI conviction until November 5, 2015, when he was informed of such by the undersigned; [13] (3) ███████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████████████████████████ [14] (4) while Mr. Williams was on probation, the Pennsylvania State Police and Bureau of Alcohol, Tobacco, Firearms and Explosives told him that he could continue to work for a federal firearms licensee, where he sold firearms (Def. Exhibit A, Williams Dep. 19) and approved him for purchases of firearms (Def.

---

[11] See also, the print date of "1/16/2018" reflecting that the Court still had Mr. Williams' conviction listed as an misdemeanor of the second degree on January 16, 2018, when the docket was printed. In fact, the undersigned on November 7, 2018 printed a new copy of the docket, which still reflects the Final Disposition as an "M2". *See*, Exhibit M to Plaintiff's Motion for Summary Judgment.

[12] *See*, 18 U.S.C. § 921(a)(20) declaring that the "term 'crime punishable by imprisonment for a term exceeding one year' does not include-- … (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Pursuant to 18 Pa.C.S. § 106(b)(7), a misdemeanor of the second degree cannot be punished by more than two years in jail.

[13] *See*, Plaintiff's Statement of Material Facts, ¶¶ 10, 17.

[14] *See*, ████████████████████████████████.

Exhibit A, Williams Dep. 77; Exhibit L to Plaintiff's Motion for Summary Judgment, Williams Dep. 79); and, (5) Mr. Colosimo testified that he inquired of ATF and the City, as to whether Mr. Williams was prohibited and ATF and the City told him that Mr. Williams was fine in continuing in his job duties, including possessing firearms and ammunition, after performing a background check on Mr. Williams. (Exhibit N to Plaintiff's Motion for Summary Judgment, Colosimo Dep. 30 – 32). Of importance, after becoming aware that he was prohibited after the undersigned's discussion with him on November 5, 2015, Mr. Williams immediately divested himself of all firearms and ammunition and refrained from acquiring any firearms or ammunition.  (Plaintiff's Statement of Material Facts,  ¶¶ 20 – 22; Def. Exhibit A, Williams Dep. 16 – 17, 19).

## IV.    ARGUMENT

### a. Incorporation

For brevity, Plaintiff respectfully incorporates the argument that he provided in his Brief in Support of his Second Motion for Summary Judgment. [15] Plaintiff will merely respond to any new issues raised by Defendants that have not been previously addressed by Plaintiff in his Brief in Support of his Second Motion for Summary Judgment.

---

[15] *See* Docs. 29-4 (redacted), 31 (unredacted).

### b.  Mr. Williams conviction is not a serious crime

First and foremost, Plaintiff respectfully contends that Defendants' citation to a number of reports and statements for support of their proposition that DUI is a serious offense (Def. Brief at 10-13 and Defendants' Statement of Undisputed Material Facts, ¶¶ 42-58) is misplaced under the first prong of *Binderup*, where the Court is to determine the seriousness – or lack thereof – based off: (1) whether the offense is a misdemeanor or felony; (2) whether there was an element of violence; (3) the punishment imposed; and (4) whether there exists a cross-jurisdictional consensus as to the seriousness of the offense. *Binderup*, 836 F.3d at 351-53.

Nevertheless, *arguendo*, if this Court deems it appropriate to consider Defendants' arguments under the first prong, it is extremely telling that while the Defendants cite to those reports and statements for support of their proposition that DUI is a serious offense (Def. Brief at 10-13 and Defendants' Statement of Undisputed Material Facts, ¶¶ 42-58), they fail to advise this Court that they made the same argument and submitted the same reports and statements in *Holloway*, where Chief Judge Conner found them unpersuasive. *See*, *Holloway*, 1:17-CV-81, 2018 WL 4699974 *6-8 (M.D. Pa. Sept. 28, 2018) (Docs. 61-1, 61-2, 61-3). Furthermore, as was raised in *Holloway* – which Plaintiff has raised in Plaintiffs' Response to Defendants' Statement of Material Facts, ¶¶ 42-58, and Plaintiff's Objections to Defendants' Expert Report of Denial Webster, ¶¶ 2-7 – the reports

