Adam Kraut, Esq.
Attorney Id. No. 318482
Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416, ext 81115 (t)
(610) 845-3903 (f)
AKraut@princelaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No. 17-CV-2641 |
| | : | |
| v. | : | Honorable Robert F. Kelly |
| | : | |
| **WILLIAM BARR,** *et al.* | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO ALTER OR AMEND THE JUDGMENT

I.    **ARGUMENT** ............................................................................................................1

   a.  *Legal Standard* ............................................................................................................1

   b.  *Clear Error of Law* .....................................................................................................2

      i.   Third Circuit Jurisprudence on Expert Opinions .......................................2

      ii.  *As-Applied* Challenges .............................................................................3

      iii.  Dr. Wintemute's Study ..............................................................................6

      iv.  *Holloway v. Sessions* ................................................................................8

      v.   Robert Gordon's Expert Report ...............................................................10

      vi.  In the Alternative, Request for a Stay .....................................................11

II.   **CONCLUSION** ....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Binderup v. U.S. Attorney General*, 836 F.3d 336 (3d Cir. 2016).........................3, 4

*Black v. M&W Gear Co.*, 269 F.3d 1220 (10th Cir. 2001) ......................................2

*Holloway v. Sessions*, 349 F. Supp. 3d 451 (M.D. Pa. 2018)...................................8

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237 (3d Cir. 2010) ................................................................................................................................2

*Keyes, et. al. v. Sessions, et al.*, 282 F.Supp.3d 858 (M.D. Pa. Oct. 11, 2017).........5

*Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir. 1999)..............................2

*McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246 (3d Cir. 2017)...................................................................................................................2

*United States v. Fiorelli*, 337 F.3d 282 (3d Cir. 2003)..............................................1

**Other Authorities**

*Firearms, Alcohol and Crime: Convictions for Driving Under the Influence (DUI) and Other Alcohol-Related Crimes and Risk for Future Criminal Activity Among Authorised Purchasers of Handguns*, Injury Prevention, Vol. 24 (2018).................6

**Rules**

Fed. R. Civ. P. 59(e) ...................................................................................................1

Plaintiff Edward A. Williams respectfully request this Court exercise its discretion under Fed. R. Civ. P. 59(e) to alter or amend the judgment entered on April 1, 2019. The Court's Opinion includes clear errors of law and would create a manifest injustice for Mr. Williams unless corrected.

## I.     ARGUMENT

In its Opinion, this Honorable Court relied on a single study, which analyzed the association between prior convictions for alcohol-related crimes and risk of subsequent arrest among 4066 individuals who purchased handguns in California in 1977, to determine that the Government met its burden under intermediate scrutiny to deny Mr. Williams the ability to keep and bear arms. The reliance on this study as the sole basis for finding the Government has met its burden constitutes a clear error of law and this Honorable Court should alter or amend its judgment.

### a. *Legal Standard*

Federal Rule of Civil Procedure 59(e) is "a device ... used to allege legal error," *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003), and its purpose is to "correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237,

251 (3d Cir. 2010) (quotations omitted). The moving party must show one of the following in order to prevail on a Rule 59(e) motion: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

    b. *Clear Error of Law*

        i. <u>Third Circuit Jurisprudence on Expert Opinions</u>

The Third Circuit has stated that under the *Daubert* Test, an expert's failure to offer individualized testimony in relation to a particular plaintiff renders the opinion of no or little probative value. *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 271 (3d Cir. 2017). *Cf. Black v. M&W Gear Co.*, 269 F.3d 1220, 1237–38 (10th Cir. 2001) (holding that a district court did not abuse its discretion in excluding an expert's testimony when that expert "had not based his conclusion on the results of tests or calculations specific to" the plaintiff).

