IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD A. WILLIAMS, <br> Plaintiff, <br><br> v. <br><br> WILLIAM P. BARR et al., <br> Defendants. | Civil Action No. 17-2641 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

After the Court's thorough memorandum granting defendants' motion for summary judgment, plaintiff brings this motion asking the Court to reverse that decision by rehashing arguments the Court already considered and rejected. Plaintiff once again challenges the government's arguments on the second prong of the *Binderup* test—an issue that was extensively addressed in over half a dozen filings in parallel motions for summary judgment briefed over a period of several months. The fact that this issue was already extensively argued and addressed by the Court is reason enough to reject defendants' motion to alter or amend judgment.

Nonetheless, the motion is also meritless, and the Court appropriately relied upon the defendants' statistical evidence. Indeed, what plaintiff fails to mention in challenging the defendants' use of statistical evidence is that the Third Circuit expressly permitted the use of such evidence to carry the government's burden on the second prong of the *Binderup* test. Because defendants offered statistical evidence that the Third Circuit determined was appropriate at this stage of the analysis, the Court appropriately granted the government's summary judgment motion.

Because plaintiff's current motion is merely an attempt to rehash old arguments and issues already considered and rejected, the Court should deny plaintiff's motion.

## FACTUAL BACKGROUND

The Court offered a thorough factual background on this matter in its recent opinion. (Doc. No. 43). Plaintiff Edward A. Williams brought this as-applied challenge to 18 U.S.C. § 922(g)(1), claiming that the application of § 922(g)(1) barring him from owning a firearm or ammunition, as a result of his conviction for driving under the influence at the highest rate of intoxication with a prior offense, violates the Second Amendment. The DUI conviction, with a prior offense[1] and at the highest rate of intoxication, arose from an incident in 2004 in Philadelphia. The judge sentenced Williams to, *inter alia*, ninety days to two years in prison, and he served the ninety days on house arrest because of a medical condition.

While Williams' conviction for the 2004 DUI triggered § 922(g)(1)'s prohibition on possessing firearms and ammunition, Williams continued for years to possess approximately twenty firearms, worked at a gun store and range handling firearms and ammunition, and made false statements on firearms forms to purchase a firearm and application for a license to carry.

## PROCEDURAL BACKGROUND

Williams filed this action on June 1, 2017. (Doc. No. 1). After the Court denied pre-discovery dispositive motions, (Doc. No. 13, 14), the defendants answered the complaint on December 15, 2017 (Doc. No. 15) and engaged in extensive discovery. The parties thereafter filed cross-motions for summary judgment (Doc. No. 29, 30), along with opposition and reply briefs.

---

[1] Williams entered into Pennsylvania's Accelerated Rehabilitative Disposition program because of a 2000 arrest for DUI. This serves as the prior offense for purposes of the conviction for the 2004 DUI.

The Court ruled on those motions on April 1, 2019, granting defendants' motion for summary judgment and denying plaintiff's motion. (Doc. No. 43, 44). The Court's opinion includes a deep analysis of the Third Circuit's decision in *Binderup v. Att'y Gen. U.S. of Am.*, 836 F.3d 336 (3d Cir. 2016) (en banc), and an application of its principles to the matter at hand. The Court, in granting judgment in favor of the defendants, concluded that the defendants satisfied their burden on the second prong of the *Binderup* framework through their submission of an expert report and an important, germane statistical study identified in that report: "The statistical evidence shows that individuals convicted of an alcohol-related offense have a four to five-fold increase of being arrested for a crime of violence or firearm-related offense, as compared to individuals with no prior criminal history. Therefore, we believe there is a reasonable fit between disarming individuals like Williams, who were convicted of DUI, and the important government interest of preventing armed mayhem." (Doc. No. 43, at 29).

Plaintiff brought the current motion to alter or amend the Court's judgment on April 26, 2019, (Doc. No. 48), and takes issue with this particular aspect of the Court's analysis.

