## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | |
| | : | |
| **MERRICK GARLAND, *et al.*** | : | Judge John Milton Younge |
| Defendants | : | |

### Exhibit List to Plaintiff's Third Motion for Summary Judgment

**Exhibit A**:  Pennsylvania State Police Background Check

**Exhibit B**:  Federal Firearms Act of 1938

**Exhibit C**:  Declaration and Expert Witness Robert Gordon's Report

**Exhibit D**:  Federal Register Notices Granting Relief Pursuant to 18 U.S.C. § 925(c)

**Exhibit E**:  John Kraszewski Court Records

**Exhibit F**:  Kim Blake Court Records

**Exhibit G**:  Barry Shoop Court Records

**Exhibit H**:  Carl Fareri Court Records

**Exhibit I**:  Charles Spangler Court Records

**Exhibit J**:   Excerpt from the Deposition of Edward A. Williams

# Exhibit A
## (*PSP Background Check*)

# PENNSYLVANIA STATE POLICE

1800 Elmerton Avenue
Harrisburg, PA 17110

Control #
**R17746166**

# REQUEST FOR CRIMINAL RECORD CHECK

**JOSHUA PRINCE**
**646 LENAPE ROAD**
**BECHTELSVILLE PA 19505**

**TELEPHONE: (610) 845-3803**

**TO WHOM IT MAY CONCERN:**

**THE PENNSYLVANIA STATE POLICE DOES HEREBY CERTIFY THAT:**

**Name:** Williams, Edward
**Date of Birth**
**Social Security #**
**Sex:** M
**Race:** Unknown
**Date of Request:** 3/13/2017 11:00:00 AM
**Purpose of Request:** Other

**Maiden Name and/or Alias (1)**                          **(2)**

**(3)**                          **(4)**

**\*\*\* HAS A CRIMINAL RECORD IN PENNSYLVANIA BASED ON A CHECK OF THE ABOVE IDENTIFIERS - CRIMINAL RECORD FOR SID NO: 184-59-80-9 ATTACHED\*\*\***

THE INFORMATION DISSEMINATED BY THE CENTRAL REPOSITORY IS BASED SOLELY ON THE FOLLOWING IDENTIFIERS THAT MATCH THOSE FURNISHED BY THE REQUESTER:

[Y] **NAME**          [Y] **SOCIAL SECURITY NUMBER**  [N] **MAIDEN / ALIAS NAME**
[Y] **DATE OF BIRTH**  [N] **RACE**      [Y] **SEX**

THE RESPONSE IS BASED ON A COMPARISON OF DATA PROVIDED BY THE REQUESTER AGAINST INFORMATION CONTAINED IN THE FILES OF THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY. PLEASE CONFIRM IDENTIFIERS PROVIDED. POSITIVE IDENTIFICATION CANNOT BE MADE WITHOUT FINGERPRINTS. THE PENNSYLVANIA STATE POLICE RESPONSE DOES NOT PRECLUDE THE EXISTENCE OF CRIMINAL RECORDS, WHICH MIGHT BE CONTAINED IN THE REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE AGENCIES.

[ ] COMPARISON MADE WITH FINGERPRINTS

ADDITIONAL INFORMATION MAY BE AVAILABLE FROM QUERIES OF OTHER STATE AND FEDERAL DATABASES.

[ ] SEE WEBSITE: http://www.casanet.org/program-management/volunteer-manage/criminal-bkg-check.htm

[ ] PENNSYLVANIA'S MEGAN'S LAW WEBSITE AT: http://pameganslaw.state.pa.us/
QUESTIONS CONCERNING THIS CRIMINAL RECORD CHECK SHOULD BE DIRECTED TO THE PATCH HELP LINE TOLL FREE AT 1-888-QUERY-PA (1-888-783-7972)

**CERTIFIED BY:**

DISSEMINATED BY: 703182
03/22/2017

**Lieutenant Richard O Quinn**
Director, Criminal Records and Identification Division
Pennsylvania State Police

```
  SP4-137B
COMPILED: 2017/03/22                                                    PAGE: 1 of 1
                              PENNSYLVANIA STATE POLICE
                                 CENTRAL REPOSITORY
                                1800 ELMERTON AVENUE
                            HARRISBURG, PENNSYLVANIA 17110
                                   (888) 783-7972


=================================================================================
      USE OF THE FOLLOWING CRIMINAL HISTORY RECORD *** SID 184-59-80-9 ***
                          REGULATED BY ACT 47, AS AMENDED.
=================================================================================
                                 IDENTIFICATION
NAME: WILLIAMS, EDWARD A
SID: 184-59-80-9                          DOB:                      SOC:
SEX: MALE            RAC: BLACK           HAI: BLACK                EYE: BLACK
HGT: 6'01"          WGT: 230
POB:                US CITIZEN: YES
COUNTRY OF CITIZENSHIP: UNITED STATES
=================================================================================
                                CRIMINAL HISTORY
NAME: WILLIAMS, EDWARD                           OTN: N293062-0
ARRESTED: 2004/09/07  PAPEP0000  PHILADELPHIA                       OCA: C0935505
DISPO DATE: 2006/06/15
DISTRICT JUSTICE DOCKET NUMBER: MC 0409-0216

                              *** COURT DATA ***

OFFENSE
DATE         CHARGE                  COUNT   GRADE DISPOSITION
-------      ------                  -----   ----- -----------
2004/09/07   VC3802 DRIVING UNDER      1           FOUND GUILTY/
             THE INFLUENCE                         COUNTY PRISON/
             OF ALCOHOL OR                         90 DYS - 002 YR-
             CONTROLLED                            S
             SUBSTANCE

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
=================================================================================
                          PROBATION/PAROLE INFORMATION
                                   START       END                 LIFE
AGENCY                OCA          DATE        DATE       PAR/PRO   CODE
------                ---          -----       -----      -------   ------
PA051023G             C0935505     2006/06/15  2008/06/15 PAROLE
PHILADELPHIA
APPLIES TO OTN: N293062-0
=================================================================================
                            ADDITIONAL IDENTIFIERS
AKAs: WILLIAMS, EDWARD ALS / WILLIAMS, EDWARD ALS JR
DOBs:
SOCs:
MNUs:
=================================================================================
            F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE NUMERIC=DEGREE
            ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE
```

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT PRECLUDE
THE EXISTENCE OF OTHER CRIMINAL RECORDS WHICH MAY BE CONTAINED IN THE
REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE AGENCIES.

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN CHARGE CODES TO
THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND PURDON'S FORMATTED CHARGES.

***************************** END OF RAP SHEET *****************************

**Exhibit B**
(*Federal Firearms Act of 1938*)

[CHAPTER 850]

# AN ACT

To regulate commerce in firearms.

June 30, 1938
[S. 3]
[Public, No. 785]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That as used in this Act—

Federal Firearms Act.
Definitions.
"Person."

(1) The term "person" includes an individual, partnership, association, or corporation.

"Interstate or foreign commerce."

(2) The term "interstate or foreign commerce" means commerce between any State, Territory, or possession (including the Philippine Islands but not including the Canal Zone), or the District of Columbia, and any place outside thereof; or between points within the same State, Territory, or possession (including the Philippine Islands but not including the Canal Zone), or the District of Columbia, but through any place outside thereof; or within any Territory or possession or the District of Columbia.

"Firearm."

(3) The term "firearm" means any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, or any part or parts of such weapon.

"Manufacturer."

(4) The term "manufacturer" means any person engaged in the manufacture or importation of firearms, or ammunition or cartridge cases, primers, bullets, or propellent powder for purposes of sale or distribution; and the term "licensed manufacturer" means any such person licensed under the provisions of this Act.

"Dealer."

(5) The term "dealer" means any person engaged in the business of selling firearms or ammunition or cartridge cases, primers, bullets or propellent powder, at wholesale or retail, or any person engaged in the business of repairing such firearms or of manufacturing or fitting special barrels, stocks, trigger mechanisms, or breach [1] mechanisms to firearms, and the term "licensed dealer" means any such person licensed under the provisions of this Act.

"Licensed dealer."

"Crime of violence."

(6) The term "crime of violence" means murder, manslaughter, rape, mayhem, kidnaping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year.

"Fugitive from justice."

(7) The term "fugitive from justice" means any person who has fled from any State, Territory, the District of Columbia, or possession of the United States to avoid prosecution for a crime of violence or to avoid giving testimony in any criminal proceeding.

"Ammunition."

(8) The term "ammunition" shall include all pistol or revolver ammunition except .22-caliber rim-fire ammunition.

Unlawful acts.
Transportation, etc., of firearms or *ammunition* without license.

SEC. 2. (a) It shall be unlawful for any manufacturer or dealer, except a manufacturer or dealer having a license issued under the provisions of this Act, to transport, ship, or receive any firearm or ammunition in interstate or foreign commerce.

Knowingly receiving same.

(b) It shall be unlawful for any person to receive any firearm or ammunition transported or shipped in interstate or foreign commerce in violation of subdivision (a) of this section, knowing or having reasonable cause to believe such firearms or ammunition to have been transported or shipped in violation of subdivision (a) of this section.

Transportation, etc., to other than licensed manufacturer or dealer.

(c) It shall be unlawful for any licensed manufacturer or dealer to transport or ship any firearm in interstate or foreign commerce to any person other than a licensed manufacturer or dealer in any State the laws of which require that a license be obtained for the purchase of such firearm, unless such license is exhibited to such manufacturer or dealer by the prospective purchaser.

¹ So in original.

(d) It shall be unlawful for any person to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is under indictment or has been convicted in any court of the United States, the several States, Territories, possessions (including the Philippine Islands), or the District of Columbia of a crime of violence or is a fugitive[1] from justice.

(e) It shall be unlawful for any person who is under indictment or who has been convicted of a crime of violence or who is a fugitive[1] from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition.

(f) It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive[1] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act.

(g) It shall be unlawful for any person to transport or ship or cause to be transported or shipped in interstate or foreign commerce any stolen firearm or ammunition, knowing, or having reasonable cause to believe, same to have been stolen.

(h) It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any firearm or ammunition or to pledge or accept as security for a loan any firearm or ammunition moving in or which is a part of interstate or foreign commerce, and which while so moving or constituting such part has been stolen, knowing, or having reasonable cause to believe the same to have been stolen.

(i) It shall be unlawful for any person to transport, ship, or knowingly receive in interstate or foreign commerce any firearm from which the manufacturer's serial number has been removed, obliterated, or altered, and the possession of any such firearm shall be presumptive evidence that such firearm was transported, shipped, or received, as the case may be, by the possessor in violation of this Act.

SEC. 3. (a) Any manufacturer or dealer desiring a license to transport, ship, or receive firearms or ammunition in interstate or foreign commerce shall make application to the Secretary of the Treasury, who shall prescribe by rules and regulations the information to be contained in such application. The applicant shall, if a manufacturer, pay a fee of $25 per annum and, if a dealer, shall pay a fee of $1 per annum.

(b) Upon payment of the prescribed fee, the Secretary of the Treasury shall issue to such applicant a license which shall entitle the licensee to transport, ship, and receive firearms and ammunition in interstate and foreign commerce unless and until the license is suspended or revoked in accordance with the provisions of this Act: *Provided*, That no license shall be issued to any applicant within two years after the revocation of a previous license.

(c) Whenever any licensee is convicted of a violation of any of the provisions of this Act, it shall be the duty of the clerk of the court to notify the Secretary of the Treasury within forty-eight hours after such conviction and said Secretary shall revoke such license: *Provided*, That in the case of appeal from such conviction the licensee may furnish a bond in the amount of $1,000, and upon receipt of such bond acceptable to the Secretary of the Treasury he may permit the licensee to continue business during the period of the appeal, or should the licensee refuse or neglect to furnish such bond, the Secre-

---

[1] So in original.

tary of the Treasury shall suspend such license until he is notified by the clerk of the court of last appeal as to the final disposition of the case.

Dealers' records.

(d) Licensed dealers shall maintain such permanent records of importation, shipment, and other disposal of firearms and ammunition as the Secretary of the Treasury shall prescribe.

Exemptions.

Sec. 4. The provisions of this Act shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm,

Federal, State governments, agencies, etc.

or ammunition, sold or shipped to, or issued for the use of, (1) to the United States or any department, independent establishment, or agency thereof; (2) any State, Territory, or possession, or the District of Columbia, or any department, independent establishment, agency, or any political subdivision thereof; (3) any duly commissioned officer or agent of the United States, a State, Territory, or possession, or the District of Columbia, or any political subdivision

Banks, carriers, etc.

thereof; (4) or to any bank, public carrier, express, or armored-truck company organized and operating in good faith for the transporta-

Research laboratories.

tion of money and valuables; (5) or to any research laboratory

Proviso.
Exemptions granted by Secretary of Treasury.
Antiques, curios, etc.

designated by the Secretary of the Treasury: *Provided*, That such bank, public carriers, express, and armored-truck companies are granted exemption by the Secretary of the Treasury; nor to the transportation, shipment, or receipt of any antique or unserviceable firearms, or ammunition, possessed and held as curios or museum

Shipments to designated institutions or persons.

pieces: *Provided*, That nothing herein contained shall be construed to prevent shipments of firearms and ammunition to institutions, organizations, or persons to whom such firearms and ammunition may be

Military training, etc.

lawfully delivered by the Secretary of War, nor to prevent the transportation of such firearms and ammunition so delivered by their lawful possessors while they are engaged in military training or in competitions.

Penalty provisions.

Sec. 5. Any person violating any of the provisions of this Act or any rules and regulations promulgated hereunder, or who makes any statement in applying for the license or exemption provided for in this Act, knowing such statement to be false, shall, upon conviction thereof, be fined not more than $2,000, or imprisoned for not more than five years, or both.

Effective date.

Sec. 6. This Act shall take effect thirty days after its enactment.

Rules and regulations.

Sec. 7. The Secretary of the Treasury may prescribe such rules and regulations as he deems necessary to carry out the provisions of this Act.

Separability of provisions.

Sec. 8. Should any section or subsection of this Act be declared unconstitutional, the remaining portion of the Act shall remain in full force and effect.

Short title.

Sec. 9. This Act may be cited as the Federal Firearms Act.

Approved, June 30, 1938.

[CHAPTER 851]

AN ACT

June 30, 1938
[S. 1131]
[Public, No. 786]

To amend the part of the Act entitled "An Act making appropriations for the naval service for the fiscal year ending June 30, 1921, and for other purposes", approved June 4, 1920, relating to the conservation, care, custody, protection, and operation of the naval petroleum and oil-shale reserves.

Naval petroleum reserves.
41 Stat. 813.
34 U. S. C. § 524.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the part of the Act entitled "An Act making appropriations for the naval service for the fiscal year ending June 30, 1921, and for other purposes", approved June 4, 1920 (41 Stat. 813), relating to the conservation, care, custody, protection, and operation of the naval petroleum and

# Exhibit C
*(Declaration and Expert Witness Robert Gordon's Report)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | Honorable Robert F. Kelly |
| | : | |
| **JEFFERSON B. SESSIONS III,** *et al.* | : | |
| | : | |
| Defendants | : | |

## DECLARATION OF ROBERT M. GORDON, Ph.D., ABPP

I, Robert M. Gordon, Ph.D., ABPP, am competent to state and declare that I drafted the expert report that has been submitted in this matter as Exhibit J to Plaintiff's Second Motion for Summary Judgment and that, pursuant to the penalty of perjury, everything in that report is true and correct to the best of my information, knowledge and belief.

I further declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

DATED: November 14, 2018

Robert Gordon, Ph.D., ABPP

**Robert M. Gordon, Ph.D., ABPP**
**Board Certified in Clinical Psychology and in Psychoanalysis**
**Clinical and Forensic Psychology**
**1259 South Cedar Crest Boulevard, Suite #325**
**Allentown, Pennsylvania 18103-6261**
**610.417.0501**
**rmgordonphd@gmail.com  www.mmpi-info.com**

## Psychological Evaluation
## (Confidential)

**Name:** Edward A. Williams
**Age:** 50
**Psychologist:** Robert M. Gordon, Ph.D. ABPP
**Place of Examination:** Office of RMG
**Date of Examination:** August 7, 2018
**Report Date:** 9/10/18

**Referral Issue:** This assessment is to determine if Mr. Williams is fit to be allowed to own, possess, carry, and use a firearm without risk to him or any other person.

**Procedures:**
- Document Review
- Forensic History Form
- Brief Psychiatric Rating Scale
- Montreal Cognitive Assessment (MOCA)
- Minnesota Multiphasic Personality Inventory -2 (MMPI-2);
- Violence Risk Appraisal Guide- Revised (VRAG-R)
- Psychopathic Check List- Revised (PCL-R)
- Psychodiagnostic Chart (PDC-2)

**Informed Consent and Confidentiality waiver:**
The examiner reviewed the meaning of the Informed Consent and Confidentiality waiver. Mr. Williams read it and signed it.

### Documents Reviewed in Forming My Opinion

1. **FBI Investigation Report on Mr. Williams 2018/02/27:**
   1- Arrest Date 2001-11-22
   Charge Literal DUI OF ALCOHOL OR CONTRL SUBST
   Charge Description
   Statute DUI OF ALCOHOL OR CONTRL SUBST (VC3731
   Pennsylvania)
   Severity MISDEMEANOR 2
   Disposition (Dismissed 2003-03-07; QUASHED/ DISMISSED/ DEMURRER SUSTAINED)
   2- Final Disposition Date 2004-09-07

Charge Literal DUI OF ALCOHOL OR CONTRL SUBST
Charge Description
Statute DUI OF ALCOHOL OR CONTRL SUBST (VC3802
Pennsylvania)
State Offense Code VC3802
Counts 1
Severity
Inchoate Charge
Disposition (Convicted 2006-06-15; FOUND GUILTY/ COUNTY
PRISON/ 90 DYS - 002 YRS)

## 2. Compressed Transcript of the Testimony of EDWARD A. WILLIAMS, 5/8/18:

"Page 9
Q. How many people have you been
2 married to?
3 A. One.
4 Q. Are you currently married to that
5 person?
6 A. Yes.
7 Q. Who is that person?
8 A. Kimberly Williams.
9 Q. When did you get married to
10 Kimberly Williams?
11 A. 1993.
12 Q. You said you're currently married;
13 right?
14 A. Yes.
15 Q. Do you have any children?
16 A. One child.
17 Q. How old is your kid?
18 A. 13.
19 Q. What's your kid's name?
20 A. Nia, N-I-A.
21 Q. Does Nia live with you?
22 A. Yes.
23 Q. Let's dig into your employment
24 history a little bit more just to make sure I
25 have a clear understanding. Let's start from
Page 10
1 as far back as we can go.
2 Do you recall what your
3 first employment position was?
4 A. At the age of 14?
5 Q. Sure. Let's go for it. This is
6 going to be a long trip down memory lane, but I
7 assure you it should be fun.
8 A. McDonald's in high school.
9 Q. How about after that?
10 A. It would be in college then. It was
11 a diner and a Wendy's.
12 Q. How about after those?

2

13 A. Then I moved here to Philadelphia
14 and I've been with The Vann Organization ever
15 since.
16 Q. Where did you move to Philadelphia
17 from?
18 A. State college.
19 Q. From college?
20 A. Yes.
21 Q. Were you originally from
22 Philadelphia?
23 A. New York.
24 Q. So whenever you moved to
25 Philadelphia from State College, you started
Page 11
1 working at The Vann Organization; right?
2 A. Yes.
3 Q. What year was that?
4 A. 1992.
5 Q. I understand you have an assortment
6 of positions with The Van Organization, but how
7 has that changed over time since you've worked
8 for them in 1992?
9 A. Just expanded the roles. Taking on
10 more projects that are different
11 responsibilities. I started out as an
12 inspector and then I would be considered a
13 senior construction manager.
14 Q. Did you have any other titles in
15 between those titles, inspector and senior
16 construction manager?
17 A. Consultant basically.
18 Q. How about any other employment
19 since 1992?
20 A. I worked part-time at a firing
21 range and pistol shop…"

"Page 17
7 Q. When did you learn Mr. Williams
8 that you could not own a gun?
9 A. 2014.
10 Q. Do you recall what it was that
11 caused you to learn that?
12 A. I had applied for my license to
13 carry and I got denied. I hired an attorney who
14 wrote some letters for me and the Pennsylvania
15 State Police finally confirmed the decision
16 that I couldn't hold, according to the state
17 laws, hired Joshua Prince and his firm, and
18 after checking, they determined that I
19 shouldn't have anything in my possession…"
"Page 18

3

19 Q. Was your license to carry revoked
20 during your first DUI in 2001 or the 2004 DUI?
21 A. 2004."

"Page 21-22
Q. Me too.
14 Do you have any pending or
15 outstanding criminal charges in any other
16 state?
17 A. No.
18 Q. Do you have any pending or criminal
19 charges in Pennsylvania?
20 A. No.
21 Q. Do you use or are you addicted to
22 any controlled substance alcohol other than
23 alcohol or tobacco?
24 A. No.
25 Q. Have you ever used any elicit
Page 22
1 drugs?
2 A. No.
3 Q. Have you ever used prescription
4 medications, but for a nonmedical purpose?
5 A. No.
6 Q. Do you know whether you're using
7 any controlled substances today?
8 A. No, I'm not."

"Page 23
12 Q. Have you ever had a restraining
13 order against you?
14 A. No.
15 Q. Have you ever been charged with any
16 crime with respect to domestic violence?
17 A. No.
18 Q. Have you ever been investigated for
19 engaging in domestic violence at all?
20 A. No."

"Page 24-25
17 Q. Have you ever been arrested for
18 anything else?
19 A. A retail theft.
20 Q. When was that?
21 A. In the '90s. '89 or '90.
22 Q. How were those charges ultimately
23 handled?
24 A. I had to pay a fine.
25 Q. Were you found guilty of the retail
1 theft?
2 A. I pleaded guilty and paid the fine.

4

3 Q. Do you recall where that was
4 located?
5 A. That was in State College.
6 Q. Can you tell me about what happened
7 that caused you to get charged with retail
8 theft?
9 A. Dumb I guess fraternity stuff that
10 I never ended completely pledging, given a
11 bunch of tasks and I chose the wrong task.
12 Q. More trouble than it's worth?
13 A. Yes. It was a $2.00 thing of some
14 type of hair gel.
15 Q. Did you serve any time for the
16 retail theft?
17 A. No.
18 Q. Have you ever been arrested for any
19 other offense?
20 A. No."

"Page 31
Q. We'll take a look at those later
5 then too.
6 Do you recall what
7 punishment you received for the 2004 DUI?
8 A. Yes, probation, the fines, maybe a
9 year suspension on my driver's license.
10 Q. How about the house arrest?
11 A. Yes, house arrest.
12 Q. Do you recall why you ended up
13 getting house arrest?
14 A. I believe it had something to do
15 with some of my medical history. The things I
16 was going through back then.
17 Q. Do you recall how many days of
18 house arrest it was?
19 A. It was 90."

"Page 33
16 Mr. Williams, have you ever
17 seen a mental health professional?
18 A. No.
19 Q. Have you ever been treated for
20 alcohol or substance abuse?
21 A. No.
22 Q. During this 2001 to 2004 time
23 period, were you having trouble with alcoholism
24 at all?
25 A. No."

"Page 34-36
Q. So starting in 2001 through this

5

13 2004/2005 time frame, was your usage of alcohol
14 different than it is today?
15 A. Yes.
16 Q. How different was it?
17 A. Then it was social drinker or
18 occasionally.
19 Q. This is from 2001 to 2005?
20 A. Yes.
21 Q. How did that change in 2005?
22 A. Decided to stop. My daughter is
23 now here, and didn't want to run the risk of
24 having another DUI worse than hurting myself or
25 killing myself or somebody else. It got to a
Page 35
1 point where I decided to do other things
2 besides happening out at the bars.
3 Q. It sounds like you still I think
4 you mentioned you still have an occasional
5 drink here and there. Did that start at a
6 particular period of time or did that start in
7 2005 and continue through today?
8 A. No. That might have started a
9 little while later. I decided to get a bottle
10 of champagne for New Year's. If I visit family
11 in North Carolina, like I said, recently there
12 was a death in the family and I hadn't seen a
13 bunch of cousins. We all got together and had a
14 couple of drinks at the house.
15 Q. Outside of those particular
16 circumstances between 2005 and today, has there
17 ever been a time where you've had more alcohol
18 to drink than that?
19 A. No.
20 Q. Have you ever driven under the
21 influence of alcohol since 2005?
22 A. No.
23 Q. Have you ever been pulled over for
24 being under the influence of alcohol since
25 2005?
Page 36
1 A. No.
2 Q. Have you ever driven under the
3 influence of alcohol any other time other than
4 the 2001 and 2004 occasions we've talked about?
5 A. No.
6 Q. Have you ever used your firearms
7 while under the influence of alcohol?
8 A. No.
9 Q. Have you ever gotten into a
10 physical altercation with anyone?
11 A. No.

6

12 Q. Never punched anybody before?
13 A. In high school.
14 Q. After high school?
15 A. No. My last fight was in high
16 school.
17 Q. Ever had any criminal issues with
18 respect to your use of firearms?
19 A. No."

