Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416, ext 81114 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD A. WILLIAMS** | : | |
| Plaintiff | : | Civil Action No.  17-CV-2641 |
| | : | |
| **v.** | : | |
| | : | |
| **MERRICK GARLAND,** *et al.* | : | Judge John Milton Younge |
| Defendants | : | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS
## FOURTH MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  PROCEDURAL HISTORY ................................................................ 2

III. FACTUAL BACKGROUND ............................................................ 4

IV.  STATEMENT OF QUESTIONS INVOLVED ................................ 6

V.   STANDARD OF REVIEW .............................................................. 6

VI.  ARGUMENT ...................................................................................... 7

    **a.  *The Proper Analysis Post-*Bruen *and* Range** ............................ 7

      i.   Mr. Williams is of the People Protected by the Second Amendment . 10

      ii.  The Purchasing, Possessing, Carrying, and Utilizing of a Firearm is Covered by the Plain Text of the Second Amendment ...................... 12

      iii. The Government Cannot Establish that Section 922(g)(1), *As-Applied* to Mr. Williams, is Consistent with the Nation's Tradition of Firearm Regulation ........................................................................... 13

        1.  Several Federal Courts Have Found That the Government Cannot Establish That Drug and Alcohol Conviction-Related Prohibitions are Consistent with the Nation's Tradition of Firearm Regulation 17

        2.  Mr. Williams Can Distinguish Himself for his As-Applied Challenge ........................................................................................ 19

VII. CONCLUSION ................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 7

*Binderup v. Attorney Gen. United States*, 836 F.3d 336 (3d Cir. 2016) ................ 17

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ................................................. 8, 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 7

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ........................... 7

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................... passim

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ........................................ 15

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764 (3d
   Cir. 2013) ............................................................................................................ 7

*Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d 928 (N.D. Ill.
   2014) .................................................................................................................. 15

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ...................................................... 11

*Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d
   Cir. 2011) ............................................................................................................ 7

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ........... passim

*Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3d Cir.
   2023) ........................................................................................................... passim

*Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 172 (3d
   Cir. 2008) ............................................................................................................ 7

*United States v. Alston*, 523CR00021FLRN1, 2023 WL 4758734
   (E.D.N.C. July 18, 2023) .............................................................................. 18, 19

*United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) ............................. 17, 18, 19

*United States v. Forbis*, 23-CR-133-GKF, 2023 WL 5971142 (N.D. Okla. Aug. 17, 2023) ........................................................................ 19

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ..................................... 11

**Statutes**

18 U.S.C. § 922 ........................................................................................ passim

75 Pa.C.S. § 3806 ............................................................................................ 4

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 6

Plaintiff Edward A. Williams, by and through his counsel, hereby submits this Brief in Support of his Fourth Motion for Summary Judgment.

## I.      INTRODUCTION

Plaintiff Edward A. Williams (hereinafter "Mr. Williams" or "Plaintiff") has filed suit, complaining that the Defendants have collectively and individually prohibited a particular class of persons, including himself, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms and ammunition as a result of a misdemeanor driving under the influence (hereinafter "DUI") conviction, where no one was injured and where no property damage resulted, in violation of his rights as protected by the Second Amendment. [1] Mr. Williams only desires to exercise his fundamental, individual right to purchase, possess, and utilize a firearm for purposes of self-defense of himself and his family. [2]

Consistent with the U.S. Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) and the Third Circuit's *en banc* decision in *Range v. Attorney Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023), it is clear that Defendants' enforcement of such a prohibition violates Mr. Williams's fundamental constitutionally protected right to keep and bear arms as provided for in the Second Amendment. In fact, there can be no dispute, post-

---

[1] Statement of Material Facts (hereinafter, "SOMF"), ¶¶ 9, 18.
[2] *Id.* at ¶¶ 15, 18, 25.