6

and statements have no bearing in relation to Mr. Williams, as, *inter alia*, (1) none suggest or imply that constitutional rights should be infringed in relation to DUIs; (2) Mr. Williams was never involved in an "alcohol impaired-driving fatality," "fatal motor vehicle crash," "fatal crash," or "fatal single-vehicle motor vehicle crash"; (3) Mr. Williams does not have a criminal record of "serious crimes against persons as well as against property"; (4) Mr. Williams is not alcohol dependent; and, (5) Mr. Williams does not have "personality and psychosocial problems." [16] [17]

In turning to Chief Judge Conner's decision in *Holloway*, after consideration of Defendants' identical documentation and arguments, he declared

> After a careful weighing of the *Binderup* factors, the court concludes that Holloway's crime was not a "serious offense" within the ambit of Section 922(g)(1). A second DUI offense at the highest rate of alcohol, is a misdemeanor under Pennsylvania law and no showing of violence or attempted violence is required for conviction. All states take DUI offenses "seriously" by criminalizing such conduct, but there is no cross-jurisdictional consensus on the seriousness of such an offense. Only a

---

[16] *See*, in Plaintiffs' Response to Defendants' Statement of Material Facts, ¶¶ 42-58, and Plaintiff's Objections to Defendants' Expert Report of Denial Webster, ¶¶ 2-7.

[17] *See also*, Plaintiff's Expert Report by Psychologist Gordon declaring – after personally examining Mr. Williams and performing a battery of test on him – that (1) Mr. Williams' "MMPI-2 indicates no problems with aggression, good judgment, good impulse control, good reality testing and no addiction problems;" (2) Mr. Williams has "no current psychiatric symptoms. He is functioning at the healthy level;" (3) Mr. Williams has "no psychoneurological impairment;" (4) Mr. Williams has "a very low risk of violently acting out;" (5) Mr. Williams has "no psychopathic indication;" and (6) specifies an overall diagnosis of "Normal Personality". Exhibit J to Plaintiff's Motion for Summary Judgment, pgs. 7, 10-11.

Psychologist Gordon also declares that "[a]s Dr. Webster did not assess Mr. Williams, [his] generalizations are not relevant to this particular case, as any applicability would require independent evaluation of the particular person" and that "after reviewing all of the documents, performing a battery of tests and reviewing the results of the tests and conclude, to a reasonable degree of psychological certainty, that the research relied upon by Dr. Webster is not applicable to Mr. Williams." *Id.* at 7.

handful of states classify a second DUI offense as a felony or impose a maximum penalty of more than one year imprisonment. Fewer still increase the maximum possible term of imprisonment above one year when the offender drives at a high rate of alcohol (BAC greater than .15 percent). Despite the panoply of penalties available, the sentencing judge chose not to impose a sentence above the mandatory minimum term of 90 days' imprisonment and permitted Holloway to participate in a work release program.

Defendants' proffered factors do not tip the scales against Holloway. That driving under the influence is risky behavior is undisputed. It places others in danger of bodily harm. Yet only seven states permanently suspend a repeat DUI offender's driving privileges, and only after a third DUI conviction. (See Doc. 58-4 at 7, 10, 19, 22, 24, 28-29). The Commonwealth of Pennsylvania has clearly indicated that a repeat DUI offender is not so unvirtuous that he or she must be disarmed until a third DUI conviction in five years and, even then, the disability has an automatic ten-year expiration date. Holloway has distinguished himself from the class of persons historically barred from possessing a firearm by establishing that his crime of conviction was not sufficiently serious.