As Plaintiff argued, neither the Government nor Dr. Webster ever examined Mr. Williams or based *any* conclusions on the results of tests or calculations specific to Mr. Williams. *See* Doc. 29-4 at 28. The Government's entire position,

as discussed *infra*, was based on its Expert's opinion, drawing conclusions from studies, which used extremely old data from the 1970's relating to individuals with alcohol abuse issues [1] and circumstances that are wholly irrelevant to the Plaintiff. Perhaps most importantly, as discussed *infra* and as Plaintiffs previously address in Doc. 29.6, ¶¶ 3., e., 7. b., the report fails to address the Third Circuit's standard in *Binderup v. U.S. Attorney General*, 836 F.3d 336, 353 (3d Cir. 2016) (*en banc*) of promoting public safety by "preventing armed mayhem" and therefore, resultantly, fails to show a link between preventing individuals convicted of a single DUI and "preventing armed mayhem."

Thus, it would be proper, on this basis alone, for this Court to exclude or dismiss the Government's Expert's testimony due to its lack of specificity to the Plaintiff.

ii. *As-Applied* Challenges

As mentioned *supra*, in *Binderup*, 836 F.3d at 353, the Third Circuit held that "§ 922(g)(1) is intended to further the government interest of promoting public safety by '*preventing armed mayhem*'." (emphasis added). More importantly, in relation to the second prong, unlike the first prong, [2] the Third Circuit held:

---

[1] There is nothing in the Record in this matter to support that Mr. Williams has an alcohol abuse issue. *See*, Doc. 29-6, ¶¶ 2., a., 4., a. – c., 6., 7., c., d. In responding to Plaintiff's Objections (Doc. 35 at 20-22), Defendants never disputed that the Record in this matter is devoid of any evidence that Mr. Williams has an alcohol abuse issue.

[2] Under the first prong of the analysis, this Court found that Mr. Williams was successful in establishing "his high burden of showing that his misdemeanor was not serious" and therefore,

3

> As discussed, evidence of how individuals have lived their lives since committing crimes is irrelevant under *Marzzarella*'s *first step*, as there is no historical support for rehabilitation being a consideration in determining whether someone has Second Amendment rights. However, at step two of the analysis the question is no longer whether the Challengers fall within the Second Amendment's protections. They do. Our task now is to decide whether the Government can disarm them despite these protections. Whereas our obligation at step one is to draw constitutional lines—separating those who have Second Amendment rights from those who do not—*at step two we must ask whether the Government has made a strong enough case for disarming a person found after step one to be eligible to assert an as-applied challenge. This turns in part on the likelihood that the Challengers will commit crimes in the future.* Thus, under the right circumstances the passage of time since a conviction can be a relevant consideration in assessing recidivism risks.

*Binderup*, 836 F.3d at 354, fn 7 (emphasis added). Moreover, the Third Circuit held that "[i]t is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another." (internal quotation marks omitted)). *Binderup*, 836 F.3d at 345-46. Thus, contrary to the Opinion at 26 declaring that under the second prong "[t]he Government's burden at step two of the *Marzzarella* framework is not individualistic," the Third Circuit has directed that Government must show that Mr. Williams – not others generally in his same position – is predisposed to commit "armed mayhem".

Consistent with the *Binderup* decision, Judge Jones recently held in *Keyes, et. al. v. Sessions, et al.*, 282 F.Supp.3d 858, 876-877, (M.D. Pa. Oct. 11, 2017)

---

he "distinguished himself from those persons historically excluded from the right to bear arms." Opinion at 18.

4

> To allow the Government to defeat an as-applied challenge by demonstrating that the statute was a reasonable fit to its important interest in general would mean that the challengers' efforts to distinguish themselves from the overall class are rendered futile. In essence, *without considering the challengers' specific characteristics*, the second step of the *Marzzarella* framework is the same in both facial and as-applied challenge, rendering the first prong in as-applied challenges superfluous and done in vain.

In the instant matter, there can be no question that there was not a consideration of the challenger's specific characteristics. In fact, this Court dismissed Psychologist Gordon's findings in favor of the results of a study utilizing 28-year-old data collected from one state.

> We reject Dr. Gordon's opinion that Williams should be allowed to own, carry, and possess a firearm because he allegedly poses no risk to himself or others. The Government's burden at step two of the Marzzarella framework is not individualistic, but rather focuses on whether the Government can dispossess a class of people who have been convicted of certain crimes.