**ARGUMENT**

In his motion to alter or amend judgment, plaintiff does not present newly discovered evidence, identify an intervening change in law, or outline some genuine issue of material fact. Instead, plaintiff repackages the arguments he used in the summary judgment briefing and tries to reopen discussion on the Court's analysis for the second prong of the *Binderup* framework. Plaintiff regularly cites back to his previous summary judgment briefing to rehash these arguments that were already considered and rejected. Such a strategy is improper on a motion for reconsideration at this stage of the proceedings. The Court considered plaintiff's arguments on the second prong, rejected them, and rendered a decision granting defendants' motion for

3

summary judgment. Because plaintiff's current motion only covers previously briefed issues, that alone should cause the Court to deny plaintiff's motion.

Not only is the motion improper, but the arguments in the motion are also meritless. Plaintiff repeatedly argues that the expert report and statistical evidence offered by the defendants and relied upon by the Court are insufficient to carry the government's burden on the second prong of the *Binderup* analysis. Plaintiff insists that such evidence is insufficiently tailored and personalized to an individual challenger like the plaintiff. But in plaintiff's extensive discussion of the caselaw, he neglects to mention the passage in *Binderup* that expressly permits such evidence. Indeed, the Third Circuit explained that "empirical studies [can] demonstrate[] an appropriate fit between the Challengers' total disarmament and the promotion of public safety if they contain[] reliable statistical evidence that people with the Challengers' backgrounds [a]re more likely to misuse firearms or [a]re otherwise irresponsible or dangerous." 836 F.3d at 355. Because the study offered by the defendants and the expert report provided that empirical evidence and fit, plaintiff's motion is meritless and should be denied.

I. **Plaintiff's motion is merely an attempt to relitigate issues that were already argued, considered, and rejected by the Court.**

Plaintiff's motion to alter or amend a judgment is effectively a motion for reconsideration. *Conway v. A.I. duPont Hosp. for Children*, No. CIV. A. 04-4862, 2009 WL 1492178, at *2 (E.D. Pa. May 26, 2009) (citing E.D. Pa. Local R. Civ. P. 7.1(g)). Such motions are only appropriate in rare circumstances. "A judgment may be altered or amended on three grounds: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Id.* (quoting *Max's Seafood Cafe, by Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999)).

A motion for reconsideration is not a "means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ponisciak v. Astrue*, No. CIV.A. 10-4232, 2012 WL 850099, at *1 (E.D. Pa. Mar. 14, 2012) (Kelly, J.) (quoting *Ogden v. Keystone Residence,* 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)). Such motions are also not to be filed just because a party is dissatisfied with the Court's decision or "to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Id.* "Since Federal Courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Id.*

Plaintiff's motion to alter the judgment raises arguments previously briefed with the Court and is based on a mere dissatisfaction with the Court's decision. Plaintiff's motion is wholly focused on criticizing the use of defendants' expert report and statistical evidence to satisfy the defendants' burden on the second prong of the *Binderup* analysis. However, those arguments were repeatedly raised by plaintiff before in the summary judgment briefing prior to the Court's decision. For example, plaintiff's motion for summary judgment argued that the defendants' expert report and its statistical evidence were improper and insufficient for the defendants to carry their burden. *See* (Doc. No. 29-4, at 44) ("The Government relies on an Expert Report which utilizes old studies whose data is not recent and which even admits they have obvious limitations . . . ."). Plaintiff's opposition to defendants' motion for summary judgment also argued against using the defendants' expert report in the analysis. The opposition claimed that plaintiff's expert report was more appropriate and tailored and that the defendants' expert had not conducted an individualized assessment of the plaintiff; outlined the district court opinion addressing a similar report and evidence in *Holloway v. Sessions*, No. 1:17-CV-81, 2018 WL 4699974 (M.D. Pa. Sept. 28, 2018); and claimed that the defendants had failed to show a

reasonable fit. (Doc. No. 34, at 14-19). Plaintiff went so far as to file a separate document entitled "Plaintiff's Objections to Defendants' Expert Report of Daniel Webster, ScD." (Doc. No. 29-6). In those objections, plaintiff claimed that Dr. Webster's report failed to satisfy the standards of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), that the data in the scientific study was insufficiently tailored to the plaintiff, and that it was improper for this as-applied challenge. Plaintiff repackages those same arguments here.