**3.  Exhibit List to Petitioners' Motion for Summary Judgment**

Exhibit A: Pennsylvania State Police Background Check
Exhibit B: Certified Sentencing Order *Commonwealth v. Edward Williams*

**4.  Dr. Daniel William Webster CV**

**5.  Expert Report of Daniel Webster, ScD July 11, 2018**

"In a seminal study using data on over 7,000 individuals from the National Institute of Mental Health's Epidemiologic Catchment Area Surveys in Durham, NC and Los Angeles, CA, Dr. Jeffrey Swanson examined the association between the onset of mental illnesses and alcohol abuse disorders and risks for subsequent violence.xxii The one-year prevalence of committing acts of violence was 15 to 24 percent for those with alcohol abuse disorder alone and 20 to 24 percent among those who abused alcohol and had a major mental illness...Swanson and colleagues used NCS-R data to examine the relationship between the confluence of firearm access and impulsive angry behavior in relation to abuse of alcohol or illicit drugs.xxiii The impulsive behaviors captured in the study included survey respondents' affirmative responses to one or more of the statements: "I have tantrums or angry outbursts," "Sometimes I get so angry that I break or smash things," and "I lose my temper and get into physical fights." Approximately 1.5% of the study sample exhibited one or more of these angry and impulsive behaviors and also either carried a firearm outside the home or keeping firearms in the home. Persons with substance abuse disorders were 2.4 times more likely to have explosive anger and carry a firearm outside the home and 2.7 times more likely to have explosive anger and keep a firearm in the home..."

While Dr. Webster presents some valid correlational research on groupings of individuals, it has a relatively small predictive value in generalizing to groups and does not predict the effect of two DUI's from 14-18 years ago, especially where the individual has no history of aggression. As Dr. Webster did not assess Mr. Williams, these generalizations are not relevant to this particular case, as any applicability would require an independent evaluation of the particular person. As set forth in this forensic report, I have assessed Mr. Williams, after reviewing all of the documents, performing a battery of tests and reviewing the results of the test and conclude, to a reasonable degree of psychological certainty, that the research relied upon by Dr. Webster is not applicable to Mr. Williams.

Furthermore, Dr. Webster's report has several additional deficiencies and erroneous conclusions as it relates to Mr. Williams. Those include:

1.  The report is premised on individuals who suffer from alcohol or abuse issues; however, there is no evidence of record that Mr. Williams currently suffers from any alcohol abuse or dependency issues and Dr. Webster does not contend – nor could he in the absence of performing a battery of tests on Mr. Williams – that Mr. Williams has an alcohol abuse or dependency issue.

2.  The report contends that there exists a statistical significance in relation to the reduction of future

7

violent crime when *those previously convicted of a <u>violent crime</u>* were barred from purchasing a handgun; however, there is no evidence of record that Mr. Williams was ever even charged with, let alone convicted of, a violent crime.

3.  The report contends that only 54% of repeat DUI offenders have alcohol dependency issues, leaving 46% without a dependency issue.

4.  The report fails to support a finding that alcohol-impairment and alcohol abuse are causal to unintentional firearm injuries or deaths, as it acknowledges a lack of data supporting that contention.

5.  The report contends that individuals *previously convicted of a misdemeanor crime of <u>violence</u>* are more likely to commit a violent crime in the future and then attempts to opine that the prohibitions against individuals, like Mr. Williams, prove a public safety benefit, even though Mr. Williams has never been convicted of a crime of violence. Further, one study relied upon by Dr. Webster reflected that "[t]here was no difference between the two groups in their rate of committing nonviolent crimes, suggesting that the difference observed in crimes involving firearms and/or violence…[was] more likely due to <u>violent</u> misdemeanants being prohibited and denied from purchasing a handgun."

6.  The report fails to show any link between preventing individuals convicted of a single DUI, such as Mr. Williams, and "preventing armed mayhem" as required by *Binderup v. U.S. Attorney General*, 836 F.3d 336, 353 (3d Cir. 2016)(*en banc*).

6. **Complaint:**

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | |
| | : | |
| **v.** | : | Civil Action No. _____ |
| | : | |
| **JEFF SESSIONS,** | : | |
| Attorney General of the United | : | |
| States | : | |
| | : | |
| **THOMAS E. BRANDON,** | : | |
| Acting Director, Bureau of Alcohol, | : | |
| Tobacco, Firearms, and Explosives | : | |
| | : | |
| **JAMES B. COMEY,** | : | Complaint – Civil Rights |
| Director of the Federal Bureau of | : | |
| Investigation | : | |
| | : | |
| **UNITED STATES OF** | : | |
| **AMERICA,** | : | |
| Defendants | : | |

8

"c. Is not under indictment;
d. Has never been convicted of a felony or misdemeanor crime of
domestic violence;
e. Has only once been convicted of a crime punishable by more than one
(1) year;
f. Is not a fugitive from justice;
g. Is not an unlawful user of, or addicted to, any controlled substance;
h. Has not been adjudicated a mental defective or been committed to a
mental institution;
i. Has not been discharged from the Armed Forces under dishonorable
conditions;
j. Has never renounced his citizenship; and,
k. Is not the subject of a restraining order relating to an intimate partner..."

21. As reflected on Mr. Williams's background check, his 2004 DUI is his only
criminal conviction. Id.
22. As a result of his conviction, Mr. Williams was placed under house arrest
with electronic monitoring for 90 days and ordered to pay costs, a fine of
$1,500.00, and complete any recommended drug and alcohol treatment..."

**7.  Declaration of Edward A. Williams 13-10-17, 5-8-18 (Doc. 9-5 and Deposition Exhibit Williams-3)**

**8.  Court and Police Records**

These include the court and police records relating to Mr. Williams, as well as, the convictions and grants
of federal firearms relief of John Kraszewski, 57 Fed. Reg. 6160-02, Kim Blake, 54 Fed. Reg. 33108-02,
and Barry Shoop 42 Fed. Reg. 21156.

**Behavioral Observations**

Mr. Williams came early for his assessment. He was pleasant and cooperative. He was well
oriented and performed with consistent effort.

**Forensic Interview**

Mr. Williams stated that that he was born in Manhattan N.Y. and was raised in the Bronx by his
mother. He said that he always enjoyed a wonderful relationship with his mother. His parents
divorced when he was 9 years old. He has not been close with his father. His mother remarried
while he was in college. Neither of his parents had mental health, substance abuse or a criminal
history. His mother went to college and is an RN. His father graduated High School. Mr.
Williams is the oldest. He has a half brother and a half sister. His younger brother spent jail time
for bank robbery. Mr. Williams reports no childhood traumas. He liked school and got straight
A's. He was 13 credits short graduating college when he was offered a job he has since been at
for 25 years. He reports no treatment for mental health issues. He reports a kidney disease for
which he must have regular dialysis. Married for 23 years, one child. No domestic abuse issues.
Arrested in about 1988 or 1989 when he was about 19. His college fraternity told him to get some

9

things and he stole some hair gel valued about $3.00 and was caught. He paid a fine. He got a DUI in 2000 at Penn State University visiting friends, and once more in Philadelphia in 2004. He rarely drinks alcoholic beverages since 2005. He is a certified NRA safety instructor since 1996.

## Test Results

- **Minnesota Multiphasic Personality Inventory -2 (MMPI-2);**

The MMPI-2 instrument is the most widely used and widely researched test of adult psychopathology (Ackerman, *et al*.,1997; Archer, *et al*., 2006; Gordon, 2002; Hagen, 2001).

Mr. Williams' validity scales indicated that he took the MMPI-2 honestly with no attempts at biased responding (Lie = T39, F= T55, K= T47; where T45-55 is normal, and >T65 is High). The MMPI-2 clinical scales are all within normal limits. The MMPI-2 MacAndrews Addition Proneness scale is T50, an average score. The MMPI-2 indicates no problems with aggression, good judgment, good impulse control, good reality testing and no addiction problems.

- **The Brief Psychiatric Rating Scale (BPRS)- expanded version;**

The BPRS is a well-researched screen for psychotic disorders (Overall, *et al*.1988; Ventura, *et al*. 2000).

Mr. Williams indicated that he had no current psychiatric symptoms. He is functioning at the healthy level.

- **Montreal Cognitive Assessment Test;**

The Montreal Cognitive Assessment (MoCA) was designed as a screening instrument for cognitive dysfunction. It assesses different cognitive domains: attention and concentration, executive functions, memory, language, visuoconstructional skills, conceptual thinking, calculations, and orientation. The total possible score is 30 points; a score of 26 or above is considered normal (Zahinoor, *et al*.,2010).

Mr. Williams scored 30/30 a perfect score indicating no psychoneurological impairment.

- **Violence Risk Appraisal Guide-R (VRAG-R);**

This instrument contains a 12-item actuarial scale, which has been widely used to predict risk of violence within a specific time frame following release in violent, mentally disordered offenders. Developed at Penetanguishene Mental Health Centre, the tool uses the clinical record, particularly the psycho-social history component, as a basis for scoring as opposed to interview or questionnaires. The Hare PCL-R (Psychopathy Checklist -Revised) score is incorporated into the VRAG calculations of risk (Quinsey, *et al*. 1998). The VRAG-R combines the VRAG and SORAG. The authors wrote "we suggest users can adopt the VRAG-R with considerable confidence that its predictive performance will at least match that of the original VRAG/SORAG system which has yielded large predictive effects for violent recidivism." (Harris, Rice, Quinsey, & Cormier, 2015; Rice, Harris, & Lang, 2013)

10

Mr. Williams scored -25, which is a very low risk of violently acting out (A 9.6% probability of recidivism assuming he was convicted of a violent crime. Thus this measure assumes the worst and Mr. Williams still scored very low.) .

- **Hare Revised Psychopathy Checklist (PCL-R);**

The PCL–R is a 20-item symptom-construct rating scale designed to assess psychopathy. It is an expert-rated tool. The total score reflects the degree to which the individual matches the prototypical psychopath. The highest possible score is 40. Scores 30+ are considered indicative of psychopathy (Hare, *et al.*,1990).

Mr. Williams scored 0/40, which indicates no psychopathic indication.

- **Psychodiagnostic Chart (PDC-2),** (Gordon and Bornstein, 2012; Gordon and Stoffey, 2014, Gordon and Bornstein, 2017). The PDC is a psychodiagnostic chart to help assess personality organization, personality disorders, mental functions and symptoms.

**Healthy Personality**- characterized by mostly 9-10 scores, life problems rarely get out of hand and enough flexibility to accommodate to challenging realities.
**Neurotic Level-** characterized by mainly 6-8 scores, basically a good sense of identity, good reality testing, mostly good intimacies, fair resiliency, fair affect tolerance and regulation, rigidity and limited range of defenses and coping mechanisms, favors defenses such as repression, reaction formation, rationalization, displacement, and undoing.
**Borderline Level-** characterized by mainly 3-5 scores, recurrent relational problems, difficulty with affect tolerance and regulation, poor impulse control, poor sense of identity, poor resiliency, favors defenses such as splitting, projective identification, idealization/devaluation, denial, and acting out.
**Psychotic Level-** characterized by mainly 1-2 scores, delusional thinking, poor reality testing and mood regulation, extreme difficulty functioning in work and relationships favors defenses such as delusional projection, psychotic denial, and psychotic distortion.

**Overall Personality Organization = 7**


**Overall Diagnosis: Normal Personality**

### Summary

Mr. Williams had two DUIs, one in 2000 and another in 2004. The last incident was 14 years ago. There is no predictive value in these events for future behaviors. Mr. Williams has no history of hostile or violent behaviors. He has no continuing pattern of aggressive behaviors, which could be a predictive factor. The studies Dr. Webster cites are based on selected samples that are not necessarily generalizable and are of relatively low correlations. Although the research cited by Dr. Webster sheds light on some predictive factors, the prediction rate is low and cannot be applied to individual cases, including Mr. Williams' case. Dr. Webster is not a psychologist and did not perform a psychological assessment of Mr. Williams' mental status, psycho-neurological assessment, defenses, psychopathology, addiction proneness or behaviors, aggression, judgment or the potential for Mr. Williams to act out. Therefore, his report has no value for this particular case, in the absence of an independent evaluation of Mr. Williams, as I performed.

My psychological assessment of Mr. Williams using a standard psychological battery of tests indicates that he has a normal personality, without psychopathology and without addiction or

11

violent tendencies. Accordingly, the research relied upon by Dr. Webster is not applicable to Mr. Williams.

## Recommendations

I recommend that Mr. Williams be allowed to own, possess, carry, and use a firearm. Mr. Williams may possess a firearm without risk to himself or any other person.

I make all of these conclusions to a reasonable degree of psychological certainty.

Respectfully submitted,

Robert M. Gordon, Ph.D., ABPP
CV can be viewed at www.mmpi-info.com

12

**Fed.R.Civ.P. 26(a)(2)(B)(iv) Statement**

*EDUCATION*

Ph.D., Psychology, Temple University, Philadelphia, PA  1975
B.A., Psychology, Temple University, Philadelphia, PA    1970

*PROFESSIONAL ASSOCIATIONS*

American Psychological Association- Fellow

Elected to the Governing Council of the American Psychological Assoc.
1992 -1995 and again in 2001 - 2003 representing Pennsylvanian psychologists

Fellow and charter member of Division of Psychoanalysis (39), member of sections:
    I. Psychologist-Psychoanalyst Practitioners
   VI. Psychoanalytic Research Society
  VII. Psychoanalysis and Groups
 VIII. Couple and Family Therapy and Psychoanalysis

American Psychology-Law Society of the American Psychological Association

President - Pennsylvania Psychological Association, 1990–1991;
        Pennsylvania Psychological Foundation Board, 1991-2003, 2006-2010;
         President of the Clinical Division, 1987;
        Charter Member of the Colleague Assistance Committee since 1992

President 1980 - 1981 - Lehigh Valley Psychological Association;
        Chair of the Ethics Committee, 1983-1986

Philadelphia Society for Psychoanalytic Psychology, Charter member since 1982

Fellow of the Academy of Clinical Psychology (AClinP) of the American Board of
Professional     Psychology since 1991

Fellow of the Academy of Psychoanalysis of the American Board of Professional
Psychology since 2006

American Psychoanalytic Association Research Associate- charter member

Psychodynamic Psychoanalytic Research Society- charter member

Society for Personality Assessment

Tampa Bay Psychoanalytic Society

13

*CREDENTIALS and AWARDS*

Pennsylvania Psychology License since 1976

Distinguished Service Award from the Pennsylvania Psychological Association 2001

Certificate of Professional Qualification in Psychology by the Association of State and Provincial   Psychology Boards since 2002, #3655

Diplomate of the American Board of Professional Psychology in Clinical Psychology; #3414, since 1982

Diplomate of the American Board of Professional Psychology in Psychoanalysis, #6211, since 2006

National Register of Health Service Providers in Psychology since 1979-2010

American Association for Marriage and Family Therapy since 1976, and Approved Supervisor 1981-2007

An American Psychological Association Approved Sponsor of Continuing Education to Psychologists 1985-2011 (The first in east-central Pennsylvania).

Honorary Membership presented by the American Psychoanalytic Association- 2015

Honorary Editor for Forensic Research & Criminology International Journal- 2015

Honorary Member of the Psychoanalytic Center of Philadelphia- elected 2016

*PRACTICE*

Independent practice specializing in forensic psychology, psychoanalysis, psychodynamic psychotherapy, assessment, teaching and research.

Forensic Psychologist Consultant to the Lehigh County Public Defender's Office since 2010.

Psychodynamic Diagnostic Manual 2 (PDM2) Section co-editor on assessment tools 2014-2016.

*TEACHING and RESEARCH POSITIONS and WORKSHOPS*

14

Academic appointments at: Lehigh University, Temple University, Yeshiva University, and Widener University. Topics include personality assessment, forensic psychology, research, ethics, MMPI-2, Psychodynamic Diagnostic Manual (PDM and PDM2), philosophy of science and methodology, teaching psychodynamic theory and psychodynamic psychotherapy.

Clinical and Forensic Assessment Practicum Supervisor for Chestnut Hill College Doctoral students since 2010.

Presented and led workshops nationally and internationally (ex.: Albania, Belgium, Canada, China, Germany, France, Israel, Italy, Netherlands, Russia, Switzerland, etc.) since 1982 (ex.: International Psychoanalytic Assoc., American Psychoanalytic Assoc., American Psychological Assoc., Society for Personality Assessment, etc.) in: MMPI-2 interpretation, forensic psychology, psychological diagnostic taxonomies, the PDM and PDM2, psychodynamic research, psychoanalysis- theory and technique, couples, family and group therapy, ethics and psychology, and the psychology of love relations. Led yearly ethics workshops for the Penna. Psychological Foundation for 17 years.

China American Psychoanalytic Alliance (CAPA)- instructor of Adult Psychodynamic Psychotherapy and the writings of Sigmund Freud to Chinese professionals via VCON, since 2012.

Chair of Research and Scholarship Grants of the China American Psychoanalytic Alliance 2017.

China American Psychoanalytic Alliance (CAPA)- Board of Directors 2017.

Visiting Professor of Psychology teaching forensic and clinical psychology to masters and doctoral students at Albanian University via VACON 2014.


*FILMS*

39 Scuds (1991). A 30-minute documentary I made about the psychological effects of the potential gas poisoning of civilians in Israel during the Persian Gulf War.

Balance and Integration in Psychoanalytic Group Therapy (2006). Produced by Video Diamond, LLC; a workshop I lead on psychoanalytic group therapy.

TEDx Talk "The Power of Apology" September, 2014


REVIEWER FOR JOURNALS

15

such as: Journal of Consulting and Clinical Psychology and Psychoanalytic Psychology

*PUBLICATIONS - Last 10 years*

Gordon, R.M. & Bornstein, R.F. (2018). Construct Validity of the
Psychodiagnostic Chart:
A Transdiagnostic Measure of Personality Organization, Personality
Syndromes, Mental   Functioning, and Symptomatology. *Psychoanalytic
Psychology,* 35(2),280-288. http://dx.doi.org/10.1037/pap0000142

Gordon, R.M. (2017). A Concurrent Validity Study of the PDM-2 Personality
Syndromes. Current Psychology, DOI: 10.1007/s12144-017-9644-2, pp.1-
7.

Gordon, R.M., Blake, A., Etzi, J., Rothery, C., & Tasso, A.F. (2017). Do
Practitioners Find a Psychodynamic Taxonomy Useful? Journal of
Psychology and Clinical Psychiatry 7(5): 00452. DOI:
10.15406/jpcpy.2017.07.00452

Waldron, S., Gordon, R.M., & Gazzillo, F. (2017). Chapter 15 Assessment within
the PDM-2 Framework, Lingiardi, V. & McWilliams, N.  (Eds),
*Psychodynamic Diagnostic Manual, Version 2 (PDM-2).*  New York:
Guilford Press.

Gordon, R.M. (2017). Personality Disorders and Syndromes Across ICD-10,
DSM5, and PDM2. *Currents, 1,* pp. 10.

Gordon, R.M., & Lan, J. (2017). Assessing Distance Training: How Well Does It
Produce Psychoanalytic Psychotherapists? *Psychodynamic Psychiatry, 45*
(3), *329-341.*

Gordon, R.M. (2017). Assessing Distance Psychoanalytic Treatment:
Perspectives of Therapist and Patient. *The American Psychoanalyst, 51,*2,
15.

Gordon, R.M., Tune, J. and Wang, X. (2016). What are the characteristics and
concerns of high and low raters of psychodynamic treatment to Chinese
students over VCON? *Psychoanalysis and Psychotherapy in China,2,* 86-
96.

Gordon, R.M., Blake, A., Bornstein, R.F., Gazzillo, F., Etzi, J., Lingiardi, V.,
McWilliams, N., Rothery, C. and Tasso, A.F. (2016) What do practitioners
consider the most helpful personality taxa in understanding their patients*?
Division/Review: A Quarterly Psychoanalytic Forum, 16,* 70.

16

Gordon, R.M., Gazzillo, F., Blake, A., Bornstein, R.F., Etzi, J., Lingiardi, V., McWilliams, N., Rothery, C. and Tasso, A.F. (2016) The Relationship Between Theoretical Orientation and Countertransference Awareness: Implications for Ethical Dilemmas and Risk Management, *Clinical Psychology & Psychotherapy, 23, 3,* 236-245; (online  published 2015, DOI: 10.1002/cpp.1951)

Gordon, R.M. & Bornstein, R.F. (2015). The Psychodiagnostic Chart-2 v.8.1 (PDC-2),
     DOI: 10.13140/RG.2.1.4147.4647

Ibrahimi, S., & Gordon, R.M. (2015). Post-Traumatic Identity within Social Contexts. *Balkan Journal of Interdisciplinary Research Vol 1,* No 1, 47-51. ISSN 2410-759X, Access online at www.iipccl.org

Ibrahimi, S., Dervishi, E., and Gordon, R.M. (2015). Traumatic behavior deviance of individual within social contexts. *European Psychiatric Congress*, Vienna Austria.

Spektor, V., Luu, L. & Gordon, R.M. (2015) The Relationship between Theoretical Orientation and Accuracy of Countertransference Expectations, *Journal of the American Psychoanalytic Association, 63*(4), NP28-NP32.

Gordon, R.M., Wang, X. and Tune, J. (2015). Comparing Psychodynamic Teaching, Supervision and Psychotherapy Over Video-Conferencing Technology with Chinese Students. *Psychodynamic Psychiatry, 43 (4),* 585-599.

Huprich, S., Lingiardi, V., McWilliams, N., Bornstein, R., Gazzillo, F., and Gordon, R.M., (2015). The *Psychodynamic Diagnostic Manual (PDM)* and the *PDM-2:* Opportunities to Significantly Affect the Profession. *Psychoanalytic Inquiry,* 35: 60-73.

Lingiardi, V., McWilliams, N., Bornstein, R.F., Gazzillo, F. and Gordon, R.M. (2015) The Psychodynamic Diagnostic Manual Version 2 (PDM-2): Assessing Patients for Improved Clinical Practice and Research, *Psychoanalytic Psychology, 32*(1), 94-115. *http://dx.doi.org/10.1037/a0038546*

Gazzillo, F., Lingiardi, V., Del Corno, F., Genova, F., Bornstein, R.F., Gordon, R.M., McWilliams,  N. (2015). Clinicians' Emotional Responses and PDM P Axis Personality Disorders: A Clinically Relevant Empirical Investigation. *Psychotherapy, Special Section: Personality and Psychotherapy, 52*(2), 238-246. *http://dx.doi.org/10.1037/a0038799*

Gordon, R.M. and Stoffey, R.W. (2014). Operationalizing the Psychodynamic Diagnostic Manual: a Preliminary Study of the Psychodiagnostic Chart (PDC), *Bulletin of the Menninger Clinic,78,* 1, 1-15.

Gordon, R.M. and Cosgrove, L., (2013) Ethical Considerations in the Development and Application of Mental and Behavioral Nosologies: Lessons from DSM5, *Psychological Injury and Law*, *6*,4, 330-335, DOI 10.1007/s12207-013-9172-9.

Gordon, R.M. and Stoffey, R.W. and Perkins, B.L. (2013) Comparing the Sensitivity of the MMPI-2 Clinical Scales and the MMPI-RC Scales to Clients Rated as Psychotic, Borderline or Neurotic on the Psychodiagnostic Chart, *Psychology: Special issue on Criminal Investigative Psychology, 4, 9A,* 12-16. doi: 10.4236/psych.2013.49A1003.

Gordon, R.M. (2013). The Pyramid of Love. In The World Book of Love, Ed. Leo Bormans, Lannoo, Publishers, Tielt, Belgium. 60-63.

Gordon, R.M. (2013). Book Review: To Know and to Care: [Review of Psychoanalytic Diagnosis: Understanding Personality Structure in the Clinical Process. Second Edition, by Nancy McWilliams.] Division/Review: A Quarterly Psychoanalytic Forum, Spring, 7, 9-11.

Bornstein, R. F. and Gordon, R. M. (2012). What Do Practitioners Want in a Diagnostic Taxonomy? Comparing the PDM with DSM and ICD. *Division/Review: A Quarterly Psychoanalytic Forum*, Fall, 6, 35.

Gordon, R.M., & Bornstein, R.F. (2012). A practical tool to integrate and operationalize the PDM with the ICD or DSM. http://www.mmpi-info.com/pdm-blog.

Gordon, R.M. (2012). A Psychological Alternative to the Medically Based DSM and ICD, *The National Psychologist May/June, vol. 21, 3,* p. 19

Gordon, R.M. (2011). Repercussions of a Patient's Suicide, *Pennsylvania Psychologist Quarterly, 71*,6, 12-14.

Gordon, R.M., Hoffman, L., and Tjeltveit, A. (2010). Religion and Psychotherapy: Ethical Conflicts and Confluence, *Pennsylvania Psychologist, 70,* 9, 3-4.

Gordon, R.M. (2010). The Scientific Renaissance of Psychodynamic Therapy (PDT), *Pennsylvania Psychologist Quarterly, March, 70,*3, 22-23.

18

Gordon, R.M. (2010). The Psychodynamic Diagnostic Manual (PDM). In I. Weiner and E. Craighead, (Eds.) *Corsini's Encyclopedia of Psychology (4th ed., volume 3,* 1312-1315), Hoboken, NJ: John Wiley and Sons.

Gordon, R.M. (2009 ). Money, Masochism, Narcissism and Indifference, *Pennsylvania Psychologist Quarterly,69,8,*10 and 14.

Gordon, R.M. (2009). The Psychodiagnostic Report for Treatment Recommendations. *The Pennsylvania Psychologist Quarterly, 69,* 3, 17-18.

Gordon, R.M. (2009). Reactions to the Psychodynamic Diagnostic Manual (PDM) by Psychodynamic, CBT and Other Non- Psychodynamic Psychologists. *Issues in Psychoanalytic Psychology, 31,* 1, 55-62.