*Bruen*, that there is nothing in the Constitution's text nor the Nation's historical tradition of firearm regulation – as elucidated by the *Bruen* and *Range* decisions – that supports the categorical ban that the prior and continuing enforcement of Defendants' law imposes on Mr. Williams and as such, Defendants' law and enforcement thereof violates the Second Amendment

## II.        PROCEDURAL HISTORY

Mr. Williams initiated this litigation by filing suit on June 1, 2017. [3] The Government responded by filing a motion to dismiss on September 14, 2017. [4] Thereafter, Plaintiff contemporaneously filed a brief in opposition to the Government's motion to dismiss and his initial motion for summary judgment on October 13, 2017. [5] This Honorable Court issued two orders on December 1, 2017, denying the Government's motion to dismiss and denying, without prejudice, Plaintiff's motion for summary judgment as premature. [6] Thereafter, in October of 2018, the parties filed cross-motions for summary judgment [7] and the Honorable Robert F. Kelly issued an Order and Decision on April 1, 2019, denying Mr. Williams' motion and granting the Governments' motion. [8]

---

[3] *See* Doc. 1.
[4] *See* Doc. 5.
[5] *See* Docs. 8,  9-2.
[6] *See* Docs. 13,  14.
[7] *See* Docs. 29,  30.
[8] *See* Docs. 43,  44.

An appeal followed to the Third Circuit, which initially affirmed Judge Kelly's decision; however, after Plaintiff petitioned for reconsideration *en banc*, the Third Circuit vacated both its and this Court's prior decisions and "remanded to the District Court for reconsideration in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2002)." [9] After a status conference on October 6, 2022, where the Parties agreed that there were no outstanding discovery or other matters and that the matter was ripe for cross-summary judgment motions, this Court entered a briefing order on October 11, 2022. [10] Thereafter, in addition to filing his third motion for summary judgment on December 6, 2022 [11] and preparing to file his response to Defendants' cross-motion for summary judgment which was due on January 13, 2023, on January 10, 2023, Mr. Williams filed an unopposed motion to stay the briefing, [12] until the Third Circuit rendered in a decision in *Range*, which this Court granted on January 11, 2023. [13]

After notifying the Court of the Third Circuit's decision in *Range* and the Court holding a status conference on June 14, 2023, the Parties conferred and filed

---

[9] *See* Doc. 53.
[10] *See* Doc. 58.
[11] *See* Docs. 61–61-5.
[12] *See* Doc. 63.
[13] *See* Doc. 64.

a Joint Status Report [14] agreeing to a briefing schedule that the Court adopted in its

June 21, 2023 Order. [15]

## III.    FACTUAL BACKGROUND

In 2000, Mr. Williams was pulled over and subsequently arrested and

charged with DUI. [16] At the time of Mr. Williams' first DUI, Pennsylvania law

made it a crime to operate a vehicle with a blood alcohol content greater than .10.

[17] Mr. Williams was successfully entered into Pennsylvania's Accelerated

Rehabilitation Disposition (hereinafter "ARD") program, which required him to

serve 12 months probation, attend an alcohol education class, a driver's safety

class, and pay all of the associated court costs and fines. [18] After successful

completion of the ARD program, Mr. Williams' charge was expunged and his

driver's license restored. [19] ARD does not result in a conviction, if successfully

completed. [20]

---

[14] *See* Doc. 70.
[15] *See* Doc. 71.
[16] *See* SOMF at ¶¶ 1–3.
[17] *Id*. at ¶ 3.
[18] *Id*. at ¶ 4.
[19] *Id*. at ¶ 6. *See also* Mr. Williams's Pennsylvania State Police Background Check, which is attached hereto and incorporated herein as Exhibit A.
[20] *Id*. at ¶ 5. *See also* 234 Pa. Code Ch 3, Rule 312, Note 1 "Although acceptance into an ARD program is not intended to constitute a conviction under these rules, it may be statutorily construed as a conviction *for purposes of computing sentences on subsequent convictions. See e.g.*, 75 Pa.C.S. § 3806(a)." (Emphasis added).