2018 WL 4699974 *6.

And this matter is no different than *Holloway*. Just like in *Holloway*, Mr. Williams was convicted of a DUI offense that Defendants contend prohibits him because it was graded as a misdemeanor of the first degree. [18] The offense lacks any element of violence. Mr. Williams, like Mr. Holloway, was only sentenced to the mandatory minimum of 90 days in jail. Similar to Mr. Holloway who was given work release while serving his 90-day sentence, Mr. Williams was given house arrest while serving his 90-day sentence. Furthermore, as found by Chief

---

[18] As declared by the Third Circuit in *Binderup*, the classification of a crime as a misdemeanor by a state legislature is "an indication of non-seriousness." 836 F.3d at 353, Fn. 6

Judge Conner, there is no cross-jurisdiction consensus as "only three states increase the maximum possible term of imprisonment above one year for a BAC of .16 or higher during a second offense" and "[t]he government has not shown there is a consensus regarding the seriousness of a generic second DUI offense, let alone a second DUI offense at a high rate of alcohol." 2018 WL 4699974 *5.

It is important to point out, as discussed in Fn. 12, *supra*, that in order for a state law misdemeanor crime to trigger a prohibition under Section 922(g)(1), it must be able to be punished by *more than* two years in jail. Stated another way, a state law crime of a misdemeanor nature that can be punished by a maximum of two years *does not* trigger the prohibition of Section 922(g)(1), as it cannot be punished by *more than* two years. Thus, to truly depict a cross-jurisdictional consensus, the Defendants would have to show that a supermajority of the states impose a potential sentence of *more than* two years in relation to a first or, *arguendo*, second DUI conviction. As reflected by Plaintiff's cross-jurisdictional survey (Exhibit C to Plaintiff's Motion for Summary Judgment) and Judge Conner's 50-state survey in *Holloway*, it is impossible for Defendants to show a cross-jurisdictional consensus, even if, as Defendants contend (Def. Brief at 14-15), they only need to show "general agreement."

Acutely aware of such, Defendants' statements (Brief at 14-15) addressing state law DUI offenses that can be punished by a maximum of one year seem

specifically designed to confuse the Court as to the true nature of an offense, which triggers a prohibition under Section 922(g)(1), as defined by Section 921(a)(20). And this is not the first time that the Defendants have been criticized for making misleading statements in relation to the potential penalties of DUI convictions across the U.S. In footnote 7 of *Holloway*, Judge Conner declared "[i]n support of their position, defendants assert that '[f]orty-six states punish DUIs as felonies on a first or subsequent conviction.' ... This statement is rather misleading. Not a single state punishes a first DUI offense as a felony, and only three states impose a maximum possible sentence greater than one year's imprisonment." 2018 WL 4699974, at *5. Moreover, Defendants seemingly contend that Judge Conner did not have benefit of a thorough 50-state survey (Def. Brief at 15); however, Defendants are acutely aware that such is not true and Judge Conner even cites to the 50-state survey numerous times throughout the *Holloway* decision, which was part of the exhibit packet submitted as Doc. 58-4.

While the Defendants also make the unsupported allegation that the "Pennsylvania legislature undoubtedly viewed DUI at the highest rate of intoxication with a prior offense to be a serious crime," as Plaintiff discussed in his Brief in Support of his Motion for Summary Judgment, pg.14 and Fn. 52, and as acknowledged by Chief Judge Conner, "[t]he Commonwealth of Pennsylvania has clearly indicated that a repeat DUI offender is not so unvirtuous that he or she must

be disarmed until a third DUI conviction in five years and, even then, the disability has an automatic ten-year expiration date." 2018 WL 4699974 *6.

Defendants also erroneously claim that Mr. Williams "would have served [his house arrest] time in prison absent the medical condition" when, as set-forth in Plaintiff's Response to Defendants' Statement of Material Facts, ¶ 16, a sentencing judge retains authority to grant house arrest absent a medical condition [19] and to also grant work release, [20] as was done in relation to Mr. Holloway. 2018 WL 4699974, at *4. [21]

And then, there are Defendants' disingenuous allegations that Mr. Williams *knowingly* possessed firearms and ammunition after his 2004 conviction (Def. Brief at 2-4), [22] [23] when the record in this matter is explicitly clear [24] that: (1) Mr.

---

[19] *See*, 42 Pa.C.S. §§ 9763, 9804; 37 Pa. Code § 451.52.