Opinion at 26. Such a position removes any distinction between a facial and as-applied challenge, rendering the first prong of *Binderup* superfluous, as noted by Judge Jones. As such, the Government's burden at step two is to show that the Government can demonstrate a reasonable fit between the disarmament of Mr. Williams and the goal of preventing "armed mayhem." Based on the facts before the Court, the Government cannot do so.

5

### iii. Dr. Wintemute's Study

Of significant importance is that the data relied on in Dr. Wintermute's study is from a single state and is over 28 years old at the time this Honorable Court decided the matter in before it. *See* Doc. 29-6 at 3-4 (disputing relevance of studies over 10 years old, with a median age of 16 years since the source was published.). Indeed, the study itself proclaims "[t]his study has the obvious limitation that the data are old and from a single state. A large longitudinal study now under way will provide further information based on contemporary data." *Firearms, Alcohol and Crime: Convictions for Driving Under the Influence (DUI) and Other Alcohol-Related Crimes and Risk for Future Criminal Activity Among Authorised Purchasers of Handguns*, Injury Prevention, Vol. 24 at 72 (2018).

Furthermore, the classification of the subsequent offenses studied is suspect since "[v]iolent and firearm-related crimes were combined because aggravated assault was often recorded *without information on the type of weapon used, if any*." *Id.* at 69. This suggests, that because the data for post-DUI firearms-related crime was so miniscule, the data relative to what they classified as violent crimes had to be combined with "firearms-related crimes" so that the study could attempt to make its ultimate conclusion. At a minimum, combining firearms-related crime and violent crime substantially inflates the percentages and cannot be reasonably relied on. Without having the raw data the study relied on readily available, it is

impossible to determine whether those previous convicted of DUI were later convicted of an offense involving a firearm – *i.e.* armed mayhem – or merely some other violation of law, rendering any conclusions the study draws highly suspect at best and outright misleading at worst. Moreover, the study admits that "DUI convictions among our study subjects may have resulted from impairment due primarily to drugs other than alcohol;" thus, including individuals with drug-related convictions, which is inapplicable to this matter. *Id*. at 71.

Lastly, the study itself contradicts this Court's assertion that "the study found that 32.8% of handgun purchasers with a prior alcohol-related offense were arrested for a crime involving violence and/or a firearm, versus 5.8% of handgun purchasers with no prior criminal history." Opinion at 24. The study states "[n]early a third (32.8%) of those with *prior convictions* were arrested for a violent or firearm-related crime…" (emphasis added). [3] While at first blush this may seem related to prior DUI offenses, the study differentiates between "prior alcohol-related convictions" and "prior convictions" and the portion of the study the Court cites to is in relation to "prior convictions" not to "prior alcohol-related convictions." In fact, in reviewing Table 2, which depicts "Frequency of criminal convictions at base line for 1272 study subjects with prior alcohol-related

---

[3] There are a number of other concerns with the study, since it starts by stating that the study group was "5,923," but in the Results section, it is limited to "4,066," without explaining the exclusion of 1,857 individuals from the original study group.

7

convictions," "998 (78.5[%])" had no subsequent "violent or firearm-related" offenses.

      iv. *Holloway v. Sessions*

As Chief Judge Conner stated

> One study identified by the report found 32.8 percent of handgun purchasers who had prior alcohol convictions were arrested for a subsequent crime involving violence or firearms. (Id. at 9 & n.34). The study's regression analysis revealed that individuals with just one prior alcohol-related conviction were four times as likely to be arrested for a firearm-related offense or a crime of violence. (Id. at 10). The data set utilized by the study consists of persons who purchased a handgun from a California retail firearms dealer in 1977. (Id. at 9). Without questioning the validity of the study's methodology, *we find that this study alone* does not adequately establish a substantial fit between Holloway's disarmament and the government's compelling interest in preventing armed mayhem.

*Holloway v. Sessions*, 349 F. Supp. 3d 451, 461 (M.D. Pa. 2018). (Emphasis added).

While Chief Judge Conner did not elaborate on why the study alone was not enough to establish a substantial fit between Holloway's disarmament and the government's compelling interest in preventing armed mayhem, several reasons can be deduced.