If there was any doubt, plaintiff tellingly cites his own previous briefs in supporting the current motion. He acknowledges that the issues raised here were issues "Plaintiffs [sic] previously address[ed] in Doc. 29.6, ¶¶ 3., e., 7. B. . . . ." (Doc. No. 48-1, at 6). A footnote in the current motion similarly cites to the "objections" he submitted in the summary judgment briefing. *Id.* at 3 n.1 And later in the current motion, plaintiff once again acknowledges that the issues he raises regarding plaintiff's expert report were also previously discussed in his summary judgment briefing. *Id.* at 10 ("As discussed in Plaintiff's Brief in Support of His Second Motion for Summary Judgment . . . .").

Plaintiff's motion to alter judgment is an attempt to "reargue matters already argued" and "relitigate a point of disagreement between the Court and the litigant." *Ponisciak*, 2012 WL 850099, at *1 (Kelly, J.). Because such a strategy is wholly improper for motions for reconsideration, the Court should deny plaintiff's motion.

## II. Plaintiff's challenge is also meritless, as *Binderup* expressly permitted defendants' use of statistical evidence to satisfy the second prong.

In addition to his arguments being improper at this stage, plaintiff's criticism of defendants' expert report and statistical evidence to satisfy the second prong of *Binderup* is also baseless. Plaintiff's lengthy motion to alter judgement criticizes the use of defendants' expert report and statistical evidence based on a number of cases, including *Daubert*, two district court

6

decisions from another district that had already been raised in briefing, and snippets of the generalized principles in *Binderup*. Based on this, plaintiff argues once again that the defendants' expert report and scientific evidence were improper and insufficient to carry defendants' burden on the second prong of *Binderup*.

But what plaintiff's motion, criticizing the use of statistical evidence, neglects to mention is that *Binderup* expressly permitted the use of statistical evidence on the second prong. The Court explicitly held that "[p]arties may use statistics to show that people who commit certain crimes have a high (or low) likelihood of recidivism that warrants (or does not warrant) disarmament . . . ." 836 F.3d at 355. And while plaintiff's motion to alter judgment claims that defendants' statistical evidence cannot offer the fit necessary for the analysis, the Third Circuit concluded otherwise. "[E]mpirical studies could have demonstrated an appropriate fit between the Challengers' total disarmament and the promotion of public safety if they contained reliable statistical evidence that people with the Challengers' backgrounds were more likely to misuse firearms or were otherwise irresponsible or dangerous." *Id.*

The Court's opinion here appropriately identified that fit within the defendants' expert report and the empirical study from Dr. Garen Wintemute. As the Court noted, Dr. Webster's expert report recognizes, *inter alia*, that "[e]mpirical evidence shows that DUI/DWI offenders are more likely to commit violent or firearms-related offenses." (Doc. No. 30, Ex. S, at 9). Dr. Webster therefore rendered an expert opinion that "there is a reasonable fit between prohibiting DUI/DWI misdemeanants [*i.e.*, those with backgrounds similar to the plaintiff] from possessing firearms and public safety." *Id.* at 16.

The primary statistical evidence the Court identified regarding that conclusion was the study conducted by Dr. Garen Wintemute and others, who analyzed data from thousands of

individuals who purchased firearms. The study found that those purchasers of handguns with a prior alcohol conviction were significantly more likely to be arrested for a crime involving violence and/or firearms, and significantly more likely to be arrested for the most serious crimes, including murder, rape, robbery, and aggravated assault. *Id.* at 9-10. The Court correctly concluded that this study established the "appropriate fit" called for by *Binderup*:

> Dr. Wintemute's study shows that individuals like Williams, who have been convicted of an alcohol-related offense within the past fourteen years, have a four to five-fold increase of being arrested for a subsequent crime of violence or one involving a firearm. We believe such statistics demonstrate a reasonable fit between Williams' disarmament and the important government interest of preventing armed mayhem.

(Doc. No. 43, at 25).