Gordon, R.M. (2008). Addendum To MMPI/MMPI–2 Changes In Long Term Psychoanalytic Psychotherapy. *Issues in Psychoanalytic Psychology, Issues In Psychoanalytic Psychology Vol. 30, No. 2, p.159.*

Gordon, R.M.  (2008). *An Expert Look at Love, Intimacy and Personal Growth.* Second Edition, IAPT Press, Allentown, Pa.

Gordon, R.M. (2008). Early reactions to the PDM by Psychodynamic, CBT and Other psychologists. *Psychologist-Psychoanalyst, XXVI,* 1, Winter, p.13.

Gordon, R. M. (2008). *I Love You Madly! On Passion, Personality and Personal Growth.* Second Edition, IAPT Press, Allentown, Pa.

Gordon, R. M. (2008). The Two-Minute Check-in at the Beginning of Psychoanalytic Group Therapy Sessions. *Group Analysis,41* (4), 366-372.

Gordon, R.M. and Bottinelli, J. (2008), Ethics and the Difficult Patient: The Psychopath in Film and in Your Office. *The Pennsylvania Psychologist, July/August Issue*, p.10.

Gordon, R. M., Stoffey, R., & Bottinelli, J. (2008). MMPI-2 findings of primitive defenses in alienating parents. *American Journal of Family Therapy, 36* (3): 211–228.

## Fed.R.Civ.P. 26(a)(2)(B)(v) Statement

*Nature of Practice*

Since my license to practice psychology in 1976, I have specialized in clinical and forensic psychodiagnostic assessment (along with psychotherapy, research and teaching).

My forensic practice is general in nature, that is, not limiting myself to any particular civil or criminal area or to defense or plaintiff work. The only exception is that since 2010, I work as Lehigh County Public Defender Office's forensic psychologist. About 30% of my professional work is in forensic psychology.

My general forensic assessment practice has included assessments for:
IMEs and psychological record reviews
Criminal responsibility
Mental state
Competency to stand trial
Capital mitigation evaluations
Juvenile matters and transfer evaluations
Sentencing evaluations
Malingering and deception
Testamentary capacity
PTSD
Personal injury and emotional distress claims
Malpractice — plaintiff and defense
Sexual offender evaluations
Risk assessment
Family law: custody, parental competence, parental alienation, adoption
Employment issues: fitness for duty, discrimination, harassment, wrongful termination.

*Expert Testimony at Trial or by Deposition*

2018
None

2017
Fontanez competency to stand trial - Lehigh County Defense
*Estepan v. Ferguson* for the plaintiff in a MVA

2016
*Gabrieli v. Easton Hospital, et al.* for the defense
*Green vs. Lehigh Valley Hospital* for the defense
*Deanne and Toby Snyder h/w vs. Estate of Geoffrey K Sherman, M.A. et al.* for the defense
*Shugars, Leonard* state of mind - Lehigh County Defense
*Blahosky, Carolyn* for the plaintiff PTSD from MVA Lehigh county

2015
*Diggs, Jhainee Nateequa*, decertification hearing - Lehigh County Defense
*Hausknecht, Barbara* for the plaintiff PTSD from MVA Lehigh county
*Zimmerman, Joseph* state of mind - Lehigh County Defense
*Figueroa-Velez, Axel* decertification hearing - Lehigh County Defense

20

*Melendez, Juan* competency to stand trial - Lehigh County Defense

2014
*Scardetto v. Scardetto* - Custody - Bucks County- request of Father's Atty.
*Commonwealth v. Jean-Pierre* - Lehigh County Defense
*Commonwealth v. Heminitz* - Lehigh County Defense
*Commonwealth v. Rivera-Oyola* - Lehigh County Defense
*Commonwealth v. Rodriguez* - Lehigh County Defense
*Commonwealth v. Lehigh County* - Defense
Shoen v. Shoen Deposition Custody- Berks County - request of Mother's Atty.

### Fed.R.Civ.P. 26(a)(2)(B)(vi) Statement

The fee for all time and services by Dr. Robert Gordon is $250 an hour including
preparation and travel time. There is a one-day charge ($2800) for depositions and court
testimony, in addition to any preparation and travel time. I charge a minimum non-
refundable retainer of $1500 for forensic reports. The total amount charged for this
evaluation and forensic report was $3,000.

**Fed.R.Civ.P. 26(a)(2)(B)(iv) Statement**

*EDUCATION*

Ph.D., Psychology, Temple University, Philadelphia, PA  1975
B.A., Psychology, Temple University, Philadelphia, PA    1970


*PROFESSIONAL ASSOCIATIONS*

American Psychological Association- Fellow

Elected to the Governing Council of the American Psychological Assoc.
1992 -1995 and again in 2001 - 2003 representing Pennsylvanian psychologists

Fellow and charter member of Division of Psychoanalysis (39), member of sections:
    I. Psychologist-Psychoanalyst Practitioners
   VI. Psychoanalytic Research Society
  VII. Psychoanalysis and Groups
 VIII. Couple and Family Therapy and Psychoanalysis

American Psychology-Law Society of the American Psychological Association

President - Pennsylvania Psychological Association, 1990–1991;
        Pennsylvania Psychological Foundation Board, 1991-2003, 2006-2010;
         President of the Clinical Division, 1987;
        Charter Member of the Colleague Assistance Committee since 1992

President 1980 - 1981 - Lehigh Valley Psychological Association;
        Chair of the Ethics Committee, 1983-1986

Philadelphia Society for Psychoanalytic Psychology, Charter member since 1982

Fellow of the Academy of Clinical Psychology (AClinP) of the American Board of
Professional     Psychology since 1991

Fellow of the Academy of Psychoanalysis of the American Board of Professional
Psychology since 2006

American Psychoanalytic Association Research Associate- charter member

Psychodynamic Psychoanalytic Research Society- charter member

Society for Personality Assessment

Tampa Bay Psychoanalytic Society

13

*CREDENTIALS and AWARDS*

Pennsylvania Psychology License since 1976

Distinguished Service Award from the Pennsylvania Psychological Association 2001

Certificate of Professional Qualification in Psychology by the Association of State and Provincial   Psychology Boards since 2002, #3655

Diplomate of the American Board of Professional Psychology in Clinical Psychology; #3414, since 1982

Diplomate of the American Board of Professional Psychology in Psychoanalysis, #6211, since 2006

National Register of Health Service Providers in Psychology since 1979-2010

American Association for Marriage and Family Therapy since 1976, and Approved Supervisor 1981-2007

An American Psychological Association Approved Sponsor of Continuing Education to Psychologists 1985-2011 (The first in east-central Pennsylvania).

Honorary Membership presented by the American Psychoanalytic Association- 2015

Honorary Editor for Forensic Research & Criminology International Journal- 2015

Honorary Member of the Psychoanalytic Center of Philadelphia- elected 2016

*PRACTICE*

Independent practice specializing in forensic psychology, psychoanalysis, psychodynamic psychotherapy, assessment, teaching and research.

Forensic Psychologist Consultant to the Lehigh County Public Defender's Office since 2010.

Psychodynamic Diagnostic Manual 2 (PDM2) Section co-editor on assessment tools 2014-2016.

*TEACHING and RESEARCH POSITIONS and WORKSHOPS*

14

Academic appointments at: Lehigh University, Temple University, Yeshiva University, and Widener University. Topics include personality assessment, forensic psychology, research, ethics, MMPI-2, Psychodynamic Diagnostic Manual (PDM and PDM2), philosophy of science and methodology, teaching psychodynamic theory and psychodynamic psychotherapy.

Clinical and Forensic Assessment Practicum Supervisor for Chestnut Hill College Doctoral students since 2010.

Presented and led workshops nationally and internationally (ex.: Albania, Belgium, Canada, China, Germany, France, Israel, Italy, Netherlands, Russia, Switzerland, etc.) since 1982 (ex.: International Psychoanalytic Assoc., American Psychoanalytic Assoc., American Psychological Assoc., Society for Personality Assessment, etc.) in: MMPI-2 interpretation, forensic psychology, psychological diagnostic taxonomies, the PDM and PDM2, psychodynamic research, psychoanalysis- theory and technique, couples, family and group therapy, ethics and psychology, and the psychology of love relations. Led yearly ethics workshops for the Penna. Psychological Foundation for 17 years.

China American Psychoanalytic Alliance (CAPA)- instructor of Adult Psychodynamic Psychotherapy and the writings of Sigmund Freud to Chinese professionals via VCON, since 2012.

Chair of Research and Scholarship Grants of the China American Psychoanalytic Alliance 2017.

China American Psychoanalytic Alliance (CAPA)- Board of Directors 2017.

Visiting Professor of Psychology teaching forensic and clinical psychology to masters and doctoral students at Albanian University via VACON 2014.


*FILMS*

39 Scuds (1991). A 30-minute documentary I made about the psychological effects of the potential gas poisoning of civilians in Israel during the Persian Gulf War.

Balance and Integration in Psychoanalytic Group Therapy (2006). Produced by Video Diamond, LLC; a workshop I lead on psychoanalytic group therapy.

TEDx Talk "The Power of Apology" September, 2014


REVIEWER FOR JOURNALS

such as: Journal of Consulting and Clinical Psychology and Psychoanalytic Psychology

*PUBLICATIONS - Last 10 years*

Gordon, R.M. & Bornstein, R.F. (2018). Construct Validity of the
    Psychodiagnostic Chart:
    A Transdiagnostic Measure of Personality Organization, Personality
    Syndromes, Mental    Functioning, and Symptomatology. *Psychoanalytic
    Psychology,* 35(2),280-288. http://dx.doi.org/10.1037/pap0000142

Gordon, R.M. (2017). A Concurrent Validity Study of the PDM-2 Personality
    Syndromes. Current Psychology, DOI: 10.1007/s12144-017-9644-2, pp.1-
    7.

Gordon, R.M., Blake, A., Etzi, J., Rothery, C., & Tasso, A.F. (2017). Do
    Practitioners Find a Psychodynamic Taxonomy Useful?  Journal of
    Psychology and Clinical Psychiatry 7(5): 00452. DOI:
    10.15406/jpcpy.2017.07.00452

Waldron, S., Gordon, R.M., & Gazzillo, F. (2017). Chapter 15 Assessment within
    the PDM-2 Framework, Lingiardi, V. & McWilliams, N.  (Eds),
    *Psychodynamic Diagnostic Manual, Version 2 (PDM-2).*  New York:
    Guilford Press.

Gordon, R.M. (2017). Personality Disorders and Syndromes Across ICD-10,
    DSM5, and PDM2. *Currents, 1,* pp. 10.

Gordon, R.M., & Lan, J. (2017). Assessing Distance Training: How Well Does It
    Produce Psychoanalytic Psychotherapists? *Psychodynamic Psychiatry, 45*
    (3), *329-341.*

Gordon, R.M. (2017). Assessing Distance Psychoanalytic Treatment:
    Perspectives of Therapist and Patient. *The American Psychoanalyst, 51,*2,
    15.

Gordon, R.M., Tune, J. and Wang, X. (2016). What are the characteristics and
    concerns of high and low raters of psychodynamic treatment to Chinese
    students over VCON? *Psychoanalysis and Psychotherapy in China,*2, 86-
    96.

Gordon, R.M., Blake, A., Bornstein, R.F., Gazzillo, F., Etzi, J., Lingiardi, V.,
    McWilliams, N., Rothery, C. and Tasso, A.F. (2016) What do practitioners
    consider the most helpful personality taxa in understanding their patients?
    *Division/Review: A Quarterly Psychoanalytic Forum, 16,* 70.

Gordon, R.M., Gazzillo, F., Blake, A., Bornstein, R.F., Etzi, J., Lingiardi, V., McWilliams, N., Rothery, C. and Tasso, A.F. (2016) The Relationship Between Theoretical Orientation and Countertransference Awareness: Implications for Ethical Dilemmas and Risk Management, *Clinical Psychology & Psychotherapy, 23, 3,* 236-245; (online  published 2015, DOI: 10.1002/cpp.1951)

Gordon, R.M. & Bornstein, R.F. (2015). The Psychodiagnostic Chart-2 v.8.1 (PDC-2),
     DOI: 10.13140/RG.2.1.4147.4647

Ibrahimi, S., & Gordon, R.M. (2015). Post-Traumatic Identity within Social Contexts. *Balkan Journal of Interdisciplinary Research Vol 1,* No 1, 47-51. ISSN 2410-759X, Access online at www.iipccl.org

Ibrahimi, S., Dervishi, E., and Gordon, R.M. (2015). Traumatic behavior deviance of individual within social contexts. *European Psychiatric Congress*, Vienna Austria.

Spektor, V., Luu, L. & Gordon, R.M. (2015) The Relationship between Theoretical Orientation and Accuracy of Countertransference Expectations, *Journal of the American Psychoanalytic Association, 63*(4), NP28-NP32.

Gordon, R.M., Wang, X. and Tune, J. (2015). Comparing Psychodynamic Teaching, Supervision and Psychotherapy Over Video-Conferencing Technology with Chinese Students. *Psychodynamic Psychiatry, 43 (4),* 585-599.

Huprich, S., Lingiardi, V., McWilliams, N., Bornstein, R., Gazzillo, F., and Gordon, R.M., (2015). The *Psychodynamic Diagnostic Manual (PDM)* and the *PDM-2:* Opportunities to Significantly Affect the Profession. *Psychoanalytic Inquiry,* 35: 60-73.

Lingiardi, V., McWilliams, N., Bornstein, R.F., Gazzillo, F. and Gordon, R.M. (2015) The Psychodynamic Diagnostic Manual Version 2 (PDM-2): Assessing Patients for Improved Clinical Practice and Research, *Psychoanalytic Psychology, 32*(1), 94-115. *http://dx.doi.org/10.1037/a0038546*

Gazzillo, F., Lingiardi, V., Del Corno, F., Genova, F., Bornstein, R.F., Gordon, R.M., McWilliams,  N. (2015). Clinicians' Emotional Responses and PDM P Axis Personality Disorders: A Clinically Relevant Empirical Investigation. *Psychotherapy, Special Section: Personality and Psychotherapy, 52*(2), 238-246. *http://dx.doi.org/10.1037/a0038799*

Gordon, R.M. and Stoffey, R.W. (2014). Operationalizing the Psychodynamic Diagnostic Manual: a Preliminary Study of the Psychodiagnostic Chart (PDC), *Bulletin of the Menninger Clinic, 78,* 1, 1-15.

Gordon, R.M. and Cosgrove, L., (2013) Ethical Considerations in the Development and Application of Mental and Behavioral Nosologies: Lessons from DSM5, *Psychological Injury and Law*, *6*,4, 330-335, DOI 10.1007/s12207-013-9172-9.

Gordon, R.M. and Stoffey, R.W. and Perkins, B.L. (2013) Comparing the Sensitivity of the MMPI-2 Clinical Scales and the MMPI-RC Scales to Clients Rated as Psychotic, Borderline or Neurotic on the Psychodiagnostic Chart, *Psychology: Special issue on Criminal Investigative Psychology, 4, 9A,* 12-16. doi: 10.4236/psych.2013.49A1003.

Gordon, R.M. (2013). The Pyramid of Love. In The World Book of Love, Ed. Leo Bormans, Lannoo, Publishers, Tielt, Belgium. 60-63.

Gordon, R.M. (2013). Book Review: To Know and to Care: [Review of Psychoanalytic Diagnosis: Understanding Personality Structure in the Clinical Process. Second Edition, by Nancy McWilliams.] Division/Review: A Quarterly Psychoanalytic Forum, Spring, 7, 9-11.

Bornstein, R. F. and Gordon, R. M. (2012). What Do Practitioners Want in a Diagnostic Taxonomy? Comparing the PDM with DSM and ICD. *Division/Review: A Quarterly Psychoanalytic Forum*, Fall, 6, 35.

Gordon, R.M., & Bornstein, R.F. (2012). A practical tool to integrate and operationalize the PDM with the ICD or DSM. http://www.mmpi-info.com/pdm-blog.

Gordon, R.M. (2012). A Psychological Alternative to the Medically Based DSM and ICD, *The National Psychologist May/June, vol. 21, 3,* p. 19

Gordon, R.M. (2011). Repercussions of a Patient's Suicide, *Pennsylvania Psychologist Quarterly, 71,*6, 12-14.

Gordon, R.M., Hoffman, L., and Tjeltveit, A. (2010). Religion and Psychotherapy: Ethical Conflicts and Confluence, *Pennsylvania Psychologist, 70,* 9, 3-4.

Gordon, R.M. (2010). The Scientific Renaissance of Psychodynamic Therapy (PDT), *Pennsylvania Psychologist Quarterly, March, 70,*3, 22-23.

Gordon, R.M. (2010). The Psychodynamic Diagnostic Manual (PDM). In I. Weiner and E. Craighead, (Eds.) *Corsini's Encyclopedia of Psychology (4th ed., volume 3,* 1312-1315), Hoboken, NJ: John Wiley and Sons.

Gordon, R.M. (2009 ). Money, Masochism, Narcissism and Indifference, *Pennsylvania Psychologist Quarterly, 69, 8,* 10 and 14.

Gordon, R.M. (2009). The Psychodiagnostic Report for Treatment Recommendations. *The Pennsylvania Psychologist Quarterly, 69,* 3, 17-18.

Gordon, R.M. (2009). Reactions to the Psychodynamic Diagnostic Manual (PDM) by Psychodynamic, CBT and Other Non- Psychodynamic Psychologists. *Issues in Psychoanalytic Psychology, 31,* 1, 55-62.

Gordon, R.M. (2008). Addendum To MMPI/MMPI–2 Changes In Long Term Psychoanalytic Psychotherapy. *Issues in Psychoanalytic Psychology, Issues In Psychoanalytic Psychology Vol. 30, No. 2, p.159.*

Gordon, R.M. (2008). *An Expert Look at Love, Intimacy and Personal Growth.* Second Edition, IAPT Press, Allentown, Pa.

Gordon, R.M. (2008). Early reactions to the PDM by Psychodynamic, CBT and Other psychologists. *Psychologist-Psychoanalyst, XXVI,* 1, Winter, p.13.

Gordon, R. M. (2008). *I Love You Madly! On Passion, Personality and Personal Growth.* Second Edition, IAPT Press, Allentown, Pa.

Gordon, R. M. (2008). The Two-Minute Check-in at the Beginning of Psychoanalytic Group Therapy Sessions. *Group Analysis, 41* (4), 366-372.

Gordon, R.M. and Bottinelli, J. (2008), Ethics and the Difficult Patient: The Psychopath in Film and in Your Office. *The Pennsylvania Psychologist, July/August Issue,* p.10.

Gordon, R. M., Stoffey, R., & Bottinelli, J. (2008). MMPI-2 findings of primitive defenses in alienating parents. *American Journal of Family Therapy, 36* (3): 211–228.

## Fed.R.Civ.P. 26(a)(2)(B)(v) Statement

*Nature of Practice*

Since my license to practice psychology in 1976, I have specialized in clinical and forensic psychodiagnostic assessment (along with psychotherapy, research and teaching).

19

My forensic practice is general in nature, that is, not limiting myself to any particular civil or criminal area or to defense or plaintiff work. The only exception is that since 2010, I work as Lehigh County Public Defender Office's forensic psychologist. About 30% of my professional work is in forensic psychology.

My general forensic assessment practice has included assessments for:
IMEs and psychological record reviews
Criminal responsibility
Mental state
Competency to stand trial
Capital mitigation evaluations
Juvenile matters and transfer evaluations
Sentencing evaluations
Malingering and deception
Testamentary capacity
PTSD
Personal injury and emotional distress claims
Malpractice — plaintiff and defense
Sexual offender evaluations
Risk assessment
Family law: custody, parental competence, parental alienation, adoption
Employment issues: fitness for duty, discrimination, harassment, wrongful termination.

*Expert Testimony at Trial or by Deposition*

2018
None

2017
Fontanez competency to stand trial - Lehigh County Defense
*Estepan v. Ferguson* for the plaintiff in a MVA

2016
*Gabrieli v. Easton Hospital, et al.* for the defense
*Green vs. Lehigh Valley Hospital* for the defense
*Deanne and Toby Snyder h/w vs. Estate of Geoffrey K Sherman, M.A. et al.* for the defense
*Shugars, Leonard* state of mind - Lehigh County Defense
*Blahosky, Carolyn* for the plaintiff PTSD from MVA Lehigh county

2015
*Diggs, Jhainee Nateequa*, decertification hearing - Lehigh County Defense
*Hausknecht, Barbara* for the plaintiff PTSD from MVA Lehigh county
*Zimmerman, Joseph* state of mind - Lehigh County Defense
*Figueroa-Velez, Axel* decertification hearing - Lehigh County Defense

20

*Melendez, Juan* competency to stand trial - Lehigh County Defense

2014
*Scardetto v. Scardetto* - Custody - Bucks County- request of Father's Atty.
*Commonwealth v. Jean-Pierre* - Lehigh County Defense
*Commonwealth v. Heminitz* - Lehigh County Defense
*Commonwealth v. Rivera-Oyola* - Lehigh County Defense
*Commonwealth v. Rodriguez* - Lehigh County Defense
*Commonwealth v. Lehigh County* - Defense
Shoen v. Shoen Deposition Custody- Berks County - request of Mother's Atty.


## Fed.R.Civ.P. 26(a)(2)(B)(vi) Statement

The fee for all time and services by Dr. Robert Gordon is $250 an hour including
preparation and travel time. There is a one-day charge ($2800) for depositions and court
testimony, in addition to any preparation and travel time. I charge a minimum non-
refundable retainer of $1500 for forensic reports. The total amount charged for this
evaluation and forensic report was $3,000.

# Exhibit D

*(Federal Register Notices Granting Relief
Pursuant to 18 U.S.C. § 925(c))*

## Federal Register Notices Granting Relief Pursuant to 18 U.S.C. § 925(c)

Format: Year – Federal Register Citation: Number of Individuals Granted Relief

1992 - 57 FR 6160: 68
1991 - 56 FR 65926: 74
1991 - 56 FR 36865: 95
1991 - 56 FR 26713: 75
1991 - 56 FR 14791: 69
1990 - 55 FR 48951: 60
1990 - 55 FR 33208: 70
1990 - 55 FR 14549: 72
1990 - 55 FR 5939: 59
1989 - 54 FR 43378: 128
1989 - 54 FR 33108: 1,573
1985 - 50 FR 23374: 198
1985 - 50 FR 1026: 118
1984 - 49 FR 48252: 145
1984 - 49 FR 35707: 107
1984 - 49 FR 29503: 181
1984 - 49 FR 25060: 318
1983 - 48 FR 50977: 174
1983 - 48 FR 36720: 105
1983 - 48 FR 29650: 88
1983 - 48 FR 28385: 215
1983 - 48 FR 10508: 312
1982 - 47 FR 47714: 528
1982 - 47 FR 10132: 207
1981 - 46 FR 57812: 139
1981 - 46 FR 46456: 183
1981 - 46 FR 33410: 141
1981 - 46 FR 23646: 130
1981 - 46 FR 11751: 136
1980 - 45 FR 7838: 86
1980 - 45 FR 65393: 110
1980 - 45 FR 49733: 104
1980 - 45 FR 39998: 76
1980 - 45 FR 26868: 120
1980 - 45 FR 6878: 141
1979 - 44 FR 71492: 117

1978 - 43 FR 51736: 75
1978 - 43 FR 25755: 112
1977 - 42 FR 21156: 36
1976 - 41 FR 50368: 62
1976 - 41 FR 7550: 47
1974 - 39 FR 9212: 29
1973 - 38 FR 14299: 41
1973 - 38 FR 8071: 26
1973 - 38 FR 4583: 29
1973 - 38 FR 4524: 21
1973 - 38 FR 3414: 25
1973 - 38 FR 1944: 21
1972 - 37 FR 28640: 50
1972 - 37 FR 26352: 34
1972 - 37 FR 23462: 71
1972 - 37 FR 18636: 37
1972 - 37 FR 16113: 26
1972 - 37 FR 15009: 30
1972 - 37 FR 13352: 26
1972 - 37 FR 11790: 37
1972 - 37 FR 10406: 26
1972 - 37 FR 8403: 29
1972 - 37 FR 7168: 33
1972 - 37 FR 6769: 26
1972 - 37 FR 6361: 60
1972 - 37 FR 4921: 47
1972 - 37 FR 2893: 41
1972 - 37 FR 23: 21
1971 - 36 FR 23731: 17
1971 - 36 FR 22321: 18
1971 - 36 FR 21364: 13
1971 - 36 FR 20449: 24
1969 - 34 FR 12229: 3
1969 - 34 FR 10006: 7

Total number of individuals granted relief: 7,722

**Exhibit E**
*(John Kraszewski Court Records)*

127638

127639

COMMONWEALTH OF PENNSYLVANIA

VS

JOHN KRASZEWSKI

5      F-3

4-23-84 _____ F.A.

3-5-84 _____ DATE FILED

9-1-84 _____ C.F.T.D.