On September 7, 2004, Mr. Williams was pulled over by the Philadelphia Police Department and subsequently arrested and charged with DUI. [21] Mr. Williams was found guilty and was sentenced to "passive house arrest until electronic monitor[ing] is available" for 90 days, ordered to pay costs, a fine of $1,500.00, and complete any recommended drug and alcohol treatment. [22]

At no point, in relation to the two instances of DUI, did any property damage or any injury to another occur. [23] Moreover, Mr. Williams has held a job as a construction manager for the past thirty-one (31) years, where he has managed projects, which include the Curran-Fromhold Correctional Facility, PA Convention Center, Septa Railworks project, the Commodore Barry Bridge, Interstate 95, and the NJ Transportation maintenance facilities. [24] Mr. Williams is tasked with field inspections, project management, cost control, problem solving, developing and maintaining CPM project schedules for contractors, and relaying updates during the construction period. [25]

In or about late December of 2014, Mr. Williams, concerned for the safety of himself and his family, attempted to procure a License to Carry Firearms ("LTCF") and was denied. [26] After challenging the denial, he was only made aware

---

[21] *Id*. at ¶ 7.
[22] *Id*. at ¶ 8. *See also* Doc. 1-1 at 7.
[23] *Id*. at ¶ 9.
[24] *Id*. at ¶ 11–12.
[25] *Id*. at ¶ 13.
[26] *Id*. at ¶ 14.

that he was prohibited from obtaining a LTCF. [27] It was not until Mr. Williams

spoke with Attorney Joshua Prince on or about November 5, 2015, that for the first

time, he was informed that his sole conviction in 2004 for DUI was a federally

prohibiting offense, which prevented him from lawfully possessing firearms and

ammunition. [28] As a result, Mr. Williams brought the underlying action that is

before the Court.

## IV.     STATEMENT OF QUESTIONS INVOLVED

1. Does Defendants' prohibition on Mr. Williams, and those similarly
   situated, from obtaining, possessing, keeping, bearing, or otherwise
   utilizing firearms and ammunition as a result of an isolated
   misdemeanor DUI conviction violate his Second Amendment
   protected rights?

   Suggested Answer in the *Affirmative*

## V.      STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a

sufficient evidentiary basis for a reasonable jury to find for the non-moving party,

and a fact is "material" only if it might affect the outcome of the action under the

---

[27] *Id*. at ¶ 15.
[28] *Id.* at ¶ 16.

governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party while not evaluating the credibility or weighing the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247–48) (internal quotation marks omitted).

If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

## VI.    ARGUMENT

### a.  *The Proper Analysis Post-*Bruen *and* Range

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Prior to the Court's recent decision in *Bruen*, it had already explicitly held that the Second Amendment

protects one's right to possess a firearm – specifically a handgun in the case before the Court – in one's home, to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the . . . of being armed and ready for offensive or defensive action" and "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 584, 592 (2008); *see also Caetano v. Massachusetts*, 577 U.S. 411, 413–14 (2016)(Alito J., concurring) (holding that the Second Amendment also protects the right to possess and use stun guns in public). The issue that predominated the federal courts, *pre*-Bruen, was the appropriate analysis or framework a court was to utilize when assessing a Second Amendment challenge.

The Court in *Bruen*, beyond declaring on several occasions that the Second Amendment was the codification of "a pre-existing right" (142 S. Ct. at 2127, 2130, 2135, 2145), explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126. To counter this presumptive protection, the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. In fact, *Bruen* could not be clearer in its holding that it is *the government* that bears the burden of justifying its firearm regulations. *See id.* at 2130 ("The government must then justify its regulation by demonstrating that it is

8

consistent with the Nation's historical tradition of firearm regulation."); *id.* at 2135 (explaining "the burden falls on respondents"); *id.* at 2138 (holding that "respondents have failed to meet *their burden* to identify an American tradition" (emphasis added)).