[20] *See*, 75 Pa.C.S. § 3813. *See also*, *Holloway*, 2018 WL 4699974, at *4 (declaring that a "sentencing judge has discretion to assign an individual convicted of a DUI offense to a daytime work release program").

[21] Plaintiff also notes, as was declared by Chief Judge Conner in *Holloway*, that pursuant to 75 Pa.C.S. § 3804(c)(2)(i), a sentencing judge lacks any discretion in imposing a sentence of less than 90 days but "[w]ithout discounting the significance of 90 days' imprisonment, Holloway's sentence was relatively minor as compared to both the threshold term of imprisonment of more than one year defined in 18 U.S.C. § 922(g), and the maximum possible punishment of five years' imprisonment he faced under Pennsylvania law." 2018 WL 4699974, at *4

[22] ████████████████████████████████████████████████████████████████

The Defendants also disingenuously attempt to have this Court believe that Mr. Williams knowingly made a false statement during his purchase of a firearm in 2007 (Def. Brief at 3-4) by playing fast and loose with his testimony on May 8, 2018. Specifically, Mr. Williams was asked

Williams believed that he had been convicted of a misdemeanor of the second degree, as reflected on his court docket sheet (*see*, Def. Exhibit A, Williams Dep., Exhibit 5 (marked MCP-000006) reflecting under Final Disposition "M2" [25]), which would not have triggered a prohibition under 18 U.S.C. § 922(g)(1), as it was a state law misdemeanor crime that could not have been punished by more than two years in jail; [26] (2) Mr. Williams was never informed that he was prohibited from purchasing, possessing and utilizing firearms and ammunition as a result of his 2004 DUI conviction until November 5, 2015, when he was informed of such by the undersigned; [27] (3) ███████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████ [28] (4) while Mr. Williams was on probation, the Pennsylvania

---

by Defense Counsel "Sitting here today, it's a false statement; right?" to which Mr. Williams responded "Yes" (Def. Exhibit A, Williams Dep. 82-83) as his deposition occurred almost three year after his discussion with the undersigned, where he learned – for the first time – that he was prohibited from purchasing, possessing and utilizing firearms and ammunition, pursuant to Defendants' interpretation of 18 U.S.C. § 922(g)(1). *See*, Plaintiff's Statement of Material Facts, ¶¶ 10, 17.

[24] *See*, Plaintiff's Response to Defendants' Statement of Material Facts, ¶¶ 19-41.

[25] *See also*, the print date of "1/16/2018" reflecting that the Court still had Mr. Williams' conviction listed as an misdemeanor of the second degree on January 16, 2018, when the docket was printed. In fact, the undersigned on November 7, 2018 printed a new copy of the docket, which still reflects the Final Disposition as an "M2". *See*, Exhibit M to Plaintiff's Motion for Summary Judgment.

[26] *See*, Fn. 12, *supra*.

[27] *See*, Plaintiff's Statement of Material Facts, ¶¶ 10, 17.

[28] *See*, ███████████████████████████.

State Police and Bureau of Alcohol, Tobacco, Firearms and Explosives told him that he could continue to work for a federal firearms licensee, where he sold firearms (Def. Exhibit A, Williams Dep. 19) and approved him for purchases of firearms (Def. Exhibit A, Williams Dep. 77; Exhibit L to Plaintiff's Motion for Summary Judgment, Williams Dep. 79); and, (5) Mr. Colosimo testified that he inquired of ATF and the City, as to whether Mr. Williams was prohibited and ATF and the City told him that Mr. Williams was fine in continuing in his job duties, including possessing firearms and ammunition, after performing a background check on Mr. Williams. (Exhibit N to Plaintiff's Motion for Summary Judgment, Colosimo Dep. 30 – 32). Of importance, after becoming aware that he was prohibited after the undersigned's discussion with him on November 5, 2015, Mr. Williams immediately divested himself of all firearms and ammunition and refrained from acquiring any firearms or ammunition.  (Plaintiff's Statement of Material Facts,  ¶¶ 20 – 22; Def. Exhibit A, Williams Dep. 16 – 17, 19). Clearly, it defies logic for someone, who knows that he or she is prohibited, to immediately stop possessing firearms and ammunition upon being informed that he or she is prohibited and thereafter to bring an action in the federal courts to vindicate his or her rights. Someone, who knows that he or she is prohibited and does not care about the illegality of his/her conduct, would simply continue to possess firearms and ammunition – not divest him/herself of them – and surely not place themselves

under a microscope, by instituting suit against the U.S. Government over the deprivation of his/her rights.