First, there are the obvious limitations of the relevance of the data set, including that it is a sample size of one state and is over 28 years old. Second, the study examined 4,066 handgun purchasers. California's population in 1977 was

22.35 million people. [4] A study from the National Opinion Research Center found that in 1977, 50.4% of households had a firearm in it. [5]

For the purposes of argument, assuming that 50% number to be true in California, Dr. Wintermute's study would have only examined approximately one-third of one percent or 0.35% of the gun owning population, which is statistically insignificant. Even if it were assumed that only 750,000 individuals in California purchased a handgun in 1977, the study would have examined approximately half of one percent or 0.54% of the handgun owning population. Had this study examined the same data across all 50 states [6] and shown that there was a correlation between prior DUI convictions and the purchase of a firearm, then perhaps the study might offer – depending on the age of the data relied upon – a modicum of value to the Government's position.

Additionally, the study looked at individuals who had been previously convicted of a DUI – including drug-related DUIs – (or had no criminal conviction) and then subsequently purchased a firearm. It did not examine (or indicate that it examined) individuals who owned firearms prior to a DUI conviction, as is the case with Mr. Williams. In the same vein, the study did not

---

[4] Google estimates 22.35 million. The Public Policy Institute's graph would seemingly agree that around 22 million is a fair estimate. *See* https://www.ppic.org/wp-content/uploads/r-118hj2r.pdf.
[5] http://www.norc.org/PDFs/GSS%20Reports/GSS_Trends%20in%20Gun%20Ownership_US_1972-2014.pdf
[6] As addressed *supra*, the study itself notes the "obvious limitation that the data are old and from a single state."

9

examine individuals who were evaluated by a licensed psychologist and found to be able to possess a firearm without threat to themselves or others. Nor did the study indicate whether the individuals who were found to be at risk of arrest for any type of crime continued to consume alcohol. Of equal concern is the lack of socio-economic status of the study's subjects. If the study examined individuals who lived in economically depressed areas, etc., that could potentially impact the results and its application to individuals who find themselves in a different socio-economic class.

     v.   <u>Robert Gordon's Expert Report</u>

As discussed in Plaintiff's Brief in Support of His Second Motion for Summary Judgement (ECF Doc. 29-4), Psychologist Gordon's report concluded that "[a]lthough the research cited by Dr. Webster sheds light on some predictive factors, *the prediction is low*...Dr. Webster is not a psychologist and did not perform a psychological assessment of Mr. Williams' mental status…Therefore, his report has *no value for this particular case*, in the absence of an independent evaluation of Mr. Williams…" [7]

More importantly, Psychologist Gordon's report states that Mr. Williams has "no history of hostile or violent behaviors nor a continuing pattern of aggressive

---

[7] *See* Doc. 29-5 Exhibit J at 11.

behaviors, which could be a predictive factor."[8] A notable element missing from the Wintermute study so heavily relied on.

      vi.  <u>In the Alternative, Request for a Stay</u>

In the alternative, should this Court believe that Dr. Wintermute's dated study trumps Psychologist Gordon's examination of Mr. Williams, the Plaintiff requests a stay of the decision for a period of one year, which would then put Mr. Williams outside of the scope of Dr. Wintermute's study,[9] rendering it inapplicable. At that time, the Court could require the parties to submit updated criminal history for Mr. Williams to determine whether he has continued to maintain a crime-free life.

## II.    CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Alter or Amend the Judgment should be granted.

---

[8] *Id.* at 11.
[9] *See* Opinion at 25 stating that Mr. William's conviction is not yet "fourteen years old as of the date of this Opinion" and that "Dr. Wintemute's study shows that individuals like Williams, who have been convicted of an alcohol-related offense within the past fourteen years, have a four to five-fold increase of being arrested for a subsequent crime of violence or one involving a firearm."

Dated: April 26, 2019

Respectfully Submitted,

_____
Adam Kraut, Esq.
Attorney Id. No. 318482
AKraut@PrinceLaw.com

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief, Motion and Proposed Order were filed electronically through the Eastern District of Pennsylvania Electronic Filing System. Notice of this filing will be sent by operation of the court's Electronic Filing System to all registered users in this case.

Adam Kraut, Esq.
Attorney Id. No. 318482
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorney for Plaintiff