This is precisely the type of statistical evidence that the Third Circuit called for in *Binderup*, and such evidence is precisely what can be offered for the government to satisfy its burden on the second prong of the analysis. The statistical evidence pertained to, and the Court considered, plaintiff's specific characteristics—his prior conviction of a DUI and the time since that conviction—and determined that those with the same background were more likely to misuse firearms or violence. That is the end of the inquiry, and the defendants therefore satisfied their burden. The Third Circuit does not require a more individualized determination of dangerousness, and plaintiff's arguments for more personalized statistics would require just such a determination. *See Medina v. Sessions*, 279 F. Supp. 3d 281, 292 (D.D.C. 2017) (discussing *Binderup* and recognizing that, "even in [that case], the plurality looked to whether the government's evidence that restricting 'people like [the plaintiffs] (*i.e.*, people who decades ago committed similar misdemeanors) from possessing firearms promotes public safety,' *not whether preventing the individual plaintiffs from owning a firearm* adequately promoted public safety" (quoting *Binderup*, 836 F.3d at 354) (emphasis added)), *aff'd*, 913 F.3d 152 (D.C. Cir. 2019).

8

Plaintiff's remaining arguments can readily be dismissed.[2] *Binderup* did not set strict time limits for useful statistical evidence, and the study's combination of violent and firearms-related crimes is permissible since the key question is whether individuals with similar backgrounds "were more likely to use firearms *or were otherwise irresponsible or dangerous.*" 836 F.3d at 355.[3]

Finally, as to plaintiff's request to stay the Court's decision for one year, plaintiff made the decision to bring this case when he filed the complaint, and his counsel sought throughout the litigation to move this case expeditiously. Plaintiff cannot try to now stall the litigation merely to evade the empirical evidence establishing his higher likelihood of engaging in violent or firearm-related crime. Plaintiff asked this Court to render a decision on his Second Amendment challenge, and it did so. He should now accept the consequence of losing that decision.

---

[2] Because motions for reconsideration are not vehicles to repackage arguments, defendants will refrain from summarizing all of the issues with plaintiff's expert report previously discussed.

[3] Plaintiff also suggests that the Wintemute study's key finding—that 32.8% of those with prior convictions engaged in violent or firearm-related crimes—refers to convictions that are not necessarily alcohol-related. (Doc. No. 48-1, at 10-11). Plaintiff's suggestion is false. Table 3 in the Wintemute study clearly indicates that the 32.8% finding pertains to those with prior alcohol convictions. The article identified is included as Exhibit 1 of defendants' motion to dismiss. *See* (Doc. No. 5-1, at 3).

**Table 3** Incidence of arrest among handgun purchasers* by baseline characteristics

| | Nature of crime | |
|---|---|---|
| | Any | Violent or firearm related |
| Characteristic | n (%) | n (%) |
| Prior alcohol convictions (n=1104) | 597 (54.1) | 362 (32.8) |

## CONCLUSION

For the reasons discussed above, defendants respectfully request that the Court deny plaintiff's motion to alter or amend the judgment in this case.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

*Susan R. Becker for GBD*
GREGORY B. DAVID
Chief, Civil Division

ANTHONY D. SCICCHITANO
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476
Direct: (215) 861-8380
Fax:     (215) 861-8618
anthony.scicchitano@usdoj.gov

*Counsel for Defendants*

May 10, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion to Alter or Amend Judgment was filed through the Court's CM/ECF system, which will provide electronic notice and service of the document on:

Adam Kraut. Esq.
Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505

ANTHONY D. SCICCHITANO
Assistant United States Attorney

May 10, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD A. WILLIAMS,
    Plaintiff,

v.

WILLIAM P. BARR et al.,
    Defendants.

Civil Action No. 17-2641

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of Plaintiff Edward A. Williams' ("Williams") Motion to Alter or Amend Judgment, and the response and any reply thereto, it is hereby **ORDERED** that:

Williams' Motion (Doc. No. 48) is **DENIED**.

BY THE COURT:

_____
ROBERT F. KELLY
SENIOR JUDGE