JUDGE _____ CERTIFIED FROM THE RECORD

A.D.A. _____

DEFT. _____ DIRECTOR, DEPT. OF COURT RECORDS

REPORTER _____ DK

MINUTE CLERK ___ BY ___ Clerk

CC NO. _____ 8402770A

OTH. NO. _____ B038911-5

PRE-TRIAL DATE 3-27-84

ACTOR'S RACE _____ W _____ SEX _____ M

D.O.B. _____ S.S.# _____

PLACE OF BIRTH _____ APR 0 3 1984

Count 1: VIOLATION VEHICLE CODE: HOMICIDE BY VEHICLE CAUSED BY VIOLATION OF SECTION 3731 (a) (Section 3735)

Count 2: VIOLATION VEHICLE CODE: DRIVING UNDER INFLUENCE OF ALCOHOL OR CONTROLLED SUBSTANCE (Section 3731 (a)(1))

Count 3: VIOLATION VEHICLE CODE: DRIVING UNDER INFLUENCE OF ALCOHOL OR CONTROLLED SUBSTANCE (Section 3731 (a)(4))

Count 4: VIOLATION VEHICLE CODE: HOMICIDE BY VEHICLE (Section 3732)

Date: ___ AUG 30 1984 ___ 19__

Courtroom No. _____

Before ___ Robert P. Forga ___ Judge

John Anderson ___ Trial A.D.A.

_____ Def. Attorney

_____ Court Reporter

The Defendant present in open court with counsel, pleads guilty to the preferred charges Cts. 3+4 ___ in the within information.

Record verified by: _____

VOUCHER #

Minute Clerk

Special form of plea taken with consent of

FILE # 139276

77000

And now, AUG 30 1984, en open Court, on Motion of ADA, John Anderson, Counts 1 & 2 are Nolle Prossed.

Dismissed.

By the Court
Robert P. Forgos

*And now* **AUG 30 1984** _____ 19____

*Defendant sentenced to pay a fine of $300.00 to the Commonwealth. Pay costs of prosecution, and undergo an imprisonment of not less than 48 hours or more than ___6___ months in the Allegheny County Jail and stand committed.*

EO:DIE.- SENTENCE EFFECTIVE

9/26/84 @ 8:00 A.M.

*The court recommends alternative housing at ___ A.R.C. House___*

*Defendant to pay fine and costs at a rate of ___ as arranged___*

*Defendant is hereby paroled at expiration of service of 48 hour minimum sentence.*

"DEFENDANT TO UNDERGO EVALUATION, TO ATTEND ALCOHOL SAFE DRIVING SCHOOL, AND TO PARTICIPATE IN ANY FURTHER EVALUATION AND, OR TREATMENT DEEMED NECESSARY BY THE PROBATION OFFICE AND THE REGIONAL ALCOHOL PROGRAM. DEFENDANT TO PAY A $150.00 FEE IN ADDITION TO REGULAR COURT COSTS."

By the Court
Robert P. Horgos

---

AUG 30 1984.                   19____

On payment of costs of prosecution by ___ County, Defendant released on probation for a period of 4 years. In custody of Probation Officer upon conditions. Defendant to reimburse County for costs. SEE ORDER FILED. Clerk of Courts to set up terms of payment and collect fine, costs and restitution during probation period. Costs as arranged.

This sentence to begin and take effect at the expiration of sentence imposed at Nolle 3rd Crime

Sessions 19............

By the Court
Robert P. Horgos

as to the Summary Offense too fast for Conditions:

AND NOW AUG 30 1984, the Court directs that sentence be suspended upon condition that the defendant pay the sum of $60.00 for the use of Allegheny County, and pay costs of prosecution.

By the Court
Robert P. Horgos

IN THE COURT OF COMMON PLEAS
COUNTY OF ALLEGHENY
CRIMINAL DIVISION


COMMONWEALTH OF PENNSYLVANIA

vs.

JOHN KRASZEWSKI

Criminal Action No:   CC 8402770A

The District Attorney of Allegheny County by this
information charges that on (or about) February 9, 1984
through February 12, 1984 in the said County of Allegheny
JOHN KRASZEWSKI hereinafter called actor, did commit
the crime or crimes indicated herein; that is:


83735A    Count 1      HOMICIDE BY VEHICLE           Felony 3
                       CAUSED BY VIOLATION
                       OF SECTION 3731(a)

The actor unintentionally caused the death of Frank
Schneider as a direct result of a violation of Section
3731 (relating to driving under the influence of alcohol
or controlled substance), and the actor has been convicted
of such violation of Section 3731, and that violation
was the cause of death, in violation of Section 3735 of
the Pennsylvania Vehicle Code, Act of December 2, 1982,
75 P.S. 3735.


Page 1 of 2

83731A   Count 2            DRIVING UNDER         Misdemeanor 2
                         INFLUENCE OF ALCOHOL OR
                           CONTROLLED SUBSTANCE

     The actor drove, operated, or was in actual physical
     control of the movement of, a vehicle upon a highway or
     trafficway of this Commonwealth, namely, a Pontiac automobile,
     while under the influence of alcohol to a degree rendering
     the actor incapable of safe driving, in violation of
     Section 3731(a)(1) of the Pennsylvania Vehicle Code,
     Act of June 17, 1976, 75 Pa. C.S. §3731(a)(1) as amended,
     December 8, 1982.

83731D   Count 3            DRIVING UNDER         Misdemeanor 2
                         INFLUENCE OF ALCOHOL OR
                           CONTROLLED SUBSTANCE

     The actor drove, operated, or was in actual physical
     control of the movement of a vehicle, as described in
     the preceding count, upon a highway or trafficway of
     this Commonwealth while the amount of alcohol by weight
     in the blood of the actor was 0.10% or greater in
     violation of Section 3731(a)(4) of the Pennsylvania
     Vehicle Code, Act of June 17, 1976, 75 Pa. C.S. §3731
     (a)(4) as amended, December 8, 1982.


83732A   Count 4    HOMICIDE BY VEHICLE          Misdemeanor 1

     The actor unintentionally caused the death of Frank Schneider
     while the actor was engaged, upon a highway or trafficway
     of this Commonwealth, in the violation of a law of this
     Commonwealth or municipal ordinance, applying to the
     operation or use of a vehicle, or to the regulation of
     traffic, except Section 3731 (relating to driving under
     the influence of alcohol or controlled substance),
     namely, Pennsylvania Vehicle Code Section 3361 Too Fast For
     Conditions, and that violation was the cause of death,
     in violation of Section 3732 of the Pennsylvania Vehicle
     Code, Act of June 17, 1976, 75 Pa. C.S. §3732, as
     amended, December 8, 1982.


The District Attorney of Allegheny County further charges
that the said actor committed the following summary offense(s):

     Motor Vehicle Code §3361

All of which is against the Act of Assembly and the peace
and dignity of the Commonwealth of Pennsylvania

                                    Attorney for the Commonwealth

<u>B3504</u> / _____ <u>March</u> _____, <u>28</u>,19 <u>84</u>

CC NO. _____ 8402770A _____

COMMONWEALTH OF PENNSYLVANIA

     VS

     JOHN KRASZEWSKI

RECEIPT OF COPY OF INFORMATION

     I hereby certify that I have received a copy of the information filed by the District Attorney in the above-captioned action.

/ ✓ / DEFENDANT

/ / DEFENDANT'S COUNSEL OF RECORD

_____
SIGNATURE

     4-23-84
_____
DATE

# I. IDENTIFICATION

GUIDELINE SENTENCE FORM

| OFFENDER'S NAME | OFFENDER'S SEX | OFFENDER'S BIRTHDATE | COMMISSION IDENTIFICATION |
|---|---|---|---|
| | ☑ MALE / ☐ FEMALE   OFFENDER'S RACE | 5 - 24 - 52 | 203832 |
| JUDGE'S NAME | ☑ WHITE / ☐ BLACK / ☐ HISPANIC / ☐ OTHER | | STATE IDENTIFICATION NUMBER |
| NAME OF PERSON COMPLETING FORM | COUNTY | DATE OF SENTENCE | 157635 74 |
| Jackouse | Alleghony | 12/22/87 | DOCKET NUMBER  8402945 |

## II. PRIOR RECORD SCORE — DO NOT COMPLETE IF ONLY CURRENT CONVICTION IS DUI

III. DUI

| | PRIOR JUV. ADJUDICATIONS | PRIOR ADULT CONVICTIONS | = SUM | X | GUIDELINE POINTS | = | SUB TOTAL | Number of PRIOR CONVICTIONS for DUI |
|---|---|---|---|---|---|---|---|---|
| A. MURDER | | + | = | × | 3 | = | | |
| B. VOLUNTARY MANSLAUGHTER | | + | = | × | 3 | = | | |
| C. RAPE | | + | = | × | 3 | = | |  ◯ |
| D. INVOL. DEVIATE SEXUAL INTER. | | + | = | × | 3 | = | | |
| E. KIDNAPPING | | + | = | × | 3 | = | | |
| F. ARSON (Endangering Person-Felony I) | | + | = | × | 3 | = | | **IV. CURRENT** |
| G. ROBBERY (Felony I) | | + | = | × | 3 | = | | **CONVICTION** |
| H. BURGLARY | | + | = | × | 2 | = | | |
| I. AGGRAVATED ASSAULT (Felony II) | | + | = | × | 2 | = | | Check All Applicable: |
| J. OTHER FELONY I's and FELONY II's. | | + | = | × | 2 | = | | ☐ Negotiated Plea |
| K. FELONY DRUG OFFENSES | | + | = | × | 2 | = | | ☒ Non-neg. Plea |
| L. FELONY III's | | + | = | × | 1 | = | | ☐ Bench Trial |
| M. WEAPON MISDEMEANORS | | + | = | × | 1 | = | | ☐ Jury Trial |

OTHER MISDEMEANORS    If 2 or 3 prior convictions, enter 1; If 4 or more enter 2    =

TOTAL (cannot exceed "6")    PRIOR RECORD SCORE =

## V. GUIDELINES/SENTENCES

### CONVICTION NUMBER — 1

| NAME OF OFFENSE | TITLE AND SECTION | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|
| 21 / | § 73 | M 2 | 82 70411/ | — | — |

| DEADLY WEAPON ENHANCEMENT | | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|
| ☑ NO ☐ YES—SPECIFY_____ | IF YES – ADD ENHANCED MONTHS TO GUIDELINE RANGES - SEE § 303.4 | | --- | --- |

| SENTENCE IMPOSED: | SENTENCE UNDER: | Note — If Consecutive |
|---|---|---|
| ☐ PROBATION _____ MOS. | ☐ Mandatory Law (check all applicable): | |
| ☒ COUNTY INCARCERATION   MIN- __ MOS. | ☐ Repeat Offender          ☐ Firearm | **Incarceration Sentences** |
| ☐ STATE INCARCERATION   MAX- 6 MOS. | ☐ Public Transportation    ☐ Other | |
| ☐ FINE $ _____ | ☒ Minimum Guideline Range | **Are Imposed** |
| ☐ RESTITUTION  $ _____ | ☐ Aggravated Guideline Range — Complete Section VII | **Complete** |
| COMMENTS: _____ | ☐ Mitigated Guideline Range — Complete Section VII | |
| | ☐ Outside Guideline Range — Complete Section VIII | **Section VI** |

### CONVICTION NUMBER — 2

| NAME OF OFFENSE | TITLE AND SECTION | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|
| M 1 | § 373 | M 2 | Same | | |

| DEADLY WEAPON ENHANCEMENT | | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|
| ☐ NO ☐ YES—SPECIFY_____ | IF YES – ADD ENHANCED MONTHS TO GUIDELINE RANGES - SEE § 303.4 | | --- | --- |

| SENTENCE IMPOSED: | SENTENCE UNDER: | Note — If Consecutive |
|---|---|---|
| ☐ PROBATION _____ MOS. | ☐ Mandatory Law (check all applicable): | |
| ☐ COUNTY INCARCERATION   MIN- __ MOS. | ☐ Repeat Offender          ☐ Firearm | **Incarceration Sentences** |
| ☐ STATE INCARCERATION   MAX- __ MOS. | ☐ Public Transportation    ☐ Other | |
| ☐ FINE $ | ☐ Minimum Guideline Range | **Are Imposed** |
| ☐ RESTITUTION $ | ☐ Aggravated Guideline Range — Complete Section VII | **Complete** |
| COMMENTS: _____ | ☐ Mitigated Guideline Range — Complete Section VII | |
| | ☐ Outside Guideline Range — Complete Section VIII | **Section VI** |

### CONVICTION NUMBER — 3

| NAME OF OFFENSE | TITLE AND SECTION | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|
| | § | | | | |

| DEADLY WEAPON ENHANCEMENT | | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|
| ☐ NO ☐ YES—SPECIFY_____ | IF YES – ADD ENHANCED MONTHS TO GUIDELINE RANGES - SEE § 303.4 | | | |

| SENTENCE IMPOSED: | SENTENCE UNDER: | Note — If Consecutive |
|---|---|---|
| ☐ PROBATION _____ MOS. | ☐ Mandatory Law (check all applicable): | |
| ☐ COUNTY INCARCERATION   MIN- _____ MOS. | ☐ Repeat Offender          ☐ Firearm | **Incarceration Sentences** |
| ☐ STATE INCARCERATION   MAX- _____ MOS. | ☐ Public Transportation    ☐ Other | |
| ☐ FINE $ _____ | ☐ Minimum Guideline Range | **Are Imposed** |
| ☐ RESTITUTION  $ _____ | ☐ Aggravated Guideline Range — Complete Section VII | **Complete** |
| COMMENTS: _____ | ☐ Mitigated Guideline Range — Complete Section VII | |
| | ☐ Outside Guideline Range — Complete Section VIII | **Section VI** |

5/85

18 / 28/87

PCS - 1

COPY A - CLERK FILES

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**CRIM. DIV. FORM 53A**

**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

COMPLAINT NO. _8402-770A_

VS.

OTN NO. _003791/-5_

CHARGE(S) _U VC/Homicide_

_Dr/Vehicle_

## ORDER OF PROBATION

AND NOW _August 30_ 19_84_ Defendant is placed on probation for a period of

_Four (4) Years_.

DEFENDANT will be supervised by the ☒ County Probation Office ☐ State Probation and Parole, will abide by any special rules and regulations imposed by that office, will report as directed and will comply with all conditions of this order.

COSTS OF PROSECUTION to be paid through the Office of the Clerk of Courts.

_As arranged._

SPECIAL CONDITIONS of this probation are as follows:

_Probation to begin and take effect of expiration_
_of Jail Sentence at Court 3._

DEFENDANT understands that upon satisfactory completion of the conditions of probation a discharge will be in order; but if the Court finds violation of conditions, probation may be revoked and a sentence imposed.

By the Court

Attest: /S/ _Minute Clerk_

/S/ _Robert P. Horgos_
Judge

CRIM. DIV. FORM-8
REVISED 10/27/83

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

CONO. _8402778A._

-versus-

OTN NO. _00389II-5_

CHARGE(S) _VUC + Driving_
_Under Influence_

_John Krosgeuski_

### ORDER OF PAROLE

AND NOW, _September 28_ , 19_88_ , it appearing to the Court that on _August 30_ , 19_88_ , the Defendant was sentenced to the imprisonment of _not less than 40 hours or more than 6 months_ to undergo an
(Date of last commitment: _Bail Case_ , 19___ ) it is ordered that he/she be
released on parole effective _September 28_ , 19_88_ for the balance of the maximum term.

DEFENDANT will be supervised by the ☒ County Probation Office, ☐ State Board of Probation and Parole, will abide by any SPECIAL RULES AND REGULATIONS imposed by that Office and will report as directed.

COURT SPECIAL CONDITIONS of this Parole are as follows: _attend Safe Driving_
_School + pay all fines + Costs_

Upon satisfactory completion of the conditions of Parole, a discharge will be in order, but if the Court finds Violation of the Conditions of Parole, recommitment to prison may be ordered. Defendant presently confined at: _ACL House_

/s/ _Robert P. Horgos_
JUDGE

### FOR THE PROBATION DEPARTMENT USE ONLY:

OFFICE ASSIGNED _____

NAME _____ AGE_____ D.O.B. _____ RACE_____

BIRTHPLACE _____ SOCIAL SECURITY # _____

ADDRESS _____ PHONE _____

| | **NAME** | **ADDRESS** | **PHONE** |
|---|---|---|---|
| SPOUSE | | | |
| FATHER | | | |
| MOTHER | | | |
| EMPLOYER | | | |

MILITARY BRANCH AND SERIAL NO. _____

PRIOR P.O. NUMBER(S) _____

PAST RECORD OF ARRESTS _____

I, _____ , fully understand and agree to observe all the conditions of this Parole.

/s/ _____

Witness /s/ _____

| JUSTICE OF THE PEACE | COMPLAINT NUMBER OR OTHER PARTICIPANTS | | |
|---|---|---|---|
| MAGISTERIAL DISTRICT NO. | | YEAR | NUMBER |
| (Address) | | 19 84 | #404 |
| | COMPLAINT NO. | | |
| | INCIDENT NO. | UCR NO. | OTN |

**CRIMINAL COMPLAINT (POLICE)**

B038911-5

I, ___Det. William Hennigan___
   (Name of Affiant)

of ___City of Pgh. Police Dept. - Homicide Div.___
   (Identify department or agency represented and political subdivision)

**COMMONWEALTH OF PENNSYLVANIA**

DEFENDANT _____

NAME   JOHN KRASZEWSKI

(1) ☒ I accuse the defendant, who lives at the address set forth herein
         or,
☐ I accuse an individual whose name is unknown to me but who is

A.K.A.

R.S.A.

(Check applicable box)  described as _____

ADDRESS  254  45th Street
              Pittsburgh, Pa.

☐ His nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe;

with violating the penal laws of the Commonwealth of Pennsylvania at __Pittsburgh__

in __Allegheny__ County on or about __Thursday, February 9, 1984__
(if the date or day of week is an essential element of offense charged, the day or date must be specifically set forth.)

Participants were (If there were participants, place their names here, repeating the name of above defendant):

(2) The acts committed by the accused were:  A    VAL 3731-a1 & a4 DRUNK DRIVING
                                              3735  HOMICIDE BY VEHICLE WHILE UNDER THE INFLUENC
                                              3361  TOO FAST FOR CONDITIONS

On Thursday, February 9, 1984, the actor did unlawfully drive, operate, or was in actual physical control of the movement of a certain motor vehicle; to wit: A 1975 Pontiac bearing Pennsylvania Registration #AYN-589 for the year of 1984 on the public highways of the City of Pittsburgh, County of Allegheny & State of Pennsylvania; to wit: Traveling east on Butler Street and in the 4700 block of Butler Street, the XXX actor lost control of his vehicle and struck two poles, vehicle came to rest against pole #P-771 across from 4735 Butler Street; while under the influence of intoxicating liquor to a degree which rendered him incapable of safe driving; and/or the amount of alcohol by weight in the blood of the actor was .179; AND ALSO

HOMICIDE by Vehicle While Driving Under the Influence - On Thursday, XXXXFebruary 9, 1984, the actor did unlawfully drive, operate, or was in actual physical control of the movement of a XXXXXXX certain motor vehicle; to wit: A 1975 Pontiac, bearing Pa. Reg. #AYN-589 for the year of 1984 on the public highways of the City of Pittsburgh, County of Allegheny & State of Pennsylvan to wit: Traveling east in the 4700 block of Butler Street, the actor lost control of his vehicle collided into two poles; vehicle came to rest against #P-771 (Pole), causing the death of Frank Schneider, passenger, as the direct result of Driving Under the Influence (3731-a1 & a4); contrary to the provisions of 75 P.S. Sections 3731-a1 & a4 and 3735, Motor Vehicle Laws of the Commonwealth of Pennsylvania, Act 81 of the General Assembly, approved the 17th day of June A.D. 1976, as amended on the 8th day of November A.D. 1982.

/15/84 Amended to Include VAL 3732-Homicide By Vehicle - On Thursday, February 9, 1984, the actor id unlawfully drive, operate, or was in actual physical control of the movement of a certain otor vehicle; to wit: A 1975 Pontiac bearing Pennsylvania Registration #AYN-589 for the year f 1984 on the public highways of the City of Pittsburgh, County of Allegheny & State of ennsylvania; to wit: Traveling east in the 4700 block of Butler Street, the actor lost contorl f his vehicle, collided into two poles;vehicle came to rest against pole #P-771 while driving oo fast for conditions and unintentionally caused the death of passenger, Frank Schneider; ontrary to the provisions of 75 P.S. Section 3732, Motor Vehicle Laws of the Commonwealth of ennsylvania, Act 81 of the General Assembly, approved the 17th day of June A.D. 1976, as mended on the 8th day of November A.D. 1982.

# Exhibit F
## (*Kim Blake Court Records*)

COMMONWEALTH OF PENNSYLVANIA VS KIM BLAKE        NO 80146101
                                                          (1461)

10-17-80 TRANSCRIPT & RECOGNIZANCE FILED.

11-20-80 INFORMATION FILED. (80146101 & SUMMARY)

11-21-80 PRAECIPE FOR ENTRY OF APPEARANCE FILED BY ATTY. FREDERICK LANSHE.
                                                (ALLENTOWN)

11-21-80 WAIVER OF ARRAIGNMENT FILED.

11-21-80 THE DEFENDANT BEING REPRESENTED BY COUNSEL WAIVES ARRAIGNMENT AND PLEADS
       NOT GUILTY.(80146101 & SUMMARY)

2-12-81 THE DEFENDANT BEING REPRESENTED BY COUNSEL AND BEING REARRAIGNED VOLUNTAR-
       ILY AND UNDERSTANDINGLY PLEADS GUILTY.(WESNER,J.)

4-2-81 IN LIEU OF SENTENCE: ORDER: AND NOW, APRIL 2, 1981 IN LIEU OF SENTENCE,
       THE DEFENDANT IS RELEASED FOR A PERIOD OF 5 YRS ON PROBATION UNDER THE
       SUPERVISION OF BERKS COUNTY PROBATION OFFICE, UPON THE FOLLOWING
       CONDITIONS; PAY COSTS OF PROSECUTION AND $2000.00 FOR THE USE OF THE
COUNT 1 COUNTY, AND PAY RESTITUTION AS DETERMINED BY THE BERKS COUNTY PROBATION
       OFFICE, DURING THE FIRST 36 MOS OF PROBATIONARY PERIOD, ALL PAYMENTS TO
       BE MADE TO THE BERKS COUNTY PROBATION OFFICE, DEFENDANT'S PROBATIONARY
       PERIOD SHALL COMMENCE ON APRIL 2, 1981. BY THE COURT: ( WESNER J.)

4-2-81 ORDER: AND NOW, APRIL 2, 1981 IN LIEU OF SENTENCE, THE DEFENDANT IS
       RELEASED FOR A PERIOD OF 1 year ON PROBATION UNDER THE SUPERVISION OF
       BERKS COUNTY PROBATION OFFICE, UPON THE FOLLOWING CONDITIONS; PAY COSTS
       OF PROSECUTION AND $500.00 FOR THE USE OF THE COUNTY AND PAY RESTITUTION
COUNT 2 IN THE SUM AS DETERMINED BY THE BERKS COUNTY PROBATION OFFICE, DURING THE
       FIRST 10 MOS OF PROBATIONARY PERIOD, ALL PAYMENTS TO BE MADE TO THE BERKS
       COUNTY PROBATION OFFICE, DEFENDANT'S PROBATIONARY PERIOD SHALL COMMENCE ON
       EXPIRATION OF PROBATIONARY PERIOD, ORDERED TO CRIMINAL ACTION NO. SAME
       BILL COUNT 1. BY THE COURT: ( WESNER J.)

4-2-81 SUMMARY: AND NOW, THIS 2nd day OF APRIL 1981 DEFENDANT IS SENTENCED TO PAY
       A FINE IN THE SUM OF $25.00 AND COSTS, AND UPON WILFUL DEFAULT IN PAYMENT
       OF SAID FINE AND COSTS, SHALL UNDERGO IMPRISONMENT FOR A NUMBER OF DAYS
       EQUAL TO ONE DAY FOR EACH $1.00 OF THE BALANCE OF FINE AND COSTS WHICH
COUNT 1 REMAIN WILFULLY UNPAID, IN THE BERKS COUNTY PRISON. THE DEFENDANT SHALL
       PAY SAID FINE AND COSTS WITHIN THE FIRST 10 DAYS HEREAFTER AS DIRECTED BY
       THE BERKS COUNTY PROBATION OFFICE, ALL FINES AND COSTS TO BE PAID TO
       THE BERKS COUNTY PROBATION OFFICE. BY THE COURT: ( G.E. WESNER J.)

4-2-81 SUMMARY: AND NOW, THIS 2nd DAY OF APRIL 1981 THE DEFENDANT IS SENTENCED TO
       PAY A FINE IN THE SUM OF $25.00 AND COSTS, AND UPON WILFUL DEFAULT IN
       PAYMENT OF SAID FINE AND COSTS SHALL UNDERGO IMPRISONMENT FOR A NUMBER OF
       DAYS EQUAL TO ONE DAY FOR EACH $1.00 OF THE BALANCE OF FINE AND COSTS
COUNT 2 WHICH REMAIN WILFULLY UNPAID, IN THE BERKS COUNTY PRISON. THE DEFENDANT
       SHALL PAY FINE AND COSTS WITHIN THE FIRST 10 DAYS HEREAFTER BY THE BERKS
       COUNTY PROBATION OFFICE, ALL FINES AND COSTS TO BE PAID TO THE BERKS COUNTY
       PROBATION OFFICE. BY THE COURT:( G.E. WESNER J.)