The *Bruen* Court eschewed a two-step analysis, instead, calling courts to look to the "text, as informed by history." *Id.* at 2127. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2129. It is the Government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). In *Range*, when seeking to apply this test, the Third Circuit, *en banc*, declared that "we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct" and "[i]f it does, the government now bears the burden of proof: 'it must affirmatively prove that its firearms regulation is part of the

historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range*, 69 F.4th at 101–03 (quoting *Bruen*, 142 S. Ct. at 2127).

Accordingly, Mr. Williams proceeds under this analysis, even though, there cannot be any real dispute that he is of the People that is protected by the Second Amendment, his proposed conduct – purchasing, possessing, carrying, and utilizing firearms for purposes of self-defense – is covered by the Second Amendment, based on the binding precedent from the U.S. Supreme Court and Third Circuit, and there exists no historical tradition of stripping individuals such as himself from their right to keep and bear arms.

### i.  Mr. Williams is of the People Protected by the Second Amendment

As the Third Circuit, *en banc*, acknowledged in *Range*, "[*Heller*] explained that 'the people' as used throughout the Constitution unambiguously refers to all members of the political community, not an unspecified subset . . . So the Second Amendment right, *Heller* said, presumptively belongs to all Americans." 69 F.4th at 101 (internal citations and quotation marks omitted). The court then went on to explain that "the people" is referenced in several constitutional provisions and that it must be read consistently in relation to all enumerated rights, where it is utilized,

as there is "no reason to adopt an inconsistent reading of 'the people'." *Id.* at 101–

02.

> "The people" seems to have been a term of art employed in select
> parts of the Constitution . . . . Its uses suggest that "the people"
> protected by the Fourth Amendment, and by the First and Second
> Amendments, and to whom rights and powers are reserved in the
> Ninth and Tenth Amendments, refers to a class of persons who are
> part of a national community or who have otherwise developed
> sufficient connection with this country to be considered part of that
> community.

*Heller*, 554 U.S. at 580 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259,

265 (1990)) (cleaned up); *accord Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019)

(Barrett, J., dissenting) ("Neither felons nor the mentally ill are categorically

excluded from our national community. That does not mean that the government

cannot prevent them from possessing guns. Instead, it means that the question is

whether the government has the power to disable the exercise of a right that they

otherwise possess, rather than whether they possess the right at all.").

Thus, in rejecting the Government's argument that only "law-abiding,

responsible citizens" are protected by the Second Amendment and that legislators

should be able to decide "whom to exclude from the people," the court declared

that such "extreme deference gives legislatures unreviewable power to manipulate

the Second Amendment by choosing a label. And that deference would contravene

*Heller*'s reasoning that 'the enshrinement of constitutional rights necessarily takes

certain policy choices off the table.'" *Range*, 69 F.4th at 102–03 (internal citations

omitted). Thus, there can be no dispute that Mr. Williams is of "the people" that are protected by the Second Amendment.

      ii.   <u>The Purchasing, Possessing, Carrying, and Utilizing of a Firearm is Covered by the Plain Text of the Second Amendment</u>

As addressed *supra*, the U.S. Supreme Court in *Heller*, *Caetano*, and *Bruen* has already held that the Second Amendment protects the right of an individual to have a firearm in his home and in public for purposes of self-defense. And in *Range*, the Third Circuit stating this to be an "easy question" and in citing to *Heller's* pronouncement that the "Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," held that "the Second Amendment's plain text covers Range's [desire "to possess a rifle to hunt and a shotgun to defend himself at home]." *Id.* at 103. So too is it an easy question here, as Mr. Williams only desires to exercise his fundamental, individual right to purchase, possess, and utilize a firearm for purposes of self-defense of himself and his family (SOMF, ¶¶ 14, 24); thus, there cannot be any dispute that his desired conduct is covered by the Second Amendment.

iii.   The Government Cannot Establish that Section 922(g)(1), *As-Applied* to Mr. Williams, is Consistent with the Nation's Tradition of Firearm Regulation