Thus, for all the reasons specified in Plaintiff's Brief in Support of his Motion for Summary Judgment, Plaintiffs' Response to Defendants' Statement of Material Facts, Plaintiff's Objections to Defendants' Expert Report of Denial Webster and the arguments made herein, Mr. Williams' DUI conviction was not serious.

> c. *The Defendants can neither show a compelling nor important Government interest in stripping Mr. Williams of a constitutional right*

As discussed *supra*, the Defendants, once again, disingenuously contend that Mr. Williams knowingly possessed firearms after his 2004 conviction and that as a result, such "easily allows defendants to carry their burden on the second prong of the *Binderup* framework". (Def. Brief at 21). For brevity, Plaintiff will simply incorporate his arguments, *supra*. Moreover, Defendants should be estopped from even making this argument, as Defendant ATF explicitly told Mr. Williams [29] (Def. Exhibit A, Williams Dep. 19) and thereafter Mr. Colosimo, after performing a background check on Mr. Williams, that Mr. Williams was not prohibited and

---

[29] Mr. Williams was also told that he was fine by the Pennsylvania State Police. *See*, Def. Exhibit A, Williams Dep. 19.

could continue in his job duties (Exhibit N to Plaintiff's Motion for Summary Judgment, Colosimo Dep. 30 – 32), as otherwise, the statements by ATF and the Pennsylvania State Police that Mr. Williams was not prohibited constitute entrapment. [30]

Furthermore, Defendants spend very little time addressing the second prong, after acknowledging that Chief Judge Conner found Dr. Webster's research and report to be unpersuasive in *Holloway*. (Def. Brief at 22). In fact, in applying intermediate scrutiny, Chief Judge Conner found that the Government had not satisfied its burden of "proving that disarmament of Holloway, and other individuals like him, will promote public safety." [31] Identically to Mr. Williams, nothing in the record suggested "that Holloway was ever diagnosed with or suffered from alcohol dependence, alcohol abuse, or mental illness." [32] [33] After reviewing the evidence of record, Chief Judge Conner concluded the "defendants'

---

[30] *Raley v. State of Ohio*, 360 U.S. 423, 439 (1959); *Jacobson v. United States*, 503 U.S. 540, 553 (1992).

[31] *Holloway*, 2018 WL 4699974, *7.

[32] *Id*.

[33] There are two distinctions that are worth noting. First, the expert report submitted by Defendant's in this matter is identical to the one filed in *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974, (M.D. Pa. Sept. 28, 2018), with the limited exceptions of the technical deficiencies (such as the lack of a signature) being corrected and the footnote citation numberings being modified (all of the sources are the same, one is just cited to in two separate footnotes). Second, unlike Plaintiff Holloway, Mr. Williams underwent an exam conducted by a licensed psychologist who concluded within a reasonable degree of psychological certainty that Mr. Williams may possess firearms without a risk to himself or others. The report also states that the MMPI-2 test indicated "no problems with aggression…and *no addiction problems*," and the BPRS indicated "no current psychiatric symptoms". *See* Exhibit J to Plaintiff's Motion for Summary Judgment, pg. 10.

evidence fails to account for key characteristics of Holloway and similarly situated persons. They have presented no evidence indicating that individuals like Holloway—after over a decade of virtuous, noncriminal behavior—'remain [so] potentially irresponsible' that they should be prohibited from owning a firearm." [34]

It also bear noting – and completely ignored by Defendants – that unlike Mr. Holloway, Mr. Williams underwent an evaluation by Psychologist Robert Gordon, who, thereafter, generated a report (Exhibit J to Plaintiff's Motion for Summary Judgment) that identified numerous deficiencies with Dr. Webster's report. Particularly that