4-2-81 SUMMARY: AND NOW, THIS 2nd DAY OF APRIL 1981 DEFENDANT IS SENTENCED TO PAY
       A FINE IN THE SUM OF $25.00 AND. COSTS, AND UPON WILFUL DEFAULT IN PAYMENT
       OF SAID FINE AND COSTS, SHALL UNDERGO IMPRISONMENT FOR A NUMBER OF DAYS.
       EQUAL TO ONE DAY FOR EACH $1.00 OF THE BALANCE OF FINE AND COSTS WHICH
COUNT 3 REMAIN WILFULLY UNPAID, IN THE BERKS COUNTY PRISON. THE DEFENDANT SHALL
       PAY SAID FINE AND COSTS WITHIN THE FIRST 10 DAYS HEREAFTER AS DIRECTED BY
       THE BERKS COUNTY PROBATION OFFICE, ALL FINES AND COSTS TO BE PAID TO THE
       BERKS COUNTY PROBATION OFFICE. BY THE COURT: ( G.E. WESNER J.)

4-2-81 CERTIFIED TO DEPARTMENT OF TRANSPORTATION.

COMMONWEALTH OF
PENNSYLVANIA

In the Court of Common Pleas of
Berks County, Pennsylvania -
Criminal Division

v.

Kim Blake Defendant

Criminal Action No. _80 146 101_

Count No. _1- Homicide by Vehicle_

## ORDER

AND NOW, _April 2_, 19 _81_, in lieu of sentence, the defendant is released for a period of _Five (5) yes_ on ( ✓ probation under the supervision of Berks County Probation Office ( ) special probation under the supervision of Pennsylvania Board of Probation and Parole, upon the following conditions: pay costs of prosecution and $ _2 000. 00_ for the use of the county and ( ✓ pay restitution ( ) in the sum of $_____ ( ✓ as determined by the Berks County Probation Office, during the first _36_ months of probationary period, all payments to be made to the Berks County Probation Office. Defendant's probationary period shall commence on ( ✓ _April 2, 1981_ ( ) expiration of ( ) sentence ( ) probationary period, ordered to Criminal Action No. _____.

Defendant shall be subject to such conditions governing probation, including a plan for payment of costs, fine and/or restitution, as established by the Berks County Probation Office and/or the Pennsylvania Board of Probation and Parole, as applicable.

Special Conditions:
( ) Defendant shall attend Alcohol Safe Driving Program and pay $_____
   to use of the county for cost of said program within the first thirty days.
( ) Defendant shall undergo evaluation for any alcohol problem and shall participate
   in such treatment program as directed by the Berks County Probation Office.

BY THE COURT;

_____ J.

11/77

COMMONWEALTH OF PENNSYLVANIA : In the Court of Common Pleas of
Berks County, Pennsylvania

v.                                                   :        Case No.   80146101

Kim Blake                                            :

                                                     :        Summary Offense
                                                              #-1 Traffic Control Signals

## SENTENCE UPON A SUMMARY CONVICTION

(Motor Vehicle Offenses, Game Law Offenses, etc.)

AND NOW, this 2nd day of _april_ , 19 81, defendant is
sentenced to pay a fine in the amount of $ _25.00_ , and costs,
and upon wilful default in payment of said fine and costs, shall undergo
imprisonment for a number of days equal to one day for each (~~$10.00~~) ($1.00)
(strike out inappropriate amount)
of the balance of fine and costs which remain wilfully unpaid, in the Berks
County Prison.

The defendant shall pay said fine and costs within the first _10 days_
days hereafter as directed by the Berks County Probation Office, all fines and
costs to be paid to the Berks County Probation Office.

BY THE COURT:

_____
                                                                         J.

**COMMONWEALTH OF PENNSYLVANIA**

**IN THE COURT OF COMMON PLEAS**
**OF BERKS COUNTY, PENNSYLVANIA**

*vs.*

**CRIMINAL ACTION**
80146101 & SUMMARY

No. _____

KIM BLAKE

_____

_____

_____

_____

_____

*Defendant(s)*

## INFORMATION

THE DISTRICT ATTORNEY of Berks County by this Information charges that on or about the __14th__ day

of __September__ , 19 __80__ _____

KIM BLAKE

FIRST COUNT

the Defendant(s) above named, in the County of Berks, did unintentionally cause the death of another

person, namely MERRY C. HAUK, while engaged in the violation of a law of this

Commonwealth or a municipal ordinance applying to the operation or use of a vehicle,

or to the regulation of traffic, in violation of Section 3732 of the Vehicle Code, the

Act of June 17, 1976, P.L. 162, No. 81

SECOND COUNT

That on the same day and year, in the County aforesaid, the above defendant, did

drive a vehicle, while under the influence of alcohol to a degree which rendered

him incapable of safe driving, in violation of Section 3731(a)(1) of the Vehicle

Code, the Act of June 17, 1976, P.L. 162, No. 81

all of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.
(75 Pa. C.S.A., Section 3732)
(75 Pa. C.S.A., Section 3731(a)(1))

| *Citation of Statute and Section* | *Citation of Statute and Section* |
|---|---|
| Approved: _____ 11-19, 19 80 | _clerge    Peter_ |
| | *Attorney for Commonwealth* |

COMMONWEALTH OF PENNSYLVANIA : In the Court of Common Pleas of
Berks County, Pennsylvania

            v.                 :

Kim Blake            Case No.   80146101

                    :

                    :    Summary Offense
                        #2 - Driving Vehicle at Safe Speed

## SENTENCE UPON A SUMMARY CONVICTION

(Motor Vehicle Offenses, Game Law Offenses, etc.)

AND NOW, this 2nd day of *April* , 198/, defendant is
sentenced to pay a fine in the amount of $ 8250 , and costs,
and upon wilful default in payment of said fine and costs, shall undergo
imprisonment for a number of days equal to one day for each ($~~10.00~~) ($1.00)
                                      (strike out inappropriate amount)
of the balance of fine and costs which remain wilfully unpaid, in the Berks

County Prison.

    The defendant shall pay said fine and costs within the first _____10_____

days hereafter as directed by the Berks County Probation Office, all fines and

costs to be paid to the Berks County Probation Office.

BY THE COURT:

_____ J.

COMMONWEALTH OF PENNSYLVANIA : In the Court of Common Pleas of
Berks County, Pennsylvania

:

v.                                    Case No.    80146161

Kim Blake                              :

:                                     Summary Offense
#3 - Reckless Driving

## SENTENCE UPON A SUMMARY CONVICTION

(Motor Vehicle Offenses, Game Law Offenses, etc.)

AND NOW, this 2nd day of April , 1987, defendant is

sentenced to pay a fine in the amount of $ #25.00 , and costs,

and upon wilful default in payment of said fine and costs, shall undergo

imprisonment for a number of days equal to one day for each ($10.00) ($1.00)
(strike out inappropriate amount)

of the balance of fine and costs which remain wilfully unpaid, in the Berks

County Prison.

The defendant shall pay said fine and costs within the first 10

days hereafter as directed by the Berks County Probation Office, all fines and

costs to be paid to the Berks County Probation Office.

BY THE COURT:

_____ J.

**COMMONWEALTH OF PENNSYLVANIA**

vs.

KIM BLAKE

_____

_____

_____

_____

_____

*Defendant(s)*

**IN THE COURT OF COMMON PLEAS**
**OF BERKS COUNTY, PENNSYLVANIA**

**CRIMINAL ACTION**

No. **SUMMARY 80146101**

## INFORMATION

THE DISTRICT ATTORNEY of Berks County by this Information charges that on or about the **14th** day

of **September** , 19 **80** , _____

**KIM BLAKE**

**FIRST COUNT**

the Defendant(s) above named, in the County of Berks, did being the driver of a motor vehicle, did

fail to stop at a clearly marked stop line, or if none, before entering the crosswalk

on the near side of the intersection, or if none, before entering the intersection of

L.R. 157 (W. MAIN STREET) and COLLEGE BLVD., KUTZTOWN, BERKS COUNTY, PA., and/or

failed to remain standing until an indication to proceed was shown, in violation of

Section 3112(a)(3)(i) of the Vehicle Code, the Act of June 17, 1976, P.L. 162 No. 81

**SECOND COUNT**

That on the same day and year, in the County aforesaid, the above defendant, did

drive a motor vehicle at a speed greater than was reasonable and prudent under the

conditions, having regard to the actual and potential hazards then existing, and/or

at a speed greater than would permit the driver to bring his vehicle to a stop within

the assured clear distance ahead, in violation of Section 3361 of the Vehicle Code, the

all of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.
Act of June 17, 1976, P.L. 162, No. 81
(75 Pa. C.S.A., Section 3112(a)(3)(1)

(75 Pa. C.S.A., Section 3361)
*Citation of Statute and Section*

(75 Pa. C.S.A., Section 3714)
*Citation of Statute and Section*

Approved: _____ 11-19 . 19__ _____
/Att  ey for Commonwealth

KIM BLAKE
80146101

## THIRD COUNT

That on the same day and year, in the County aforesaid, the above defendant, did

being the driver of a motor vehicle, did drive in a careless disregard for the

safety of persons or property, in violation of Section 3714 of the Vehicle Code,

the Act of June 17, 1976, P.L. 162, No. 81

Constable Steven E. Miller
80146101 & Sum    y

**Commonwealth of Pennsylvania**
**BERKS COUNTY, ss.**

# In the Court of Common Pleas - Criminal Division of Berks County

To
Pt1. Robert L. Gately, Kutztown P.D., Kutztown, PA 2-4
Harold C. Matz, 441 Normal Ave., Kutztown, PA 2-5
Dr. John Keith, C/O Pathology Lab, Reading Hospital, W.Reading, PA 2-3
Dr. D. Christie, Reading Hospital, Rdg., PA    2-3
Dr. William E. Glosser, 1240 Dauphin Ave., Wyomissing, PA 2-4    mailed certified
Mary E. Stewart, 2726 Bookert Dr., Baltimore, MD 21225 2-4
Dr. Harold Mantz, 441 Norman Ave., Kutztown, PA 2-5

DECEASED = MERRY C. HAUK

**Greetings: We Command You and Each of You,** That setting aside all other business and excuses, you be and appear in your proper person before the Judges of the COURT OF COMMON PLEAS —CRIMINAL DIVISION .................................................................................................................................................................
to be held at Reading, in and for the County of Berks, on the ..............**9th**.............................................day of ........**February**............................19 81 at ...9:30 A.M.................o'clock in the forenoon of that day, then and there to testify to the truth to your knowledge against the Commonwealth of Pennsylvania and ............................................**KIM BLAKE**...........................................................................................................
in a certain Prosecution there pending against said defendant, ON THE PART OF THE COMMONWEALTH, and shall abide and not depart the Court without leave and hereof YOU ARE NOT TO FAIL under the penalty of law.

**FREDERICK EDENHARTER**
Witness the Honorable W.X.M.N.M.N.K.X.M.M.N.X Esquire, President Judge of the said Court at Reading, the ........**2nd**........................................day of ........**February**..............................: Anno Domini one thou-
sand nine hundred and ..............81.........................   meg

Donald R. [signature]
Clerk of Common Pleas Criminal Division

SUBP. COST $   17.00
MILEAGE COST $  30.00
TOTAL COST $    3 90
                5090

FORM CCPG I

N. B.—Constables must not subpoena more than two witnesses and the prosecutor in all other misdemeanor cases, and not more than four witnesses and the prosecutor in Assault and Battery cases, without special allowances of the Court.—Rule of Court, No. 344.

Constable Stev  E. Miller
80146101 & Summary

**Commonwealth of Pennsylvania**
**BERKS COUNTY, ss.**

## In the Court of Common Pleas -
## Criminal Division of Berks County

To

Barbara Held, Kutztown Volunteer Ambulance Service, Keystone Ave. & Noble Sts.
   Kutztown, PA   2-3
Kirk Moyer, 502 Highland, Kutztown, PA 2-4
Claire Kramer, 246 Constitution Blvd., Kutztown, PA 2-4
Holly Hildenbrand, 346 W. Main, Kutztown, PA 2-5
Carolyn Bazik, 422 W. Main, Apt. 5, Kutztown, PA 2-5

DECEASED = MERRY C. HAUK

............. Greetings: We Command You and Each of You, That setting aside all other business and excuses, you
be and appear in your proper person before the Judges of the COURT OF COMMON PLEAS —CRIMINAL
DIVISION ............................................................................................................ 9th ...........................................day of
to be held at Reading, in and for the County of Berks, on the ..........................................................................
.......February............................. 19 81 , at ...9:30 A.M................................o'clock in the forenoon of
that day, then and there to testify to the truth to your knowledge between the Commonwealth of Pennsylvania
and ......................................................KIM BLAKEY........................................................................................................
in a certain Prosecution there pending against said defendant, ON THE PART OF THE COMMONWEALTH,
and shall abide and not depart the Court without leave and hereof YOU ARE NOT TO FAIL under the penalty
of law.
                    FREDERICK EDENHARTER
   Witness the Honorable XXX XXXXXXXXXXXX, Esquire, President Judge of the said Court at Reading, the
......2nd.................................day of.......February............................ Anno Domini one thou-
sand nine hundred and ......... 81........................          meg        Donald R. Dringer
   13.00                                                                        Clerk of Common Pleas Criminal Division

| | |
|---|---|
| SUBP. COST $ | |
| MILEAGE COST $ | 15.00 |
| TOTAL COST $ | 250 |
| | 3050 |

FORM LCPO 1

N. B.—Constables must not subpoena more than two witnesses and the prosecutor in Assault and Battery cases, and not more than four witnesses and the prosecutor in all other misdemeanor cases, without special allowances of the Court.—Rule of Court, No. 346.

TO BE USED FIRST)

**DOCKET TRANSCRIPT**
COMMONWEALTH OF PENNSYLVANIA

| 1. DOCKET NO. OF FINAL ISSUING AUTH. | 2. COMMON PLEAS DOCKET NO. | 3. STATE IDENTIFICATION NO. | OTN | A | 673814-1 |
|---|---|---|---|---|---|
| SA00FFFF 3480011801 | 90146101 | | | | |

| 4. FINAL ISSUING AUTHORITY/TO BE COMPLETED BY FINAL ISSUING AUTHORITY | 5. TRANSFERRED FROM INITIAL ISSUING AUTHORITY |
|---|---|

Mabel E. Blank
120 S. Richmond St.
Fleetwood, PA 19522    MAG. DISTRICT NO. 23 3 04

MAG. DISTRICT NO.

6. NAME & ADDRESS
DEFENDANT
**BLAKE, KIM**

7. DATE OF TRANSFER

8. DOCKET NO. OF INITIAL ISSUING AUTHORITY

13. AFFIANT WHO SIGNED COMPLAINT (NAME, ADDRESS OR IDENTIFICATION)
ROBERT L. GATELY, PTL.
Kutztown Police Dept
Kutztown, PA  19530

| 9. DATE OF BIRTH | 10. SEX | 11. RACE | 12. OPERATOR LICENSE NUMBER | STATE |
|---|---|---|---|---|
| | M | W | 16212684 | PA |

| 15. DATE OF ARREST | 16. DATE COMP. SIGNED OR CITATION ISSUED | 17. DATE ISSUED SUMMONS / WARRANT | 18. DATE RETURNED | 19. PRELIMINARY ARRAIGNMENT DATE / TIME | 20. DATE WAIVED TO COURT |
|---|---|---|---|---|---|
| 9-16-80 | 9-17-80 | | 9-22-80 | 10-14-80   4:15 p.m. | 10-14-80 |

21. PRELIMINARY HEARING DATE & PLACE OF HEARING

22. On the **14** day of **October** 19 **80**. The Accused Was:

ADVISED OF HIS RIGHT TO APPLY FOR ASSIGNMENT OF COUNSEL  YES   NO
PUBLIC DEFENDER REQUESTED BY DEFENDANT?  YES   NO  X
APPLICATION PROVIDED FOR APPOINTMENT OF PUBLIC DEFENDER  YES   NO  X

23. In cases where so required by statute, I, the within named issuing authority, did make a reasonable effort to settle the difference between the defendant and the complainant. (SEE PA. R. CRIM. P. 145.A)

24. IF OTHER THAN PRELIMINARY HEARING SHOW DATE

29. DATES SET FOR PRELIMINARY HEARING

| 25. | DESCRIPTION OF CHARGES | 26. OFFENSE DATE | 27. SECTION AND SUB-SECTION | 28. DISPOSITION | DATE | REASON CODE |
|---|---|---|---|---|---|---|
| A | HOMICIDE BY VEHICLE | 9-14-80 | MVC:3732 | MAV | | |
| B | DRIVING UNDER THE INFLUENCE OF ALCOHOL OR CONTROLLED SUBSTANCE - RESULT 12% BAC | 9-14-80 | VC:3731(a)1 | WAV | | |
| C | TRAFFIC CONTROL SIGNALS | 9-14-80 | VC:3112(a)(3)(i)(A) | WAV | | |
| D | DRIVING VEHICLE AT SAFE SPEED | 9-14-80 | VC:3361 | WAV | | |
| E | RECKLESS DRIVING | 9-14-80 | VC:3714 | MAV | | |
| F | | | | | | |

| 30. ENTER "C" FOR WITNESS FOR COMPLAINANT. - ENTER "D" FOR WITNESS FOR DEFENDANT | 31. WITNESSES NAMES AND ADDRESSES [SEE PA. R. CRIM. P. 26 (b) (2)] AND NAMES AND ADDRESSES OF PERSONS (NOT MORE THAN 2), DEFENDANT WISHES TO BE NOTIFIED FOR TRIAL. [SEE PA. R. CRIM. P. 26 (b) (10)]. | 32. SWORN | 33. TESTIFIED | 34. DEFENSE PERSONS TO BE NOTIFIED |
|---|---|---|---|---|
| C | Ptl. Robert Gately, Kutztown Police Dept., Kutztown, PA 19530 | No | No | |
| C | Harold C. Matz, 441 Normal Ave., Kutztown, PA 19530 | No | No | |
| C | Dr. John Keith, c/o Pathology Lab., Reading Hospital, Reading, PA | No | No | |
| • | | | | |
| • | | | | |
| • | | | | |

35. ATTORNEY'S NAME AND SUPREME COURT IDENTIFICATION NUMBER

| ATTORNEY FOR COMMONWEALTH | Stuart Suss, ADA | | |
|---|---|---|---|
| ATTORNEY FOR COMPLAINANT | | | |
| ATTORNEY FOR DEFENDANT | Fred Lanshe, Esq. | X  PRIVATE | OTHER |

36. DATE OF DECISION                37. JUDGMENT OF SENTENCE

(SEE PA. R. CRIM. P. 4006)  **BAIL AT PRELIMINARY ARRAIGNMENT**

| TYPE | ROR | 39. NAME AND ADDRESS OF CORPORATE SURETY AND AGENT OR SURETY (OR SURETIES) | 40. DATE POSTED |
|---|---|---|---|
| AMOUNT | $3,000.00 | Defendant. | 10-14-80 |
| DATE SET | 10-14-80 | | |

(SEE PA. R. CRIM. P. 4006)  **BAIL AT PRELIMINARY HEARING**

| TYPE | SAME | 42. NAME AND ADDRESS OF CORPORATE SURETY AND AGENT OR SURETY (OR SURETIES) | 43. DATE POSTED |
|---|---|---|---|
| AMOUNT | | | |
| DATE SET | | | |

| 44. IF COMMITTED, DATE | 45. PLACE OF COMMITMENT |
|---|---|
| • | |

10-16-80
46. DATE TRANSCRIPT SENT TO COURT

Certified this **16** day of **OCTOBER** 19 80

COMMONWEALTH OF
PENNSYLVANIA

:

In the Court of Common Pleas of
Berks County, Pennsylvania –
Criminal Division

v.

Kim Blake

Defendant

:

Criminal Action No. _CO 146101_

:

Count No. 2  Driving Under
Influence of Alcohol

ORDER

AND NOW, _April 2_, 19 _81_, in lieu of sentence, the defendant is
released for a period of _One year_ on ( ✓ probation under the supervision
of Berks County Probation Office ( ) special probation under the supervision of Penn-
sylvania Board of Probation and Parole, upon the following conditions:   pay costs of
prosecution and $ _500 W_ for the use of the county  and ( ) pay restitution ( ) in
the sum of $ _____ ( ✓ as determined by the Berks County Probation Office, during
the first _10_ months of probationary period, all payments to be made to the Berks
County Probation Office. Defendant's probationary period shall commence on
( ) _____ ( ✓ expiration of ( ) sentence ( ✓ probationary
period, ordered to Criminal Action No. _Same till Count #1_ :
Defendant shall be subject to such conditions governing probation, including a plan for
payment of costs, fine and/or restitution, as established by the Berks County Probation
Office and/or the Pennsylvania Board of Probation and Parole, as applicable.

Special Conditions:
( ✓ Defendant shall attend Alcohol Safe Driving Program and pay $ _65.0_
   to use of the county for cost of said program within the first thirty days.
( ✓ Defendant shall undergo evaluation for any alcohol problem and shall participate
   in such treatment program as directed by the Berks County Probation Office.

BY THE COURT:

_____ J.

80146101

**CRIMINAL COMPLAINT** (POLICE

MABEL E. BLANK

**JUSTICE OF THE PEACE**
MAGISTERIAL DISTRICT NO.   23-03-04
120 S. Richmond St.,
Fleetwood, PA 19522

| COMPLAINT NUMBER | YEAR | TYPE | NUMBER |
|---|---|---|---|
| | | -3400013301 | |
| Complaint Numbers if Other Participants | | 5400013401 | |

| INCIDENT NUMBER | UCR NO. | OTN |
|---|---|---|
| | | A 673814-1 |

**COMMONWEALTH OF PENNSYLVANIA**

DEFENDANT:          VS.

NAME          KIM BLAKE

AND
ADDRESS

I,    PTLM. ROBERT L. GATELY
        (Name of Affiant)

of    KUTZTOWN POLICE DEPT.

R.S.A.          W-M-26     DOB

AKA          OPR#16812684

residing at    KUTZTOWN, PA 19530

do hereby state under oath or affirmation, to the best of my knowledge, information and belief:

(1) ☒ I accuse the above named defendant, who lives at the address set forth above or,
    ☐ I accuse an individual whose name is unknown to me but who is described as

☐ his nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe; with violating the penal laws of the Commonwealth of Pennsylvania at At *in the proximate vicinity of the intersection* of L.R. 157, (W. Main St), & College Blvd., Kutztown, PA
        in          Berks          County on or about    9-14-80 @ 12:50 P.M.

Participants were (if there were participants, place their names here, repeating the name of above defendant):

(2) The acts committed by the accused were: (A) HOMICIDE BY VEHICLE, M-1; DRIVING UNDER THE INFLUENCE OF ALCOHOL OR CONTROLLED SUBSTANCE, M-III; TRAFFIC CONTROL SIGNALS, Summ.; DRIVING VEHICLE AT SAFE SPEED, Summ.; RECKLESS DRIVING, Summ. of the Vehicle Code*

In that on the above date, time and place, the above named defendant was operating an International Scout bearing Pa. Reg. No. 1PE-250 while under the influence of alcohol to a degree which rendered him incapable of safe driving - breathalyzer result .177 BAC. Defendant did strike a vehicle being driven by Harry C. Mauk. Said accident did cause the death of Harry C. Mauk. Defendant did fail to stop for a steady red signal before entering the above mentioned intersection and did drive his vehicle in careless disregard for the safety of persons or property. Defendant did at that time operate his vehicle at a speed greater than was reasonable & prudent under the existing weather conditions.
---SEE ATTACHED PROBABLE CAUSE FOR FULL DETAILS---
all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly,
or in violation of   3732/3 731/3712 and a1/g34/   of the Act of   PA MOTOR VEN. CODE
  3361/3714              (Section)          (Sub-section)

or the          Ordinance of          _____
                                    (Political Sub-division)

(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made. I swear to or affirm the within complaint upon my knowledge, information and belief, and sign it on

SEPTEMBER 16    , 19__ 80 , before    MABEL BLANK        _____
                                                    (Signature of Affiant)

Personally appeared before me on   SEPTEMBER 16    , 197 80 , the affiant above named who, being duly sworn (affirmed) according to law, signed the complaint in my presence and deposed and said that the facts set forth therein are true and correct to the best of affiant's knowledge, information and belief.

                                    _____ (SEAL)
                                        (Issuing Authority)

AND NOW, on this date   SEPTEMBER 16    , 197 80, I certify the complaint has been properly sworn to and executed before me, and that there is probable cause for the issuance of process.

    23-03-04
    (Magisterial District)          _____ (SEAL)
                                        (Issuing Authority)

80146101

CRIMINAL COMPLAINT (POLICE

MABEL E. BLANK

JUSTICE OF THE PEACE
MAGISTERIAL DISTRICT NO. 23-03-04
120 S. Richmond St.
Fleetwood, PA 19522



| COMPLAINT N° | ER | YEAR | TYPE | NUMBER |
|---|---|---|---|---|
| | | -3480011101 | | |
| Complaint Numbers if Other Participants | | 3480011401 | | |

| INCIDENT NUMBER | LICR NO. | OTN |
|---|---|---|
| | | A 673814-1 |

COMMONWEALTH OF PENNSYLVANIA
DEFENDANT: VS.
NAME ⌐ KIM BLAKE
AND
ADDRESS

I, · PTLM. ROBERT L. GATELY
    (Name of Affiant)

of ___ KUTZTOWN POLICE DEPT. ___
(Identify department or agency represented and political subdivision)      R.S.A. ___ W-M-26 ___ DOB ___
                                                                            A K A ___ OPR#16212684

residing at ___ KUTZTOWN, PA 19530

do hereby state under oath or affirmation, to the best of my knowledge, information and belief:
(1) XXX  I accuse the above named defendant, who lives at the address set forth above or,
    ☐  I accuse an individual whose name is unknown to me but who is described as ___

☐ his nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe;
with violating the penal laws of the Commonwealth of Pennsylvania at. At 8 in the near vicinity of the
intersection of L.R. 157, (W. Main St), 8 College Blvd., Kutztown, (Place Political Subdivision)
___ in ___ Berks ___ County on or about ___ 9-14-80 @ 12:50 P.M.