As addressed *supra* and as acknowledged by the Third Circuit in *Range*, *Bruen* could not be clearer in its holding that it is *the government* that bears the burden of justifying that its firearm regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127, 2130, 2135, 2138; *Range*, 69 F.4th at 101. While the burden is clearly on Defendants to establish that their law is consistent with the Nation's historical tradition of firearm regulation, there is simply no way for them to establish any historical tradition, as there exist no historical tradition of firearm disarmament laws relative to being in or on any mode of conveyance – *e.g.* horseback – while intoxicated. In fact, as Judge Porter's concurring opinion in *Range* declares, "there are no examples of founding, antebellum, or Reconstruction-era federal laws like 18 U.S.C. § 922(g)(1) permanently disarming non-capital criminals." 69 F.4th at 106.

In addressing what constitutes the Nation's historical tradition of firearm regulation, *Bruen* explains that "when it comes to interpreting the Constitution, not all history is created equal." *Id*. at 2136. That is why courts "must . . . guard against giving postenactment history more weight than it can rightly bear." *Id.* "As [the Court] recognized in *Heller* itself, because post-Civil War discussions of the right

to keep and bear arms came '75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" *Id.* at 2137 (quoting *Heller*, 554 U.S. at 614); *see also Sprint Communications Co. v. APCC Servs., Inc.,* 554 U.S. 269, 312 (Roberts, C.J., dissenting) ("The belated innovations of the mid- to late-19th-century courts come too late to provide insight into the meaning of [the Constitution in 1787]"). In fact, "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, 142 S. Ct. at 2137 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).

*Bruen* thus establishes that this Court must prioritize Founding era evidence, while evidence from around the "mid- to late- 19th century" is at most "secondary." *Id.* at 2137. "19th-century evidence [is] treated as mere confirmation of what the Court thought had *already been established*" in the Founding era. *Id.* (emphasis added). Thus, 1791 is the relevant time to "peg[] . . . the public understanding of the right." *Bruen*, 142 S. Ct. at 2137. [29]

---

[29] As the extensive historical analysis of the Reconstruction period in *McDonald* shows, the evidence around Reconstruction is most relevant to determining *whether* a right has been incorporated, 561 U.S. at 777, while the content of that right is the public understanding in 1791.

While the historical tradition need not be a "historical twin," the tradition of

a state, [30] around the time of Founding, must, at a minimum, be a historical

analogue to be relevant. *Id*. at 2126, 2133. But a single historical analogue around

the time of Founding of a state is not a tradition; rather, it is a mere aberration or

anomaly, with no followers. [31] Even two or three historical analogues of the states

around the time of Founding are at best a trend and not a tradition,[32] especially

when short-lived. [33]

And what laws, around the time of Founding, does the Government contend

are consistent with the "Nation's historical tradition of firearm regulation"? In

relation to their prior briefing, none. In fact, the first federal law – the Federal

Firearms Act (hereinafter "FFA") [34] – which barred certain felons from possessing

firearms was enacted in 1938, which the *Bruen* Court declared to be of no value in

establishing a historical tradition, as it only came into being in the mid-twentieth

---

[30] *See Bruen*, 142 S. Ct. at 2154–55 (finding the statutes of territories deserving of "little weight" because they were "localized," and "rarely subject to judicial scrutiny").

[31] *See Heller*, 554 U.S. at 632 (2008) ("[W]e would not stake our interpretation of the Second Amendment upon a single law . . . that contradicts the overwhelming weight of other evidence.")

[32] *See Ezell v. City of Chicago*, 651 F.3d 684, 706 (7th Cir. 2011) (finding that two historical statutes "falls far short of establishing that [a regulated activity] is wholly outside the Second Amendment as it was understood" in 1791); *Illinois Ass'n of Firearm Retailers*, 961 F. Supp. 2d 928, 937 (N.D. Ill. 2014) ("[C]itation to a few isolated statutes—even to those from the appropriate time period—fall[s] far short of establishing that gun sales and transfers were historically unprotected by the Second Amendment.") (internal quotation marks omitted).