> While Dr. Webster presents some valid correlation research groupings of individuals *it has a relatively small predictive value* in generalizing to groups and *does not predict* the effect of two DUI's from 14-18 years ago, *especially when the individual has no history of aggression.* As Dr. Webster *did not assess Mr. Williams, these generalizations are not relevant to this particular case*, as any applicability would require an independent evaluation of the particular person. As set forth in this forensic report…the research relied upon by Dr. Webster is not applicable to Mr. Williams. [35]

Further, Psychologist Gordon also identified that Dr. Webster's report:

1. Is premised on individuals who suffer from alcohol or abuse issues; and there is no evidence that Mr. Williams currently suffers from any alcohol or dependency issues;

---

[34] *Holloway*, 2018 WL 4699974, *8.
[35] *Id*. at 7. (Emphasis added).

2.  Contends there exists a statistical significance in relation to reduction of future violent crime when *those previously convicted of a <u>violent crime</u>* were barred from purchasing a handgun; however, there is no evidence Mr. Williams has been charged with, let alone, convicted of a violent crime;

3.  Contends that 54% of repeat DUI offenders have an alcohol dependency issue, which leaves 46% without a dependency issue;

4.  Fails to support a finding that alcohol-impairment and/or abuse are *causal* to unintentional firearm injuries or deaths and acknowledges a lack of data supporting that proposition;

5.  Contends that individuals *previously convicted of a misdemeanor crime of <u>violence</u>* are more likely to commit crime in the future and then opines that prohibitions against individuals like Mr. Williams prove a public safety benefit, even though Mr. Williams was never convicted of such an offense.[36]

Mr. Gordon's report summarizes that Mr. Williams has "no history of hostile or violent behaviors nor a continuing pattern of aggressive behaviors, which could be a predictive factor." [37] The summarization also concludes that "[a]lthough the research cited by Dr. Webster sheds light on some predictive factors, *the prediction is low*...Dr. Webster is not a psychologist and did not perform a psychological assessment of Mr. Williams' mental status...Therefore, his report has *no value for*

---

[36] *Id*. at 7-8.
[37] *Id*. at 11.

*this particular case*, in the absence of an independent evaluation of Mr.

Williams…" [38] Mr. Gordon's report concludes that Mr. Williams "has a normal

personality, *without psychopathology and without addition or violent tendencies*."
[39]

Thus, as Chief Judge Conner stated in *Holloway* "[the] defendants' evidence

fails to account for key characteristics of Holloway and similarly situated persons.

They have presented no evidence indicating that individuals like Holloway—after

over a decade of virtuous, noncriminal behavior—'remain [so] potentially

irresponsible' that they should be prohibited from owning a firearm. The

government has not demonstrated a substantial fit between Holloway's continued

disarmament and the important government interest of preventing armed

mayhem." [40] Likewise, in this instant matter, the only logical conclusion is one that

yields the same result.

The Third Circuit declared that the intended purpose of § 922(g)(1) is to

"promot[e] public safety by 'preventing armed mayhem.'" [41] Applying the

intermediate scrutiny analysis to the purpose of § 922(g)(1), the Government

cannot show that preventing an individual convicted of a DUI wherein he was not

---

[38] *Id*.
[39] *Id*. at 11-12.
[40] *Holloway*, 2018 WL 4699974, *8.
[41] *Binderup*, 836 F.3d at 353. (quoting *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)).

prohibited from possessing firearms under state law to fit reasonably within the interest of "preventing armed mayhem".

## V.    CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted,

Dated: November 13, 2018

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Adam Kraut, Esq.
Attorney Id. No. 318482
AKraut@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-313-0416
610-845-3903 (fax)

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Brief

and Exhibits were filed electronically through the Eastern District of Pennsylvania

Electronic Filing System. Notice of this filing will be sent by operation of the

Court's Electronic Filing System to all registered users in this case.


Joshua Prince, Esq.
Attorney Id. No. 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-313-0416
610-845-3903 (fax)

Attorney for Plaintiff

20