Participants were (if there are participants, place their names here, repeating the name of above defendant):

(2)  The acts committed by the accused were: (A) HOMICIDE BY VEHICLE, M-I; DRIVING UNDER THE INFLUENCE
     OF ALCOHOL OR CONTROLLED SUBSTANCE, M-III; TRAFFIC CONTROL SIGNALS, Summ.; DRIVING VEHICLE
     AT SAFE SPEED, Summ.; RECKLESS DRIVING, Summ. of the Vehicle Code(

     In that on the above date, time and place, the above named defendant was operating an
     International Scout bearing Pa. Reg. No. 1P2-250 while under the influence of alcohol to
     a degree which rendered him incapable of safe driving - breathalyzer result .18% BAC.
     Defendant did strike a vehicle being driven by Merry C. Hauk. Said accident did cause
     the death of Merry C. Hauk. Defendant did fail to stop for a steady red signal before
     entering the above mentioned intersection and did drive his vehicle in careless disregard
     for the safety of persons or property. Defendant did at that time operate his vehicle at
     a speed greater than was reasonable & prudent under the existing weather conditions.
     ---SEE ATTACHED PROBABLE CAUSE FOR FULL DETAILS---

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly,
or in violation of 3732/3 731/3112 and a1/a3i/ ___ of the Act of PA MOTOR VEH. CODE
     3361/3714   (Section)        (Sub-section)

or the ___ Ordinance of ___
                                              (Political Sub-division)
(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I
    have made. I swear to or affirm the within complaint upon my knowledge, information and belief, and sign it on

    SEPTEMBER 16 ___, 19# 80, before ___ MABEL BLANK ___,  ___
                                                              (Signature of Affiant)

Personally appeared before me on SEPTEMBER 16 ___, 197/ 80, the affiant above named who, being duly
sworn (affirmed) according to law, signed the complaint in my presence and deposed and said that the facts set
forth therein are true and correct to the best of affiant's knowledge, information and belief.

                                              ___ (SEAL)
                                              (Issuing Authority)

AND NOW, on this date SEPTEMBER 16 ___, 197/ 80, I certify the complaint has been properly sworn to and
executed before me, and that there is probable cause for the issuance of process.

        23-03-04                              ___ (SEAL)
     (Magisterial District)                   (Issuing Authority)

(A) Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. Neither the evidence nor
    the statute allegedly violated need be cited, nor shall a citation of the statute allegedly violated, by itself, be sufficient. In a summary
    case, set forth a citation of the specific section and subsection of the statute or ordinance allegedly violated.

80146101

**COUNTY OF BERKS**
**23rd JUDICIAL DISTRICT**
**PROBABLE CAUSE FOR WARRANT OF ARREST**

**COMMONWEALTH OF PENNSYLVANIA**

VS.

Kim Blake

O.T.N. NO. _A673814-1_
DOCKET NO. ~~5460011401~~
ARREST NO. _5460011401_

PROSECUTOR _Ptlm. Robert L. Gately_
ADDRESS _Kutztown Police Department_
_Roeller Alley, Kutztown, Pa.  19530_

DEFENDANT (full name) _Kim Blake   1-767-6235_ A.K.A. _____
ADDRESS: _____
DATE OF BIRTH: _____ RACE _Cauc._ SEX _M_ AGE _26_
OPERATOR'S PLATE NO. _(PA)  16212684_ SOCIAL SECURITY NO. _____

CO-DEFENDANT _____

CHARGES _PA. VEHICLE CODE:   Section 3732: Homicide by vehicle(M1); Section 3731(a)(1):_
_Driving under the influence of alcohol or controlled substance(M3); Section 3112(a)(3)(1):_
_Traffic-control signals(S); Section 3361: Driving vehicle at safe speed(S); Section 3714:_
DATE OF OFFENSE _14 September, 1980_        Reckless driving(S).
TIME OF OFFENSE _on or about 12:50 p.m._
LOCATION OF OFFENSE _At and in the near vicinity of the intersection of L.R. 157_
_(also known as West Main St) and College Boulevard, Kutztown, Pa._
NATURE OF COMPLAINT INCLUDING PROBABLE CAUSE STATEMENT (NO. OF PAGES) _5_

In that the above named defendant did while operating a vehicle traveling east on
L.R. 157 (also referred to as West Main Street and old US 222), did at the intersection
of L.R. 157 and College Boulevard, where his vehicle was faced by a steady red signal of
a traffic-control signal, did fail to stop his vehicle, and/or have it remain standing,
before it entered the intersection which is a violation of the Pa. Vehicle Code Section
3112(a)(3)(1): Traffic-control signals.  That the above named defendant did at that time
operate his vehicle at a speed greater than was reasonable and prudent under the weather
and road conditions, being that the road was wet from rain, and in regard to the actual
and potential hazards then existing when he approached an intersection, and the special
hazards which existed with respect to pedestrians or other traffic and having just passed
through a school zone, that would permit him to bring his vehicle to a stop within the
assured clear distance ahead , this being a violation of the Pa. Vehicle Code Section
3361: Driving vehicle at safe speed.  That the above named defendant did ~~aparatxxkdxxx~~
~~xxhixkxx~~ drive his vehicle while under the influence of alcohol to a degree which
rendered the person incapable of safe driving, this being a violation of the Pa. Vehicle

SWORN TO AND SUBSCRIBED BEFORE ME THIS _16_ DAY OF _SEPTEMBER_ , 19 _80_ .
MY COMMISSION EXPIRES _1/4/82_ .

SEAL:

AFFIANT: _____
ADDRESS: _Kutztown Police Department_
_Roeller Alley, Kutztown, Pa.  19530_

DISTRICT JUSTICE:

page _1_ of _5_

{ATTACH COPY OF CRIMINAL COMPLAINT}

80 1461 C1

**COUNTY OF BERKS**
**23rd JUDICIAL DISTRICT**
**PROBABLE CAUSE FOR WARRANT OF ARREST**

COMMONWEALTH OF PENNSYLVANIA

VS.

Kim Blake

NATURE OF COMPLAINT INCLUDING PROBABLE CAUSE STATEMENT (cont. from page __1__).

Code Section 3731(a)(1) Driving under influence of alcohol or controlled substance.
That in committing the above offenses, the defendant did drive his vehicle in careless disregard for the safety of persons or property which is a violation of the Pa. Vehicle Code Section 3714: Reckless driving.

That the defendant did upon entering the intersection of L.R. 157 and College Boulevard, strike with his vehicle, a vehicle driven by Merry C. Hauk. That in striking the vehicle driven by Merry C. Hauk, did cause that vehicle to strike a vehicle driven by Mary E. Stewart. That this above stated accident did result xx while he was engaged in violation of the above stated laws of this Commonwealth applying to the operation or use of a vehicle or to the regulation of traffic. That the above stated accident did cause the death of another person, being Merry C. Hauk. That the above stated facts result in the defendant being in violation of the Pa. Vehicle Code Section 3732: Homicide by vehicle.

On or about 12:50 p.m., Sunday, September 14, 1980, the defendant was driving his vehicle, Internation Scout II, bearing Pennsylvania registration plate 1P2-250, in an easterly direction on L.R. 157. That L.R. 157 is also referred to as West Main Street and old US 222. That as the defendant approached the intersection of L.R. 157 and College Boulevard he was faced by a traffic-control signal showing a steady red signal. That the defendant did drive his vehicle into the intersection without slowing down, that the defendant did drive his vehicle into the intersection without stopping his vehicle. That this action of the defendant was witnesses by one Harold C. Mantz, who resides at 441 Normal Ave., Kutztown, Pa. 19530. That at the above date and time, Harold C. Mantz was in his vehicle which was being driven in a southerly direction on College Boulevard and was at the intersection of College Boulevard and L.R. 157. That the traffic-control signal facing College Boulevard showed a steady green signal at that time.

Furthermore, immediatelyxxprecedingxthexximexxxxxhixh Mary E, Stewart, who resides at 2726 Bookert Dr., Baltimore, Maryland, stated that on or about the above date and time, she was driving her vehicle a maroon Chevrolet Chevelle, bearing Maryland registration plate CAK-371. That Stewart had driven her vehicle south on College Boulevard to the intersection of L.R. 157 where she stopped her vehicle, and remained standing until faced by a traffic-control signal showing a steady green signal. That at thexxxi that time there was another vehicle, also traveling south on College Boulevard, and which had also stopped at the intersection of L.R. 157 and had remained standing there. That this other vehicle was green in color and was of a small size. That this vehicle was occupied by a single female individual.

SWORN TO AND SUBSCRIBED BEFORE ME THIS ___16___ DAY OF __SEPT._____, 19 __80__.
MY COMMISSION EXPIRES _____1/4/82

SEAL:

DISTRICT JUSTICE:

AFFIANT: _____
ADDRESS: __Kutztown Police Department__
__Koeller Alley, Kutztown, Pa. 19530__

page ___2___ of ___3___

8014610

**COUNTY OF BERKS**
**23rd JUDICIAL DISTRICT**
**PROBABLE CAUSE FOR WARRANT OF ARREST**

**COMMONWEALTH OF PENNSYLVANIA**

VS.

Kim Blake

NATURE OF COMPLAINT INCLUDING PROBABLE CAUSE STATEMENT (cont. from page ___2___).

Stewart stated that when the traffic-control signal facing her showed a steady green signal, she entered the intersection and made a left turn onto West Main Street. West Main Street also being known as L.R. 157 and old US 222. Stewart stated that as she completed the turn her vehicle was struck from the rear. This resulted in Stewart's vehicle being spun to the right, forced up onto the sidewalk and the front end of the vehicle coming to a rest against the front steps of the building occupying the southwest corner lot at the intersection of College Boulevard and West Main Streets.

In addition, Stewart stated that she observed that the green vehicle, which she had noted above as having been traveling mx south on College Boulevard, was now resting on the sidewalk in front of 469 West Main Street, and that this vehicle showed accident damage. Stewart also stated that to the immediate west of her vehicle was a nother vehicle being a International Scout. That this vehicle was along the south curb of West Main Street and was facing west. Stewart stated that she saw only one occupant in the International Scout vehicle and that this subject was a white male who exitted the vehicle from the driver's compartment. Stewart stated that when this white male exitted his vehicle, she heard him say "What happened?". This white male was later identified as the defendant.

Furthermore, Harold C. Mantz stated that as he was approaching the intersection of College Boulevard and L.R. 157 he observed a International Scout vehicle approaching the intersection, from a westerly direction on L.R. 157. That at this time the traffic-control signal facing College Boulevard was showing a steady green signal. That the International Scout vehicle was observed by him as entering the intersection without stopping, nor did it appear to have slowed. In additional Mantz stated that he observed the International Scout vehicle being occupied by a single male occupant who was in the driver's seat. That this vehicle struck the passenger side of a small green vehicle which had been traveling south on College Boulevard and had entered the center of the intersection of L.R. 157 and College Boulevard. That this collusion resulted in the small green vehicle being forced eastward on West Main Street. That the International Scout vehicle continued eastward on L.R. 157 to where it struck a fire hydrant located on the sidewalk at the south east corner of that intersection. The S International Scoout xmitmxix vehicle than spun around ixx 180° and came to a rest along the south curb of L.R. 157 facing a westward direction. Mantz also stated that he observed the small green vehicle come to a rest on the sidewalk in front of 469 West Main Street.

Mantz stated that he approached the International Scout as a white male exitted the vehicle and stated "What happened?".

SWORN TO AND SUBSCRIBED BEFORE ME THIS _16_ DAY OF _SEPT._, 19 _80_
MY COMMISSION EXPIRES _____ _1/4/82_ .

SEAL:

AFFIANT: _____
ADDRESS: Kutztown Police Department
Roeller Alley, Kutztown, Pd. 19530

DISTRICT JUSTICE:

page ___3___ of ___5___

8014610

**COUNTY OF BERKS**
**23rd JUDICIAL DISTRICT**
**PROBABLE CAUSE FOR WARRANT OF ARREST**

**COMMONWEALTH OF PENNSYLVANIA**

VS.

Kim Blake

NATURE OF COMPLAINT INCLUDING PROBABLE CAUSE STATEMENT (cont. from page ___4___).

On or about 12:50 p.m., Sunday, 14 September, 1980, the Kutztown Police received a report of a vehicle accident occurring at the intersection of West Main Street and College Boulevard. I, Ptlm. Robert L. Gately, Kutztown Police Department, responded to the scene. Observed on the xxxx sidewalk in front of 469 West Main Street was a KHHFFHIKHXKHAWHIXHX small green Chevrolet bearing Pennsylvania registration plate H93-164. This vehicle showed massive damage to the passenger side of the vehicle, extending into the driver's area. This vehicle was occupied by a single occupant, a white female who sat in the driver's seat/ This female was unconcious at the time. This female was later identified as Merry C. Hauk who resided at 432 West Walnut Street, Kutztown, Pa. This female was transported to Reading Hospital by the Kutztown Ambulance.

I observed two vehicle's on the south side of West Main Street. The one vehicle was a maroon Chevrolet, Chevelle, bearing Maryland registration plate CAK-371. The other vehicle was a International Scout II bearing Pennsylvania registration plate 1P2-250. Both vehicles showed damage to their structure. I approached the vehicles and asked who had been driving them. Mary E. Stewart stated that she had been driving the vehicle with Maryland registration plates. The defendant identified himself as the driver of the International Scout II, bearing Pennsylvania registratiom registration plate 1P2-250.

I asked both individuals to state what they thought had happemed. After noticing the smell of alcoholic beverages in the inside of the XHHHX International Scout II,I asked the driver if he had been drinking recently. The defendant stated that he had not. The defendant stated that hmmm he would xmmi voluntarily accompany this officer to the Kutztown Police Department tmxhmmxih where he would vountarily take a hzmmx breathalyzer examination to show that he had not recently had any alcoholic beverages.

After the accident scene had been returned to a functioning condition. The above named defendant accompanied this officer to the Kutztown Polica stathon at Roeller Alley, Kutztown, Pa. While there, the defendant was informed that he was not under arrest. That the officer was conducting an accident investigation. The defendant was informed of his constitutional rights. He was informdd that he did not have to either give any statement concerning the accident, nor did he have to agree to take a breathalyzer examination. The defendant signed a waiver of constitutional rights and agreed to give a written statement as to the accident. _____ _____ Prior to this waiver of his rights, the defendant was informed that if the accident investigation showed any violations of the vehicle code, they _____ would result in the appropriate arrests being mdde. The defendant acknowledged this and stated that he wished to give a statement.

SWORN TO AND SUBSCRIBED BEFORE ME THIS ___ 16 DAY OF ___ SEPT. ___, 19 ___ 80

MY COMMISSION EXPIRES ___ 1/4/82 ___.

SEAL:

AFFIANT: _____

ADDRESS: Kutztown Police Department
Roeller Alley, Kutztown, Pa. 19530

DISTRICT JUSTICE:

page ___4___ of ___5___

80 146101

**COUNTY OF BERKS**
**23rd JUDICIAL DISTRICT**
**PROBABLE CAUSE FOR WARRANT OF ARREST**

**COMMONWEALTH OF PENNSYLVANIA**

VS.

Kim Blake

NATURE OF COMPLAINT INCLUDING PROBABLE CAUSE STATEMENT (cont. from page __4__).

The defendant than gave a statement consisting of four pages concerning the accident and surrounding factors. The defendant was, at the conclusion of his statement, again informed of his constitutional rights, that he was not under arrest at that time, and that he did not have to take the breathalyzer test. The defendant stated that he would take the examination. This officer, being a qualified breathalyzer xxx operator administered the breathalyzer examination to the defendant. Thexxxxxxxxxx The test showed that the defendant's blood alcohol content was .12%. At this time, the defendant was informed that this figure was in excess of the amount allowed under the Pennsylvania vehicle code for being presumed to be under the influence of alcohol. The defendant was informed that he was not at that time being placed under arrest, however, that I would be consulting the District Attorneys office concerning the case and possible charges. The above named defendant xxxxxxxxxx then departed the Kutztown Police station with friends who he had earlier called to pick him up.

After the defendant departed, I contacted the Reading Hospital concerning the mediacl condition of Merry C. Hauk. I was informed that she had died. xxxxxxxxxxxxxx I proceded to the Reading Hospital where I identified the body of a white female, known as Merry C. Hauk, as the same white female involved in the accident at L.R. 157 and College Boulevard, on or about 12:50 p.m., 14 September, 1980. An autopsy was performed on Merry C. Hauk. The xxxxxxxxxxx pathologist, Dr. John Keith, who performed the autopsy stated that Merry C. Hauk died from neck and head injuries which would have been consistant with those resulting in automobile accidents.

Charges are filed on information received and investigation conducted.

----- End of Complaint Application ----

Based on the above information and facts, I hereby request a warrent of arrest be issued.

SWORN TO AND SUBSCRIBED BEFORE ME THIS __16__ DAY OF __SEPT.__ , 19 __80__ .

MY COMMISSION EXPIRES __1/4/82__

SEAL:

AFFIANT: _____

ADDRESS: __Kutztown Police Dept.__
__Noeller Alley, Kutztown, Pa. 19530__

DISTRICT JUSTICE:

page __5__ of __5__

**Exhibit G**
*(Barry Shoop Court Records)*

COMMONWEALTH

VS

BARRY LEE SHOOP

: IN THE COURT OF COMMON PLEAS OF

: CUMBERLAND COUNTY, PENNSYLVANIA

: 245 CRIMINAL 1975

: CHARGE: DRIVING UNDER THE INFLUENCE

: AFFIANT: PTL. RONALD STILES

RE: DEFENDANT PLEAD GUILTY

### ORDER OF COURT

AND NOW, February 28, 1975, at 11:02 a.m., the defendant,
BARRY LEE SHOOP, having appeared in open court, tendered a plea
of guilty, the plea is accepted and recorded,

Sentence is suspended for a period of six (6) months on
condition the defendant pay the costs of prosecution and the
sum of $250 to the use of the county.

The defendant is given 15 days to pay the costs of
prosecution and the sum to the use of the county.

By the Court,

Clinton B Weidner

J.

Edgar B. Bayley, Jr., Esquire
Assistant District Attorney

MAR 3 | 38 PM '75

FILED-OFFICE
CLERK OF COURTS
CUMBERLAND COUNTY
PENNSYLVANIA

## In the Courts of Common Pleas of the County of Cumberland

245      CRIMINAL      19 75

### COMMONWEALTH OF PENNSYLVANIA

vs.

BARRY LEE SHOOP
Sandy Hollow Road
R. D. 1
New Bloomfield, Pennsylvania

**COUNTY OF CUMBERLAND, ss:**

The Grand Jury of Cumberland County, Pennsylvania, by this Indictment presents that, on (or about) .
Friday, the 27th day of December     , 19 74 , in said County of Cumberland,
Barry Lee Shoop, did then and there unlawfully and wilfully operate
a certain Ford Truck bearing Pennsylvania Registration Plate No.
CC35-774, upon Wertzville Road, a public highway in East Pennsboro .
Township, Cumberland County, Commonwealth of Pennsylvania, while
under the influence of intoxicating liquor or any narcotic drug
or habit-producing drug.

All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

75 P. S. 1037
Citation of Statue and Section

Attorney for the Commonwealth

**Commonwealth Witnesses:**

Officer Ronald E. Stiles

## CRIMINAL ACTION

245  CRIMINAL        19 .75....

COMMONWEALTH OF PENNSYLVANIA

vs.

........Barry Lee Shoop........

........Sandy Hollow Road........

........R. D. 1........

New Bloomfield, Pennsylvania

## INDICTMENT

Charge: Driving Under the Influence

........................................................

AND NOW, this        day of

19      , the within Bill of Indictment is

........................................................

........................................................

Foreman of Grand Jury

AND NOW, this        day of

19      , the Defendant pleads ........................

........................................................

........................................................

Et de hoc, District Attorney similiter.

........Officer Ronald Stiles........

BARRY LEE SHOOP........., the defendant
being advised of the offense charged in the bill of
indictment and of his rights, hereby (in open
court) waives action by the grand jury and con-
sents to proceed on the within bill of indictment
presented by the attorney for the Commonwealth.

7|9|7:
Date                    Defendant

........................................
Attorney for Defendant

BARRY LEE SHOOP,
BEING WILLING TO ENTER A PLEA OF
GUILTY TO THE CHARGE CONTAINED
IN THE WITHIN INDICTMENT AND HAV-
ING NOTIFIED THE DISTRICT ATTORNEY
TO THAT EFFECT AND THE DISTRICT
ATTORNEY HAVING PREPARED PURSU-
ANT TO THAT NOTICE THIS BILL OF
INDICTMENT IN THE USUAL FORM,
SPECIFING THE CHARGE MADE, DO
HEREBY REQUEST THAT MY PLEA OF
GUILTY BE ENTERED HEREWITH.

4|28|7:
Date                    Defendant

........................................
Attorney for Defendant

CRIMINAL DOCKET AND TRANSCRIPT

 OK in hs

 **Commonwealth of Pennsylvania** } SS

County of ......Cumberland........        EP1508

vs.

Barry Lee. Shoop
Sandy Hollow Road, R. D. # 1
New Bloomfield, Pa.   17068

DOB ▓▓▓▓

To the Clerk of the Courts, ......Cumberland...................... County, Pennsylvania

(1) A hearing in the above captioned matter was held at .................. M., on the ................................... day

of ........................................, 19........., at ...........................................
                                                              (hearing place)

(2) The prosecutor in said matter and .........his address is:

Ptl. Ronald E. Stiles                    East Pennsboro Twp. Police Dept/
       (name)                                       (address)

(3) The name(s) and address(es) of the defendant(s) are:

Barry Lee Shoop              Sandy Hollow Rd.,R.D.#1, New Bloomfield, Pa.

..................................................      ..................................................

..................................................      ..................................................

(4) The names and addresses of the witnesses who appeared are:

..................................................      ..................................................

..................................................      ..................................................

..................................................      ..................................................

(5) The names and addresses of attorneys in said proceeding are:

Prosecution: ..........................................      ..........................................

Defense: ..........................................      ..........................................

(6) The charge against defendant(s) is that  On 27 December 1974, did unlawfully then and
                                                        (description of offense)
there operate a Ford Truck bearing Penna. Registration Plates No. CC35 774 for

1974, Operator's Plate No 13 380 310, while under the influence of intoxicating

liquor.

SECTION 1037, MOTOR VEHICLE CODE

..................................................................................................

..................................................................................................

..................................................................................................

..................................................................................................

(7) The summons (or warrant of arrest) was issued ...........27 December..................., 19. 74.. and

returned .......served (12/27/74)......
                (served or not served)

(8) Hearing continued until the .......................... day of ..............................., 19........ at ............. M.

Reason:

(9) The following parties and witnesses were sworn ........ Ptl. Ronald E. Stiles was sworn at time

of complaint. .........................................................................................................

........................................................................................................................
(names who were sworn and testified)

(10) In the above matter the ................................................, made a reasonable effort to settle the differences
(Alderman - Justice of the Peace)

between the parties prior to holding a preliminary hearing. The said parties did (not) settle their differences.

(11) After hearing held, it was determined that the evidence and testimony warranted holding the defendant

for court and bail was set in $ 1.00 Nominal ...........

(12) The nature of the bail posted and the name and address of the corporate surety or individual surety are:

Cash, Barry Lee Shoop ...........................................................................................
(name)                                                          (address)

....................................................................................................................

(13) The defendant requested that the following persons be notified of the time of trial: ...... None ..............

....................................................................................................................
(name)                                                          (address)

....................................................................................................................
(name)                                                          (address)

(14) The defendant was advised, 27 December 1974 ..................., 19........, of his right to apply for the assignment

of counsel.

(15) On ...2 January..............., 19...75., the undersigned rendered the following decision:

Defendant signed waiver. All papers returned to Court. ..............................

....................................................................................................................

....................................................................................................................

I hereby certify this to be a correct transcript from my docket in the above case.

.................................................. (Seal)
(Alderman - Justice of the Peace)

CONSTABLE'S COSTS

| | |
|---|---|
| Executing Warrant & Mileage | |
| Executing Summons & Mileage | |
| Subpoena for Hearing | |
| Officer's Mileage | |
| Commit. for Hearing | |
| Release for Hearing | |
| Commit. for Court | |
| Prisoner's car fare | |
| | |
| | |
| | |
| | |
| TOTAL $ | |

JUSTICE OF THE PEACE
ALDERMAN'S COSTS

| | | |
|---|---|---|
| Felony | | |
| Misdemeanor | 13 | 00 |
| Summary conviction | | |
| | | |
| Cósto County Total | 13 | 00 |

JAN  7  9 52 AM '75

PENNSYLVANIA
CUMBERLAND COUNTY
CLERK OF COURTS
FILED-OFFICE

Included with Transcript:
Compalint          Bail Piece
Warrant            Refund of Bail
Waiver of hearing  Check for $1.00
Waiver of Counsel

JUSTICE OF THE PEACE
MAGISTERIAL DISTRICT NO. 09-1-02
_(Address)_  860 N. Front
~~Pensboro Center~~
Wormleysburg, Pa. 17043

| | YEAR | NUMBER |
|---|---|---|
| COMPLAINT NO. | 1974 | EP/508 |
| COMPLAINT NUMBERS OF OTHER PARTICIPANTS | | |

## CRIMINAL COMPLAINT (POLICE)

**COMMONWEALTH OF PENNSYLVANIA**
VS.

I, ___Officer Ronald E. Stiles___
(Name of Affiant)

of ___East Pennsboro Township Police___
(Identify department or agency represented and political subdivision)

residing at _____

do hereby state under oath or affirmation, to the best of my
knowledge, information and belief:

DEFENDANT (Name and Address):

Barry Lee Shoop
Sandy Hollow Road R.D # 1
New Bloomfield, Pa. 17068
D.O.B.