[33] *See Bruen*, 142 S. Ct. at 2155 ("[T]hese territorial restrictions deserve little weight because they were . . . short lived.")

[34] A copy of the Federal Firearms Act of 1938 is attached hereto and incorporated herein as Exhibit B.

century. *Bruen*, 142 S. Ct. at 2137.[35] The FFA specifically made it unlawful for any person who was under indictment or convicted of a crime of violence or a fugitive from justice to shop, transport or receiver a firearm or ammunition. Moreover, the law defined a crime of violence to mean:

> [M]urder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking; assault with intent to kill, commit rape or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year.[36]

Notably absent from those who were prohibited from possessing firearms and ammunition, as acknowledged by the Third Circuit in *Range*, were those convicted of non-violent offenses. 69 F.4th at 104. It was not until 1961 that Congress took action to bar non-violent felons from possessing firearms and ammunition.[37] Thus, approximately 170 years passed from the time the Bill of Rights became effective until the time where individuals who were not violent felons (and misdemeanants) were barred from possessing firearms and ammunition.[38] At the time Mr. Williams was charged with the prohibiting offense, the prohibition against non-violent felons had only been in place for approximately 42 years.[39]   From a historical analysis, even if, *arguendo*, one were to ignore the *Bruen* Court's command not to consider laws enacted after the early-19th century,

---

[35] Emphasizing this point even more, the Court declared that even early-nineteenth century laws could only be used to confirm what had "already been established" in the Founding area. *Id.*

[36] *Exhibit B* at 1.

[37] *See* Pub. L. No. 87-342, 75 Stat. 757 (1961)

[38] Actual time was 169 years, 9 months and 18 days.

[39] Actual time was 42 years, 11 months and 5 days.

the prohibition that prevents Mr. Williams from possessing firearms or ammunition

accounts for a period of time less than 20% of the total period of time in which the

right to keep and bear arms was codified in the Bill of Rights. [40] There is simply no

way, especially in light of *Bruen*'s command, for this to constitute a historical

tradition of firearm regulation. Moreover, per the Third Circuit – in a pre-*Bruen*,

limited analysis – historical evidence suggests that the only individuals who were

categorically barred from possessing firearms were those who committed violent

offenses. [41]

1.  Several Federal Courts Have Found That the Government
    Cannot Establish That Drug and Alcohol Conviction-
    Related Prohibitions are Consistent with the Nation's
    Tradition of Firearm Regulation

Recently, the Fifth Circuit, in *United States v. Daniels*, 77 F.4th 337, 339,

344 (5th Cir. 2023), overturned Mr. Daniels' conviction for unlawfully possessing

a firearm as an unlawful user of a controlled substance, pursuant to 18 U.S.C. §

922(g)(3), even though he admitted "to smoking marihuana [sic] multiple days per

month," because although the Government attempted to argue three analogues to

---

[40] *See Bruen*, 142 S.Ct. at 2127, 2130, 2135, 2145, declaring that the Second Amendment was
the mere codification of a "pre-existing right."
[41] *Binderup v. Attorney Gen. United States*, 836 F.3d 336, 348 (3d Cir. 2016).

Section 922(g)(3), [42] the "government [] failed to identify any relevant tradition at the Founding of disarming ordinary citizens who consumed alcohol" and neither mentally ill or dangerous/disloyal categories of prohibition were analogous. [43, 44] Accordingly the Fifth Circuit held that "Daniels's § 922(g)(3) conviction is inconsistent with our 'history and tradition' of gun regulation." *Id*. at 355.