(1) ☒ I accuse the above-named defendant, who lives at the address set forth above

or,

(Check applicable box) ☐ I accuse an individual whose name is unknown to me but who is described as _____

☐ His nickname or popular designation of is unknown to me
and, therefore, I have designated him herein as John Doe;

vehicle   Wertzville ~~Rd~~, Political subdivision)

with violating the ☒☒☒☒ laws of the Commonwealth of Pennsylvania at ___East Pennsboro Township___
at __4:20 P.M.__ in ___Cumberland___ County on or about __Friday, December 27, 1974__
(if the date or day of week is an essential element of offense charged, the day or date must be specifically set forth.)

Participants were (If there were participants, place their names here, repeating the name of above defendant):

Barry Lee Shoop

(2) The acts committed by the accused were: * that he (she) did unlawfully then and there operate a __Ford Truck__ bearing ___Penna.___ Registration Plates No. __CC35-774__ for 1974,
Validating Sticker No. _____, for 19____, Operator's Plate No. __13-380-310__ while
under the influence of intoxicating liquor or any narcotic drug or habit producing drug;

or

that he (she) permitted _____, to operate a _____,
owned by _____, or in _____ custody or control, bearing _____
Registration Plates No. _____ for 19____, Validating Sticker No. _____,
for 19____, Operator's Plate No. _____, while under the influence of intoxicating
liquor or narcotic or habit producing drug;

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in
violation of ___1037___ (Section) and __~~——~~__ (Sub-section) of the

Act of 1959, April 29, XXXX&XXXXXXXXXXXXX&XXX of _____
(Political Subdivision)
P.L. 58, The Vehicle Code of Pennsylvania, as further amended. (75 P.S. 1037)

(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made.

EXECUTED this ___27 December___ day of _____ 1974
The information contained herein was received from __Ronald E. Stiles__ of the __East Pennsboro__ Police Dept.,
and is believed by the affiant to be true and correct.
AND NOW, this date __December 27__ 1974, I certify the complaint has been properly sworn to and executed
before me, and I believe the within affiant to be a responsible person and that there is probable cause for the issuance of
process.

___09-3-04___
(Magisterial District)

_(Signature of Affiant)_

_Ross C. McAlluhe_ (SEAL)
(Issuing Authority)

* Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. Neither the evidence nor the statute allegedly
violated need be cited, nor shall a citation of the statute allegedly violated, by itself, be sufficient.

**WAIVER**
(R140)

On _____, 197____, I appeared before _____,
Magisterial District _____, who delivered to me a copy of the foregoing Complaint,
and I hereby waive preliminary hearing and consent to be bound over to court.

_____
(Defendant)

_____
(Attorney for Defendant)

_____
(Address of Attorney)

JP Crim. Form 74-R133-Police                    **ORIGINAL**

**Exhibit H**
(*Carl Fareri Court Records*)

8303833

||||||||||||||||||||||||||||||||||||||||

**3**

COMMONWEALTH OF PENNSYLVANIA     5-26-83    F.A.

VS      4-5-83    DATE FILED

CARL FARELI      10-2-83    C.F.T.D.

| | |
|---|---|
| JUDGE_____ | CC NO. 8303833A |
| A,D.A._____ | OTN NO. B180216-1 |
| DEFT._____ | PRE-TRIAL DATE 5-16-83 |
| REPORTER_____ | ACTOR'S Race W : Sex M |
| MINUTE CLERK _____<br>Case No(s)-Name(s) | D.O.B. [redacted] SOC SEC# [redacted] |

**MAY 1 9 1983**

1st Count:   BURGLARY   (Section 3502)

2nd Count:   THEFT BY UNLAWFUL TAKING OR DISPOSITION (Section 3921(a))

3rd Count:   RECEIVING STOLEN PROPERTY   (Section 3925)   Rep: W. MEIXER

*And Now AUG 25 1983 defendants motions to Suppress are hereby denied ( See Order filed)*

*By the Court*

*And now JAN 31 1985, ARD Program is Revoked by Reason of ...*

VIOLATION COUNTY

CONSTABLE FEE
$

VOUCHER #

FILE # 
143436

AMOUNT
$ 154.00

RET ... ON

C O U N T Y

CONSTABLE FEE
$ 2.25

VOUCHER #
00609-39

FILE #
38671

AMOUNT
$ 198.06

RESTITUTION
$ 150.00

**APPROVED FOR ARD**
SEE ORDER FILE

JUDGE _Yahauser_ DATE 8-16-84

D.A. _M. Tell_ DEFT. ATTY. _Raymond Radakovich_

REP. _Cornperoho_

**COST PAID**

( See inside )

Date: _____ JAN 3 1 1985 ____ 19__

Courtroom No. _____

Before _____ _TK Akragon_ Judge

_____ _A Williams_ Trial A.D.A.

_____ _R Radakich_ Def. Attorney

_____ _Wheeler_ Court Reporter

The Defendant present in open court
with counsel, pleads guilty to the
preferred charges in the bill of
in the written information.

X _Carl Harem_

Record verified by: _____

_____ Minute Clerk

JAN 3 1 1985 ____ 19.____

On payment of costs of prosecution by County,
Defendant released on probation for a period
of _Five (5) Years Less 6 Months credit for_
in custody of Probation Officer upon conditions. This defendant to
Defendant to reimburse County for costs. SEE
ORDER FILED. Clerk of Courts to set up
terms of payment and collect fine, costs and
restitution during probation period.

_Defendant to pay costs to arrange by Clerk of_
_Criatton. This Probation to run concurrent_

_with Probation at CC841/1063A._

_By the Court_
_McGugor, J._

IN THE COURT OF COMMON PLEAS
COUNTY OF ALLEGHENY
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

VS.

CARL FARELI

Criminal Action No: CC 8303833A

The District Attorney of Allegheny County by this
information charges that on (or about) February 20,
1983 in the said County of Allegheny CARL FARELI
hereinafter called actor, did commit the crime or
crimes indicated herein; that is:

35020A     Count 1              BURGLARY              Felony 1

The actor entered a building or occupied structure or
separately secured or occupied portion thereof; namely,
the Supersonic Car Wash at 1535 Banksville Road, Pittsburgh,
with the intent to commit a crime therein, at a time
when the premises were not open to the public and the
actor was not licensed or privileged to enter, in
violation of Section 3502 of the Pennsylvania Crimes
Code, Act of December 6, 1972, 18 Pa. C.S. §3502.

39212A     Count 2              THEFT BY              Misdemeanor 1
                                UNLAWFUL TAKING
                                OR DISPOSITION

The actor unlawfully took or exercised unlawful control
over movable property, namely, a safe containing $212.00
in U.S. Currency, belonging to the Supersonic Car Wash,
with the intent to deprive the owner thereof in violation
of Section 3921(a) of the Pennsylvania Crimes Code, Act
of December 6, 1972, 18 Pa. C.S. §3921(a).

Page 1 of 2

39252A     Count 3              RECEIVING STOLEN          Misdemeanor 1
                                  PROPERTY

     The actor intentionally received, retained or disposed
     of movable property, namely, a safe containing $212.00
     in U.S. Currency, belonging to the Supersonic Car Wash,
     with no intent to restore it to the owner, knowing that
     such property was stolen or believing that it had
     probably been stolen, in violation of Section 3925 of
     the Pennsylvania Crimes Code, Act of December 6, 1972,
     18 Pa. C.S. §3925.


All of which is against the Act of Assembly and the peace
and dignity of the Commonwealth of Pennsylvania.

                                    *Robert Calville & a Junge*
                                    Attorney for the Commonwealth

B0459 /     May         , 16 ,19 83


Page 2 of 2

CC NO. ...8303833A....................

COMMONWEALTH OF PENNSYLVANIA

VS

CARL FARELI

RECEIPT OF COPY OF INFORMATION

I hereby certify that I have received a copy of the information
filed by the District Attorney in the above-captioned action.

//  DEFENDANT

//  DEFENDANT'S COUNSEL OF RECORD

Carl N Fareri

SIGNATURE

5/26/83

DATE

COMPLAINT NUMBER OF OTHER PARTICIPANTS

MAGISTERIAL DISTRICT NO.
(Address)

**CRIMINAL COMPLAINT (POLICE)**

I, __Arthur Day or Edward Roberts__
(Name of Affiant)

of __# 7 Station__
(identify department or agency represented and political subdivision)

(1) ☐ I accuse the defendant, who lives at the address set forth herein
or,
☐ I accuse an individual whose name is unknown to me but who is

(Check   described as
applicable
box)

COMMONWEALTH OF PENNSYLVANIA

☒ His nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe;

with violating the penal laws of the Commonwealth of Pennsylvania at __City of pittsburgh__
in __Allegheny__ County on or about __February 20, 1983__
(If the date or day of week is an essential element of offense charged, the day or date must be specifically set forth.)

Participants were (if there were participants, place their names here, repeating the name of above defendant):

(2) The acts committed by the accused were: A   Burglary-3502, Theft-3921, R.S.P.-3925
That on or about February 20, 1983, in the County of Allegheny, unlawfully
and feloniously did enter a certain building or occupied structure
located at 1535 Banksville Road (Supersonic Car Wash) owned by Mark
Segall with the intent to commit a crime therein:to-wit, the crime of
theft of moveable property.
That on the day and year aforesaid, and in the aforesaid county, unlawfully
and feloniously did take and exercise unlawful control over certain moveable
property of another, to-wit: A safe containing $212.00 of the property of
the Supersonic Car Wash with the intent to deprive them thereof.
That on the day and year aforesaid, and in the aforesaid county, unlawfully
and feloniously did then and there intentionally receive certain moveable
property as herein set forth of the property of Mark Segall then and there
knowing property had been stolen or probably been stolen with the intent
to deprive the owner thereof.

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly.

(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made, and
I swear to or affirm the within complaint upon my knowledge, information and belief, sign it on _____, 19 ____, before_____,
whose office is that of_____3502-3921-3923

COMMONWEALTH OF PENNSYLVANIA )
                                ) SS.
COUNTY OF ALLEGHENY            )

Personally appeared before me on _____, 19 _____, the affiant above named who being duly sworn (Affirmed) according
to law, signed this complaint in my presence and deposed and said that the facts set forth therein are true and correct to the best of affiants
knowledge, information and belief.                                                                                          (SEAL)

AND NOW, this date _____ 19 ____, I certify the complaint has been properly sworn to and executed before me, and
that there is probable cause for issuance of process.                                                                       (SEAL)
(Magisterial District)
__ORIGINAL__

# GUIDELINE SENTENCE FORM

## I. IDENTIFICATION

| OFFENDER'S NAME | OFFENDER'S SEX | COMMISSION IDENTIFICATION |
|---|---|---|
| CARL FARRELL | ☒ MALE/ ☐ FEMALE | 55803 |
| JUDGE'S NAME | OFFENDER'S RACE | STATE IDENTIFICATION NUMBER |
| McKeon | ☒ WHITE/ ☐ BLACK/ ☐ HISPANIC/ ☐ OTHER | 152-07 981 |
| NAME OF PERSON COMPLETING FORM | COUNTY | DATE OF SENTENCE | DOCKET NUMBER |
| GUBANCK | ALLEGH | 1/31/85 | 8303833 |

## II. PRIOR RECORD SCORE — DO NOT COMPLETE IF ONLY CURRENT CONVICTION IS DUI

## III. DUI

| | PRIOR JUV. ADJUDICATIONS | PRIOR ADULT CONVICTIONS | SUM | X GUIDELINE POINTS | SUB = TOTAL | Number of PRIOR CONVICTIONS for DUI |
|---|---|---|---|---|---|---|
| A. MURDER | + | = | X | 3 | | |
| B. VOLUNTARY MANSLAUGHTER | + | = | X | 3 | | |
| C. RAPE | + | = | X | 3 | | |
| D. INVOL. DEVIATE SEXUAL INTER. | + | = | X | 3 | | |
| E. KIDNAPPING | + | = | X | 3 | | |
| F. ARSON (Endangering Person-Felony I) | + | = | X | 3 | | |
| G. ROBBERY (Felony I) | + | = | X | 3 | | IV. CURRENT CONVICTION |
| H. BURGLARY | + | = | X | 2 | | |
| I. AGGRAVATED ASSAULT (Felony II) | + | = | X | 2 | | |
| J. OTHER FELONY I's and FELONY II's. | + | = | X | 2 | | Check All Applicable: |
| K. FELONY DRUG OFFENSES | + | = | X | 2 | | ☐ Negotiated Plea |
| L. FELONY III's | + | = | X | 1 | | ☒ Non-neg. Plea |
| M. WEAPON MISDEMEANORS | + | = | X | 1 | | ☐ Bench Trial |
| OTHER MISDEMEANORS | + | = | X | | | ☐ Jury Trial |
| If 2 or 3 prior convictions, enter 1; If 4 or more enter 2 | | | | = | | |
| TOTAL (cannot exceed "6") | | | PRIOR RECORD SCORE = | | 0 | |

## V. GUIDELINES/SENTENCES

### CONVICTION NUMBER — 1

| NAME OF OFFENSE | TITLE AND SECTION | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|
| Burglary | 18 §3502 | F1 | B180216-1 | 5 | 0 |

| DEADLY WEAPON ENHANCEMENT | | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|
| ☒ NO ☐ YES–SPECIFY | IF YES ADD ENHANCED MONTHS TO GUIDELINE RANGES SEE § 303.4 | 0 − 12 | 12 − 18 | N / C |

SENTENCE IMPOSED:

SENTENCE UNDER:

☒ PROBATION ___6 0___ MOS. ☐ Mandatory Law (check all applicable);

☐ COUNTY INCARCERATION MIN· ___MOS. ☐ Repeat Offender ☐ Firearm

☐ STATE INCARCERATION MAX· ___MOS. ☐ Public Transportation ☐ Other

☐ FINE $ ___ ☒ Minimum Guideline Range

☐ RESTITUTION $ ___ ☐ Aggravated Guideline Range — Complete Section VII

COMMENTS: ___ ☐ Mitigated Guideline Range — Complete Section VII

☐ Outside Guideline Range — Complete Section VIII

Note — If Consecutive Incarceration Sentences Are Imposed Complete Section VI

### CONVICTION NUMBER — 2

| NAME OF OFFENSE | TITLE AND SECTION | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|
| Theft | 18 §3921 | M1 | B180216-1 | 3 | 0 |

| DEADLY WEAPON ENHANCEMENT | | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|
| ☒ NO ☐ YES–SPECIFY | IF YES - ADD ENHANCED MONTHS TO GUIDELINE RANGES SEE § 303.4 | 0 − 12 | 12 − 18 | N / C |

SENTENCE IMPOSED:

SENTENCE UNDER:

☐ PROBATION ___ MOS. ☐ Mandatory Law (check all applicable)·

☐ COUNTY INCARCERATION MIN· ___MOS. ☐ Repeat Offender ☐ Firearm

☐ STATE INCARCERATION MAX· ___MOS. ☐ Public Transportation ☐ Other

☐ FINE $ ___ ☐ Minimum Guideline Range

☐ RESTITUTION $ ___ ☐ Aggravated Guideline Range — Complete Section VII

COMMENTS: ___Suspended ☐ Mitigated Guideline Range — Complete Section VII

☐ Outside Guideline Range — Complete Section VIII

Note — If Consecutive Incarceration Sentence Are Imposed Complete Section VI

### CONVICTION NUMBER — 3

| NAME OF OFFENSE | TITLE AND SECTION | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|
| R.S.P. | 18 §3925 | M1 | B180216-1 | 3 | 0 |

| DEADLY WEAPON ENHANCEMENT | | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|
| ☒ NO ☐ YES–SPECIFY | IF YES - ADD ENHANCED MONTHS TO GUIDELINE RANGES SEE § 303.4 | 0 − 12 | 12 − 18 | N / C |

SENTENCE IMPOSED:

SENTENCE UNDER:

☐ PROBATION ___ MOS. ☐ Mandatory Law (check all applicable):

☐ COUNTY INCARCERATION MIN· ___MOS. ☐ Repeat Offender ☐ Firearm

☐ STATE INCARCERATION MAX· ___MOS. ☐ Public Transportation ☐ Other

☐ FINE $ ___ ☐ Minimum Guideline Range

☐ RESTITUTION $ ___ ☐ Aggravated Guideline Range — Complete Section VII

COMMENTS: ___Suspended ☐ Mitigated Guideline Range — Complete Section VII

☐ Outside Guideline Range — Complete Section VIII

Note — If Consecutive Incarceration Sentences Are Imposed Complete Section VI

885-1-31-85

COPY A-JUDGE/CLERK FILES          PCS - 1

Case 2:17-cv-02041-JMY   Document 61-2   Filed 12/06/22   Page 89 of 106

AME OF ACTOR   CARL TARELI                    NAME OF AFFIANT                          Page
                              2-20-83                                          CCR#
ATE OF APPLICATION                    DATE OF VIOLATION(CRIME)              WARRANT CONTROL NU

,eing Duly sworn (or affirmed) before me according to law, deposes and says that there is probable
> believe that the crime hereinafter mentioned was committed by the particular person hereinafter
ed. Your affiant believes that probable cause existed to arrest based upon the following facts and
:ances:

**WHEN:**

,) WHEN AFFIANT RECEIVED INFORMATION.   2-20-83, Statement by Actor Foreli,

t) WHEN THE SOURCE OF INFORMATION (POLICE   2-20-83, from Carl Foreli
   OFFICERS, INFORMANT, VICTIM OR CO-DEFENDANT
   OR DEFENDANT ETC.) RECEIVED INFORMATION.   checked with #8 Station to the report of this
                                                                                    Crime.

**HOW:**

a) HOW AFFIANT KNOWS THIS PARTICULAR PERSON   Defendants Admissions:
   COMMITTED THE CRIME (PERSONAL OBSERVATIONS ON
   INFORMATION RECEIVED AND/OR DEFENDANT'S   Actor (s) Apprehended 2-20-83 in New left PK
   ADMISSIONS) and/or     with a Safe Belonging to Super-Sonic Car wash
                          Safe I.D by manager Mark Segall

b) HOW THE SOURCE OF INFORMATION KNOWS THIS   Defendants Admissions to this crime
   PARTICULAR PERSON COMMITTED THE CRIME
   (PERSONAL OBSERVATIONS ON INFORMATION   Also implicating (3) other actors to all the charges
   RECEIVED AND/OR DEFENDANT'S ADMISSIONS)   3502, 3921, 3925, 3???.

c) HOW BOTH AFFIANT AND/OR SOURCE OF INFORMATION   Defendants Admissions, Personal observation
   KNOW THAT A PARTICULAR CRIME HAS BEEN
   COMMITTED (PERSONAL OBSERVATIONS, INFORMATION   of the Super Sonic Car wash And
   RECEIVED AND/OR DEFENDANT'S ADMISSIONS)   Information from the manager Mark Segalo

3. **WHAT CRIME(S):**  Burglary, Theft, Receiving Stolen Goods And
                        Conspiracy

4. **WHERE CRIME(S) COMMITTED:**   1535 Banksville Rd   Super-Sonic Car Wash

5. **WHY AFFIANT BELIEVES THE SOURCE
   OF INFORMATION (RELIABILITY):**

(i) SOURCE IS PRESUMED RELIABLE, i.e. OTHER   Admissions by Defendant.
    POLICE OFFICERS AND/OR EYEWITNESS OR VICTIM
    OF CRIME AND/OR ADMISSIONS BY DEFENDANT OR
    CO-DEFENDANT

(ii) SOURCE HAS GIVEN INFORMATION IN THE PAST
     WHICH LED TO ARREST AND/OR CONVICTION (GIVE
     NAME OF DEFENDANT IN PRIOR CASE, DATE AND
     CRIME TYPE)

ii) DEFENDANTS REPUTATION FOR CRIMINAL ACTIVITY:

(iv) SOURCE OF INFORMATION MADE DECLARATION   made statements to night Plainclothes
     AGAINST HIS PENAL INTERESTS RELATING TO THE
     ABOVE OFFENSE(S)   Officers Frank Buteip (was a 6hr Arraignment.)

(v) AFFIANT AND/OR OTHER POLICE OFFICERS
    CORROBORATED DETAILS OF THE INFORMATION.

5. STATEMENT OR ANY OTHER PERTINENT
   INFORMATION WITHIN THE PERSONAL
   KNOWLEDGE OF THE AFFIANT TO
   JUSTIFY THIS APPLICATION:

SWORN TO and SUBSCRIBED before me this ___5___ day of _____ ,19 83

_____
Signature of Affiant            Signature and Seal of Issuing Autho

5440 Dealthy Plum, Pgh Pa 15236

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY CO. PENNSYLVANIA
## CRIMINAL DIVISION

| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL ACTION NUMBER |
|---|---|
| VS. Carl Faleri | 8411063 A |

## MOTION OF DISTRICT ATTORNEY FOR PARTIAL NOLLE PROSSE

The District Attorney of Allegheny County hereby moves for Nolle Prosse of the following charges only of the several charges held for Court in the above-captioned case for the reason or reasons listed below.

**CHARGES TO BE NOLLE PROSSED**          **CHARGE CODE**

_____          3921 2

_____          _____

_____          _____

_____ EVIDENCE PROBLEMS          _____ WITNESS PROBLEMS

_____ PROSECUTORIAL MERIT LACKING          _____ SUPPRESSION PROBLEMS

_____ JURISDICTIONAL          _____ OTHER

EXPLANATION: _____

| JAIL | BAIL ROR | NEL BF | MH COMM. |
|---|---|---|---|

Date _____     Signature _____

ADA: _____

DATE: 1-16-84          CODE _____     APPROVED _____



SEE ORDER FILED FOR
PARTIAL NOLLE PROS

**COMMONWEALTH OF PENNSYLVANIA**

vs

CARL FARERI

| | | |
|---|---|---|
| 1  F1 | | |
| 11-13-84 | | F.A. |
| 6-19-84 | | Date Filed |
| 12-16-84 | | C.F.T.D. |

Judge _____

A.D.A. _____

Deft. _____

Reporter _____

Minute Clerk _____

C.C. No. _____ 8411063A

O.T.N. No. _____ B236014-2

B.C.I. No. _____ 151476

Pre-Trial Date _____ 11-7-84

Actor's Race _____ W _____ Sex _____ M

D.O.B. ___[redacted]___ SS# ___[redacted]___

Place of Birth _____ NOV 0 9 1984

JAN 3 1 1985

1st. Count:  BURGLARY  (Section 3502)

2nd. Count:  CRIMINAL CONSPIRACY  (Section 903(a)(1))

Date: _____ JAN 3 1 1985 _____ 19 ___

3rd Count No. _____ 6

Before _____
_____ M_____ Judge
_____ Trial A.D.A.
_____ Def. Attorney
_____ Court Reporter

The Defendant present in open court
with counsel, pleads guilty to the
preferred charges
in the within information.

X Carl Fareri

Record, verified by

Minute Clerk

On payment of costs of prosecution by County,
Defendant released on probation for a period
of FIVE (5) YEARS for 6 Months CREDIT FOR TIME
in custody of Probation Officer upon conditions.
Defendant to reimburse County for costs. SEE
ORDER FILED. Clerk of Courts to set up
terms of payment and collect fine, costs and
restitution during probation period.

BY THE COURT

COU...
CONSTABLE ...
VOUCHER #
FILED
14 3 435
AMOUNT
$ 185.00
RESTITUTION
$ 399.50

IN THE COURT OF COMMON PLEAS
COUNTY OF ALLEGHENY
CRIMINAL DIVISION


COMMONWEALTH OF PENNSYLVANIA

VS.

CARL FARERI

Criminal Action No: CC 8411063A


The District Attorney of Allegheny County by this
information charges that on (or about) February 14, 1983
in the said County of Allegheny CARL FARERI
hereinafter called actor, did commit the crime or
crimes indicated herein; that is:

35020A    Count 1              BURGLARY              Felony 1

The actor entered a building or occupied structure or
separately secured or occupied portion thereof; namely,
Joe Barone's Cafe at 146 Brownsville Road, Mt. Oliver,
with the intent to commit a crime therein, at a time
when the premises were not open to the public and the
actor was not licensed or privileged to enter, in
violation of Section 3502 of the Pennsylvania Crimes
Code, Act of December 6, 1972, 18 Pa. C.S. §3502.


Page 1 of 2

09031A    Count  2           CRIMINAL CONSPIRACY           Felony  2

The actor, with the intent of promoting or facilitating
the crime of burglary as charged above conspired and
agreed with Paul Schnelzer that they or one or more of
them would engage in conduct constituting such crime or
crimes, and in furtherance thereof did commit the overt
act of together committing the crimes in violation of
Section 903(a)(1) of the Pennsylvania Crimes Code, Act
of December 6, 1972, 18 Pa. C.S. §903(a)(1).