Similarly, in *United States v. Alston*, 523CR00021FLRN1, 2023 WL 4758734, at *1 (E.D.N.C. July 18, 2023), Judge Numbers II was presented with a motion to dismiss by an individual who utilized marijuana daily and was found in possession of a firearm, resulting in a federal grand jury indicting him for possession of a firearm by an unlawful user of, or person addicted to, a controlled substance in violation 18 U.S.C. § 922(g)(3). In dismissing the indictment, after finding that Mr. Alston was of "the people" protected by the Second Amendment, *id*. at *8, and that the possession, use, and acquisition of firearms is protected by the Second Amendment, *id*., Judge Numbers II declared as "the government has identified no suitable historical analogue justifying its prohibition on unlawful

---

[42] The analogues where "(1) statutes disarming intoxicated individuals, (2) statutes disarming the mentally ill or insane, and (3) statutes disarming those adjudged dangerous or disloyal." *Id*. at 344.

[43] Although the issue in *Daniels* was his use of marijuana, "[b]ecause there was little regulation of drugs (related to guns or otherwise) until the late-19th century, intoxication via alcohol is the next-closest comparator" that the court analyzed. *Id*. at 344–45.

[44] The Fifth Circuit likewise dismissed the Government's argument that "Daniels is presumptively dangerous because he smokes marihuana multiple times a month. *Id*. at 355.

users of controlled substances (or drug addicts) possessing firearms," *id*. at *11,

count two of the indictment should be dismissed, *id.* at 22.

And in *United States v. Forbis*, 23-CR-133-GKF, 2023 WL 5971142, at *1

(N.D. Okla. Aug. 17, 2023), Mr. Forbis filed a motion to dismiss the indictment

against him, where the Government alleged that he was a felon in possession of a

firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), because of his

convictions on two prior occasions for possession of methamphetamines and a

third conviction for driving under the influence for a second or subsequent offense.

In dismissing the indictment against Mr. Forbis, Judge Gregory Frizzell of the

Northern District of Oklahoma found that like *Daniels*, and *Alston*, discussed

*supra*, "the government has not met its burden to show that the convictions listed

in the Indictment support a § 922(g)(1) charge 'consistent with the Nation's

historical tradition of firearm regulation.'" *Id*.


2.  Mr. Williams Can Distinguish Himself for his *As-Applied*
    Challenge

In the event, *arguendo*, that this Court finds a historical tradition of firearm

regulation that would generally preclude Mr. Williams' challenge, he can

distinguish himself from that historical tradition. Specifically, on August 7, 2018,

Robert Gordon, Ph.D., ABPP, a Board certified clinical psychologist, conducted an

examination of Mr. Williams, which consisted of an interview, a battery of

19

psychological tests, and rating Mr. Williams on a psychodiagnostic chart, for the purposes of determining whether Mr. Williams "is fit to be allowed to own, possess, carry, and use a firearm *without risk to him or any other person*." [45] In forming his opinion, Mr. Gordon reviewed a number of documents and performed numerous types of testing. [46]

Mr. Gordon's report summarizes that Mr. Williams has "no history of hostile or violent behaviors nor a continuing pattern of aggressive behaviors, which could be a predictive factor." [47] Mr. Gordon's report concludes that Mr. Williams "has a normal personality, *without psychopathology and without addition or violent tendencies*." [48]

*          *          *          *

Accordingly, consistent with *Bruen* and *Range*, as the Government is unable to establish any historical tradition of firearm disarmament laws relative to being in or on any mode of conveyance while intoxicated or even more broadly for non-violent behavior, Mr. Williams, and those similarly situated, are being

---

[45] *See* Exhibit C. (Emphasis added).
[46] *Id.*
[47] *Id.* at 11.
[48] *Id.* at 11-12.

unconstitutionally denied their right to keep and bear arms and are entitled to declaratory and injunctive relief.

## VII.    CONCLUSION

For the foregoing reasons, the Mr. Williams' Motion for Summary Judgment should be granted.

Respectfully Submitted,

Dated: September 21, 2023

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803
610-845-3903 (fax)

Attorney for Plaintiff