All of which is against the Act of Assembly and the peace
and dignity of the Commonwealth of Pennsylvania.

Attorney for the Commonwealth

 B0459  /      November  ,  7 ,19  84
Page 2 of 2

C.C. No. _____ 8411063A _____

COMMONWEALTH OF PENNSYLVANIA

VS

CARL FARERI

### RECEIPT OF COPY OF INFORMATION

I hereby certify that I have received a copy of the information filed by the District Attorney in the above-captioned action.

/ DEFENDANT

/   /   DEFENDANT'S COUNSEL OF RECORD

SIGNATURE

_____ // - /3 - 84 _____

DATE

## I. IDENTIFICATION

**PENNSYLVANIA COMMISSION ON SENTENCING SENTENCE FORM**

| OFFENDER'S NAME | OFFENDER'S SEX ☒MALE/☐FEMALE | OFFENDER'S | 6 BIRTHDATE | COMMISSION IDENTIFICATION |
|---|---|---|---|---|
| FARRELL, CARL | | | | 147410 |
| JUDGE'S NAME McGregor | OFFENDER'S RACE ☒WHITE/☐BLACK/☐HISPANIC/☐OTHER | | | STATE IDENTIFICATION NUMBER 1520798 |
| NAME OF PERSON COMPLETING FORM Rihac | COUNTY Allegheny | DATE OF SENTENCE 1-31-85 | | DOCKET NUMBER 84 11063 |

## II. PRIOR RECORD SCORE — DO NOT COMPLETE IF ONLY CURRENT CONVICTION IS DUI.

## III. DUI

| | PRIOR JUV. ADJUDICATIONS | PRIOR ADULT CONVICTIONS | SUM | X | GUIDELINE POINTS | SUB TOTAL | |
|---|---|---|---|---|---|---|---|
| A. MURDER | ___ + ___ = ___ | | | X | 3 | | Number of PRIOR CONVICTIONS for DUI |
| B. VOLUNTARY MANSLAUGHTER | ___ + ___ = ___ | | | X | 3 | | |
| C. RAPE | ___ + ___ = ___ | | | X | 3 | | |
| D. INVOL. DEVIATE SEXUAL INTER. | ___ + ___ = ___ | | | X | 3 | | |
| E. KIDNAPPING | ___ + ___ = ___ | | | X | 3 | | |
| F. ARSON (Endangering Person-Felony I) | ___ + ___ = ___ | | | X | 3 | | |
| G. ROBBERY (Felony I) | ___ + ___ = ___ | | | X | 3 | | IV. CURRENT CONVICTION |
| H. BURGLARY | ___ + ___ = ___ | | | X | 2 | | |
| I. AGGRAVATED ASSAULT (Felony II) | ___ + ___ = ___ | | | X | 2 | | Check All Applicable |
| J. OTHER FELONY I's and FELONY II's. | ___ + ___ = ___ | | | X | 2 | | ☐ Negotiated Plea |
| K. FELONY DRUG OFFENSES | ___ + ___ = ___ | | | X | 2 | | ☒ Non-neg. Plea |
| L. FELONY III's | ___ + ___ = ___ | | | X | 1 | | ☐ Bench Trial |
| M. WEAPON MISDEMEANORS | ___ + ___ = ___ | | | X | 1 | | ☐ Jury Trial |
| OTHER MISDEMEANORS | If 2 or 3 prior convictions, enter 1; If 4 or more enter 2 | | | | | | |
| | TOTAL (cannot exceed "6") | | | PRIOR RECORD SCORE = | 0 | | |

## V. GUIDELINES/SENTENCES

### CONVICTION NUMBER – 1

| NAME OF OFFENSE Burglary | TITLE AND SECTION 18 §3502 | GRADING F | OTN B236014-2 | OFFENSE GRAVITY SCORE 5 | PRIOR RECORD SCORE 0 |
|---|---|---|---|---|---|

| DEADLY WEAPON ENHANCEMENT ☒NO ☐YES—SPECIFY_____ | IF YES ADD ENHANCED MONTHS TO GUIDELINE RANGES SEE § 303.4 | MINIMUM RANGE 0 - 12 | AGGRAVATED RANGE 12 - 18 | MITIGATED RANGE N/C |
|---|---|---|---|---|

**SENTENCE IMPOSED:**
SENTENCE UNDER:
- ☒ PROBATION ___60___ MOS.
- ☐ Mandatory Law (check all applicable):
- ☐ COUNTY INCARCERATION MIN-___MOS.
  - ☐ Repeat Offender
  - ☐ Firearm
- ☐ STATE INCARCERATION MAX-___MOS.
  - ☐ Public Transportation
  - ☐ Other
- ☐ FINE $___
  - ☒ Minimum Guideline Range
- ☐ RESTITUTION $___
  - ☐ Aggravated Guideline Range – Complete Section VII
- COMMENTS: ___
  - ☐ Mitigated Guideline Range – Complete Section VII
  - ☐ Outside Guideline Range – Complete Section VIII

Note – If Consecutive Incarceration Sentences Are Imposed Complete Section VI

### CONVICTION NUMBER – 2

| NAME OF OFFENSE Cr. Conspiracy | TITLE AND SECTION 18 §903(c) | GRADING F-1 | OTN 0236014-2 | OFFENSE GRAVITY SCORE 4 | PRIOR RECORD SCORE 0 |
|---|---|---|---|---|---|

| DEADLY WEAPON ENHANCEMENT ☐NO ☐YES—SPECIFY_____ | IF YES – ADD ENHANCED MONTHS TO GUIDELINE RANGES SEE § 303.4 | MINIMUM RANGE 0 - 12 | AGGRAVATED RANGE 12 - 18 | MITIGATED RANGE N/C |
|---|---|---|---|---|

**SENTENCE IMPOSED:**
SENTENCE UNDER:
- ☐ PROBATION___MOS.
- ☐ Mandatory Law (check all applicable):
- ☐ COUNTY INCARCERATION MIN-___MOS.
  - ☐ Repeat Offender
  - ☐ Firearm
- ☐ STATE INCARCERATION MAX-___MOS.
  - ☐ Public Transportation
  - ☐ Other
- ☐ FINE $___
  - ☐ Minimum Guideline Range
- ☐ RESTITUTION $___
  - ☐ Aggravated Guideline Range — Complete Section VII
- COMMENTS: Suspended
  - ☐ Mitigated Guideline Range — Complete Section VII
  - ☐ Outside Guideline Range — Complete Section VIII

Note – If Consecutive Incarceration Sentences Are Imposed Complete Section VI

### CONVICTION NUMBER – 3

| NAME OF OFFENSE | TITLE AND SECTION § | GRADING | OTN | OFFENSE GRAVITY SCORE | PRIOR RECORD SCORE |
|---|---|---|---|---|---|

| DEADLY WEAPON ENHANCEMENT ☐NO ☐YES—SPECIFY_____ | IF YES - ADD ENHANCED MONTHS TO GUIDELINE RANGES SEE § 303.4 | MINIMUM RANGE | AGGRAVATED RANGE | MITIGATED RANGE |
|---|---|---|---|---|

**SENTENCE IMPOSED:**
SENTENCE UNDER:
- ☐ PROBATION___MOS.
- ☐ Mandatory Law (check all applicable):
- ☐ COUNTY INCARCERATION MIN-___MOS.
  - ☐ Repeat Offender
  - ☐ Firearm
- ☐ STATE INCARCERATION MAX-___MOS.
  - ☐ Public Transportation
  - ☐ Other
- ☐ FINE $___
  - ☐ Minimum Guideline Range
- ☐ RESTITUTION $___
  - ☐ Aggravated Guideline Range — Complete Section VII
- COMMENTS: ___
  - ☐ Mitigated Guideline Range — Complete Section VII
  - ☐ Outside Guideline Range — Complete Section VIII

Note – If Consecutive Incarceration Sentences Are Imposed Complete Section VI

MAGISTERIAL DISTRICT NO. 05-3 .5. .

A.M. Scharding
*(Address)*
500 Brownsville Rd. 15210

## CRIMINAL COMPLAINT (POLICE)

I, ___Greg Schank or Ray Leive___
*(Name of Affiant)*

of ___Mt. Oliver Police___
*(identify department or agency represented and political subdivision)*

(1) ☒ I accuse the defendant, who lives at the address set forth herein
or,
☐ I accuse an individual whose name is unknown to me but who is

*(Check applicable box)* described as _____

**COMMONWEALTH OF PENNSYLVANIA**
VS.
**DEFENDANT**

☐ His nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe;
with violating the penal laws of the Commonwealth of Pennsylvania at ___Mt. Oliver___
in ___Allegheny___ County. on or about ___February 14, 1983___
*(if the date or day of week is an essential element of offense charged, the day or date must be specifically set forth.)*

Participants were *(if there were participants, place their names here, repeating the name of above defendant):*
Carl Ferrare & Paul Schnelzer

(2) The acts committed by the accused were: A    Burglary-3502 & Conspiracy-903

That on or about February 14, 1983, in the County of Allegheny, unlawfully
and feloniously did enter a certain building or occupied structure
located at 146 Brownsville Rd. (Joe Barone's Cafe) owned by Joe Barone
with the intent to commit a crime therein, to-wit: The crime of theft
of moveable property.
That on the day and year aforesaid, and in the aforesaid county, unlawfully
and feloniously within the past two years did agree with Paul Schnelzer
that they would engage in conduct which would constitute such crimes
and did an overt act in pursuance thereof, to-wit: Carl Ferrare and
Paul Schnelzer did agree to enter the afore mentioned place of business
in an unlawful manner and remove cash and cigarettes valued at $799.00.

10/26/84 Amended to include Theft - Sec 3921. A. C.C.

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly.

(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made, and I swear to or affirm the within complaint upon my knowledge, information and belief, sign it on ___6-19___19 ___84___, before ___A.M. Scharding___, whose office is that of ___3502-903 DISTRICT MAGISTRATE___

COMMONWEALTH OF PENNSYLVANIA )
                                                            } SS.
COUNTY OF ALLEGHENY              )

Personally appeared before me on ___6-19-84___, 19____, the affiant above named who, being duly sworn (Affirmed) according to law, signed this complaint in my presence and deposed and said that the facts set forth therein are true and correct to the best of affiants knowledge, information and belief.                                                                                          (SEAL)
*(Issuing Authority)*

AND NOW, this date ___6-19-84___ 19____, I certify the complaint has been properly sworn to and executed before me, and that there is probable cause for issuance of process.                                                                                          (SEAL)
*(Magisterial District)*
*(Issuing Authority)*

**ORIGINAL**

# Exhibit I
*(Charles Spangler Court Records)*

3272

STATE OF WISCONSIN          COUNTY COURT          WOOD COUNTY

STATE OF WISCONSIN,

                            Plaintiff,



vs.

CHARLES EUGENE SPANGLER,

                            Defendant.

I, Thomas W. McLean, District Attorney in and for Wood County,
Wisconsin, do hereby respectfully inform the Court that the above-named
Defendant, Charles Eugene Spangler, in the Town of Cameron, in said
Wood County, Wisconsin, on or about the 2nd day of November, 1963, he being
a married person, did have sexual intercourse with a person not his
spouse, to-wit: Carole Ann Wickman, contrary to the provisions of
Section 944.16 (1) of the Wisconsin Statutes Revised, and against the
peace and dignity of the State of Wisconsin.

Dated at Wisconsin Rapids, Wood County, Wisconsin, this
day of November, 1963.

                            Thomas W. McLean
                            District Attorney
                            Wood County, Wisconsin

3272

**SENTENCE AND CERTIFICATE**

State of Wisconsin, Branch 2, County ............ Court, For Wood County.

STATE OF WISCONSIN,
                          Plaintiff,
                    vs.

CHARLES EUGENE SPANGLER
                          Defendant

SENTENCE AND CERTIFICATE

DEC · 1963

JASPER C. JOHNSON
CLERK OF COURTS
W· COUNTY - W·

At a term of this Court held at the Court House in the City of Wisconsin Rapids, Wisconsin, on the 9th day

of December , 19 61 before the Hon. Fred A. Fink Judge, presiding.

Said defendant after pleading guilty to

the crime of adultery

in violation of Section 944.16 (1) of the Wisconsin Statutes of 19 61 , and the Court having found and adjudged the defendant guilty.

It is the judgment and sentence of this Court that you Charles Eugene Spangler

the said defendant, be punished by paying a fine of $200.00 and costs of $8.50 or

be confined in the Wood County Jail

at Wisconsin Rapids Wisconsin.

For the indeterminate term of thirty (30) days

and that such sentence shall commence at noon this 9th day of December , 19 61.

By the Court:

Fred A Fink
                    Judge

TRAFFIC BRANCH COUNTY COURT

State Case( ) County Case( ) City, Case( )

NAME Charles Eugene Spangler

Forfeiture        $ 200 00

Fees              $

Costs             $       8 50

Traffic School (   )
Property Damage (   )

CC-3

| 3073 | STATE OF WISCONSIN | VS | SPANGLER, Charles | | |
|---|---|---|---|---|---|
| NUMBER | DEFENDANT | | PLAINTIFF | | |

DATE FILED 4-30-65     TERM     YEAR 19 65     COMPLAINT VOL.    27    PAGE 370

DATE OF CONVICTION   6-14-65       INFORMATION VOL.    5    PAGE /83

ATTORNEY FOR DEFENDANT    William Robson      INFORMATION FILING DATE

OFFENSE(1) Statutory Rape    (2) Contribute to Delinquency of Minor

DISPOSITION PLEA TO CT. #1 - GUILTY, Count #2, dismissed for failure to prosecute. Court sentences defendant to State Reformatory at Green Bay for indetermined period not to exceed five (5) years. Execution stayed and defendant placed on probation to S.D.P.W. for five (5) years. Defendan to pay costs of proceedings.

Volume
page 370

DEC/14/2017/THU 12:28 PM   Rock Co Clk of Court   FAX No. 608-743-2223   P. 003

STATE OF WISCONSIN
ROCK COUNTY

## County Court Branch 3

STATE OF WISCONSIN

vs.                                                                      #3073

### CHARLES SPANGLER

April 7, 1965, Complaint of Archie Divine being duly sworn on information & belief that on the 4th day of April, 1965, at the Township of Plymouth, in said County of Rock and State of Wisconsin;

#### COUNT ONE

the said CHARLES SPANGLER, being a male person did feloniously have sexual intercourse with a female, to-wit: being a female of the age of 15 years, knowing at the time that said female was not his wife, contrary to Section 944.10 (2) of the Wisconsin Statutes:

#### COUNT TWO

That on the 4th day of April, 1965, at the Township of Plymouth, in said County of Rock and State of Wisconsin, the said CHARLES SPANGLER, being a person eighteen (18) years of age or older, did unlawfully and intentionally contribute to the delinquency of a minor child, to-wit: a child of the age of 15 years contrary to Section 947.15 (1) (a) of the Wisconsin Statutes;

all against the peace and dignity of the State of Wisconsin;

Warrant issued.

April 30, 1965, case called. Hon. Edwin C. Dahlberg presiding.
Assistant District Attorney Samuel Loizzo appearing for the S ate of Wisconsin.
Defendant appearing in person.
Warrant returned and filed. Complaint read to defendant.
Defendant advised of Panalty.
Defendant advised of right to Preliminary Hearing and right to attorney.
Matter continued to May 3, 1965 at 9 a.m.       BOND - Five-Thousand ($5000.00)   COMMITTMENT ISSUED

May 3, 1965, case called. Hon. Edwin C. Dahlberg presiding.
Assistant District Attorney Robert J. Ruth appearing for the State of Wisconsin.
Defendant appearing in person, and by William Robson, his attorney.
Copy of complaint served on William Robson.
William Robson requests Preliminary Hearing.
Preliminary Hearing - May 17, 1965 at 10:30 A.M.  In Court III.  Ten day period waived.
BOND - Five Thousand ($5000.00)      COMMITTMENT ISSUED

May 17, 1965, case called. Hon. Edwin O. Dahlberg presiding.
Assistant District Attorney Robert Ruth appearing for the State of Wisconsin.
Defendant appearing in person, and by William Robson, his attorney.
Preliminary Hearing held:    Testimony taken by Court Reporter and filed.  Upon Testimony taken Court finds probable cause to believe felony has been committed and probable cause to believe defendant committed felony Defendant bound over for Trial and File Information by District Attorney.
Matter continued to May 24, 1965 at 9 a.m.     BOND CONTINUED

May 24, 1965, case called. Hon. Edwin C. Dahlberg presiding.
Assistant District Attorney Robert Ruth appearing for the State of Wisconsin
Defendant appearing in person, and by William Robson, his attorney.
Information Filed by District Attorney Charge Statutory Rape.

SEE INFORMATION DOCKET   VOL. 5   PAGE 183

STATE OF WISCONSIN
ROCK COUNTY

COUNTY BRANCH III Court of the City of Beloit

STATE OF WISCONSIN

vs.

#3073

CHARLES APANGLER

INFORMATION FILED ALLEGES AS FOLLOWS:

I, Robert J. Ruth, Assistant District Attorney in and for the County of Rock, State of Wisconsin do hereby inform the Court, that on the 4th day of April, 1965, at the Township of Plymouth, in said County of Rock and State of Wisconsin, the said CHARLES SPANGLER, being a male person, did feloniously have sexual intercourse with a female, to-wit: being a female of the age of 15 years, knowing at the time that said female was not his wife, contrary to Section 944.10 (2) of the Wisconsin Statutes;

all against the peace and dignity of the State of Wisconsin.

Dated this 24th day of May, 1965.

/s/  ROBERT J. RUTH
Assistant District Attorney

PLEA TO INFORMATION:  GUILTY

Upon motion of District Attorney, Count #2 of Complaint Dismissed for failure to prosecute.
Court orders Pre-sentence investigation. Comtinued to June 14, 1965 at 9 a.m. for Sentence
Defendant remanded to custody of sheriff.  COMMITTMENT ISSUED
May 24, 1965, case called. Hon. Edwin C. Dahlberg presiding.
Assistant District Attorney Robert J. Ruth appearing for the State of Wisconsin.
Defendant appearing in person, and William Robson as his attorney.

June 14, 1965, case called. Hon. Edwin C. Dahlberg presiding.
Assistant District Attorney Robert J. Ruth appearing for the STate of Wisconsin.
Defendant appearing in person, and by William Robson, his attorney.
FOR SENTENCE:  Court sentences defendant to State Feformatory at Green Bay for indeterminate period not to exceed five (5) years.  Execution stayed - Probation to S.D.P.W.  five (5) years.  Defendant to pay costs of proceedings.

DEC/14/2017/THU 12:28 PM    Rock Co Clk of Court    FAX No. 608-743-2223    P. 004

DOC-20 (Rev. 8/84)
Division of Corrections

**JUDGMENT OF CONVICTION**
SENTENCE WITHHELD, PROBATION ORDERED
**AMENDED II**

Wisconsin Statutes
Section 973.09

AMENDED I

| STATE OF WISCONSIN, | | |
|---|---|---|
|     v. | Plaintiff | STATE OF WISCONSIN, Circuit Court Branch _____ |

Charles Spangler

           Defendant      County ___Jackson_____

_____ Defendant Date of Birth    Court Case No. ___· 85-CR-116_____

The defendant entered his/her plea of    ☐ guilty    ☐ not guilty    ☒ no contest;

| The   ☐ Court    ☐ Jury found the defendant guilty of: | | Felony or | | Date(s) |
|---|---|---|---|---|
| | Wis. Statute(s) | Misdemeanor | Class | Crime |
| Crime(s) | Violated | (F or M) | (A-E) | Committed |
| Possession of a Firearm | 941.29 | F | E | 3-22-85 |
| Resisting an Officer | 946.41(1) | M | | 3-22-85 |

FILED
NOV 1 2 1985
CLERK OF COURTS
CLAUDIA SINGLETON

committed in this County; and

On ___11-11-85_____ , the Court inquired of the defendant why sentence should not be pronounced, and no sufficient grounds to the contrary being shown or appearing to the Court, and the Court having accorded the district attorney, defense counsel, and the defendant an opportunity to address the Court regarding sentence; and upon all the evidence, records, and proceedings, the Court pronounced findings and judgment as follows:

IT IS ADJUDGED that the defendant on' ___10-28-85_____ was convicted as found guilty:

IT IS DETERMINED that society will not be harmed and the defendant will benefit by being placed on probation pursuant to Sec. 973.09, Wis. Stats.;

IT IS ADJUDGED that sentence is withheld and the defendant is placed on probation for the period of _____
3 years ___, in the custody and control of the Wisconsin Department of Health and Social Services, subject to its rules and orders pursuant to Sec. 973.10, Wis. Stats.;

IT IS DETERMINED AND ORDERED that the record requires court-imposed conditions as follows:
☐ None    ☐ As ordered below:
That the defendant has the ability to pay within that period the amounts ordered herein. Should his/her financial condition change, s/he shall forthwith petition this Court for reconsideration of such conditions.

| Fines: | ☒ None | ☐ $ _____ ; Court Costs: ☐ None ☒ $ 20.00 ____ ; |
| Attorney Fees: | ☒ None | ☐ $ _____ ; Restitution: ☒ None ☐ $ _____ ; |
| Other: | ☒ None | ☐ $ _____ ; |
| Mandatory | | ☒ Felony 30.00 (# counts) @ $30.00   Amount $ _____ ; |
| | | Victim/Witness Surcharge ☐ Misdemeanor 20.00 (# counts) @ $20.00   Amount $ _____ ; |
| | | (Sec. 973.045 Wis. Stats.) Paid ☐ Yes Amount $ _____ ; ☐ No |

That the defendant shall be incarcerated in the County Jail for the following periods:
☐ None   ☒ The period of ___100 days_____ ; and
said sentence to be served in Clark County.
Jail term to commence 11-12-85 at 8:00 A.M. Defendant can serve time in Manitowoc County if they will accept him. Work release privileges allowed. No alcohol consumption whatsoever. Defendant must not go in any taverns. Alcohol Assessment and treatment ordered. Court ordered in-patient treatment at RiverWood Center, St. Croixdale Hosital, Prescott, Wisconsin, In patient treatment

IT IS FURTHER ORDERED that the defendant shall pay surcharges pursuant to Sec. 973.09(1)(b), Wis. Stats.; will count against jail term.

AMEND II 05-15-87 IS ADJUDGED __21__ days sentence credit are due pursuant to Sec. 973.155, Wis. Stats., and shall be credited if probation is revoked. Jail time reduced to 70 days with credit for 21 days served Leaves 49 days to be served in the Jackson County Jail with work release privileges. Is ordered that the defendant server in Jackson County Jail. Defendant will have work release privileges. Obey all rules as prescribed by Division of Corrections. Elva Larson, Deputy, Clerk of Court

| BY ORDER OF THE COURT: Signature of Judge, Deputy or Clerk of Court | |
|---|---|
| _(Claudia Singleter)_ | |
| (affix seal) | |
| Name of Judge | Date Signed |
| ___James Rice___ | ___11-11-85___ |
| Name of Defense Attorney | Name of District Attorney |
| ___John Brinkman___ | ___Michael McAlpine___ |

IMPORTANT-CLERK OF COURT PLEASE NOTE:   Send the following to the local Probation and Parole Office – two copies of this Judgment; two copies of the defendant's Probation Questionnaire (Form DOC-38), and one copy of the Criminal Complaint.

56

# Exhibit J
## (*Excerpt from the Deposition of Edward A. Williams*)

EDWARD A. WILLIAMS

1   with your recollection?

2        A.    It may be, but I'm almost positive

3   she asked me and I told her the truth.

4        Q.    We'll take a look at those later

5   then too.

6                    Do you recall what

7   punishment you received for the 2004 DUI?

8        A.    Yes, probation, the fines, maybe a

9   year suspension on my driver's license.

10       Q.    How about the house arrest?

11       A.    Yes, house arrest.

12       Q.    Do you recall why you ended up

13   getting house arrest?

14       A.    I believe it had something to do

15   with some of my medical history. The things I

16   was going through back then.

17       Q.    Do you recall how many days of

18   house arrest it was?

19       A.    It was 90.

20       Q.    Do you recall what in particular

21   your medical history led you to get house

22   arrest?

23       A.    It's not expired probably this

24   Wednesday or next Wednesday I'll be starting

25   Dialysis.  My kidneys were sluggish back then

EDWARD A. WILLIAMS

1   and the doctors were monitoring everything.

2   They thought I'd be on Dialyses much sooner.

3   They wanted to hold out for a little while.

4   I'll be starting Dialysis this Wednesday.  I

5   have to give them a call tomorrow. The plan was

6   start on the 16th. Back then they thought it

7   was going to be a lot sooner. So coupled with

8   the kidneys, the high blood pressure, I had to

9   stay inside and do house arrest for 90 days

10  instead of doing at the jail.

11       Q.   So was the plan then for you, if

12  you needed it, to perform Dialysis at your home

13  during that 2004 DUI house arrest?

14       A.   Probably just home or at the

15  center, but you have to do the center and get

16  trained before you can do it at home.

17            The way Dialysis I found out

18  you go in three days a week. In order for them

19  to train you at home, you need three to four

20  weeks of training at the centers.

21            So, when I start on

22  Wednesday, I go to the hospital for two days.

23  Then the following Monday I'm at the center.

24  The nurse will come in at some point one of my

25  days at the center and will be considered a